83. Plaintiff then spoke by telephone with Gordon and counsel for Defendant Key Bank. Gordon repeated the substance of Defendant Key Bank's earlier communication and also requested that CBW agree to reduce its fee.

84. Defendant Key Bank had the ability to direct the uses of proceeds from the sale of the Combined Operations by virtue of liens perfected on TPG's assets in favor of Defendant Key Bank.

85. Between September 24 and September 27, 2004, Defendant Key Bank repeatedly reassured Plaintiff that it would block the closing of the Transaction by refusing to release the liens on the Combined Operations until Plaintiff was paid its fee.

86. On September 27, 2004, Gordon reassured Plaintiff that the sale of the Combined Operations to Epoch was in the final stages and that Plaintiff would receive its fee.

87. On September 28, 2004, Plaintiff contacted Gordon to inquire as to the date and location of the anticipated closing so that it could exercise its contractual right to attend. Gordon represented that he was not in possession of this information. Plaintiff specifically asked Gordon to notify CBW when he did know this information. Gordon never provided CBW with that information.

88. On September 29, 2004, Plaintiff contacted Defendant Gerald S. Freid, who requested an invoice for the final amount owed by Defendant TPG for the services provided by CBW. Defendant Gerald S. Freid represented that the fee would be paid at the closing, thereby again acknowledging TPG's obligation to pay Plaintiff a fee for its Investment Banking Services, as specified under the Engagement Letter. Plaintiff sent the requested invoice the same day to Defendant TPG and also to the personnel preparing the wire information for TPG's disbursement obligations at closing.

89. The invoice prepared by Plaintiff, a true copy of which is attached as Exhibit E, states that $1,033,030.46 was owed in conjunction with the Investment Banking Services provided by Plaintiff in connection with the sale of the Combined Operations. This calculation of Plaintiff's fee was based on an Aggregate Transaction Value of $31,950,000.00 for the sale of the Combined Operations.

90. As the closing approached, Defendants repeatedly assured Plaintiff that TPG would comply with its obligations under the Engagement Letter, and that CBW would be paid its fee from the sale proceeds at the closing. At the time, Defendants failed to notify and invite Plaintiff to the closing as requested [and required in the Engagement Letter] and took actions to obstruct and prevent Plaintiff from attending. Relying on the representations made by the Defendants, Plaintiff did not attend the closing of the Transaction and did not take such other steps as were available for it to protect its fee.

91. On September 30, 2004, Steven C. Dunham of Key Bank left a voicemail message for CBW stating that he had seen CBW's fee included in the Closing Statement for the Transaction.

92. The closing occurred on or about October 1, 2004 and Defendant TPG's interests in the Combined Operations were sold to Epoch for an adjusted sales price of approximately $31,950,000. Based on this reduced sales price, Plaintiff was entitled, pursuant to the terms of the Engagement Letter, to a fee of more than $1,028,000, plus out-of-pocket expenses. Defendant TPG failed to pay Plaintiff its fee at that time, as required by the terms of the contract.

93. Defendant Key Bank released the liens on Defendant TPG's assets after receiving proceeds from the sale, disregarding its assurances to Plaintiff that the liens would be kept in place until Plaintiff had received its fee.

94. On or about October 1, 2004, Plaintiff received a letter from Gordon. In the letter, Gordon claimed for the first time that Plaintiff was not entitled to any payment because, among other things, TPG was not contractually bound by the terms of the Engagement Letter inasmuch as it had been entered into by "Senior Living," a non-existent entity of which Gordon purported to have no knowledge.

95. Gordon also claimed that Plaintiff was not entitled to payment because, although the P&S Agreement designates CBW as a broker for the Transaction, Plaintiff did not have a brokerage license and, therefore, by operation of law cannot collect a brokerage commission.

96. After reciting these contrived and baseless objections to paying the fee to which Plaintiff was contractually and equitably entitled, Gordon set forth "at Gerry Freid's insistence" a so-called "settlement" proposal under which Plaintiff would be promised payment of $782,773 to be paid over a period of approximately one year, with no security or guarantee for these payments.

97. Upon receiving this malicious and false letter with its proposed unilateral and unjustified reduction in Plaintiff's fee, Plaintiff immediately contacted Dunham in order to verify Defendant Key Bank's position with regard to the fee. Dunham purported to feel remorse regarding the non-payment and offered to take up the issue with senior personnel at Key Bank.

