UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 04CV12333 MEL

|  |  |
|---|---|
| CASAS, BENJAMIN & WHITE, LLC | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE POINT GROUP, INC., | ) |
| GERALD S. FREID; BARRY FREID; | ) |
| KEY CORPORATE CAPITAL, INC. | ) |
| Defendants. | ) |

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM OF DEFENDANTS,
THE POINT GROUP, INC., GERALD S. FREID AND BARRY FREID**
(REQUEST FOR TRIAL BY JURY)

Now Come The Pointe Group, Inc. ("TPG"), Gerald S. Freid ("Gerald Freid") and Barry

Freid (also referred to collectively as the "Defendants"), and state the following for their answer

to the Plaintiff's Complaint and their affirmative defenses:

1.      Paragraph 1 of the Complaint sets forth the nature of the action against the

Defendants.  To the extent that it requires a response, the Defendants deny the allegations set

forth in Paragraph 1 of the Complaint and call upon the Plaintiff to prove the same.

2.      Admitted.

3.      Admitted.

4.      The Defendants lack sufficient knowledge to respond to Paragraph 4 of the

Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations

contained therein.

5.      The Defendants admit that TPG is duly-constituted Massachusetts corporation but

deny that TPG has a usual place of business in Chestnut Hill, Norfolk County, Massachusetts.

Defendants deny that TPG, its shareholders and affiliates, did business as The Pointe Group Healthcare and Senior Living and further deny that TPG operated as a management company of five private nursing homes and two assisted living facilities.  Further answering, the Defendants state that TPG does not, and never has had, an ownership interest in any of the facilities that it did manage.

6.     Defendants admit that Gerald Freid and Barry Freid are residents of Needham, Massachusetts.  The Defendants further admit that Gerald Freid and Barry Freid are brothers. Defendants admit that Gerald Freid identified himself as vice-president of TPG.  Defendants deny that Barry Freid is TPG's treasurer.  Defendants admit that Barry Freid represented that he was chief operating officer of TPG.

7.     The Defendants lack sufficient knowledge to respond to Paragraph 7 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

8.     Denied.

9.     Denied.  Furthering answering, Defendants state that TPG was never indebted to Key Corporate Capital, Inc. (hereinafter "Key Bank").

10.     TPG denies that it owned any facilities.  TPG admits that it managed Hammond Pointe Nursing Home, LLC, and Cranberry Pointe Nursing Home, Inc. but denies that it managed Boylston Place at Chestnut Hill, LLC (the three and the entities which owned the real estate where they operated collectively referred to hereinafter as the "Key Bank Financed Facilities").  Further answering, TPG states that it never had an ownership interest in any of the Key Bank Financed Facilities.

11.     TPG denies that Key Bank was the senior secured lender on loans made to TPG. Further answering, TPG states that Key Bank didn't make any loans to TPG.

12.     Denied.  Further answering, TPG states that it had no ownership interest in any of the Key Bank Financed Facilities to sell.

13.     The Defendants lack sufficient knowledge to respond to Paragraph 13 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

14.     The Defendants lack sufficient knowledge to respond to Paragraph 14 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.  Further answering, TPG reiterates that it owed no debt to Defendant, Key Bank.

15.     TPG denies that it engaged in any negotiations regarding any of the terms of the alleged Engagement Letter between TPG and the Plaintiff.  The Defendants lack sufficient knowledge as to whether Key Bank was involved in any negotiations regarding the alleged Engagement Letter and, therefore, deny the same and call upon the Plaintiff to prove the same.

16.     Defendants state that the alleged Engagement Letter speaks for itself and deny any attribute to such Engagement Letter other than its content.

17.     Defendants state that the alleged Engagement Letter speaks for itself and deny any attribute to such Engagement Letter other than its content.

18.     Defendants state that the alleged Engagement Letter speaks for itself and deny any attribute to such Engagement Letter other than its content.

19.     Defendants state that the alleged Engagement Letter speaks for itself and deny any attribute to such Engagement Letter other than its content.

20.    Defendants state that the alleged Engagement Letter speaks for itself and deny any attribute to such Engagement Letter other than its content.

21.    Defendants state that the alleged Engagement Letter speaks for itself and deny any attribute to such Engagement Letter other than its content.

22.    Defendants state that the alleged Engagement Letter speaks for itself and deny any attribute to such Engagement Letter other than its content.

