UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CASAS, BENJAMIN & WHITE, LLC<br><br>Plaintiff,<br><br>v.<br><br>THE POINTE GROUP, INC., a Massachusetts corporation d/b/a The Pointe Group Healthcare and Senior Living; GERALD S. FREID; BARRY FREID; KEY CORPORATE CAPITAL, INC.,<br><br>Defendants. | Docket No: 1:04-CV-12333-MEL |

**<u>DEFENDANT KEY CORPORATE CAPITAL, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT</u>**

W. Scott O'Connell (#559669)
Courtney Worcester (#643180)
889 Elm Street
Manchester, NH 03101
(603) 628-4000
soconnell@nixonpeabody.com
cworcester@nixonpeabody.com

M116899.1

TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ........................................................................................... 2

RELEVANT FACTS ............................................................................................................ 2

ARGUMENT ........................................................................................................................ 4

    I.     STANDARD OF REVIEW ........................................................................... 4

    II.    PLAINTIFF'S QUASI-CONTRACTUAL CLAIMS ARE BARRED
          BY THE STATUTE OF FRAUD ................................................................. 5

    III.   PLAINTIFF'S 93a CLAIMS MUST BE DISMISSED ................................. 8

        1.    Plaintiff has failed to present any allegation that the
             behavior at issue occurred in Massachusetts ..................................... 8

        2.    Plaintiff has failed to present any allegation that the
             behavior at issue occurred in Massachusetts ................................... 10

    IV.   PLAINTIFF'S CLAIM FOR FRAUDULENT MISREPRESENTATION
          MUST BE DISMISSED. ............................................................................. 11

    V.    PLAINTIFF HAS FAILED TO ESTABLISH A FRAUDULENT
          TRANSFER ................................................................................................ 13

    VI.   PLAINTIFF'S CLAIM FOR CIVIL CONSPIRACY
          ALSO MUST FAIL .................................................................................... 15

    VII.  PLAINTIFF CANNOT MAINTAIN A CLAIM FOR AIDING
          AND ABETTING ....................................................................................... 16

    CONCLUSION ....................................................................................................... 17

## PRELIMINARY STATEMENT

Defendant Key Corporate Capital, Inc. ("KeyBank") submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint (hereinafter "Complaint") filed by the Plaintiff Casas, Benjamin & White, ("Plaintiff" or "Casas"), on the grounds that it fails to state any viable cause of action against Defendant KeyBank.

Despite its length, Plaintiff's Complaint is little more than a simple breach of contract claim brought to recover payment that is admittedly owed by an entity <u>other</u> <u>than</u> KeyBank which was not paid because of actions of individuals and entities over which KeyBank did not and does not have any control. Despite considerable bluster, at the core of its Complaint, Plaintiff alleges that: (1) it contracted with The Pointe Group, Inc. ("TPG") to provide a variety of investment banking services related to the sale of several properties owed by TPG; and (2) that Defendant TPG breached that contract by not paying for services rendered. Instead of just suing the party who was responsible for the breach, Plaintiff chose to sue not only TPG but also to take a dragnet approach which has unnecessarily involved KeyBank. As Plaintiff's claims are without merit as to KeyBank, this Court should see them for what they are – an attempt to involve a "deeper pocket" – and dismiss this case.

## RELEVANT FACTS

The Pointe Group, Inc., of which Gerald Freid is a vice-president and his brother Barry Freid is treasurer, is the management company of various nursing homes and assisted living

facilities in Massachusetts.  See Complaint at ¶¶ 5-6.[1]  KeyBank was the senior secured lender on loans made to finance three facilities owned by TPG – Hammond Pointe Nursing Home, Boylston Place and Cranberry Pointe Nursing Home (collectively, the "Combined Operations").  See id. at ¶¶ 10-11.

In the summer of 2003, TPG decided to sell the Combined Operations or refinance them with a different lender.  Id. at ¶ 12.  Steven Dunham, a Vice-President of KeyBank, who was working out of KeyBank's Albany, New York office was overseeing the TPG loans.  Id. at ¶ 13.  Dunham contacted Casas regarding working with TPG by performing restructuring activity and transaction services.  Id. at ¶¶ 13-14.  In September 2003, Casas and TPG entered into an Engagement Letter which delineated the terms of Casas' work.  Id. at ¶¶ 16-18.  KeyBank was not a party to this Engagement Letter.  See Exhibit A.[2]  Casas' fee for performing services related to selling or refinancing the Combined Operations was based upon a formula entitling Casas to a percentage of the value of any transaction that occurred.  Id. at ¶¶ 20-23.  Casas began performing these services in the fall of 2003.  Id. at ¶ 27.

