UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CASAS, BENJAMIN & WHITE, LLC,<br><br>    Plaintiff,<br><br>    vs.<br><br>THE POINTE GROUP, INC., a<br>Massachusetts corporation d/b/a The Pointe<br>Group Healthcare and Senior Living;<br>GERALD S. FREID; BARRY FREID;<br>KEY CORPORATE CAPITAL, INC.,<br><br>    Defendants. | No. 04-12333-MEL |

## AFFIDAVIT OF MATTHEW M. CAINE

1.  My name is Matthew M. Caine. I am a Principal of Casas, Benjamin & White, LLC. ("CBW"). I have personal knowledge of the following facts relevant to this dispute.

2.  In or about September 2003, CBW and The Pointe Group, Inc., d/b/a The Pointe Group Healthcare and Senior Living ("TPG"), executed an Engagement Letter defining the scope of CBW's services with respect to the sale or refinance of the Combined Operations, and TPG's obligations with respect to compensating CBW for those services. A true and correct copy of the Engagement Letter is attached hereto as Exhibit A.

3.  In connection with the engagement, TPG provided CBW with certain documents, including documents describing the structure, ownership, and history of TPG. True and correct copies of certain of those documents are attached as Exhibit B.

4. On January 14, 2004, Gerald S. Freid, acting on behalf of TPG, agreed to a written amendment to the Engagement Letter. A true and correct copy of the Amendment is attached hereto as Exhibit C.

5. In March 2004, CBW prepared and distributed to potential interested parties a Confidential Information Memorandum describing the Combined Operations. TPG reviewed and approved this Memorandum before it was distributed. Excerpts of the Memorandum are attached as Exhibit D.

6. In April 2004, CBW prepared a written overview of TPG's operations and the Combined Operations. TPG's management team, including Barry Freid and Gerald Freid, utilized this written overview in connection with their presentations regarding the facilities to all interested parties hosted by TPG and CBW. Excerpts of CBW's Management Presentation are attached as Exhibit E.

7. In early May, 2004, CBW presented twelve Letters of Interest ("LOI") from parties interested in either acquiring or refinancing the Combined Operations. Subsequently, TPG selected Epoch Senior Living ("Epoch"), one of the parties identified by CBW, as the preferred party with whom to enter into negotiations for the sale of the Combined Operations.

8. On May 22, 2004, Epoch submitted a non-binding Letter of Intent to TPG regarding the purchase of the Combined Operations. The terms of the Letter of Intent were accepted and agreed to by Barry Freid, as Chief Operating Officer of TPG. A true and correct copy of the executed Letter of Intent is attached as Exhibit F.

9. On or about June 2, 2004, Barry Freid, in his capacity as Chief Operating Officer of TPG, wrote a letter to me in which he acknowledged that, under the terms of CBW's Engagement Letter, CBW would be entitled to a fee of $1.25 million in connection with the proposed sale price of $37 million. A true and correct copy of this letter is attached as Exhibit G.

10. On June 4, 2004, I participated in a telephone conference call regarding the proposed sale to Epoch. During the conference call, Gerald Freid, Barry Freid, and TPG's attorney, Stephen Gordon, affirmed that the terms of the Engagement Letter would be honored. Shortly after the telephone conference, Attorney Gordon copied me on an e-mail acknowledging that CBW had done "a great job" and indicating that if the sale to Epoch occurred, "all kudos to CBW and Matt Caine." A true and correct copy of this June 4, 2004 e-mail is attached hereto as Exhibit H.

11. On July 13, 2004, I attended a meeting in Boston regarding the proposed sale to Epoch. Attorney Gordon, Barry Freid, and Gerald Freid attended this meeting, among others. During the meeting, Epoch proposed a reduction in the purchase price. After the presentation, Attorney Gordon expressly instructed me to leave the meeting room to allow TPG and TPG's lender to resolve negotiations as to the revised purchase price. Epoch's proposal to reduce the purchase price was not agreed to and the meeting ended without the parties reaching a final agreement as to the terms of the transaction.

12. On July 14, 2004, Gerald Freid contacted me requesting that CBW consider a reduction of its fee to a lump sum of $800,000 in order to facilitate the closing, thereby acknowledging that, upon closing of the transaction, the contracted-for fee would be due and owing to CBW.

13. On July 15, 2004, I sent an e-mail to Gerald Freid indicating that CBW would agree to reduce its fee and to accept a lump sum transaction fee of $1 million, along with reimbursement of out-of-pocket expenses. A true and correct copy of this e-mail message is attached as Exhibit I.

14. On July 16, 2004, TPG's lender notified me that agreement had been reached between all parties, and that the fee due CBW was unaffected by negotiations.

15. On September 21, 2004, Gerald Freid advised me that: (1) the Massachusetts Department of Public Health was close to resolving the licensing issues; (2) TPG was under investigation for patient abuse problems at Cranberry Pointe Nursing Home; and (3) he was unable to honor an invoice submitted by CBW for out-of-pocket expenses that had been incurred, but would make payment of the invoice and of CBW's fee at the closing.

16. On September 27, 2004, Attorney Gordon reassured me that the sale to Epoch was in the final stages and that CBW had nothing to worry about with respect to its fee.

17. On September 28, 2004, I contacted Attorney Gordon to inquire as to the date and location of the anticipated closing so that CBW could exercise its contractual right to attend. Attorney Gordon represented that he was not in possession of this information.

18. During a telephone conversation on September 29, 2004, Gerald Freid asked me how much TPG would owe CBW at the closing the next day. I told him that CBW was owed slightly more than $1,033,00, consisting of the contracted-for fee and unreimbursed expenses. I then stated that I would send him an invoice reflecting the monies owed. I sent the requested invoice to Mr. Freid the same day. Mr. Fried did not object to the amount of the fee or contest TPG's obligation to pay the fee at the closing. A true and correct copy of the invoice and my e-mail message are attached as Exhibit J.

19. On September 30, 2004, Steven C. Dunham of Key Bank, TPG's senior secured lender, stated that he had seen CBW's fee on the closing statement for the transaction. Later that same day, however, Mr. Dunham told me that the closing was moving forward, but we would need to talk to the Freids and Attorney Gordon regarding payment of our fee.

20. On or about October 1, 2004, I received a letter from Attorney Gordon. A true and correct copy of this October 1, 2004 letter is attached as Exhibit K.

21.     After receiving this malicious and false letter, I contacted Larry Gerber of Epoch to inform him of the contractual breach. Mr. Gerber stated that Epoch had anticipated CBW's participation at the closing and had prepared a security pass to allow CBW entrance to the meeting place. Mr. Gerber also informed me that during the closing, questions had been raised as to the manner in which CBW's fee would be handled and that, in response, the Freids and Attorney Gordon began smiling and laughing.

22.     Attached as Exhibit L hereto are true and correct copies of checks issued to CBW for services rendered under the Engagement Letter.

23.     I am aware of no liability insurance that would be available to satisfy a judgment entered against the defendants in this matter.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 20 DAY OF DECEMBER, 2004.

/s/ Matthew M. Caine_____
Matthew M. Caine

215467.1