UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CASAS, BENJAMIN & WHITE, LLC )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>THE POINTE GROUP, INC., a )<br>Massachusetts corporation d/b/a The Pointe )<br>Group Healthcare and Senior Living; )<br>GERALD S. FREID; BARRY FREID; )<br>KEY CORPORATE CAPITAL, INC. )<br>)<br>Defendants. ) | No. 04-CV-12333-MEL |

**MEMORANDUM IN OPPOSITION TO DEFENDANT KEY CORPORATE
CAPITAL, INC.'S MOTION TO DISMISS**

Plaintiff Casas, Benjamin & White LLC (hereinafter, "Plaintiff" or "CBW") hereby opposes the motion to dismiss filed by Key Corporate Capital, Inc. (hereinafter, "Key Bank" or "the Bank") because the facts pled by CBW are more than sufficient to state actionable claims against the Bank. CBW's 174-paragraph complaint includes numerous discrete factual allegations supporting its claims that the Bank made repeated fraudulent misrepresentations, aided and abetted and conspired with the other defendants, and engaged in unfair and deceptive acts or practices, all with the intent to deprive CBW of an agreed fee in excess of $1,000,000, due for services performed over an extended period of time for the benefit of all defendants, including the Bank. CBW further states as follows.

**I.     Legal Standard**

A court may not dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Judge v. City of Lowell, 160 F.3d 67, 72 (1st Cir. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In considering the merits of a

motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass.2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). Further, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollett, 83 F. Supp. 2d at 208.

At this preliminary stage, the Court must accept all the allegations in CBW's complaint as true, indulging all reasonable inferences in its favor. Not surprisingly, Key Bank's motion to dismiss falls far short of meeting its heavy burden of proving, beyond doubt, that CBW will be unable to prove any set of facts that would entitle it to relief. Therefore, the Bank's motion to dismiss must be denied.

## II. CBW's Claims Against Key Bank For Detrimental Reliance (Count III) And Unjust Enrichment (Count IX) Are Not Barred By Massachusetts General Laws, Chapter 259 §7.

Key Bank is correct in its assertion that the "core" of CBW's breach of contract claim against The Pointe Group, Inc. (hereinafter "TPG") is the Engagement Letter by which CBW was to be compensated for services rendered in procuring a buyer for three facilities managed by TPG. See Complaint, ¶¶ 16, 100-124, 160-166 & Exhibit A. Key Bank is not correct, however, in asserting that CBW's detrimental reliance and unjust enrichment claims against the Bank are based on a similar agreement with the Bank. (See Key Bank's Memorandum, pp. 5-7). In fact, all of CBW's claims against Key Bank, including its detrimental reliance and unjust enrichment claims, are based on certain material representations made by the Bank upon which CBW

reasonably relied to its detriment. Contrary to the position taken in Key Bank's memorandum, CBW does not allege that said representations comprised an "agreement to pay compensation for services as a broker or finder or for services rendered…in negotiating the purchase, sale or exchange of a business…," and therefore M.G.L. c. 259, § 7 is entirely inapplicable.

CBW alleges that it reasonably relied on Key Bank's repeated promises that it would take steps to ensure that TPG paid the fee due to CBW at the closing. See Complaint, ¶ 125. More specifically, CBW alleged that Key Bank was the party that brought CBW into the transaction. Id. at ¶¶ 13-14. Key Bank thereafter was involved in the subsequent negotiations between CBW and TPG over the terms of the Engagement Letter, and approved the agreement. Id. at ¶ 15. After the Engagement Letter was signed, Key Bank continued to communicate with CBW regarding the progress of its attempts to refinance or sell the facilities, and received regular progress reports regarding the status of the project. Id. at ¶¶ 29-30, 43.

In May, 2004, after TPG had selected a party with whom to pursue negotiations, Steven C. Dunham, a Vice President of Key Bank, urged CBW not to insist on obtaining a copy of the Purchase and Sale ("P&S") Agreement because the Bank wanted the parties to stay focused on completing the sale. (Id. at ¶ 125) At that time, Key Bank reassured CBW that it would safeguard CBW's economic interests as provided under the Engagement Letter. See Complaint, ¶ 48. In reliance on Key Bank's representations, CBW did not insist on reviewing the language of the P&S Agreement as was its right under the Engagement Letter. See Complaint, ¶ 49.

