**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CASAS, BENJAMIN & WHITE, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04-12333-MEL |
| ) | |
| THE POINTE GROUP, INC., a ) | |
| Massachusetts corporation d/b/a The Point ) | |
| Group Healthcare and Senior Living; ) | |
| GERALD S. FRIED; BARRY FRIED; and ) | |
| KEY CORPORATE CAPITAL, INC. ) | |
| ) | |
| Defendants. ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND FOR ATTACHMENT OF REAL ESTATE**

Plaintiff Casas, Benjamin & White LLC (hereinafter, "Plaintiff" or "CBW") respectfully submits this reply memorandum in support of its motion for preliminary injunction and for attachment of real estate owned by The Pointe Group, Inc., d/b/a The Pointe Group Healthcare and Senior Living ("TPG"), Gerald Freid, and Barry Freid (hereinafter "Defendants"). CBW is entitled to the relief sought in its motion because: (1) the contract on which CBW seeks to recover is unambiguous regarding CBW's entitlement to its $1,033,000 fee, and TPG's argument that the contract should be deemed void as against public policy is entirely without merit; (2) CBW has met its burden of showing irreparable injury, and Defendants have not alleged that they will suffer <u>any</u> harm if the requested injunction is granted; (3) CBW has <u>not</u> received the accounting it seeks in its motion, and Defendants have not contested CBW's entitlement to such an accounting; and (4) CBW has met its burden of showing that it is entitled to a general writ of attachment against any real estate owned by TPG, Gerald Freid, and Barry Fried.

## I. TPG'S ARGUMENT THAT ITS CONTRACT WITH CBW IS VOID AS AGAINST PUBLIC POLICY IS ENTIRELY WITHOUT MERIT.

Raising an argument that can fairly be characterized as the last resort for a party in breach, TPG claims that even though it: (a) negotiated and entered into an unambiguous written agreement for CBW to provide investment banking services in connection with the sale or refinancing of TPG's facilities; (b) used and benefited from those services; and (c) repeatedly promised CBW, up through and including the date of the closing, that TPG would pay CBW its agreed fee, CBW should receive nothing for its work because the contract is void as against "public policy."  This argument should be summarily rejected, as TPG can point to no Massachusetts authority for the proposition that an investment advisor like CBW needs a Massachusetts real estate broker's license to provide investment services in connection with the sale of commercial assets.

TPG claims that its breach of contract is excusable under Turnpike Motors, Inc. v. Newbury Group, Inc., 403 Mass. 291, 528 N.E.2d 1176 (1988) ("Turnpike Motors I").  TPG misstates the facts and holding of this decision.  In Turnpike Motors I, a Massachusetts Superior Court judge entered summary judgment against a broker seeking commissions payable on the sale of two automobile dealerships.  The broker appealed, arguing that it was entitled at least to a commission on the sale prices of the personal property involved in each transaction, and further arguing that the trial court had erred in entering summary judgment on its detrimental reliance claim.  The Supreme Judicial Court expressly noted that due to the nature of the claims on appeal, the issue of whether the legislature intended for the real estate licensing statute, G.L. c. 112, § 87RR, to apply to commercial transactions was not before it.  Id. at 293 & n. 5, 528 N.E. 2d at 1177.

TPG, therefore, has cited no persuasive Massachusetts authority for its outrageous claim that it owes CBW nothing for its many months of service. Indeed, in Turnpike Motors I, the only case cited by TPG, the Supreme Judicial Court ultimately held that the broker would be entitled to the full amount of its commission, aside from the issue of whether the real estate licensing statute applied to commercial sales, if the broker could demonstrate that it detrimentally had relied on misrepresentations made by the sellers. 403 Mass. at 295-95, 528 N.E. 2d at 1178-79; see also Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 125-26, 596 N.E.2d 989, 993 (1992) ("Turnpike Motors II") (in subsequent appeal following remand, Supreme Judicial Court reversed entry of JNOV on broker's estoppel claim, holding that jury had been warranted in concluding that broker reasonably had relied on sellers' representations that commission would be paid).

