UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASAS, BENJAMIN & WHITE, LLC

    Plaintiff,

v.

THE POINTE GROUP, INC., a Massachusetts corporation d/b/a The Pointe Group Healthcare and Senior Living; GERALD S. FREID; BARRY FREID; KEY CORPORATE CAPITAL, INC.,

    Defendants.

Docket No: 1:04-CV-12333-MEL

## DEFENDANT KEY CORPORATE CAPITAL, INC.'S
## REPLY MEMORANDUM OF LAW

Defendant Key Corporate Capital, Inc. ("KeyBank") submits the following brief reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opposition") in order to clarify certain legal and factual inaccuracies.

Plaintiff's Opposition demonstrates just how frail its Complaint is. Plaintiff spends much of its efforts in its Opposition walking a tightrope trying to describe the basis of its suit against KeyBank. On the one hand, Plaintiff describes its Complaint as containing claims against KeyBank related to the various acts that KeyBank engaged in "all with the intent to deprive CBW of an agreed fee in excess of $1,000,000 due for services performed." Opposition at 1. At the same time Plaintiff contends that its claims against KeyBank are totally separate from and have nothing to do with its agreement with The Pointe Group. See Opposition at 2. This is despite the fact that Plaintiff seeks from KeyBank the exact amount that it claims is due it under

M117980.1

- 1 -

**EXHIBIT 1**

its contract with The Pointe Group. These theoretical accusations are necessary because Section 7 of the Massachusetts Statute of Frauds is fatal to its claims. In the end, the distinction attempted is one without a difference. CBW was not paid a broker's fee and is attempting, over the facts and the law, to shake down a party who was not responsible for paying it.

## I.   SECTION 7 OF THE STATUTE OF FRAUDS BARS PLAINTIFF'S QUASI-CONTRACTUAL CLAIMS

Despite its artful attempts to contend otherwise, at the end of the day, Plaintiff wants KeyBank to pay for the services that CBW rendered to The Pointe Group. This payment is for services it rendered in connection with finding a buyer for the various properties that were ultimately sold to Epoch. As such, Plaintiff wants KeyBank to pay a commission where there is no written agreement for KeyBank to do so. Section 7 of the Statute of Frauds clearly bars such claims.

The Plaintiff's dependence upon Nelson v. Energy Exchange Corp., 727 F. Supp. 59 (D. Mass. 1989), the only case relied upon by Plaintiff, is misplaced, as Nelson hardly allows it to maintain a claim for promissory estoppel against KeyBank. Not only is this case readily distinguishable both legally and factually, but it hardly stands for the proposition that Section 7 of the Statute of Frauds is inapplicable in the present case for the simple reason that Section 7 of the Statute of Fraud had not yet been enacted when the underlying facts occurred in Nelson.

In 1981, the plaintiff Nelson was employed by Crown Financial Corporation to act as a locator of owners of oil and gas properties who would be interested in tendering their properties to Energy Exchange Corporation ("EEC") in exchange for shares of stock. Id. at 60. Throughout 1981 and 1982 Nelson, in conjunction with others, worked on finding such owners of properties. Id. at 60-61. In 1982, a property owner who had been contacted by Nelson and others tendered

M117980.1

- 2 -

its property to EEC entitling Nelson to his commission. Id. at 61. Nelson brought suit alleging, inter alia, breach of contract based upon promissory estoppel against a variety of defendants, including DLJ. Id. at 61. DLJ was not the party that employed Nelson, but was alleged to be the real party driving the deal and was the party that purportedly agreed to make sure his commission was paid. Id. at 62. DLJ moved for summary judgment and the court denied the motion. Id. While normally the reasons why a party failed to assert a grounds to dismiss a claim would be little more than speculation, here this Court can be very confident that the denial of DLJ's summary judgment motion had nothing to do with the applicability of Section 7 to promissory estoppel claims like the one at the case at bar.

In 1985, the Massachusetts' Legislature enacted Section 7 of the Statute of Frauds with the express purpose of "discourag[ing] claims for commission based on conversation which persons heard differently or remembered differently." Alexander v. Berman, 29 Mass. App. Ct. 458, 462 (1990). This section of the Statute of Frauds did not affect contracts prior to its enactment in 1985, thus the commission agreement at issue in the Nelson case was not subject to the Statute of Frauds. See id. (noting that while the statute of frauds does not affect contracts made prior to its enactment, it does affect those entered into subsequent to its enactment). Thus, the Nelson case hardly supports Plaintiff's attempts to maintain quasi-contractual claims despite Section 7.

Plaintiff's attempts at distinguishing Cox v. Thorton Associates, Inc., 1998 Mass. Super. LEXIS 425, at *3 (Aug. 4, 1998), are similarly unpersuasive. In Cox, the individual seeking to recover his commission brought suit alleging breach of contract, quantum meruit and promissory estoppel claims. Id. at *4. Contrary to Plaintiff's contention, there was no stipulation by the parties in Cox that the Statute of Frauds applied – the only stipulation was that the plaintiff was

acting as a broker and that the agreement to pay his commission was not in writing. Id. at *5.[1] The court dismissed all three contractually-based claims, finding that Section 7 of the Statute of Frauds barred them despite the fact that Cox alleged that he had relied to his detriment on the defendant's statements that he would be paid. Id. at *8. Thus Cox stands on all fours with the Plaintiff's Complaint and similarly, this Court should dismiss Plaintiff's quasi-contractual claims as they are barred by the Statute of Frauds.

