# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CASAS, BENJAMIN & WHITE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-12333-MEL |
| vs. | ) | |
| | ) | |
| THE POINTE GROUP, INC., a | ) | |
| Massachusetts corporation d/b/a The Pointe | ) | |
| Group Healthcare and Senior Living; | ) | |
| GERALD S. FREID; BARRY FREID; and | ) | |
| KEY CORPORATE CAPITAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF CASAS, BENJAMIN & WHITE, LLC'S
## INITIAL AUTOMATIC DISCLOSURE

Pursuant to Fed.R.Civ.P. 26(a)(1) and Local Rule 26.2(A), Plaintiff Casas, Benjamin &

White, LLC ("CBW") makes the following initial automatic disclosure.

## GENERAL OBJECTIONS & LIMITATIONS

1.      CBW submits its initial disclosure without prejudice to any of its rights and

without any admission of liability.

2.      CBW submits its initial disclosure without waiving its right to object to any

discovery requests or deposition notices issued by any party.

3.      CBW submits its initial disclosure without waiving any applicable privilege or

immunity.

4.      CBW submits its initial disclosure without waiving its right to seek protective

orders to preserve the confidentiality of any information, documents, or identity of persons.

5.      CBW submits its initial disclosure without waiving its right to attempt to quash or

limit depositions of any of the persons disclosed herein.

6.    CBW submits its initial disclosure without admitting to the relevance of any information disclosed herein.

7.    CBW reserves its right to supplement this initial disclosure as additional information may become known to it.

## A.    IDENTITY OF PERSONS WHO MAY POSSESS DISCOVERABLE INFORMATION

CBW does not have sufficient information to identify individuals who may have discoverable information regarding factual matters at issue in this proceeding, other than the following:

1.    Dr. Edward R. Casas, Senior Managing Director, CBW, 5215 Old Orchard Rd., Suite 850, Skokie, Illinois 60077.  Dr. Casas is expected to have knowledge of the general business and operations of CBW; the relationships and obligations between and among the named parties in the above-captioned complaint; the relationships and obligations between and among the named parties and Epoch Senior Living ("Epoch"), the buyer in the transaction which is at the heart of this action (the "Transaction"); communications between and among the named parties and Epoch; certain documents reflecting communications between and among the named parties and Epoch; the work done by CBW to fulfill its obligations under the Engagement Letter; and the damages caused by defendants' conduct.

2.    Mr. Matthew Caine, Principal, CBW, 3414 Peachtree Rd., Suite 450, Atlanta, Georgia 30236.  Mr. Caine is expected to have knowledge of the general business and operations of CBW; the relationships and obligations between and among the named parties in the above-captioned complaint; the relationships and obligations

between and among the named parties and Epoch; communications between and among the named parties and Epoch; certain documents reflecting communications between and among the named parties and Epoch; the work done by CBW to fulfill its obligations under the Engagement Letter; and the damages caused by defendants' conduct.

3.    Mr. Matthew Ryan, formerly with CBW, now employed at Houlihan Lokey Howard & Zukin, 123 North Wacker Drive, 4th Floor, Chicago, Illinois.  Mr. Ryan is expected to have knowledge of the general business and operations of CBW; the relationships and obligations between and among the named parties in the above-captioned complaint; the relationships and obligations between and among the named parties and Epoch; communications between and among the named parties and Epoch; the work done by CBW to fulfill its obligations under the Engagement Letter; and certain documents reflecting communications between and among the named parties and Epoch.

4.    Christopher Meyers, CBW, 5215 Old Orchard Rd., Suite 850, Skokie, Illinois 60077.  Mr. Meyers is expected to have knowledge of the general business and operations of CBW; communications between and among the named parties and Epoch; the work done by CBW to fulfill its obligations under the Engagement Letter; and certain documents reflecting communications between and among the named parties and Epoch.

5.    Ms. Kelley White, 4061 East Linden Lane, Greenwood Village, Colorado.  Ms. White is expected to have knowledge regarding the negotiations leading up to

execution of the Engagement Letter, and the initial restructuring services provided by CBW under the Engagement Letter.