98. Plaintiff also contacted Epoch to inform Epoch of the contractual breach. Epoch informed Plaintiff that it had anticipated CBW's participation at the closing and had prepared a security pass to allow Plaintiff entrance to the meeting place. Epoch also informed Plaintiff that during the closing, questions had been raised as to the manner in which CBW's fee would be handled and that, in response, Defendant TPG's representatives began smiling and laughing.

99. Despite repeated demands for payment of all sums due and owing, Plaintiff has never been paid for the services it rendered in connection with the Transaction.

## COUNT I

### (BREACH OF CONTRACT: DEFENDANT TPG)

100. Plaintiff realleges paragraphs 1 through 99 as if fully set forth herein.

101. Plaintiff and Defendant TPG entered into a valid contractual agreement when the Engagement Letter was executed and signed by Defendant Gerald S. Freid.

102. Plaintiff agreed to provide its services to Defendant TPG in exchange for payment and, in fact, CBW used all reasonable efforts to accomplish on behalf of Defendant TPG the consummation of a sale of the Combined Operations.

103. As a result of Plaintiff's Investment Banking Services, Defendant TPG recovered in excess of $30 million dollars from the sale of Defendant TPG's interest in the Combined Operations. All or most of these funds were then wired to Defendant Key Bank, thereby relieving TPG from substantial indebtedness to Key Bank.

104. Plaintiff fully performed all of its contractual obligations under the Engagement Letter.

105. Defendant TPG breached its contractual obligations when it failed to notify and invite Plaintiff to attend the closing relative to the sale of the Combined Operations.

106. Defendant TPG also breached the terms of the contract by failing to pay Plaintiff the agreed upon fee relating to its Investment Banking Services and out-of-pocket expenses.

107. As a result, Plaintiff has suffered economic damages in the form of lost income and out of pocket expenses in excess of one million dollars.

WHEREFORE, Plaintiff claims judgment and damages as set forth in its prayer for relief.

## COUNT II

### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING: DEFENDANT TPG)

108.   Plaintiff realleges paragraphs 1 through 107 as if fully set forth herein.

109.   The Engagement Letter included, as a matter of law, an implied covenant of good faith and fair dealing between the parties.

110.   Pursuant to the terms of the contract between Plaintiff and Defendant TPG, Defendant TPG had an obligation to refrain from doing anything that would have the effect of destroying or injuring Plaintiff's ability to recover payment for the Investment Banking Services it provided and any out-of-pocket expenses that were incurred as a result of these services.

111.   At the time Defendant TPG entered into the contract, it knew that "Senior Living" was not an independently recognized corporate entity then in existence.

112.   Nevertheless, in bad faith, Defendant TPG failed to advise Plaintiff of this fact at the time the Engagement Letter was drafted, executed, and accepted.

113.   Defendant TPG is now attempting to violate the express terms of the contract by refusing to pay Plaintiff on the grounds that the agreement was signed on behalf of "Senior Living" and not TPG.

114.   At the time Defendant TPG memorialized the sale of the Combined Operations to Epoch, as reflected in the P&S Agreement, it knew that Plaintiff was not acting as a broker, dealer or broker-dealer.

115.   Nevertheless, Defendant TPG, in bad faith, recommended or approved language in the P&S Agreement that mischaracterized Plaintiff as a broker operating under a Brokerage

Agreement, refused to supply Plaintiff with a draft of the relevant clause of the P&S Agreement until after it was executed, and did not seek approval from CBW for the language that was ultimately inserted into that Agreement. Defendant TPG is now attempting to withhold payment for Plaintiff's services on the basis of the language inserted into the P&S Agreement in order to obtain the benefit of Plaintiff's services for free.

116. Defendant TPG has breached the Engagement Letter as well as the implied covenant of good faith and fair dealing.

117. Defendant TPG's bad faith conduct has had the effect of destroying or injuring Plaintiff's right to receive the fruits of the contract between the parties, resulting in damages in excess of one million dollars.

WHEREFORE: Plaintiff claims judgment and damages as set forth in its prayer for relief.

## COUNT III
### (PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE: ALL DEFENDANTS)

118. Plaintiff realleges paragraphs 1 through 117 as if fully set forth herein.

119. Defendants TPG and the Freids repeatedly represented through their own communications and through Gordon that Plaintiff would be paid an agreed-upon fee in exchange for services resulting in the sale of the Combined Operations.

120. In making these promises to Plaintiff, Defendants TPG and the Freids intended to induce CBW into performing services on their behalf.

121. Plaintiff relied on these promises in providing the agreed-upon services which resulted in the sale of the Combined Operations.