23.    Defendants state that the alleged Engagement Letter speaks for itself and deny any attribute to such Engagement Letter other than its content.

24.    Defendants state that the alleged Engagement Letter speaks for itself and deny any attribute to such Engagement Letter other than its content.

25.    Defendants state that the alleged Engagement Letter speaks for itself and deny any attribute to such Engagement Letter other than its content.

26.    Defendants state that the alleged Engagement Letter speaks for itself and deny any attribute to such Engagement Letter other than its content.

27.    Denied.

28.    Denied.  Further answering, the Defendants state that TPG did not have any debt that required restructuring.

29.    The Defendants lack sufficient knowledge to respond to Paragraph 29 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.  Further answering, the Defendants state that taking instructions from Key Bank was a breach of Plaintiff's fiduciary duty to TPG if Plaintiff has a valid, enforceable contract with TPG.

30.     Defendants deny that they had any part in the drafting of the timeline attached to the Complaint as Exhibit C.  Defendants admit that the parties agreed that Key Bank would receive regular progress reports.

31.     Admitted.

32.     Defendants admit that Gerald Freid signed Exhibit D to the Complaint, but deny all other allegations of Paragraph 32.

33.     Defendants state that the alleged Amendment speaks for itself and deny any attribute to such Amendment other than its content.

34.     Defendants state that the alleged Amendment speaks for itself and deny any attribute to such Amendment other than its content.

35.     Denied.  The Defendants further state that the alleged Amendment does not provide anything as to a directive of Dunham.  Further answering, the Defendants state that Exhibit D refers to an attached Schedule, however there is no such document attached to Exhibit D.

36.     Denied.

37.     The Defendants have no knowledge as to whether the Plaintiff gathered information regarding the Key Bank Financed Facilities and their worth and therefore the Defendants call upon the Plaintiff to prove the same.  The Defendants deny that either of the Freids had any "operations" and TPG denies that any of its operations were combined with those of the Key Bank Financed Facilities (although TPG admits that it managed two of them).

38.     Admitted.

39.     The Defendants admit that criminal charges were placed against a Cranberry Pointe Nursing Home employee with respect to patient abuse.  The Defendants lack sufficient

knowledge as to the remaining allegations of Paragraph 39 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein, to the extent relevant.

40.     The Defendants lack sufficient knowledge to respond to Paragraph 40 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein, to the extent relevant.

41.     The Defendants deny any allegation of adverse affect on TPG's revenue from any of the events alleged in Paragraphs 39 and 40 of the Complaint (except that it is conceivable, though the subject of conjecture, that a small diminution in TPG's management fee from Cranberry Pointe Nursing Home resulted from a temporary decrease in the nursing home resident population after the arrest of an employee of that nursing home). The Defendants lack sufficient knowledge to respond to the remaining allegations of Paragraph 41 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein, to the extent relevant.

42.     The Defendants lack sufficient knowledge to respond to Paragraph 42 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

43.     The Defendants admit that they were regularly apprised of Plaintiff's efforts in connection with the solicitation process. The Defendants deny that Stephen F. Gordon ("Gordon") involved himself in the process on behalf of TPG or the Freids. Furthering answering, Defendants state that Gordon acted only as legal counsel for the Key Bank Financed Facilities and not on behalf of TPG or the Freids.

44.    Denied. Further answering, the Defendants state that the Plaintiff never provided them with any letters of interest from parties interested in refinancing any of the Key Bank Financed Facilities.

45.    Denied.  Further answering, Defendants state that it was the Key Bank Financed Facilities that selected Epoch.

46.    Defendants deny that a purchase and sale agreement was drawn up between TPG and Epoch.  Further answering, the Defendants state that Gordon acted as counsel for the Key Bank Financed Facilities and not on behalf of TPG or the Freids.  Further answering, the Defendants state that the sellers under the purchase and sale agreement were represented in the sale process by counsel other than Gordon.

47.    Denied.

48.    The Defendants lack sufficient knowledge to respond to Paragraph 48 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

49.    The Defendants lack sufficient knowledge to respond to Paragraph 49 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

50.    Defendants state that the Purchase and Sale Agreement speaks for itself and deny any attribute to such Purchase and Sale Agreement other than its content.