In December 2003, Casas' focus changed from attempting to refinance TPG's debt to selling the Combined Operations.  Id. at ¶¶ 28-30.  Casas' attempt to find a buyer for the Combined Operations was successful and TPG selected one of the parties – Epoch Senior Living ("Epoch") – identified by Casas – was selected to begin negotiations for the purchase of the Combined Operations.  Id. at ¶¶ 44-46.

---

[1] Only for the purposes of this motion does Defendant accept the well-pleaded factual allegations in the Complaint.

[2] Because Plaintiff attached the Engagement Letter and other documents to its Complaint, this Court may consider them without converting this Motion to Dismiss into one for summary judgment.  See Blackstone Realty LLC v. FDIC, 244 F.3d 193, 195 n. 1 (1st Cir. 2001).

From the selection of Epoch as a prospective buyer to the closing of the transaction in the Fall of 2004, Casas alleges that several conversation were had between it and various of the defendants, both singularly and collectively, regarding reducing its fee. Id. at ¶¶ 57, 58, 68, 70 and 77. Several of these conversations were triggered by Epoch's reduction of the purchase price due to a variety of factors. Id. at ¶¶ 67  In the course of requests to reduce Casas' fees, KeyBank allegedly made various representations to Casas that it was committed to protecting Casas' interests and would not release its security interest in TPG's property unless Casas was paid. Id. at ¶¶ 48, 69 and 77. On October 1, 2004, the Combined Operations were sold to Epoch for $31,950,000. Id. at ¶ 92. KeyBank, in exchange for the proceeds from the sale, released the liens from the properties. Id. at ¶ 93. To date, Casas has not received payment for its services. Id. at ¶ 99.

## ARGUMENT

**II.     STANDARD OF REVIEW**

Although this Court must construe Plaintiff's Complaint liberally on a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), it is well-established that the Complaint still must allege the material elements of a cause of action cognizable under the law. Indeed, under Rule 12(b)(6), it is still essential that the pleading enable the Defendant to determine the nature of the Plaintiff's grievances and the relief it seeks in consequence of the alleged wrongs. The rule that well pleaded factual allegations are presumed to be true does not apply, however, to legal conclusions or to factual claims which are either inherently incredible or flatly contradicted by documentary evidence. Stein v. Royal Bank of Canada, 239 F.3d 389, 392 (1st Cir. 2001) (court will not accept a complainant's unsupported conclusions or interpretations of law). Nor may a Plaintiff "rely on bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997).

### III. PLAINTIFF'S QUASI-CONTRACTUAL CLAIMS ARE BARRED BY THE STATUTE OF FRAUDS

At the core of Plaintiff's Complaint is the charge that Plaintiff is owed compensation for services rendered in procuring a buyer for the Combined Operations.  See Complaint at ¶ 92. Such claims against KeyBank, however, must be dismissed as any such agreement with KeyBank was not in writing and therefore is unenforceable pursuant to Mass. Gen. Laws ch. 259, § 7 (2004).

Section 7 of Chapter 259 provides in pertinent part that:

> Any agreement to pay compensation for service as a broker or finder or for service rendered in negotiating a loan or in negotiating the purchase, sale or exchange of a business, its good will, inventory, fixtures, or an interest therein . . . shall be void and unenforceable <u>unless such agreement is in writing, signed by the party to be charged therewith</u>, or by some other person authorized.  For the purpose of this section, the term "negotiating" shall include identifying prospective parties, providing information concerning prospective parties, procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction.

(emphasis added). As the services for which Plaintiff seeks compensation come within either the term "broker" or "finder" under the statute, Plaintiff's claims against KeyBank are barred because there is no written agreement regarding Plaintiff's compensation.  In fact, there is no allegation – because there cannot be – that KeyBank signed a written agreement to pay Casas its fee.