Further, on or around June 2, 2004, TPG began pressuring CBW to reduce its fee under the Engagement Letter. See Complaint, ¶ 57. Key Bank was aware of this pressure and again reassured CBW that the Bank would insist on having CBW's fee structured into the closing to protect CBW's interests. See Complaint, ¶ 58.

3

On July 14, 2004, TPG again requested that CBW reduce its fee. See Complaint, ¶ 68. The following day Key Bank reassured CBW that its fee would come straight off the top of the sales proceeds at closing and that Key Bank was committed to protecting CBW's interests by refusing to release its security interests in TPG's property unless CBW received its fee. See Complaint, ¶ 69.

On August 20, 2004, CBW requested that it be provided a copy of the final P&S Agreement. Key Bank refused to provide one but continued to assure CBW that its fee would be paid out of the sales proceeds. See Complaint, ¶ 74.

On September 2, 2004, CBW again sought assurances that its fee would be covered at the closing. CBW and Key Bank discussed how CBW would receive its payment and how the Bank would protect payment of CBW's fee by controlling the logistics of the closing to ensure that TPG paid CBW's fee. See Complaint, ¶ 77.

Between September 24 and September 27, 2004, Key Bank repeatedly reassured CBW that it would block the closing by refusing to release the liens on TPG's property until TPG paid CBW its fee. See Complaint, ¶ 85.

CBW relied on Key Bank's repeated promises that it would ensure that TPG paid CBW's fee at the closing. This reliance on Key Bank's repeated assurances was reasonable because the Bank had liens on TPG's three properties and a transfer of the assets could not occur without the Bank's express authorization. See Complaint, ¶ 127. Finally, CBW relied on these assurances to its detriment because the assurances convinced CBW to refrain from exercising its rights under the Engagement Letter, and from suing in advance of the closing. See Complaint, ¶ 128.

This Court has found on a substantially similar factual record that a plaintiff's promissory estoppel claims survived a motion for summary judgment. See Nelson v. Energy Exchange

4

Corp., 727 F.Supp. 59 (D. Mass 1989).  In Nelson, the plaintiff was employed as a "locater" by Energy Exchange Corp. ("EEC").  His responsibilities included finding companies with ownership interests in oil and gas properties and convincing the companies to sell their properties in exchange for EEC stock.  See id. at 60.  Under his agreement with EEC, the plaintiff was to receive a commission of $0.07 for each share of EEC stock issued in exchange for interests in gas and oil properties which he had located and EEC acquired.  One of the defendants, DLJ, was involved in closing several of the transactions in which the plaintiff was responsible for having located the gas or oil property to be acquired as part of the EEC exchange.  When the plaintiff, like CBW here, was not paid his commission at the closing, he brought several causes of action against DLJ, including one sounding in detrimental reliance.

     DLJ moved for summary judgment.  In denying DLJ's motion, this Court found the following facts important to its decision to allow the plaintiff's complaint to go to the jury.  DLJ, through its agents, assured the plaintiff on a number of occasions that he would receive his commission for locating and bringing in the acquired properties.  The Court further found that although DLJ's agents never explicitly stated that DLJ would cut the check, they assured him that DLJ was running the closing, the deal would go through and he would be paid.  The Court found it important that at the time, the plaintiff "absolutely believed" that DLJ was responsible for getting his check written, no matter by whom, and that DLJ was, in fact, "running everything" at the time of the closing.  The Court also noted that DLJ had a significant financial interest in the closing, and that in reliance on DLJ's repeated assurances that he would receive his fee, the plaintiff "did not bring suit earlier, specifically, prior to the closing."  Id.  The factual allegations contained in the summary judgment record in Nelson are nearly identical to those asserted by CBW against Key Bank, as discussed in depth above.