Here, CBW has brought both detrimental reliance and unjust enrichment claims against TPG and the Freids, premised on CBW's allegations, as verified in Mr. Caine's affidavit, that TPG and its agents, including Gerald and Barry Freid, told CBW on numerous occasions that it would be paid for its services. CBW also has made a fraudulent misrepresentation claim against TPG and both Freids premised on these same misrepresentations. Thus, even if this Court were to find that CBW had not established a likelihood of success on its breach of contract claim against TPG, the facts set forth in CBW's complaint, as verified by Mr. Caine, are more than sufficient to show a likelihood of success on CBW's fraudulent misrepresentation, detrimental reliance, unjust enrichment, and Chapter 93A claims.

## II. THE BALANCE OF HARMS WEIGHS HEAVILY IN FAVOR OF GRANTING THE REQUESTED INJUNCTIVE RELIEF.

The case quoted by TPG in support of its argument on irreparable harm amply demonstrates CBW's entitlement to an injunction here. In Teradyne, Inc. v. Mostek Corp., 797

F.2d 43 (1st Cir. 1986), the plaintiff sought to enjoin a defendant from dissipating money received from a sale of the defendant's assets. The First Circuit affirmed the federal district court's grant of a preliminary injunction, holding:

> Although Mostek <u>realized assets far exceeding Teradyne's claims</u> when the sale of its assets occurred, the record show that <u>those assets were being used to pay off creditors' claims</u> and wind down the expenses in what Mostek itself described as an "orderly liquidation process." Further, the amount Mostek received for its assets was stated to be subject to <u>a number of unspecified offsets and debits</u> and <u>no assurances were given that Mostek would be able to pay a Teradyne judgment</u>.

<u>Id.</u> at 53 (emphasis added). The record before this Court demonstrates that the parties here are in a virtually identical situation. As set forth in the closing statement attached to Attorney Gordon's affidavit, the sale of TPG's assets produced monies, over and above the amounts due to TPG's lender, sufficient to pay CBW's fee.[1] These excess monies, however, are allocated on the schedule of "closing costs and disbursements" to pay other creditors and to set up various "escrow funds," the purposes of which are not fully described. Further, just as in <u>Teradyne</u>, at the same time TPG set aside money to pay its other creditors, TPG's counsel was attempting to force CBW to renegotiate its fee by claiming that TPG had no money to pay CBW's bill. <u>See</u> Caine Aff., Ex. K; Gordon Aff., Ex. D.

Thus, applying the reasoning of <u>Teradyne</u> to the facts of this case, CBW has met its burden of demonstrating irreparable harm. As Defendants do not claim that imposition of the requested injunction would cause them <u>any</u> harm, this Court should find that the balance of harms weighs heavily in CBW's favor.

---

[1] In fact, the schedule of closing costs and disbursements, attached as Schedule 7 to the closing statement, includes a line item for CBW's fee, but it appears that the amount payable either was deleted or whited out. <u>See</u> Gordon Affidavit, Ex. 4.

4

### III. CBW HAS NOT RECEIVED AN ACCOUNTING OF THE DISTRIBUTION OF THE SALES PROCEEDS.

Defendants do not contest CBW's entitlement to an accounting of the distribution of the sales proceeds from the October 1, 2004 transaction, but assert that CBW already has received such an accounting.  In support of this erroneous contention, Defendants point to the documents attached to Attorney Gordon's October 1, 2004 e-mail to Ed Casas and Matt Caine at CBW.  See Gordon Aff., Ex. 4.  These documents, however, fall far short of the requested accounting.  The closing statement confirms that Epoch paid $31,950,000 for the three facilities.  All of the defendants, including Key Bank, had assured CBW that its agreed fee of $1,033,000 (which included a small amount for unreimbursed expenses) would be paid "off the top" from this amount before any other disbursements were made.   Nevertheless, the schedules to the closing statement reflect that no monies were disbursed to CBW, and that instead, amounts were set aside as an "escrow for successor liability" ($162,400), a "general escrow" ($400,000), a "payment to settle Medicaid," ($869,055), a "neighbor legal fee" ($15,000), a "tenant reimbursement" ($1,434,634), and as the "Key Bank payoff" ($29,425,000).