## II. PLAINTIFF'S FRAUDULENT TRANSFER CLAIM MUST BE DISMISSED

In response to KeyBank's Motion to Dismiss Plaintiff's fraudulent transfer claim, Plaintiff is left to hypothesize that facts may exist – although interestingly not in Plaintiff's Complaint – which prevent this Court from dismissing this claim at this stage. Such a contention is insufficient to defeat the dismissal of this claim.

As pled by Plaintiff in its Complaint:

> KeyBank was the senior secured lender on loans to Defendant TPG for the Combined Operations, and in the summer of 2003 the amount of indebtedness to KeyBank exceeded the market valuation of the Combined Operations. On information and belief, Defendant KeyBank was threatening to foreclose on its loans to TPG.

Complaint at ¶ 11. The rest of Plaintiff's Complaint tells a tale of a continual reduction in the purchase price of the Combined Operations and repeated discussions regarding the reduction of its fees as well as reductions to the amount due to KeyBank. See Complaint at ¶¶ 38-83. This includes the allegation that:

> On information and belief, Epoch wanted certain assurances in order to go forward with the Transaction <u>because it realized that the purchase price would be insufficient to cover the full extent of Defendant TPG's obligations to</u>

---

[1] Similarly, Plaintiff here does not dispute it was acting as a broker or finder under the statute, nor is there any claim that it had any written agreement with KeyBank.

> Defendant Key Bank. Epoch, therefore, wanted written assurances that Defendant Key Bank would agree to the Transaction and release its liens on the Combined Operations upon conclusion of the Transaction.

Complaint at ¶ 58 (emphasis added). Now, suddenly, when faced with a Motion to Dismiss, and in direct contrast to the allegations in its Complaint, Plaintiff for the first time contends that because The Pointe Group may have transferred funds beyond the amount of KeyBank's liens, its fraudulent transfer claim must be allowed to proceed. See Opposition at 13. The only "fact" supporting this claim is found not in Plaintiff's Complaint but in a footnote in its Opposition. See Opposition at 13, n.3 (reciting a purported conversation regarding KeyBank receiving a fee in addition to having its loans repaid). Of course, it is axiomatic that a complaint cannot be amended by a brief in opposition to a motion to dismiss. See McGrath v. MacDonald, 853 F. Supp. 1, 3 (D. Mass. 1994) (rejecting plaintiff's attempt to support claim by alleging new facts in opposition to motion to dismiss and stating that consideration of new facts would be inappropriate).[2] Thus, this Court should disregard these "new" factual assertions. As presented in KeyBank's Memorandum in Support of its Motion to Dismiss, Plaintiff has failed to state a cause of action in its Complaint, see Memo. of Law at 13-15, and this Court should reject this new desperate attempt to avoid dismissal.

---

[2] Of course, this is in direct contrast to the comfort letter given by KeyBank to Epoch stating that it would release its liens on the Combined Operations at the closing which renders any reliance on any alleged misrepresentations by KeyBank unreasonable. See Memo. of Law at 12-13. The comfort letter was expressly referenced by Plaintiff in its Complaint, see Complaint at ¶¶ 58-60, and as such, it can be considered by this Court in ruling on KeyBank's Motion to Dismiss without converting the Motion to Dismiss into one for Summary Judgment. See, e.g., Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

M117980.1

### III. PLAINTIFF'S FRAUDULENT MISREPRESENTATION CLAIM SIMILARLY MUST BE DISMISSED

In order to survive a motion to dismiss and comport with the requirements of Rule 9, it is not enough for Plaintiff to merely allege the "time, place and content" of alleged fraudulent misrepresentations by KeyBank. The First Circuit has held that Rule 9(b) also requires a plaintiff to allege facts to support its belief that the defendant acted with fraudulent intent and that allegations based upon information and belief are insufficient. See Whelan v. Intergraph Corp., 889 F. Supp. 15, 20 (D. Mass. 1995); Memo. of Law at 11-13. Here, Plaintiff offers nothing more than classic fraud in hindsight – CBW did not get paid and therefore every statement made by KeyBank at any time regarding its fee must have been false when made. A court must require a plaintiff to offer more than this to survive a motion to dismiss or else plaintiff will be allowed "to file suit first, and subsequently search for a cause of action." Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985).

Many, if not all, of the alleged misrepresentations by KeyBank were no more than general statements allegedly made by KeyBank that, when boiled down to their essence, were no more than it would do what it could to make sure that CBW was paid. These are comparable to the statements found non-actionable in Whelan v. Intergraph Corp., 889 F. Supp. 15 (D. Mass. 1995). In Whelan, the plaintiff brought a fraudulent misrepresentation claim against the defendant alleging that the defendant made fraudulent misrepresentations when it convinced him to leave his job and start working for defendant. Id. at 19-21. Among these representations were promises that he would be employed by the defendant on a long term basis. Id. at 18. Five months after starting work for the defendant, the plaintiff was terminated. Id. The court dismissed the fraudulent misrepresentation claim as the plaintiff had not alleged any specific

M117980.1

Dated: January 19, 2005

Respectfully submitted,

KEY CORPORATE CAPITAL, INC.

By its attorneys

NIXON PEABODY LLP

/s/W. Scott O'Connell
W. Scott O'Connell (#559669)
Courtney Worcester (#643180)
889 Elm Street
Manchester, NH 03101
(603) 628-4000
soconnell@nixonpeabody.com
cworcester@nixonpeabody.com

M117980.1

- 8 -