6.  Mr. Steven C. Dunham, Vice President, Key Corporate Capital, Inc. ("Key Bank").  Mr. Dunham is expected to have knowledge of the general business and operations of Key Bank; the terms of TPG's indebtedness to Key Bank and the satisfaction of that indebtedness as a result of the Transaction; the relationships and obligations between and among the named parties in the above-captioned complaint; the relationships and obligations between and among the named parties and Epoch; communications between and among the named parties and Epoch; certain documents reflecting communications between and among the named parties and Epoch; the disposition of proceeds at the closing on the Transaction; and the proceeds received by Key Bank following the closing.

7.  Richard Mirada, Key Corporate Capital, Inc.  Mr. Mirada is expected to have knowledge of the relationship between Key Bank and TPG; the terms of TPG's indebtedness to Key Bank and the satisfaction of that indebtedness as a result of the Transaction; communications between and among the named parties and Epoch; the disposition of proceeds at the closing on the Transaction; and the proceeds received by Key Bank following the closing.

8.  Madeline Kaufman, Esq., Nolen & Heller, 39 Pearl Street, Albany, New York.  Ms. Kaufman is expected to have knowledge of the general business and operations of Key Bank; the relationships and obligations between and among the named parties in the above-captioned complaint; the relationships and obligations between and among the named parties and Epoch; communications between and

4

among the named parties and Epoch; certain documents reflecting communications between and among the named parties and Epoch; the disposition of proceeds at the closing on the Transaction; and the proceeds received by Key Bank following the closing.

9.     Mr. Gerald S. Freid, Vice President, The Pointe Group, Inc. d/b/a "The Pointe Group Healthcare and Senior Living" ("The Pointe Group"), Chestnut Hill, Massachusetts. Mr. Freid is expected to have knowledge of the general business and operations of The Pointe Group, including all of its subsidiary and affiliated companies; the ownership of The Pointe Group and its subsidiary and affiliated companies, including the companies that purportedly owned the facilities sold as part of the Transaction; the relationships and obligations between and among the named parties in the above-captioned complaint; the relationships and obligations between and among the named parties and Epoch; communications between and among the named parties and Epoch; certain documents reflecting communications between and among the named parties and Epoch; the work done by CBW in fulfillment of its obligations under the Engagement Letter; and the disposition of the sale proceeds at and following the closing on the Transaction.

10.     Mr. Barry Freid, Chief Operating Officer and Treasurer, The Pointe Group, Chestnut Hill, Massachusetts. Mr. Freid is expected to have knowledge of the general business and operations of The Pointe Group, including all of its subsidiary and affiliated companies; the ownership of The Pointe Group and its subsidiary and affiliated companies, including the companies that purportedly owned the facilities sold as part of the Transaction; the relationships and

obligations between and among the named parties in the above-captioned complaint; the relationships and obligations between and among the named parties and Epoch; communications between and among the named parties and Epoch; certain documents reflecting communications between and among the named parties and Epoch; the work done by CBW in fulfillment of its obligations under the Engagement Letter; and the disposition of the sale proceeds at and following the closing on the Transaction.

11.    Stephen F. Gordon, Esq., Gordon Haley, LLP, 101 Federal Street, Boston, Massachusetts, 02110 (617) 261-0100.  As counsel for The Pointe Group, Gerald Fried, and Barry Freid at all times relevant to the events and circumstances giving rise to the above-captioned complaint, Mr. Gordon is expected to be knowledgeable regarding the general business and operations of The Pointe Group, including all of its subsidiary and affiliated companies; the relationships and obligations between and among the named parties in the above-captioned complaint; the relationships and obligations between and among the named parties and Epoch; communications between and among the named parties and Epoch; certain documents reflecting communications between and among the named parties and Epoch; the work done by CBW in fulfillment of its obligations under the Engagement Letter; and the disposition of the sale proceeds at and following the closing on the Transaction.