122. Plaintiffs' reliance on the promise of payment was reasonable because a written agreement to that effect was executed and agreed to by the parties, and because prior to the closing of the Transaction, Defendants TPG and the Freids, and their representative Gordon, repeatedly acknowledged the obligations owing to CBW in connection with the agreed upon fee.

123. Plaintiff expended time, effort and resources in performing the services that resulted in the sale of the Combined Operations.

124. As a result of Defendants TPG and the Freids failure to pay the agreed upon fee, Plaintiffs have suffered an economic injury.

125. Defendant Key Bank repeatedly promised that it would exercise its power over Defendant TPG's assets to ensure that Plaintiff received payment for services culminating in the sale of the Combined Operations. Defendant Key Bank would be the primary beneficiary and recipient of the proceeds from the sale of the Combined Operations.

126. Plaintiff relied on Defendant Key Bank's assurances that it would ensure payment to CBW for services rendered.

127. Plaintiff's reliance on Defendant Key Bank's promises was reasonable because Key Bank had liens on the assets of the Combined Operations and a transfer of the assets could not occur without Defendant Key Bank's express authorization.

128. Prior to the closing, Dunham on numerous occasions directed CBW not to upset Defendants TPG and the Freids, or their attorney Gordon, because Key Bank feared that they might terminate the Transaction. At Defendant Key Bank's request and in reliance on Key Bank's promise that it would make sure that Plaintiff received its payment if Plaintiff, in turn, agreed not to exercise its rights under the Engagement Letter, Plaintiff did not insist on obtaining a copy of the P&S Agreement and was impeded from attending the closing of the Transaction.

129. As a result, Plaintiff sustained economic damage.

WHEREFORE: Plaintiff claims judgment and damages as set forth in its prayer for relief.

## COUNT IV

## (FRAUDULENT MISREPRESENTATION: ALL DEFENDANTS)

130. Plaintiff realleges paragraphs 1 through 129 as if fully set forth herein.

131. Starting in or about January 2004, Defendants TPG and the Freids repeatedly represented to Plaintiff that it would be compensated in exchange for Investment Banking Services culminating in the sale of the Combined Operations. As an inducement to providing said services, Defendants TPG and the Freids purported to enter into a valid contract with Plaintiff. On information and belief, Defendants did this knowing that they never intended to honor their obligations under the agreement.

132. Defendants TPG and the Freids further misrepresented, through their own communications, and through their representative Gordon, their intention of paying Plaintiff for its services by repeatedly acknowledging the fee obligations to Plaintiff, by reassuring Plaintiff that payment was forthcoming and by seeking to negotiate a reduction in the fee at various stages of the process that culminated in the sale of the Combined Operations.

133. Plaintiff reasonably relied on the existence of a written agreement and the repeated assurances of payment when it expended time, effort and resources to facilitate the sale of the Combined Operations. As a result of its reliance, Plaintiff sustained economic injury.

134. In an attempt to induce Plaintiff to forestall from acting in a manner that might jeopardize the sale of the Combined Operations after January 2004, Defendant Key Bank

repeatedly reassured Plaintiff that it would not permit Defendant TPG to complete the sale of the Combined Operations unless Plaintiff was compensated for its services pursuant to the Engagement Letter. On information and belief, this representation was false because Defendant Key Bank never intended to exercise its power to freeze the liens on Defendant TPG's assets in order to ensure that Plaintiff would be compensated upon closing of the sale.

135. Plaintiff reasonably relied on the misrepresentations of Defendant Key Bank and sustained an economic injury as a result.

WHEREFORE: Plaintiff claims judgment and damages as set forth in its prayer for relief.

## COUNT V

### (CIVIL CONSPIRACY/CONCERT OF ACTION: ALL DEFENDANTS)

136. Plaintiff realleges paragraphs 1 through 135 as if fully set forth herein.

137. On information and belief, Defendants TPG, the Freids, and Key Bank all had an interest in ensuring that Plaintiff was not paid its fee when the Transaction was completed. The Defendants agreed to follow a course of action that would allow them to achieve their objective using monies owed to Plaintiff to help repay the Key Bank debt at Plaintiff's expense.

138. Assisted by the active participation in this course of action by their attorney Gordon, Defendants TPG and the Freids engaged in the series of fraudulent misrepresentations and the deceptive acts and practices already alleged in order to achieve their objective. Acting primarily through its agent Dunham, Defendant Key Bank agreed to and actively participated in the course of action detailed above that defrauded Plaintiff.

-24-

139.   As a result of these concerted fraudulent misrepresentations and deceptive actions, Plaintiff was unable to secure payment as required by the terms of its contract with Defendant TPG.