51.    The Defendants lack sufficient knowledge to respond to Paragraph 51 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

52.     The Defendants lack sufficient knowledge to respond to Paragraph 52 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

53.     Denied.  Further answering, the Defendants state that Epoch's concerns were communicated by its counsel.

54.     Defendants state that the e-mail speaks for itself and deny any attribute to such e-mail other than its content.

55.     Defendants state that the e-mail speaks for itself and deny any attribute to such e-mail other than its content.

56.     Defendants state that the May 28, 2004 letter speaks for itself and deny any attribute to such letter other than its content.

57.     Defendants state that the June 2, 2004 letter speaks for itself and deny any attribute to such letter other than its content.  Further answering, the Defendants state that the June 2, 2004 letter was a settlement communication which should be excluded from any evidentiary consideration.

58.     The Defendants have no knowledge as to whether Key Bank was aware that TPG had contacted Plaintiff in an attempt to negotiate a reduction in the amount of the fee due to CBW or whether Dunham reassured the Plaintiff of anything.  Further answering, the Defendants state again that TPG had no obligations to Key Bank.  The Defendants admit that Epoch wanted written assurances from Key Bank that it would release its liens on the Key Bank Financed Facilities.

59.     Defendants state that the June 3, 2004 letter from Plaintiff to Barry Freid speaks for itself and deny any attribute to such letter other than its content.

60.    Denied.  Further answering, the Defendants state that they did not ask CBW to intercede with Key Bank.

61.    Denied.

62.    Defendants state that the e-mail speaks for itself and deny any attribute to such e-mail other than its content.  Further answering, the Defendants state that Gordon sent the e-mail referenced in Paragraph 62 at the personal request of Edward Casas who pleaded that without such an e-mail the career of Matt Caine, a CBW employee, would be irreparably damaged.

63.    Defendants deny that any agreement was reached with Gordon (as he was acting only as counsel to the Key Bank Financed Facilities) or with the Freids.  Defendants deny that they agreed to provide CBW with daily written status reports.  Defendants admit that they agreed to have bi-weekly conference calls with the Plaintiff.  Further answering, TPG states that CBW had no ability to assist with due diligence support.  Defendants deny that they and CBW agreed that CBW was to contact Key Bank to inquire as to any flexibility in negotiations.

64.    Defendants admit that a meeting was held on July 13, 2004 among representatives of Epoch, the Key Bank Financed Facilities, Key Bank and CBW.  Further answering, the Defendants state that CBW was permitted at its request and at its own expense to attend the presentation made by Epoch at the July 13, 2004 meeting, but was not invited to participate in any discussions or negotiations.

65.    Admitted.

66.    Admitted.

67.    Admitted.

68.    Defendants admit that CBW was asked to reduce its brokerage fee and deny that the request acknowledged anything.  Further answering, the Defendants state that the discussion

referred to in Paragraph 68 was a settlement communication which should be excluded from any evidentiary consideration.

69.    The Defendants lack sufficient knowledge to respond to Paragraph 69 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

70.    Defendants state that the e-mail speaks for itself and deny any attribute to such e-mail other than its content.  Further answering, the Defendants state that the e-mail referenced in Paragraph 70 was a settlement communication which should be excluded from any evidentiary consideration.

71.    Defendants state that the e-mail speaks for itself and deny any attribute to such e-mail other than its content.  Further answering, the Defendants state that the July 15, 2004 e-mail was a settlement communication which should be excluded from any evidentiary consideration.

72.    The Defendants lack sufficient knowledge to respond to Paragraph 72 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

73.    The Defendants lack sufficient knowledge to respond to Paragraph 73 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

74.    The Defendants lack sufficient knowledge as to whether Plaintiff requested a copy of the final P&S from Key Bank and, therefore, deny the same and call upon the Plaintiff to prove the same.  The Defendants admit the remaining allegations set forth in Paragraph 74.

75.    Defendants state that the e-mail speaks for itself and deny any attribute to such e-mail other than its content.

76.    Denied.  Further answering, the Defendants state in an e-mail from Matt Caine of CBW to Gordon dated September 1, 2004, Caine asked Gordon if  he would "please forward to [Caine] a copy of the section(s) in the Purchase & Sale Agreement that relate to the broker of record…"  In an e-mail dated that same day, Gordon responded to Caine's e-mail by forwarding to Caine the section of the Purchase and Sale Agreement wherein CBW was in fact referred to as the broker and also referred to the alleged Engagement Letter as "the brokerage agreement." Neither Caine nor CBW in any way objected to CBW being described as a "broker."