Under the statute, "[t]he terms 'broker' and 'finder' are not technical terms." <u>Cantell v. Hill Holliday Connors Cosmopulos, Inc.</u>, 772 N.E.2d 1078, 1081, (Mass. App. Ct. 2002). Massachusetts courts have defined a broker as "an agent who acts as an intermediary or negotiator, especially between prospective buyers and sellers; a person employed to make bargains and contracts between other persons in matters of trade, commerce, and navigation." <u>Id</u>. at 1082 (quoting Black's Law Dictionary, 187 (7th ed. 1999)).  A finder, in contrast, is "an

intermediary who brings together parties for a business opportunity . . . . A finder differs from a broker-dealer because the finder merely brings two parties together to make their own contract, while a broker-dealer usually participates in the negotiations." Id.

Plaintiff easily fits within either definition. As put forth in its own Complaint, it was to "act as Defendant TPG's 'exclusive capital restructuring advisor to effect the sale and/or refinance' of the Combined Operations." Complaint at ¶ 20 (quoting Exhibit A). Later on, Plaintiff began "working exclusively on the solicitation process by providing Investment Banking Services intended to culminate in the sale of the Combined Operations." Complaint at ¶ 35. In connection with providing these services, Plaintiff "prepar[ed] offering materials and communications with potentially interested parties," which resulted in Plaintiff "present[ing] Defendant TPG with 12 Letters of Interest from parties interested in either acquiring or refinancing the Combined Operations." Complaint at ¶ 42 & ¶ 44. From these twelve letters, Epoch entered into negotiations for the property. Complaint at ¶ 45. Finally, Plaintiff's compensation was based in large part upon a percentage of the sales price for the Combined Operations. See Complaint at ¶ 23; Ex. A. Thus, Plaintiff clearly qualifies as a finder or a broker under the statute. See Lyons v. Kelley, 1997 Mass. Super. LEXIS 499, at * 3 (Mass. Super. Ct. Mar. 3, 1997) (finding that plaintiff whose main function was to contact investors, introduce them to defendants' investment plan and to receive a share of the profits from any resultant investment came within statute); Cantell, 772 N.E.2d at 1082 (finding plaintiff who was a headhunter was either a broker or a finder under the statute); Bay Colony Marketing Co., Inc. v. Fruit Salad, Inc., 672 N.E.2d 987, 988 (Mass. App. Ct. 1996) (plaintiff who was engaged in placing food products of others in military commissaries came within ambit of statute).

Plaintiff is seeking to have KeyBank pay for the services it rendered in securing a buyer of the Combined Properties without alleging, because it cannot, that it has any written agreement signed by KeyBank regarding the payment for its services. As such, Plaintiff's claims related to payment for these services, including those contractual claims "implied in fact or law," are barred. See Mass. Gen. Laws. ch. 259, § 7.

Nor does Plaintiff's allegations that it relied on the statements of KeyBank to its detriment change this result. In Cox v. Thornton Associates, Inc., 1998 Mass. Super. LEXIS 425, at * 3 (Mass. Super. Ct. Aug. 4, 1998), the plaintiff sought compensation for increasing the defendant's sales. When the defendant moved to dismiss based upon Section 7, the plaintiff contended that because he relied to his detriment on the defendant's oral promises regarding his compensation, the defendant was estopped from asserting the Statute of Frauds. Id. at *5. The Massachusetts Superior Court rejected such a claim and found that both claims for promissory estoppel and quantum meruit were barred under the statute. Id. at *7. As Massachusetts treats claims for quantum meruit, quasi-contract and implied contract as having the same elements, Plaintiff's claims for unjust enrichment and promissory estoppel against KeyBank must be dismissed as violative of the Statute of Frauds. See Bolen v. Paragon Plastics, Inc., 747 F. Supp. 103, 106 (D. Mass. 1990); Miller v. Nat'l. City Processing Company, Inc., 1996 Mass. Super. LEXIS 147, at *24, n. 15 (Mass. Super. Ct. Dec. 11, 1996) (noting the distinction between quantum meruit and unjust enrichment is at best vague); Waste Stream Envtl., Inc. v. Lynn Water & Sewer Comm'n, 2003 Mass. Super. LEXIS 43, at *49 (Mass. Super. Ct. Jan. 3, 2003) ("Unjust enrichment does not stand on its own as a method of recovery; it is part and parcel of recovery under quantum meruit.").