The lone case upon which Key Bank relies in support of its motion to dismiss CBW's equitable claims is Cox v. Thornton Associates, Inc., 1998 Mass. Super. LEXIS 425, at *3 (Aug. 4, 1998), a Massachusetts Superior Court case. That case, however, is inapposite. In Cox, the parties had stipulated that the agreement at issue fell within the purview of M.G.L. c. 259, § 7, i.e., an oral agreement to pay commissions for services rendered in connection with the sale of defendant's industrial products. The plaintiff's only rebuttal to the defendant's Statute of Frauds defense was to claim that the defendant was estopped from asserting the statute. In this case, however, CBW's equitable claims against Key Bank are not premised on an alleged agreement by the Bank to pay CBW for brokerage or sales services. Simply stated, CBW's detrimental reliance and unjust enrichment claims, like the plaintiff's claims in Nelson, focus on Key Bank's repeated promises that it would ensure at the closing that TPG paid CBW's fee. Thus, M.G.L. c. 259, §7 is inapplicable here, and Key Bank's motion to dismiss CBW's detrimental reliance and unjust enrichment claims should be denied.

**III.     Key Bank Is Not Entitled To Dismissal Of CBW's M.G.L. c. 93A Claim (Count VI)**

Key Bank moves to dismiss CBW's M.G.L. c. 93A claim on the grounds that the conduct alleged in the complaint did not occur "primarily and substantially" in Massachusetts. The Supreme Judicial Court of Massachusetts, however, has held that a decision as to whether "the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth" must be made on the basis of factual findings. Kuwaiti Danish Computer Co. v. Digital Equipment Corp., 438 Mass. 459, 473, 781 N.E.2d 787, 799 (2003). The center of gravity test announced in Kuwaiti was adopted by the United States Court of Appeals for the First Circuit in Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 235 (1st Cir. 2003)(Court described "center of gravity" test as a "fact-intensive approach.").

6

Since a court does not (and cannot) make such factual findings when ruling on a motion to dismiss, this Court recognized in Workgroups Technology Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 118 (D. Mass. 2003), that a motion to dismiss "is no longer an appropriate vehicle for raising the issue" of whether conduct occurred "primarily and substantially within the Commonwealth." Id.; see also Fleet National Bank v. Certain Underwriters at Lloyds of London, 2003 WL 21246552, at *2 (Mass. Super. Ct. May 14, 2003) (SJC's mandate in Kuwaiti, combined with liberal requirements for notice pleadings, required denial of a motion to dismiss a claim under M.G.L. c. 93A, § 11) (copy attached at Tab A).

Even if the Court were to allow Key Bank to raise the "primarily and substantially" issue at the motion to dismiss stage, Key Bank has failed to meet its burden of proving[1] that the transactions and actions forming the basis of CBW's Chapter 93A claim did not occur primarily and substantially within the Commonwealth. As noted above, the focus of the "primarily and substantially" test is on the "center of gravity" of the circumstances that give rise to the Section 11 claim. Kuwaiti, 438 Mass. at 473, 781 N.E.2d at 799; see also Kenda Corp., Inc., 329 F.3d at 234-35.

On this issue, Key Bank cites Clinton Hosp. Ass'n v. Carson Group, Inc., 907 F.2d 1260, 1266 (1st Cir. 1990), as purported support for its claim that the complaint does not properly allege unfair trade practices within the Commonwealth. That case, however, was decided under the First Circuit's outdated three-part "formula" for locating actions under M.G.L. c. 93A, § 11, which was specifically criticized in Kuwaiti, 438 Mass. at 472-73, 781 N.E.2d at 798-99, and is no longer good precedent.

---

[1] The statute places the burden of proof upon Key Bank to show that the transactions and actions alleged to be deceptive acts or practices did not occur primarily or substantially within the Commonwealth. See M.G.L. c. 93A, §11. See also Kuwaiti, 438 Mass. at 470, 781 N.E.2d at 797.

The core transaction that gives rise to the claim that Key Bank (and the other defendants) committed unfair and deceptive practices is the sale of TPG's Massachusetts facilities, the closing on which took place in Massachusetts. See Complaint, ¶ 98. CBW has alleged that it was at the closing that Key Bank completed its conspiracy with the other defendants and followed through on its fraudulent misrepresentations by releasing the liens on TPG's assets after receiving proceeds from the Epoch sale, while breaking its promises to CBW that the Bank would set aside and secure CBW's fee. See Complaint, ¶¶ 93, 134-135, 137-139, 141-148. CBW also suffered its harm at the closing (which it did not attend on the false assurances and advice of Key Bank) because it lost its ability to prevent the sale when Key Bank released the liens without taking steps to protect CBW's fee. (See id.) Finally, CBW has alleged facts indicating that the conspiracy also began in Massachusetts, when CBW's representatives were directed to leave a pre-closing meeting so that the remaining parties, including Key Bank, could attempt to finalize the terms of the deal. (Id. at ¶¶ 64-66).