Because it was prevented from attending the closing, CBW has no information as to the nature of and the necessity for the various "escrow accounts," nor does CBW know anything about the current location of the funds placed in those accounts, which rightfully belonged to CBW, the entity without which the transaction never would have occurred.  See Caine Aff., Ex. H (e-mail from TPG's counsel acknowledging CBW's key role in the transaction).  CBW also has no idea whether the other listed disbursements actually were made, whether and how the $300,000 deposit held by the escrow agent was disbursed, and whether the payoff to Key Bank included a broker fee that should have been subordinated to CBW's fee.

5

In sum, the closing statement and schedules attached to Attorney Gordon's affidavit only confirm what CBW already knew – that there were sufficient sales proceeds to satisfy TPG's obligation to CBW. CBW does not know to whom, and when, the sales proceeds ultimately were distributed. Because TPG does not contest CBW's entitlement to a detailed accounting of the ultimate distribution of the sales proceeds, this Court should order Defendants to file such an accounting promptly with the Court.

**IV.    CBW IS ENTITLED TO ISSUANCE OF A GENERAL WRIT OF ATTACHMENT.**

The thrust of TPG's argument in opposition to CBW's motion for issuance of a general writ of attachment appears to be that CBW has not made a compelling case as to the need for an attachment. This argument, however, misstates the requirements for issuance of such a writ. Pursuant to Mass. R. Civ. P. 4.1(c), a party seeking an attachment on real estate must show only that it has a reasonable likelihood of recovering a judgment in an amount equal to or greater than the amount of the requested attachment, exclusive of any liability insurance available to the defendant. Mass. R. Civ. P. 4.1(c)(2004). As set forth above, and in CBW's initial memorandum, CBW has more than a reasonable likelihood of recovering on one or more of its claims against TPG, and on one or more of its claims against the Freids. Moreover, the requested amount of the attachment ($1,033,000) certainly will be equal to or less than the amount of any judgment awarded against Defendants, as the floor for any damages award is the amount of CBW's fee, with the certainty of added prejudgment interest and the possibility of attorneys' fees and double or treble damages. Finally, Mr. Caine averred in his affidavit that he had no knowledge of any available insurance coverage, and TPG has not demurred on this point. Thus, CBW is entitled to issuance of the requested writ of attachment.

## V. CONCLUSION

For the reasons set forth in this reply brief, as well as in Plaintiff's initial memorandum, Plaintiff respectfully submits that the Court should grant its motion for preliminary injunction and for issuance of a general writ of attachment, and enter an Order in the form of the proposed order attached to plaintiff's motion.

CASAS, BENJAMIN & WHITE, LLC

By its attorneys,

/s/ Erin K. Higgins
Thomas E. Peisch / BBO #393260
Erin K. Higgins / BBO #559510
Michael R. Bernardo / BBO #648310
CONN KAVANAUGH ROSENTHAL PEISCH
 & FORD, LLP
Ten Post Office Square
Boston, MA  02109
(617) 482-8200

/s/ Richard P. Steinken (ekh)
Richard P. Steinken, admitted *pro hac vice*
Jeff J. Marwil, admitted *pro hac vice*
David W. Austin, admitted *pro hac vice*
JENNER & BLOCK, LLP
One IBM Plaza
Chicago, IL  60611-7603

Dated: January 6, 2005
          Boston, Massachusetts

217629.1