12.    Georgia Freid, 112 Cynthia Road, Newton Centre, Massachusetts.  Mrs. Freid, the mother of Gerald and Barry Freid and the widow of William Freid, is expected to be knowledgeable regarding the general business and operations of The Pointe

Group, including all of its subsidiary and affiliated companies; the ownership of The Pointe Group and its subsidiary and affiliated companies, including the companies that purportedly owned the facilities sold as part of the Transaction; communications between and among Gerald Fried, Barry Freid, and Stephen Gordon concerning the Transaction and CBW; and the disposition of the sale proceeds at or following the closing on the Transaction.

13. Mark Tobin, The Pointe Group, Chestnut Hill, Massachusetts. Mr. Tobin is expected to have knowledge of the general business and operations of The Pointe Group, including all of its subsidiary and affiliated companies; the ownership of The Pointe Group and its subsidiary and affiliated companies, including the companies that purportedly owned the facilities sold as part of the Transaction; the relationships and obligations between and among the named parties in the above-captioned complaint; the relationships and obligations between and among the named parties and Epoch; communications between and among the named parties and Epoch; certain documents reflecting communications between and among the named parties and Epoch; the work done by CBW in fulfillment of its obligations under the Engagement Letter; and the disposition of the sale proceeds at and following the closing on the Transaction.

14. Frank Barker, The Pointe Group, Chestnut Hill, Massachusetts. Mr. Barker is expected to have knowledge of the general business and operations of The Pointe Group, including all of its subsidiary and affiliated companies; the ownership of The Pointe Group and its subsidiary and affiliated companies, including the companies that purportedly owned the facilities sold as part of the Transaction;

the relationships and obligations between and among the named parties in the
above-captioned complaint; the relationships and obligations between and among
the named parties and Epoch; communications between and among the named
parties and Epoch; certain documents reflecting communications between and
among the named parties and Epoch; the work done by CBW in fulfillment of its
obligations under the Engagement Letter; and the disposition of the sale proceeds
at and following the closing on the Transaction.

15.     John C. McCullough, Esq., McCullough Stievater Polvere, LLP, 121 Main Street,
Charlestown, Massachusetts.  Mr. McCullough is expected to have knowledge
concerning the relationships and obligations between and among the named
parties in the above-captioned complaint; the relationships and obligations
between and among the named parties and Epoch; communications between and
among the named parties and Epoch; certain documents reflecting
communications between and among the named parties and Epoch; the
preparation and distribution of documents in connection with the closing on the
Transaction; and the disposition of the sale proceeds at and following the closing
on the Transaction.

16.     Mary Cole, McCullough Stievater Polvere, LLP, 121 Main Street, Charlestown,
Massachusetts.  Ms. Cole is expected to have knowledge concerning
communications between and among the named parties and Epoch in advance of
the closing on the Transaction; the preparation and distribution of documents in
connection with the closing on the Transaction; and the disposition of the sale
proceeds at and following the closing on the Transaction.

17.     Laurence Gerber, Chief Executive Officer, Epoch.  Mr. Gerber is expected to have knowledge of the general business and operations of Epoch; the relationships and obligations between and among the named parties in the above-captioned complaint; the relationships and obligations between and among the named parties and Epoch; communications between and among the named parties and Epoch; certain documents reflecting communications between and among the named parties and Epoch; the preparation and distribution of documents in connection with the closing on the Transaction; and the disposition of the sale proceeds at and following the closing on the Transaction, including disbursements relating to the "tenant reimbursement" identified on Schedule 7 to the closing statement.

18.     Andrew C. Sucoff, Esq., Goodwin Proctor, LLP, Exchange Place, Boston, Massachusetts 02109.  As counsel for Epoch at all times relevant to the events and circumstances giving rise to the above-captioned complaint, Mr. Sucoff is expected to have knowledge of the general business and operations of Epoch; the relationships and obligations between and among the named parties in the above-captioned complaint; the relationships and obligations between and among the named parties and Epoch; communications between and among the named parties and Epoch; certain documents reflecting communications between and among the named parties and Epoch; the preparation and distribution of documents in connection with the closing on the Transaction; and the disposition of the sale proceeds at and following the closing on the Transaction, including disbursements relating to the "tenant reimbursement" identified on Schedule 7 to the closing

statement and any disbursements to Medicaid, also as reflected on Schedule 7 to the closing statement.