WHEREFORE: Plaintiff claims judgment and damages as set forth in its prayer for relief.

## COUNT VI

### (UNFAIR AND DECEPTIVE TRADE PRACTICES/G.L. C. 93A, §§ 2 AND 11: ALL DEFENDANTS)

140.   Plaintiff realleges paragraphs 1 through 139 as if fully set forth herein.

141.   Plaintiff is engaged in the conduct of trade or commerce.

142.   Defendants are engaged in the conduct of trade or commerce.

143.   As set forth more fully in paragraphs 1 through __ incorporated herein, and for the same reasons alleged in Counts I, II, IV, and V of this Complaint, Defendants engaged in unfair or deceptive acts or practices declared unlawful by M.G.L. c.93A, § 2.

144.   Specifically, Defendants engaged in several species of misconduct that were either within the penumbra of some common-law, statutory or other concepts of unfairness or otherwise immoral, unethical, oppressive or unscrupulous.

145.   Defendants' violations of M.G.L. c. 93A, § 2 were willful or knowing.

146.   Defendants' violations of M.G.L. c. 93A, § 2 occurred primarily and substantially within the Commonwealth of Massachusetts.

147.   As a result of this unlawful conduct, Plaintiff suffered a substantial economic injury in excess of one million dollars.

148.   Pursuant to M.G. L. c. 93A § 11, Plaintiff's damages should be trebled and Plaintiff should also be awarded its costs and attorneys' fees.

WHEREFORE: Plaintiff claims judgment and damages as set forth in its prayer for relief.

## COUNT VII

### (FRAUDULENT TRANSFER -- G.L. CHAPTER 109A §5(A): DEFENDANTS TPG AND KEY BANK)

149. Plaintiff realleges paragraphs 1 through 148 as if fully set forth herein.

150. When the sale of the Combined Operations was finalized at the closing, Defendant TPG became liable for payment of Plaintiff's fee.

151. Defendant TPG intended to hinder, delay or defraud Plaintiff when it transferred the proceeds from the sale directly to Defendant Key Bank without first ensuring that funds would be set aside to compensate Plaintiff in accordance with the terms of the Engagement Letter.

152. Defendant TPG's actions constituted a fraudulent transfer in violation of the Massachusetts Uniform Fraudulent Transfer Act, M.G.L. c. 109A §5(a).

WHEREFORE: Plaintiff claims judgment and damages as set forth in its prayer for relief.

## COUNT VIII

### (AIDING AND ABETTING: DEFENDANTS KEY BANK AND THE FREIDS)

153. Plaintiff realleges paragraphs 1 through 152 as if fully set forth herein.

154. Defendant Key Bank had knowledge of the fraudulent misrepresentations being made by Defendants TPG and the Freids, and their representative Gordon.

155. Defendant Key Bank knew that Defendant TPG was obligated to pay a fee to Plaintiff for the services rendered in connection with the sale of the Combined Operations and that it was wrongfully attempting to evade that obligation.

156. Defendant Key Bank provided substantial assistance and/or encouragement to Defendants TPG and the Freids, and their representative Gordon that allowed the Defendants to evade their obligation.

157. The Freid Defendants had knowledge of the fraudulent misrepresentations being made by Defendants TPG and Key Bank.

158. The Freid Defendants knew that Defendant TPG was obligated to pay a fee to Plaintiff for the services rendered in connection with the sale of the Combined Operations and that it was wrongfully attempting to evade that obligation. The Freid Defendants retained attorney Gordon on behalf of themselves and Defendant TPG to help devise and implement the course of action that would facilitate avoidance of the obligation to Plaintiff

159. The Freid Defendants, assisted and counseled by Gordon, provided substantial assistance and/or encouragement to Defendants TPG and Key Bank that allowed Defendant TPG to evade its obligation to Plaintiff.

WHEREFORE: Plaintiff claims judgment and damages as set forth in its prayer for relief.

## COUNT IX

## (UNJUST ENRICHMENT: DEFENDANTS TPG, THE FREIDS, KEY BANK)

160. Plaintiff realleges paragraphs 1 through 159 as if fully set forth herein.

161. In the alternative, Plaintiff asserts a cause of action for unjust enrichment against Defendants TPG, the Freids and Key Bank.

162. Plaintiff conferred a benefit upon all Defendants by providing Investment Banking Services that led to the identification of a buyer for the Combined Operations and aided in bringing the Transaction to fruition.

163. At all relevant times, the Defendants understood that Plaintiff expected to be compensated for its services.

164. Plaintiff's expectation that it would be compensated pursuant to the fee schedule set forth in the Engagement Letter was reasonable.