77.    The Defendants lack sufficient knowledge to respond to Paragraph 77 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

78.    Defendants admit that the transfer of the Key Bank Financed Facilities required regulatory approval (not limited to the Massachusetts Department of Health ("DPH"), but deny that TPG had any licenses to transfer to Epoch.

79.    Defendants admit that a public hearing was held on September 14, 2004 but are unsure of what is meant by "the proposed transfer" and call upon the Plaintiff to prove the same.

80.    The Defendants deny that Gerald Freid contacted the Plaintiff to inform it that the DPH was close to approving a license transfer.  The Defendants further deny that Gerald Freid told the Plaintiff that TPG was under investigation for patient abuse problems at Cranberry Pointe Nursing Home.  The Defendants admit that on September 21, 2004, Gerald Freid informed the Plaintiff that he was unable to honor an invoice submitted by the Plaintiff for out-of-pocket expenses.  The Defendants deny that Gerald Freid told the Plaintiff that he would make payment of the invoice or of CBW's fee at the closing.

81.     The Defendants lack sufficient knowledge to respond to Paragraph 81 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

82.     The Defendants lack sufficient knowledge to respond to Paragraph 82 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

83.     Defendants admit that Gordon spoke by telephone with Plaintiff and counsel for Key Bank, that Plaintiff was informed of Epoch's demand for a price reduction and that Plaintiff was requested to reduce its fee.  Any other allegation of Paragraph 83, whether directly made or by reference, is denied.

84.     Defendants admit that Key Bank had the ability to affect the distribution of proceeds from the sale of the Key Bank Financed Facilities.  Further answering, the Defendants state that Key Bank had no lien on any of TPG's assets.

85.     The Defendants lack sufficient knowledge to respond to Paragraph 85 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

86.     Denied.

87.     Admitted.

88.     Defendants admit that that on September 29, 2004, Plaintiff contacted Gerald Freid who had requested an invoice from CBW.  The Defendants deny the remaining allegations set forth in Paragraph 88, except that they have no knowledge of any person to whom Plaintiff set an invoice other than Gerald Freid.

89.    Defendants state that the invoice speaks for itself and deny any attribute to such invoice other than its content.

90.    Denied.

91.    The Defendants lack sufficient knowledge to respond to Paragraph 91 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

92.    Denied.  Furthering answering, the Defendants state that TPG had no ownership interest in any of the Key Bank Financed Facilities.

93.    Denied.  Further answering, the Defendants state that Key Bank had no liens on any TPG assets. The Defendants have no knowledge as to any assurances made by Key Bank to the Plaintiff and, therefore, deny the same and call upon the Plaintiff to prove the same.

94.    Defendants state that the letter speaks for itself and deny any attribute to such letter other than its content.  Further answering, the Defendants state that the letter referred to in Paragraph 94 was a settlement communication (and so stated conspicuously at the top of the letter) which should be excluded from any evidentiary consideration.

95.    Defendants state that the letter speaks for itself and deny any attribute to such letter other than its content.  Further answering, the Defendants state that the letter referred to in Paragraph 94 was a settlement communication which should be excluded from any evidentiary consideration.

96.    Defendants state that the letter speaks for itself and deny any attribute to such letter other than its content.  Further answering, the Defendants state that the letter referred to in Paragraph 94 was a settlement communication which should be excluded from any evidentiary consideration.

97.    The Defendants lack sufficient knowledge to respond to Paragraph 97 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

98.    The Defendants lack sufficient knowledge to respond to Paragraph 98 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.  Further answering, the Freid Defendants admit that they certainly smiled on occasion and may have laughed at times during the day-long closing but deny that any mirth was directed toward CBW.

99.    Denied.

## COUNT I

### (BREACH OF CONTRACT: DEFENDANT TPG)

100.    Defendants incorporate by reference all of their responses to allegations 1 through 99 above as if each were specifically set forth herein.

101.    TPG denies that it entered into any agreement with the Plaintiff. Further answering, the Defendants state that the alleged Engagement Letter speaks for itself and deny any attribute to such Engagement Letter other than its content.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Denied.

106.    Denied.

107.    Denied.

## COUNT II

### (BREACH OF THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING: DEFENDANT TPG)

108.    Defendants incorporate by reference all of their responses to allegations 1 through 107 above as if each were specifically set forth herein.