**IV.    PLAINTIFF'S 93A CLAIMS MUST BE DISMISSED**

As litigation under Chapter 93A is "rampant," courts have developed a rigorous test for assessing such claims, especially where, as here, the parties are all sophisticated businesses. Quaker State Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1513 (1st Cir. 1989). Stated another way, a Chapter 93A plaintiff must "show that the defendant's actions fell 'within at least the penumbra of some common-law, statutory, or other established concept of fairness,' or were 'immoral, unethical, oppressive or unscrupulous,' and resulted in 'substantial injury . . . to competitors or other businessmen." Id. (quoting PMP Assoc., Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (1975)). Here, Plaintiff's 93A claim must fail as: (1) Plaintiff has failed to allege that the acts complained of as to KeyBank occurred in Massachusetts; and (2) the complained of behavior is nothing more than an attempt to recover for a breach of contract.

    1.    Plaintiff has failed to present any allegation that the behavior at issue occurred in Massachusetts

In order to maintain a cause of action under Section 11 of Chapter 93A, the unfair and deceptive act or practice about which the Plaintiff complains must have "occurred primarily and substantially within" Massachusetts. Mass. Gen. Laws. ch. 93A, § 11. In Kuwaiti Danish Computer Company v. Digital Equipment Corporation, 781 N.E.2d 787, 799 (Mass. 2003), the Supreme Judicial Court clarified that:

> [T]he analysis required under § 11 should not be based on a test identified by any particular factor or factors because of a tendency to shift the focus of inquiry away from the purpose and scope of c. 93A. Section 11 suggests an approach in which a judge should, after making findings of fact, and after considering those findings in the context of the entire § 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth.

Here, the Court need not even reach the "gravity of circumstances" analysis because there is no allegation – because there cannot be – that any of KeyBank's claimed misrepresentations

occurred in Massachusetts.  Thus, absent such a connection, this claim fails the nexus requirement as a matter of law, and a review of the allegations makes this result manifest. [3]

Plaintiff's Complaint utterly lacks any allegation that any of the complained of acts as to KeyBank took place in Massachusetts.  Both Plaintiff and the individual from KeyBank alleged to have made any misrepresentations are not located in Massachusetts.  See Complaint at ¶ 4 (Plaintiff's principal place of business is in Illinois); Complaint at ¶ 7 (KeyBank organized under laws of Ohio and Dunham was based in Albany office).  With one exception, all of the alleged communications between KeyBank and Plaintiff took place either telephonically or via email – no allegation is made that Plaintiff was in Massachusetts at the time it received any of the alleged misrepresentations from KeyBank.  Complaint at ¶¶ 13, 48, 49, 58, 69, 72, 77, 81-83 & 91; see Clinton Hosp. Ass'n. v. Carson Group, Inc., 907 F.2d 1260, 1266 (1st Cir. 1990).  ("The location of the dissembler at the time he makes a deceptive statement is not the linchpin of the deception for the purpose of consumer protection law.... Rather, the critical factor is the locus of the recipient of the deception at the time of the reliance. The victim's ingestion of a deceptive statement and the subsequent effects from reliance on it are what give the deceptive statement its venomous sting. The site of the victim's ingestion is therefore critical to a determination of whether the deceptive or unfair acts were committed primarily and substantially in the Commonwealth.").

---

[3] **KeyBank** recognizes that since Kuwaiti, courts have questioned in light of the "after making findings of fact" language whether a determination of the applicability of Section 11 can be made at the motion to dismiss stage. See e.g. Fleet Nat'l. Bank v. Lloyd's London, 2003 Mass. Super. LEXIS 137 at *4 (Mass. Super. Ct. May 14, 2003).  KeyBank respectfully suggests that given that the Supreme Judicial Court decided Kuwaiti after a trial, the procedural posture of the case may have resulted in the inclusion of this language.  In addition, where as here, Plaintiff has not – because it cannot – made any allegation that the complained of acts as to KeyBank had any nexus to Massachusetts, a determination at the motion to dismiss stage is appropriate.  Id. at * 2 (conclusions of law from the facts alleged are open for review on a Rule 12(b)(6) motion).

As to the one meeting that is alleged to have occurred in Massachusetts, Plaintiff does not allege that any misrepresentations were made that were fraudulently let alone plead them with the requisite particularity. Complaint ¶¶ 64-67; Kuwaiti, 781 N.E.2d at 800 (contacts with Massachusetts that were neither unfair nor deceptive do not play a part in assessing whether the misconduct occurred primarily and substantially in Massachusetts); Whelan v. Intergraph Corp., 889 F. Supp. 15, 20 (D. Mass. 1995) (allegations of fraud must comply with Rule 9b requirements). Finally, the "loss" that Plaintiff alleges to have suffered involves the failure of it to be paid, which is a loss that occurred in Illinois, where Plaintiff is located, not in Massachusetts. Because Plaintiff cannot establish that any actions occurred in Massachusetts that are relevant to its 93A claim, this claim must be dismissed.