Key Bank's attempt to circumscribe its actions as having only taken place in Ohio (where it is organized) or Albany, New York (where Dunham was based) is unavailing. Neither Key Bank's status as an Ohio corporation, nor Dunham's physical location when he engaged in the deceptive or unfair conduct on behalf of Key Bank, are significant under Chapter 93A. See, e.g., Workgroup Technology Corp., 246 F. Supp. 2d at 117. Similarly, Key Bank's contention that CBW, an Illinois corporation with a principal office location in Skokie, Illinois, must have received all of Key Bank's misrepresentations in Illinois is a claim not supported by the record, and in any event is not a factor that should be given substantial weight. See Kuwaiti, 438 Mass. at 473, 781 N.E.2d at 798.

8

In sum, CBW properly has pled that Key Bank's unfair and deceptive conduct occurred primarily and substantially within Massachusetts, and the Bank has not satisfied its statutory burden of proof to the contrary. Accordingly, Key Bank's motion to dismiss CBW's M.G.L. c. 93A claim must be denied.

Key Bank's second ground for dismissal of CBW's Chapter 93A claim, that the Bank's complained of conduct is nothing more than a breach of contract, also fails. It is true that a mere breach of contract, without more, is insufficient to trigger liability under the statute. See Arthur D. Little, Inc. v. Dooyang Corporation, 147 F.3d 47, 55 (1st Cir. 1998). As set forth above, however, CBW's claims against Key Bank are not premised on a breach of contract, but on Key Bank's repeated misrepresentations and its actions in furtherance of an alleged conspiracy among the defendants to cheat CBW out of its $1,000,000 fee at the closing. See Complaint, ¶¶ 134-35, 137-39. CBW also has alleged that Key Bank's conspiratorial activities and repeated fraudulent misrepresentations were intentionally misleading, entitling CBW to double or treble damages and attorneys' fees. (Id.) These allegations "fit comfortably within at least the penumbra of some common law, statutory, or other established concept of unfairness," which Massachusetts state and federal courts have found sufficient to trigger liability under M.G.L. c. 93A. See Greenstein v. Flatley, 19 Mass. App. Ct. 351, 356, 474 N.E.2d 1130, 1133 (1985) (unfair and deceptive conduct of building owner in leading plaintiff to believe he had a lease and disavowing existence of such lease one month before commencement entitled plaintiff to compensatory and punitive damages under Chapter 93A); see also Damon v. Sun Co. Inc., 87 F.3d 1467, 1483 (1st Cir. 1996)(citing Sheehy v. Lipton Indus., Inc., 24 Mass.App.Ct. 188, 196, 507 N.E.2d 781, 785 (1987))("Common law misrepresentation claims provide a basis for liability under [Chapter 93A] section 11."); East Coast Printing Equipment Corp. v. Dataprint, 2000 WL 1510060, at *5-

9

6 (Mass. Super. Ct. Sept. 21, 2000) (Burnes, J.) (where plaintiff claimed that defendants cheated him out of commissions by their deceptive and unfair tactics, court affirmed Chapter 93A award because such unfair and deceptive practices went "beyond a mere breach of an oral agreement") (copy attached at Tab B).

Moreover, Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the "fact-specific nature of the inquiry." Arthur D. Little, 147 F.3d at 55 (citing Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 26, 679 N.E.2d 191, 209 (1997)); Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1514 (1st Cir. 1989) ("the cases which dot the Chapter 93A landscape tend to be fact-specific"); Commonwealth Aluminum Corp. v. Baldwin Corp., 980 F. Supp. 598, 614 (D. Mass. 1997) (in denying summary judgment on Chapter 93A count, court noted that "the question of whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact").  Given that this Court cannot resolve factual questions at the Rule 12(b)(6) stage, Key Bank's motion to dismiss CBW's Chapter 93A claim must be denied.