19.    Gary M. Lucia, Jr., Mellon Bank of New England, N.A., One Boston Place, Boston, Massachusetts. Mr. Lucia is expected to be knowledgeable regarding the amounts escrowed in advance of, during, and following the closing on the Transaction, and any disbursements from those escrows.

**B.    THE FOLLOWING CATEGORIES OF DOCUMENTS, DATA AND OTHER EVIDENCE MAY BE SUPPORTIVE OF CBW'S CLAIMS AND DEFENSES IN THIS CASE**

1.    Engagement Letter between The Pointe Group and CBW, dated September 4, 2003.

2.    Indemnification Agreement between The Pointe Group and CBW, dated September 4, 2003.

3.    Revised written timeline devised by Key Bank, CBW and The Pointe Group in or around December, 2003, which governed the timeline for the business solicitation process.

4.    Written amendment to the Engagement Letter, dated December 20, 2003.

5.    Documents submitted by TPG to CBW in connection with the Engagement.

6.    Documents prepared or generated by CBW in connection with the Engagement, including but not limited to the documents identified in Matthew Caine's December 20, 2004 Affidavit.

7.    Letters of Interest from parties solicited by CBW, indicating interest in either acquiring or refinancing the TPG properties at issue in this action.

8.    Letters of Intent from parties solicited by CBW.

9.    Copies of checks received by CBW from TPG.

10.   Purchase & Sale Agreement (and exhibit schedules and other related documents) between The Pointe Group and Epoch.

11.   CBW's invoice for services provided pursuant to the Engagement Letter, dated September 29, 2004.

12.   Closing Statement, including exhibits and related closing documents.

13.   Any documents in the possession, custody or control of Key Bank, CBW, Epoch, Gerald and Barry Freid, Stephen Gordon, Gordon Haley, LLP, Goodwin Proctor, LLP, McCullough Stievator Polvere, LLP, The Pointe Group, Inc., and/or Mellon Bank concerning the Transaction, including correspondence, agreements, electronic messages, spreadsheets, statements, exhibits, schedules, handwritten notes, invoices, and documents evidencing receipt or disbursements of proceeds from the Transaction.

## C.    DAMAGES

CBW seeks damages of $1,033,030.46, which is the amount of its unpaid September 29, 2004 invoice for services provided pursuant to the Engagement Letter, plus statutory interest. CBW also seeks its costs and attorney's fees for the defendants' unfair or deceptive acts or practices in violation of M.G.L. c. 93A, §§ 2 and 11, and double or treble damages for the defendants' willful conduct in engaging in those unfair or deceptive acts or practices.

## D.    INSURANCE AGREEMENTS

CBW submits that it is insured under a policy which may provide coverage with regard to any judgment that may enter against it on The Pointe Group's counterclaim in this matter.

## CONCLUSION

Plaintiff Casas, Benjamin & White, LLC reserves the right to modify, amend, or supplement the statements set forth herein as it continues its investigation of matters relevant to the claims and causes of action at issue in this proceeding.

CASAS, BENJAMIN & WHITE, LLC

By its attorneys,

/s/ Erin K. Higgins
Thomas E. Peisch (BBO# 393260)
Erin E. Higgins (BBO# 559510)
Michael R. Bernardo (BBO# 648310)
CONN KAVANAUGH ROSENTHAL
  PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA  02109
(617) 482-8200


/s/ Richard P. Steinken (ekh)
Richard P. Steinken, admitted *pro hac vice*
Jeff J. Marwil, admitted *pro hac vice*
David W. Austin, admitted *pro hac vice*
JENNER & BLOCK, LLP
One IBM Plaza
Chicago, IL  60611-7603

Dated: January 21, 2005
       Boston, Massachusetts

217722.1