165. Defendants have been unjustly enriched in that they have received and retained the proceeds for the sale of the Combined Operations without compensating Plaintiff for the services that made the sale possible.

166. Allowing Defendants TPG and the Freids to retain the benefit of Plaintiff's services without compensation violates fundamental principles of justice, equity, and good conscience.

167. Plaintiff conferred a measurable benefit upon Defendant Key Bank when it accepted Key Bank's invitation to provide services to Defendant TPG and helped effectuate the sale of the Combined Operations. The proceeds from the sale were used by Defendant TPG to pay off debt that TPG had with Defendant Key Bank and, absent Plaintiff's services, this repayment would not have occurred.

168. At all relevant times, Defendant Key Bank understood that Plaintiff expected to be compensated for its services.

CHICAGO_1167588_9

169. At various times, Defendant Key Bank advised Plaintiff on the course of action that it should take in order not to jeopardize the closing of the Transaction.

170. It was reasonable for Plaintiff to expect that, in exchange for complying with Defendant Key Bank's suggested course of action, Defendant Key Bank would exercise its power to freeze the liens on Defendant TPG's assets in order to ensure that Plaintiff would get paid on closing.

171. Instead of exercising its ability to ensure that Plaintiff would receive payment upon closing, Defendant Key Bank simply accepted proceeds from the sale as repayment for Defendant TPG's outstanding debt.

172. Absent Plaintiff's effort and the services it provided, the proceeds used to repay Defendant Key Bank would not have been forthcoming and, therefore, Defendant Key Bank has been unjustly enriched as a result.

173. The amount of the proceeds received by Defendant Key Bank from the Transaction included funds that should have been paid to Plaintiff as its fees. By receiving funds that Defendant TPG was contractually committed to pay to Plaintiff, Defendant Key Bank has been unjustly enriched.

174. Allowing Defendant Key Bank to retain the benefit of Plaintiff's work without compensating it for the services that rendered the repayment possible violates fundamental principles of justice, equity, and good conscience.

WHEREFORE: Plaintiff claims judgment and damages as set forth in its prayer for relief.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.   On Counts I and II, enter judgment against Defendant TPG in favor of CBW for all actual damages for breach of contract and breach of the implied covenant of good faith and fair dealing, including pre- and post-judgment interest as allowable by law;

B.   On Counts III, IV, and V, enter judgment against Defendants, jointly and severally, in favor of CBW for all actual damages sustained as a result of CBW's detrimental reliance on Defendants' promises and/or the fraudulent misrepresentations and deceptive actions with which they conspired to injure CBW's economic interests, including pre- and post-judgment interest as allowable by law;

C.   On Count VI, enter judgment against Defendants TPG, the Freids and Key Bank in favor of CBW for treble the amount of actual damages sustained as a result of their unlawful conduct in violation of M. G. L. c. 93A § 11;

D.   On Count VII, enter judgment against Defendant TPG and Key Bank in favor of CBW for TPG's violation of M.G. L. c. 109A § 5(a) and the avoidance of that portion of TPG's fraudulent transfer of funds to Key Bank to the extent necessary to satisfy Plaintiff's claim.

E.   On Count VIII, enter judgment against Defendants Key Bank and the Freids, jointly and severally, in favor of CBW for the actual damages that it incurred as a result of their tortious aiding and abetting of Defendant TPG in its effort to defraud Plaintiff of its fee.

F.   On Count IX, enter judgment against Defendants, jointly and severally, for restitution and disgorgement of the amount by which they were unjustly enriched at Plaintiff's expense.

G.   Enter an award in favor of Plaintiff for all costs of the proceeding herein;

H.   Enter an award of reasonable attorneys' fees pursuant to M.G.L. c. 93A §11.

I.   Award all such other and further relief as the Court deems just.

          CASAS, BENJAMIN & WHITE, LLC

          By its attorneys,

          */s/ Thomas E. Peisch*

          Thomas E. Peisch / BBO #393260
          Erin K. Higgins / BBO #559510
          Michael R. Bernardo / BBO #648310
          CONN KAVANAUGH ROSENTHAL PEISCH
           & FORD, LLP
          Ten Post Office Square
          Boston, MA 02109
          (617) 482-8200

Of Counsel:

    Richard P. Steinken
    Jeff J. Marwil
    David W. Austin
    JENNER & BLOCK, LLP
    One IBM Plaza
    Chicago, IL 60611-7603

Dated: November 3, 2004
       Boston, Massachusetts

212877 1