109.    The alleged  Engagement Letter speaks for itself and the Defendants deny any attribute to such Engagement Letter other than its content.

110.    The alleged Engagement Letter speaks for itself and the Defendants deny any attribute to such Engagement Letter other than its content.

111.    Denied.  Further answering, the Defendants state that Gerald Freid signed the alleged Engagement Letter in exactly the form presented to him by CBW and at the insistence of Key Bank and changed not one word of it.

112.    Denied.

113.    Denied.

114.    Denied.  Further answering, the Defendants state that TPG never "memorialized" the sale of anything.  Further answering, Defendants state that CBW referred to itself as a "broker."

115.    Denied.

116.    Denied.

117.    Denied.

## COUNT III

### (PROMISSORY ESTOPPEL/DETRIMENTAL RELIACE: ALL DEFENDANTS)

118.    Defendants incorporate by reference all of their responses to allegations 1 through 117 above as if each were specifically set forth herein.

119.    Denied.

120.    Denied.

121.    The Defendants lack sufficient knowledge to respond to Paragraph 121 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

122.    Denied.  Further answering, the Defendants state that at all times Gordon was acting as legal counsel to the Key Bank Financed Facilities and not as a representative of any of the Defendants.

123.    The Defendants lack sufficient knowledge to respond to Paragraph 123 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

124.    Denied.

125.    The Defendants lack sufficient knowledge to respond to Paragraph 125 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

126.    The Defendants lack sufficient knowledge to respond to Paragraph 126 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

127.    The Defendants lack sufficient knowledge to respond to Paragraph 127 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

128.    The Defendants lack sufficient knowledge to respond to Paragraph 128 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

129.    Denied.

## COUNT IV

## (FRAUDULENT MISREPRESENTATIONS: ALL DEFENDANTS)

130.    Defendants incorporate by reference all of their responses to allegations 1 through 129 above as if each were specifically set forth herein.

131.    Denied.

132.    Denied.  Further answering, the Defendants state that at all times Gordon was acting as legal counsel to the Key Bank Financed Facilities and not as a representative of any of the Defendants.

133.    Denied.

134.    The Defendants lack sufficient knowledge to respond to Paragraph 134 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

135.    The Defendants lack sufficient knowledge to respond to Paragraph 135 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

## COUNT V

## (CIVIL CONSPIRACY/CONCERT OF ACTION: ALL DEFENDANTS)

136.    Defendants incorporate by reference all of their responses to allegations 1 through 135 above as if each were specifically set forth herein.

137.    Denied.

138.    Denied.

139.    Denied.

## COUNT VI

### (UNFAIR AND DECEPTIVE TRADE PRACTICES/G.L. C. 93A, §§ 2 AND 11: ALL DEFENDANTS)

140.    Defendants incorporate by reference all of their responses to allegations 1 through 139 above as if each were specifically set forth herein.

141.    The Defendants lack sufficient knowledge to respond to Paragraph 141 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

142.    TPG admits that it is involved in the conduct of trade or commerce, but the Defendants Gerald Freid and Barry Freid deny that they are involved in trade or commerce.

143.    Denied.

144.    Denied.

145.    Denied.

146.    Denied.

147.    Denied.

148.    Denied.

## COUNT VII

### (FRAUDULENT TRANSFER – G.L. CHAPTER 109A § 5(A): DEFENDANTS TPG AND KEY BANK)

149.    Defendants incorporate by reference all of their responses to allegations 1 through 148 above as if each were specifically set forth herein.

150.    Denied.

151.    Denied.  Further answering, Defendant TPG states that it never transferred any proceeds to Key Bank.

152.    Denied.

## COUNT VIII

## (AIDING AND ABETTING: DEFENDANTS KEY BANK ABD THE FREIDS)

153.    Defendants incorporate by reference all of their responses to allegations 1 through 152 above as if each were specifically set forth herein.

154.    The Defendants lack sufficient knowledge to respond to Paragraph 154 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.  Defendants deny that they or Gordon made any misrepresentations.

155.    The Defendants lack sufficient knowledge to respond to Paragraph 155 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

156.    The Defendants lack sufficient knowledge to respond to Paragraph 156 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

157.    Denied.

158.    Denied.  Further answering, the Defendants state that at all times Gordon was acting as legal counsel to the Key Bank Financed Facilities and not as counsel to the Freids or TPG.