> 2. KeyBank's complained of conduct is nothing more than an alleged breach of contract claim

Count VI of Plaintiff's Complaint is the "93A count that so frequently provides the caboose to the long train of counts following the engine of what is truly at stake, a claimed breach of contract." Epstein, Becker & Green, PC v. Atlas Venture, 2003 Mass. Super. LEXIS 84 at * 16 (Mass. Super. Ct. 2003). Here, as there is not even a viable contract claim against KeyBank, Plaintiff's 93A claim is even more tenuous. What Plaintiff complains of is nothing more than a breach of contract. As the First Circuit has noted, "[e]ven routine breaches of contract do not constitute c. 93A violations. Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (noting that good faith dispute regarding billing or a simple breach of contract are insufficient bases for 93A liability); Cahill v. TIG Premier Ins. Co., 20 F. Supp. 2d

141, 143 (D. Mass. 1998). Here, where there is no breach of contract that can lie against

KeyBank at all, there is no basis for a 93A claim.[4]

## V. PLAINTIFF'S CLAIM FOR FRAUDULENT MISREPRESENTATION MUST BE DISMISSED

Nor can Plaintiff maintain a claim against KeyBank for fraudulent misrepresentation.

Plaintiff's fraudulent misrepresentation claim is based upon the allegation that:

> In an attempt to induce Plaintiff to forestall from acting in a manner that might jeopardize the sale of the Combined Operations after January 2004, Defendant Key Bank repeatedly reassured Plaintiff that it would not permit Defendant TPG to complete the sale of the Combined Operations unless Plaintiff was compensated for its services pursuant to the Engagement Letter. <u>On information and belief</u>, this representation was false because Defendant Key Bank never intended to exercise its power to freeze the liens on Defendant TPG's assets in order to ensure that Plaintiff would be compensated upon closing of the sale.

Complaint at ¶ 134. Such an allegation falls well short of establishing a cause of action against

KeyBank for fraudulent misrepresentation.

> To survive a motion to dismiss under Massachusetts law, a plaintiff claiming fraudulent misrepresentation must allege that the defendant 1) made a false representation of material fact, 2) with knowledge of its falsity, 3) for the purpose of inducing the plaintiff to act thereon, and 4) that the plaintiff relied upon the statement to his or her detriment.

<u>Gibbs v. SLM Corp.</u>, 2004 U.S. Dist. LEXIS 19755, at * 15 (D. Mass. Aug. 2, 2004) (quoting

<u>Johnson v. Brown & Williamson Tobacco Corp.</u>, 122 F. Supp. 2d 194, 207 (D. Mass. 2000)). In

addition, Rule 9(b) is applicable to fraudulent misrepresentation claims. <u>Id</u>. This means that the

Complaint "specify the statements that the plaintiff contends were fraudulent, (2) identify the

Speaker, (3) state where and when the statements were made, and (4) explain why the statements

---

[4]   Similarly, as Plaintiff's claims for fraudulent misrepresentation and civil conspiracy fail, they provide no basis for a 93A claim against KeyBank. <u>See</u> <u>Bradston Assocs. LLC v. Rouse</u>, 2002 Mass. Super. LEXIS 378 at *16 (Mass. Super. Ct. Oct. 8, 2002) (where no misrepresentations exist, Plaintiff's 93A claims based upon the non-existent misrepresentations must be dismissed).

were fraudulent." Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997). The First Circuit has held that this "requires that a plaintiff must also allege facts to support his belief that the defendant acted with fraudulent intent. Allegations based on 'information and belief' ... do not satisfy the particularity requirement unless the complaint sets forth the facts on which the belief is founded. Furthermore, this requirement of pleading supporting facts applies 'even when the fraud relates to matters peculiarly within the knowledge of the opposing party.'" Whelan v. Intergraph Corp., 889 F. Supp. 15, 20 (D. Mass. 1995) (quoting New England Data Services, Inc., v. Becher, 829 F.2d 286, 288 (1st Cir. 1987)). "Where allegations of fraud are explicitly or, as in this case, implicitly based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief." Romani v. Hutton, 929 F.2d 875, 878 (1st Cir. 1991). In addition, the complaint must set forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992).