**IV.    Key Bank's "Failure To Plead With Particularity" Argument Concerning CBW's Fraudulent Misrepresentation Claim (Count IV) Lacks Merit Because The Complaint Is Sufficiently Detailed To Permit A Responsive Pleading.**

CBW's fraudulent misrepresentation claim (Count IV) meets the requirements set forth in Fed. R. Civ. P. 9(b) by describing Key Bank's fraudulent conduct with particularity. See Hoffman v. Optima Systems, Inc., 683 F. Supp. 865, 867 (D. Mass. 1988).  Rule 9(b) requires a plaintiff to plead the "time, place and content" of the fraud, but does not require a plaintiff to plead all of the evidence or facts supporting the fraud.  See Wayne Investment, Inc. v. Gulf Oil Corp., 739 F.2d 11, 13 (1st Cir. 1984).  The main purpose of this rule is to provide fair and

adequate notice of the plaintiff's claims of fraud and of the acts that form the basis of the claim. See Hoffman, 683 F. Supp. at 867.

CBW's claim of fraudulent misrepresentation against Key Bank more than meets the "time, place and contact" requirements of Rule 9(b). In its complaint, CBW makes numerous specific allegations of fraud, including the following:[2]

(a)     Speaker and Place. CBW alleged that the fraudulent misrepresentations included but were not necessarily limited to those made by Key Bank's Vice President, Mr. Dunham, from his office in Albany, New York. See Complaint, ¶¶ 7, 48, 58, 69, 72, 74, 77, 85, 91.

(b)     Time and Content. CBW alleged that Mr. Dunham's fraudulent misrepresentations consisted of the following statements on the following dates:

- In May, 2004, Mr. Dunham assured CBW that Key Bank would safeguard CBW's economic interests as provided under the Engagement Letter. See Complaint, ¶ 48.

- On or about June 2, 2004, Mr. Dunham reassured CBW that the Bank would insist on having CBW's fee structured into the closing to protect CBW's interests. See Complaint, ¶ 58.

- On July 15, 2004, Mr. Dunham reassured CBW that its fee would come straight off the top of the sales proceeds at closing and that the Bank was committed to protecting CBW's interests by refusing to release its security interests in TPG's property unless CBW received its fee. See Complaint, ¶ 69.

- Despite CBW's request for a copy of the final P&S Agreement on or about August 20, 2004, Key Bank refused to provide a copy but continued to assure CBW that its fee would be paid out of the sales proceeds. See Complaint, ¶ 74.

- On September 2, 2004, and again between September 24-27, 2004, Mr. Dunham repeatedly reassured CBW that its fee would be covered at the closing. See Complaint, ¶¶ 77, 85.

---

[2]     Contrary to Key Bank's argument, CBW's fraudulent misrepresentation claim is not limited to the allegations set forth in ¶¶ 134-35 of the Complaint. Rather, CBW expressly incorporated ¶¶ 1-129 of the Complaint into its fraudulent misrepresentation claim. See Complaint, ¶ 130.

In addition to setting forth the time, place, and content of Mr. Dunham's numerous misrepresentations, CBW also set forth sufficient facts to support its claim that the many misrepresentations were made with fraudulent intent. Specifically, CBW alleged that Key Bank was among the creditors to whom TPG owed substantial sums of money, that TPG was not current on its obligations to Key Bank, and that, therefore, a restructuring of TPG's debt or sale of its assets would benefit Key Bank financially. See Complaint, ¶¶ 8, 9, 11, 12, 14, 125. CBW also alleged that Mr. Dunham made the above-referenced false promises that CBW would be paid its fee at the closing for the express purpose of ensuring that CBW would not exercise its rights under the Engagement Letter, which might have jeopardized or otherwise negatively affected the sale of TPG's properties (from which Key Bank would benefit financially). See Complaint, ¶¶ 48, 77, 90. Because CBW has alleged that Key Bank made false representations to CBW for the purpose of ensuring that CBW would not interfere with the closing and the financial benefits the Bank was to receive from the sale, the inference of fraudulent intent can be drawn from the pleadings. See Hoffman, 683 F. Supp. at 868 (where defendant made specific promises of performance and did not thereafter perform, "fraudulent intent may certainly be inferred" in order to satisfy Rule 9(b)). Therefore, CBW's fraudulent misrepresentation claim satisfies Rule 9(b).