159.    Denied.

## COUNT IX

## (UNJUST ENRICHMENT: DEFENDANTS TPG, THE FREIDS, KEY BANK)

160.    Defendants incorporate by reference all of their responses to allegations 1 through 159 above as if each were specifically set forth herein.

161.    Paragraph 161 of the Complaint contains a conclusion of law.  To the extent that it requires a response, the Defendants deny the allegations set forth in Paragraph 161 of the Complaint and call upon the Plaintiff to prove the same.

162.    Denied.

163.    Denied.

164.    The Defendants lack sufficient knowledge to respond to Paragraph 164 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

165.    Denied.  Further answering, the Defendants state that, as Plaintiff well knows, they received no proceeds from the sale of the Key Bank Financed Facilities.

166.    Denied.

167.    The Defendants lack sufficient knowledge to respond to Paragraph 167 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.  Further answering, TPG again denies that it was indebted to Key Bank.

168.    The Defendants lack sufficient knowledge to respond to Paragraph 168 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

169.    The Defendants lack sufficient knowledge to respond to Paragraph 169 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

170.    The Defendants lack sufficient knowledge to respond to Paragraph 170 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

171.    The Defendants lack sufficient knowledge to respond to Paragraph 171 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

172.    The Defendants lack sufficient knowledge to respond to Paragraph 172 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

173.    The Defendants lack sufficient knowledge to respond to Paragraph 173 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

174.    The Defendants lack sufficient knowledge to respond to Paragraph 174 of the Complaint and, therefore, deny the same and call upon the Plaintiff to prove the allegations contained therein.

The Defendants reserve the right to amend their Answer as additional information becomes available to them.

## First Affirmative Defense

The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

## Second Affirmative Defense

The claims of Plaintiff, in whole or in part, are barred by the statute of frauds.

## Third Affirmative Defense

The claims of the Plaintiff, in whole or in part, are barred by the doctrine of estoppel.

## Fourth Affirmative Defense

Pursuant to M.G.L. 112 § 87RR, the Plaintiff is barred from recovering any compensation or commission for services as a broker since at no time has Plaintiff been a licensed broker.

The Defendants reserve the right to amend or add to their affirmative defenses as additional information becomes available to them.

WHEREFORE, Defendants pray that the Complaint be dismissed, as against them, and that they be awarded their costs.

**DEFENDANTS CLAIM A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

## COUNTERCLAIMS (TPG)

Now comes The Pointe Group, Inc. ("TPG"), Defendant and Plaintiff in Counterclaim, and states the following for its counterclaims:

175.    Defendant, TPG, Plaintiff in Counterclaim, is a Massachusetts corporation with a principal place of business located in Brockton, Massachusetts.

176.    Plaintiff, CBW, Defendant in Counterclaim, claims to be a limited liability company organized under the laws of the State of Delaware and having a principal place of business in Skokie, Illinois.

177.    On September 12, 2003, Gerald Freid signed a letter on behalf of The Pointe Group Healthcare & Senior Living (the alleged "Engagement Letter").  Kelley W. White ("White"), a Managing Director of CBW, signed the alleged Engagement Letter on behalf of CBW.

178.    The alleged Engagement Letter provides that the "CBW consulting team will be lead (sic) by Kelley W. White, a CBW Managing Director, who will have general oversight responsibilities with respect to the engagement..."

179.    Early on in the engagement, White ceased working as an employee of CBW and did not perform any additional work as promised under terms of the alleged Engagement Letter.

180.    Gerald Freid would not have signed the alleged Engagement Letter if he had known that White would not be overseeing the responsibilities of CBW under the Engagement Letter.

## COUNT I

### (BREACH OF CONTRACT: TPG v. CBW)

181.    TPG realleges all of the allegations of its Counterclaim contained in Paragraphs 175 through 180 as if fully set forth herein.

182.    TPG denies that it entered into a valid, enforceable contract with CBW when Gerald Freid signed the alleged Engagement Letter on behalf of The Pointe Group Healthcare & Senior Living.  However, if the alleged Engagement Letter is in fact an enforceable contract, then CBW has breached its contractual obligations in that CBW promised that White would "have general oversight responsibilities with respect to the engagement" yet White left CBW early on in the process.