The Complaint here offers no factual basis for the allegation that any of KeyBank's alleged misrepresentations were fraudulent at the time that they were made, let alone that KeyBank knew the statements were false when made. In fact, Plaintiff does not even allege that the statement by Steven Dunham on September 30, 2004 that Plaintiff's fee was included in the Closing Statement for the Transaction was false. Complaint at ¶ 91. KeyBank cannot be held responsible if after the deal closed, TPG – the only party contractually obligated to Plaintiff – decided not to fulfill its contractual obligations. Liberty Leather Corp. v. Callum, 653 F.2d 694, 698 (1st Cir. 1981) (It has been said that erroneous predictions as to future actions of third persons do not make out a cause of action for fraud or deceit.); Frederick v. Conagra, Inc., 713 F. Supp. 41, 46 (D. Mass. 1989) Moreover, even presuming that KeyBank made such

representations, by its own pleadings, Casas' reliance on such statements was unreasonable as a matter of law. Casas was involved in arranging a "comfort letter" with Epoch where KeyBank would agree to Epoch purchasing the Combined Operations and agreed that it would release its liens. See Complaint at ¶¶ 58-60. Given that Casas was involved in arranging these assurances, it was unreasonable for Casas to believe that KeyBank would provide such assurances to Epoch and then refuse to release the liens unless Casas was paid. As Plaintiff has failed to properly allege a fraudulent misrepresentation, this claim must be dismissed.

## VI.   PLAINTIFF HAS FAILED TO ESTABLISH A FRAUDULENT TRANSFER

Plaintiff seeks to recover from KeyBank its fees for services rendered to TPG on the basis that the transfer of funds from TPG to KeyBank constituted a fraudulent transfer under Chapter.109A, § 5(a) of Massachusetts General Laws. See Complaint at ¶¶149-152, & Prayer for Relief D. Such a claim must be dismissed as the transfer in question did not include an "asset" as that term is defined under 109A and, even assuming that it did, Plaintiff has failed to establish that the transfer from TPG to KeyBank was fraudulent.

> Under Section 5(a),
>
> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor.

Mass. Gen. Laws ch. 109A, § 5(a).

The term "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with an asset or an interest in an asset ... " Mass. Gen. Laws. ch. 109A, § 2 (emphasis added). The term "asset," however, does not include "property to the extent that it is encumbered by a valid lien." Id. Unquestionably, KeyBank held a valid security interest in all of the Combined Operations. See Complaint at ¶¶ 9-11.

Thus, KeyBank's receipt of closing proceeds for the release of that valid lien does not involve the transfer of "assets" within the contemplation of Chapter 109A.[5]  See also Rich v. Rich, 405 S.E.2d 858, 861 (W. Va.1991)(finding that the portion of property that was encumbered by a lien was not an "asset" subject to fraudulent transfer under the UFTA); Eagle Pacific Insurance Company v. Christensen Motor Yacht Corporation, 959 P.2d 1052, 1060-61 (Wash. 1998) (stating that if a debtor transfers assets encumbered by security interests, that transfer is beyond the reach of the UFTA).  Having failed to allege any factors to establish actual intent by TPG, no claim can lie against KeyBank.  TPG does not commit fraud by choosing to pay one creditor ahead of another.  White v. Babcock, 1995 Tex. App. LEXIS 2018 (Aug. 24, 1995)(UFTA does not cover property to the extent it is encumbered by a valid lien and thus a sale by a debtor for the purpose of applying the proceeds of the sale to payment of its debts is not fraudulent as to the creditors not sharing in the proceeds of such sale).  Because the property involved does not constitute an asset under the UFTA, no claim can lie against TPG for a fraudulent transfer.  Thus, no fraudulent transfer claim can lie against KeyBank for receipt of the proceeds from the sale of the property.

Even assuming that the Combined Operations constitute an "asset" under the statute, Plaintiff's claim still fails.  Under section 5(a), the debtor's state of mind becomes the point of inquiry.  In determining whether the actual intent requirement of paragraph 1 is met, consideration is given to the following factors:

    (1) the transfer or obligation was to an insider;

---

[5] As the Uniform Fraudulent Transfer Act is a model statute, it "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states which enact it." Mass. Gen. Laws ch. 109A, § 12.  Thus, this Court can look to how other states have interpreted and applied this statute.