Key Bank also asserts that CBW's fraudulent misrepresentation claim must be dismissed because its reliance on Mr. Dunham's promises that CBW's fee would be paid at the closing was unreasonable. See Complaint, ¶ 74. In support, the Bank claims that CBW knew that the Bank had issued a "comfort letter" to Epoch which purportedly stated that the Bank would agree to the sale and release its liens upon payment of the agreed sale price. (Key Bank's Memorandum, p. 13). This argument is unavailing at the motion to dismiss stage, however, as it relies on facts and

12

documents outside the scope of the Complaint. Moreover, even if the language of the so-called "comfort letter" were part of the record, there would be nothing inconsistent (or unreasonable) in CBW's reliance on the Bank's promise to take CBW's fee off the top of the proceeds of the sale at the closing. In any event, whether reliance is reasonable is ordinarily a question of fact for a jury. See Grant v. John Hancock Mut. Life Ins. Co., 183 F. Supp. 2d 344, 370 (D. Mass. 2002). Therefore, Key Bank's request for dismissal of CBW's fraudulent misrepresentation claim must be denied.

### V. Key Bank Is Not Entitled To Dismissal Of CBW's Fraudulent Transfer Claim (Count VII)

CBW has adequately pled a claim against Key Bank for fraudulent transfer under M.G.L. c. 109A, § 5(a). The Bank claims that it held a valid security interest in the three TPG properties to be sold to Epoch, and that its receipt of any funds at the closing therefore could not constitute a fraudulent transfer of assets. Key Bank's argument fails, however, because it is unclear at this early stage and on this bare record whether TPG and the Freids fraudulently transferred to Key Bank sale proceeds above and beyond the amounts required to satisfy Key Bank's lien on TPG's properties. Indeed, CBW and later its counsel have requested a complete accounting of the sale proceeds, but to date none has been provided.[3]

Key Bank's second ground for attack on CBW's fraudulent transfer claim is that there is no evidence in the record to indicate that the debtor (TPG) had the "actual intent" to defraud CBW. Suffice it to say that a determination of TPG's state of mind requires findings of fact and

---

[3] On October 1, 2004, CBW's counsel received from TPG's counsel a copy of a purported "closing statement." The closing statement, however, shows nothing more than the sum of money allegedly disbursed to Key Bank. This is insufficient to demonstrate that all of the funds disbursed to the Bank were subject to a pre-existing security interest, and therefore could not have been transferred fraudulently. CBW further notes that on or about June 2, 2004, CBW was notified by Barry Freid that Key Bank was factoring into its negotiations with TPG a $1,000,000 "broker fee". If all or any part of this "broker's fee" was paid over to Key, these amounts clearly would not be protected from a fraudulent transfer claim.

credibility determinations -- issues appropriate for determination by a jury and, therefore, inappropriate on a motion to dismiss.  See Evans v. Certified Engineering & Testing Co., 834 F. Supp. 488, 499 (D. Mass. 1993) ("where motive, intent, or other state of mind questions are at issue, summary judgment is often inappropriate").  Even if CBW did have any burden at this early stage of the case to make a showing of actual intent, moreover, the allegations of CBW's Complaint, including in particular TPG's efforts following the closing to "renegotiate" CBW's fee after having promised to pay the fee in full immediately prior to the closing, certainly would satisfy any such pleading requirement.  Based on the foregoing, Key Bank's request for dismissal of CBW's fraudulent transfer claim must be denied.

**VI.   Key Bank Is Not Entitled To Dismissal of CBW's Civil Conspiracy/ Concert Of Action Claim (Count V).**

CBW has adequately pled a claim against Key Bank for civil conspiracy.  Specifically, CBW has alleged that all of the defendants, including Key Bank, were engaged in a common design or an agreement to do a wrongful act, i.e., to deprive CBW of its fee at the closing.  See Complaint, ¶ 137; see also Aetna Cas. Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994).  CBW has further alleged that the defendants, including Key Bank, engaged in tortious acts (fraudulent misrepresentations) in furtherance of the defendants' agreement to defraud CBW out of its fee at the closing.  See id.; Complaint, ¶¶ 137, 138.