183.    Gerald Freid signed the alleged Engagement Letter based on the representations made by White that she would oversee all the work done by CBW.  She did not do so.

184.    As a result of CBW's breach of the material terms of the alleged Engagement Letter, TPG has suffered economic damages.

WHEREFORE, TPG prays that the court enter judgment against CBW and award TPG damages.

## COUNT II

### (BREACH OF FIDUCIARY DUTY:  TPG v. CBW)

185.    TPG realleges all of the allegations of its Counterclaim contained in Paragraphs 175 through 184 as if fully set forth herein.

186.    If the alleged Engagement Letter is in fact an enforceable contract, then CBW owed TPG a fiduciary duty to act at all times in TPG's best interests.

187.    To the extent that CBW acted on instructions from, in accordance with the desires of and/or for the best interests of Key Bank, CBW breached its fiduciary duty to TPG (which, of course, received absolutely no benefit from anything CBW did).

188.    As a result of CBW's breach of its fiduciary duty, TPG has suffered economic damages.

WHEREFORE, TPG prays that the Court enter judgment against CBW and award TPG damages.

## COUNT III (TPG v. CBW)

### (UNFAIR AND DECEPTIVE TRADE PRACTICES/G.L. 93A)

189.    TPG realleges all of the allegations of its Counterclaim contained in Paragraphs 175 through 188 as if fully set forth herein.

190.    CBW concealed from TPG the fact that CBW owed duties and loyalties to Key Bank in derogation of any duties and loyalties it may have owed to TPG.

191.    CBW advanced the interests of Key Bank to the detriment of TPG while deceiving TPG into believing the opposite.

192.    CBW provided no benefit whatsoever to TPG but demanded, and received, certain payments from TPG.

193.    CBW never disclosed to TPG that it and all of its employees lacked a license to act as a broker for real estate sales in the Commonwealth of Massachusetts.

194.    CBW continues, even in its Complaint, to try to deceive TPG that it acted as anything other than a broker, for which it had no license and acting as such was illegal.

195.    TPG is engaged in the conduct of trade or commerce.

196.    CBW is engaged in the conduct of trade or commerce.

197.    As set forth herein, CBW engaged in unfair or deceptive acts or practices declared unlawful by M.G.L. c. 93A.

198.    CBW's violations of M.G.L. c. 93A, §2 were willful or knowing.

199.    CBW's violations of M.G.L. c. 93A, §2 occurred primarily and substantially within the Commonwealth of Massachusetts.

200.    As a result of CBW's unlawful conduct and violations of M.G.L. c. 93A, TPG suffered damages.

201.    Pursuant to M.G.L. c. 93A, §11, TPG's damages should be trebled and TPG should also be awarded its costs and attorney's fees.

WHEREFORE, TPG prays that this Court enter judgment against CBW and award TPG damages.

**DEFENDANT, THE POINTE GROUP, INC., PLAINTIFF IN COUNTERCLAIM, CLAIMS A TRIAL BY JURY ON ALL MATTERS SO TRIABLE.**

THE POINTE GROUP, INC., GERALD S. FREID AND BARRY FREID

By their attorneys,

/s/ Stephen F. Gordon
Stephen F. Gordon (BBO No. 203600)
Todd B. Gordon (BBO No. 652482)
Gordon Haley LLP
101 Federal Street
Boston, Massachusetts 02110
Tel:     (617) 261-0100
Fax:     (617) 261-0789
email:  sgordon@gordonhaley.com
         tgordon@gordonhaley.com

Dated: November 23, 2004

CERTIFICATE OF SERVICE

I, Stephen F. Gordon, hereby certify that I served the foregoing by causing a true and correct copy of the same to be sent by pre-paid, first class mail this 23rd day of November, 2004 to:

Thomas E. Peisch, Esquire
Conn Kavanaugh Rosenthal Peisch & Ford, LLP
Ten Post Office Square
Boston, Massachusetts 02109

David W. Austin, Esquire
Jeff J. Marwil, Esquire
Richard P. Steinken, Esquire
Jenner & Block, LLP
One IBM Plaza
Chicago, IL 60611-7603

Madeline H. Kibrick Kauffman, Esquire
Nolan & Heller, LLP
39 North Pearl Street
Albany, New York 12207

/s/ Stephen F. Gordon
Stephen F. Gordon

P:\Clients\Pointe Group\CBW Plead\Answer.doc