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Mass. Gen. Laws ch. 109A, § 5(a). Not surprisingly none of these factors are present here. Importantly, the timing of the creation of the underlying security interest of KeyBank belies any notion that the transfer was effected with any fraudulent intent as to Plaintiff. KeyBank's loans were made long prior to any involvement of Plaintiff and thus long before Plaintiff was ever contemplated as being a potential creditor of TPG. Clark v. Brooks Woolen, Inc., 2000 Me. Super. LEXIS 242, at ** 13-14. (Me. Super. Ct. 2000)(noting that timing of creation of security interest occurred long prior to plaintiff's claim).

## VI. PLAINTIFF'S CLAIM FOR CIVIL CONSPIRACY ALSO MUST FAIL

Plaintiff also cannot maintain a claim for civil conspiracy against KeyBank. Under Massachusetts law, there are two types of civil conspiracy. The "concert of action" version which is alleged by Plaintiff, requires that "[P]laintiff must allege 'first, a common design or an

agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement.'" Defonseca v. Sandler, 2002 Mass. Super. LEXIS 250, at *9-10  (Mass. Super. Ct., June 25, 2002) (Mass. Super. Ct. June 25, 2002) (quoting Aetna Casualty Ins. Co. v. P&B Autobody, 43 F.3d 1546, 1563-64 (1st Cir. 1994)).  "Key to this cause of action is a defendant's substantial assistance, with the knowledge that such assistance is contributing to a tortious plan." Kurker v. Hill, 689 N.E.2d 833, 836 (Mass. App. Ct. 1997).  "In the tort field, the doctrine appears to be reserved for application to facts which manifest a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result." Stock v. Fife, 430 N.E.2d 845, 849 (Mass. App. Ct. 1982).

Here the alleged objective of the conspiracy was to use "monies owed to Plaintiff to help repay the Key Bank debt at Plaintiff's expense." Complaint at ¶ 137.  What Plaintiff fails to comprehend is that KeyBank's debt, which was incurred prior to any obligation owed to Plaintiff, was a secured lien which placed KeyBank ahead of Plaintiff in the distribution of the proceeds from the closing.  KeyBank cannot be accused of engaging in a conspiracy to achieve a result which is the very result required by law.  As there is no wrongful act in ensuring that a secured lien holder gets paid, Plaintiff's claim for civil conspiracy must fail.

## VII.   PLAINTIFF CANNOT MAINTAIN A CLAIM FOR AIDING AND ABETTING

Plaintiff's claim that KeyBank aided and abetted defendants TPG and the Freid's fraudulent misrepresentations must fail.  Plaintiff asserts that TPG and the Freids repeatedly told Plaintiff that it would be compensated for its services while in reality they never intended to pay for those services.  See Complaint at ¶¶ 131-132.  Plaintiff, however, fails to allege how KeyBank "provided substantial assistance" to TPG and the Freids so that they could accomplish this goal.  Moreover, "Massachusetts courts have made clear that a defendant aids and abets a

tortfeasor only if, at the least, the defendant actually knows about its substantial, supporting role in an unlawful enterprise." Maruho Company, Ltd. v. Miles, Inc., 13 F.3d 6, 10 (1st Cir. 1993). Here, Plaintiff has failed to allege that KeyBank had any knowledge that TPG and the Freids would not pay for Plaintiff's services until such refusal actually occurred. Therefore, Plaintiff's claim for aiding and abetting must be dismissed.

## CONCLUSION

In his efforts to recover its fees for services rendered, Casas has brought suit against the wrong party. As there is no basis to maintain a claim against KeyBank, Plaintiff's claims should be dismissed.

Dated:  December 10, 2004

Respectfully submitted,

KEY CORPORATE CAPITAL, INC.

By its attorneys

NIXON PEABODY LLP

/s/W. Scott O'Connell
W. Scott O'Connell (#559669)
Courtney Worcester (#643180)
889 Elm Street
Manchester, NH 03101
(603) 628-4000
soconnell@nixonpeabody.com
cworcester@nixonpeabody.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2004, a copy of the foregoing, along with the accompanying Motion and Appendix, was filed electronically. Notice of this filing will be sent to all parties in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Courtney Worcester
Courtney Worcester