The basis of Key Bank's request for dismissal of CBW's civil conspiracy claim is that the Bank, as a priority secured lienholder, cannot be accused of engaging in conspiracy to receive monies it is rightfully entitled to at the closing in satisfaction of that priority secured lien.  However, Key Bank fails to comprehend the nature and scope of CBW's conspiracy claim against the Bank.  Separate and apart from the issue of whether Key Bank's secured lien was

14

satisfied at the closing, CBW alleges that the Bank and the other defendants conspired to deprive CBW of its fee at the closing. CBW properly has pled the elements of a civil conspiracy claim against the Bank, and is entitled to determine through discovery whether Key Bank and the other defendants reached an agreement to close the transaction, even if it meant depriving CBW of its fee, and whether Key Bank, in furtherance of that scheme, made false promises to CBW to forestall any action by CBW that would have derailed the closing. See Aetna Cas. Sur. Co., 43 F.3d at 1564. Therefore, Key Bank's request for dismissal of CBW's conspiracy claim should be denied.

**VII.   Key Bank Is Not Entitled to Dismissal of CBW's Claim For Aiding And Abetting (Count VIII).**

CBW's complaint provides numerous allegations in support of its claim that Key Bank provided substantial assistance and/or encouragement to co-defendants TPG and the Freids in their efforts to evade their obligations under the Engagement Letter. For example, in May, 2004, CBW contacted Barry Freid in an attempt to obtain a copy of the draft P&S Agreement as was CBW's right under the Engagement Letter. Key Bank was apprised of CBW's interest in obtaining a copy of the draft P&S Agreement and of Barry Freid's refusal to provide one. On behalf of Key Bank, Mr. Dunham urged CBW not to insist on obtaining a copy of the P&S Agreement to avoid any dispute that might unsettle TPG and impact the Epoch sale. To ensure that CBW would not press its rights under the Engagement Letter to demand a copy of the P&S Agreement, Key Bank fraudulently misrepresented to CBW that it would safeguard CBW's economic interests at the closing. See Complaint, ¶¶ 46-49.

Further, on July 14, 2004, TPG requested that CBW reduce the fee it was entitled to under the Engagement Letter. In support of TPG's request, Key Bank fraudulently

15

misrepresented that CBW's fee would come straight off the top of the sales proceeds at the closing.  See Complaint, ¶¶ 68, 69.  On September 2, 2004, CBW again attempted to exercise its right under the Engagement Letter to review a final draft of the P&S Agreement.  To assist TPG and the Freids in stonewalling CBW, Key Bank instructed CBW not to "upset" TPG and the Freids by requesting the P&S Agreement, again fraudulently misrepresenting that the Bank would ensure that CBW was paid its fee at the closing.  See Complaint, ¶ 77.

Finally, to ensure that CBW would not have an opportunity to secure its fee at the closing, Key Bank made repeated fraudulent misrepresentations in the days and weeks leading up to the closing on October 1, 2004 to the effect that the Bank would take steps to protect CBW's fee, including a representation that CBW's fee was on the closing statement.  See Complaint, ¶¶ 85, 91.  In reliance on these misrepresentations, CBW did not attend the closing of the transaction and did not take such other steps as were available for it to protect its fee.  See Complaint, ¶¶ 90-91.

Based on the foregoing, CBW has clearly pled the elements required to state a cause of action against Key Bank for aiding and abetting TPG and the Freids in their effort to deprive CBW of its fee.

**VIII.   Conclusion**

For the foregoing reasons and based on the foregoing authorities, plaintiff Casas, Benjamin & White, LLC respectfully requests that this Court deny defendant Key Corporate Capital, Inc.'s motion to dismiss.

                                            CASAS, BENJAMIN & WHITE, LLC

                                            By its attorneys,

                                            /s/ Michael R. Bernardo
                                            Thomas E. Peisch / BBO #393260
                                            Erin K. Higgins / BBO #559510
                                            Michael R. Bernardo / BBO #648310
                                            CONN KAVANAUGH ROSENTHAL PEISCH
                                              & FORD, LLP
                                            Ten Post Office Square
                                            Boston, MA  02109
                                            (617) 482-8200

                                            /s/ Richard P. Steinken (mrb)
                                            Richard P. Steinken, *pro hac vice*
                                            Jeff J. Marwil, *pro hac vice*
                                            David W. Austin, *pro hac vice*
                                            JENNER & BLOCK, LLP
                                            One IBM Plaza
                                            Chicago,IL  60611-7603

Dated: January 7, 2005
       Boston, Massachusetts

217335.1