# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CASAS, BENJAMIN & WHITE, LLC,   )
                                     )
      Plaintiff,                  )
                                     )     No. 04-12333-MEL
           vs.                 )
                                     )
THE POINTE GROUP, INC., a          )
Massachusetts corporation d/b/a The Pointe  )
Group Healthcare and Senior Living;     )
GERALD S. FREID; BARRY FREID; and  )
KEY CORPORATE CAPITAL, INC.,     )
                                   )
      Defendants.            )

## MOTION OF PLAINTIFF, CASAS, BENJAMIN & WHITE, LLC, TO COMPEL SUPPLEMENTAL PRODUCTION OF DOCUMENTS FROM THE POINTE GROUP, INC.

The plaintiff, Casas, Benjamin & White, LLC ("CBW"), moves pursuant to Rule 37

(a)(2)(B) of the Federal Rules of Civil Procedure for an order requiring defendant, The Pointe

Group, Inc. ("TPG"), to make a supplemental production of documents in response to CBW's

First Request for Production of Documents. In support of this motion, CBW submits a

Certificate of Compliance with Rules 7.1 and 37.1 of the Local Rules of the U.S. District Court

for the District of Massachusetts, and further states as follows.

This case is brought against TPG, Barry and Gerald Freid, and Key Bank (hereinafter,

collectively, "Defendants") to recover money damages in excess of one million dollars that CBW

suffered because it was never paid for services CBW performed for the benefit of Defendants.

Specifically, TPG and the Freids retained CBW to provide certain investment banking services in

connection with the sale or refinance of certain nursing homes and assisted living facilities, and

agreed to pay CBW a percentage of the value of any transactions consummated in connection

with the sale or refinance of those facilities. After CBW performed all of its obligations under

the parties' contract, and the facilities were in fact sold, Defendants wrongfully failed and refused to pay CBW's contracted-for fee, and instead retained sale proceeds that should have been paid to CBW.

CBW alleges that TPG breached a contract with CBW, breached the implied covenant of good faith and fair dealing, that the Freids aided and abetted CBW's misconduct, and that all Defendants were unjustly enriched by the benefits that they wrongfully derived from CBW's services, and engaged in fraudulent misrepresentation, civil conspiracy, and violations of M.G.L. c. 93A. CBW seeks recovery of actual damages, double or treble damages, costs and attorneys' fees by virtue of Defendants' willful or knowing, unfair and/or deceptive acts.

On January 27, 2005, CBW served its First Request for Production of Documents on TPG. A true and accurate copy of this request for production is attached hereto at Tab A. TPG responded to CBW's request on February 28, 2005. In its response to CBW's First Request for Production of Documents, TPG objected to certain requests, as set forth in full below, and refused to produce documents responsive to those requests. TPG also refused to provide a privilege log, as requested (Request No. 44), unless CBW paid for the preparation of same. A true and accurate copy of TPG's response is attached hereto at Tab B.

On April 5, 2005, CBW's counsel wrote to TPG's counsel, pursuant to Rule 7.1 of the Local Rules of the U.S. District Court for the District of Massachusetts, requesting that TPG supplement certain of its responses (Request Nos. 2, 4 and 32) to CBW's First Request for Production of Documents and produce a privilege log. A true and accurate copy of CBW's counsel's April 5, 2005 letter is attached hereto at Tab C. On April 18, 2005, TPG's counsel responded to CBW's Rule 7.1 letter, agreeing to "redouble [his] efforts" to obtain certain documents responsive to Requests 2, 4 and 32 but refusing to produce a privilege log at TPG's

expense as "unnecessary."  A true and accurate copy of TPG's counsel's April 18, 2005 letter is

attached hereto at Tab D.  To date, TPG has not produced any supplemental documents in

response to CBW's Rule 7.1 letter.

As set forth below, TPG has not asserted that any of the documents requested in Requests

2, 4 or 32 are protected by any applicable privilege.  Instead, TPG has refused to produce

documents on the basis of vague objections, contending, for example, that the requests are

"overbroad," "unduly burdensome," and "irrelevant,"[1] without providing any facts demonstrating

that the requests are overbroad or seek irrelevant information, or that compliance with the

requests would impose any sort of burden on TPG.  TPG should not be permitted to evade its

discovery obligations in this fashion.

CBW sets forth below Requests 2, 4 and 32, TPG's responses, and the reasons why TPG

should be ordered to produce responsive documents.

Request No. 2

All documents related to the formation, operation, membership, mission and purpose of
TPG, including but not limited to, meeting minutes, stockholder lists, calendars, diaries,
planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other
written correspondence or documents that reflect or evidence the activities of TPG.

Response No. 2

The Defendant [TPG] objects to Request No. 2 on the grounds that it is overbroad and
unduly burdensome and seeks documents irrelevant to the issues raised in this litigation and is
not limited in time or scope.  The Defendant further objects to Request No. 2 on the grounds that
the documents sought in Request No. 2 are not reasonably calculated to lead to the discovery of
admissible evidence.

Request No. 4

All documents related to the formation, operation, membership, mission and purpose of
each of the entities comprising the Combined Operations, including but not limited to, meeting

---

[1]     TPG also objected on the ground that the requests were not limited in time or scope.  In its request for
supplementation, CBW limited the time period applicable to Request Nos. 2, 4 and 32 to January 1, 2003 to
December 31, 2004.  See Tab C.

minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of the Combined Operations.

Response No. 4

The Defendant objects to Request No. 4 on the grounds that it is overbroad and unduly burdensome and seeks documents irrelevant to the issues raised in this litigation and is not limited in time or scope. The Defendant further objects to Request No. 4 on the grounds that the documents sought in Request No. 4 are not reasonably calculated to lead to the discovery of admissible evidence. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

Request No. 32

All documents which refer or relate to any entity or individual with an ownership interest in TPG and/or one or more of the Combined Operations, including but not limited to, the name and address of each owner, officer, director and shareholder, the date and amount of any such shares purchased and the consideration, if any, paid for such shares.

Response No. 32

The Defendant objects to Request No. 32 on the grounds that it is overbroad and unduly burdensome and seeks documents irrelevant to the issues raised in this litigation and is not limited in time or scope. The Defendant further objects to Request No. 32 on the grounds that the documents sought in Request No. 32 are not reasonably calculated to lead to the discovery of admissible evidence. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

As noted above, TPG has provided no factual support for its claim that Requests 2, 4 and 32 are overbroad, nor has TPG established that responding to said Requests would place any sort of undue burden on TPG. As to TPG's other grounds for objection, documents concerning the ownership, formation, membership, mission, and purpose of TPG and the Combined Operations are relevant to the claims and defenses in this case for several reasons. See Fed.R.Civ.P. 26(b)(1). First, Requests 2, 4, and 32 seek documents relevant to the allegations underlying several of CBW's claims against TPG. Specifically, CBW's claims are based, in part, on its allegations that (1) Gerald Freid executed the September 4, 2003 Engagement Letter with CBW (as well as other related contractual documents) on behalf of TPG and/or the Combined

4

Operations; (2) that the individually-named defendants and/or TPG had ownership interest(s) in the Combined Operations sold to Epoch Living Center ("Epoch") and therefore received a benefit from the transaction; and (3) that TPG and/or the individually-named defendants had the authority of the Combined Operations to instruct, and did in fact instruct the buyer, Epoch and/or its attorneys, Goodwin Procter, LLP, to remove CBW's fee of more than $1,028,000 (earned in accordance with the terms of the Engagement Letter) from the Closing Statement on or about September 30, 2004.

Requests 2, 4, and 32 seek documents that reveal the relationships between the individually-named defendants and TPG, and the relationship between TPG and the Combined Operations sold to Epoch. It is expected that responsive documents will establish close relationships between the individually-named defendants, TPG and the Combined Operations, which, in turn, provide support for CBW's allegations that TPG had an interest in, and authority and control over, the Combined Operations in connection with the transaction with Epoch. As such, Requests 2, 4, and 32 bear directly on CBW's claims against TPG, including Count I (Breach of Contract), Count II (Breach of Implied Covenant of Good Faith and Fair Dealing), Count III Promissory Estoppel/Detrimental Reliance), Count IV (Fraudulent Misrepresentation), Count V (Civil Conspiracy), Count VI (Chapter 93A), Count VII (Fraudulent Transfer) and Count IX (Unjust Enrichment).

Requests 2, 4, and 32 also are relevant to TPG's defenses to CBW's claims. Specifically, a primary basis for TPG's defense in this matter appears to be that it cannot be liable on CBW's contract-based claims because it never entered into any agreements with CBW, never had an interest in the sale of the Combined Operations to Epoch, and had no liability to Key Bank on loans that were discharged as a result of the purchase and sale of the Combined Operations to

Epoch. (Paragraphs 5, 6, 12, 19, 92, and 111 of the Answer, Affirmative Defenses and Counterclaim of Defendants The Pointe Group, Inc., Gerald S. Freid and Barry Freid). Based on the foregoing, it is clear that the corporate and ownership documents requested by CBW in Requests 2, 4, and 32 are relevant to TPG's defenses in this matter as well as CBW's claims. CBW therefore requests that the Court compel TPG to supplement its responses to Requests 2, 4, and 32 and produce any responsive documents within 10 days of the Court's Order.

Defendants Gerald Freid and Barry Freid have raised similar defenses. Indeed, in a January 13, 2005 letter submitted to this Court, the Freids' attorney, Stephen Gordon, represented that neither Gerald nor Barry Freid had any ownership interest in TPG, and that as a result neither obtained any benefit from the sale to Epoch. Attorney Gordon made these same representations in oral argument before the Court in connection with CBW's motion for prejudgment relief.[2]

In sum, CBW's requests for production of documents relating to the formation, operation, mission, and purpose of TPG and the seller entities are well within the scope of permissible discovery. Indeed, in his letter of April 18, 2005, TPG's counsel indicated that supplemental production of certain documents responsive to Requests 2, 4 and 32 would not be burdensome and that TPG would supplement its production. See Tab D. However, as noted above, to date, TPG has not produced any documents in supplementation to its response to Requests 2, 4 or 32.

Finally, in TPG's Response to Request 44, which sought a listing of all documents withheld from TPG's document production because of the claim of attorney-client, work product

---

[2]    Documents produced and deposition testimony taken since the January 19, 2005 oral argument has called into doubt the accuracy of these representations. Gerald Freid and Barry Freid have acknowledged that as a result of the sale to Epoch, they were released of their obligations under certain personal guarantees, while TPG has been able to operate as a more profitable entity. Georgia Freid, the Freids' mother and a shareholder of TPG, testified that her sons held an equity interest in TPG at the time of the sale. Mrs. Freid's testimony is consistent with the ownership percentages set forth in corporate documents provided to CBW prior to the sale, which were attached to CBW's January 18, 2005 rebuttal letter to Attorney Gordon's January 13, 2005 letter (filed with the Court on or about January 19, 2005).

or other privilege, TPG objected to the burden of creating a list of such documents unless CBW agreed to bear the cost of preparing such list. TPG's counsel repeated the same objection in his April 18, 2005 letter. However, TPG has provided no basis (in either its original response or counsel's April 18, 2005 letter) for its claim that preparation of a privilege list or log would cause an undue burden, financial or otherwise.

Moreover, CBW has specific reasons for requesting production of a privilege log, because there is a genuine issue in this case as to whether TPG's counsel in this case, Stephen Gordon, represented all of the entities with which he now claims a privilege. In TPG's answer to the Complaint in this matter, TPG asserted that Mr. Gordon "acted only as legal counsel for the Key Bank Financed Facilities and not on behalf of TPG or the Freids." (Answer to Complaint, ¶ 43, emphasis added). Moreover, one of the individually-named defendants in this case, Gerald Freid, testified at his deposition that he was "not sure" whether Attorney Gordon represented TPG in the Epoch transaction. (G. Freid Depo. Transcript, p. 83, attached hereto at Tab E). Nevertheless, Mr. Gordon instructed Mr. Freid not to answer questions at his deposition pertaining to communications Mr. Gordon had with TPG representatives concerning the Epoch transaction, on the grounds of attorney-client privilege. (G. Freid Depo. Transcript, pp. 107-09). Further, despite Gerald Freid's unequivocal acknowledgement that Mr. Gordon did not represent him in connection with the Epoch transaction (id. at pp. 82-83), Mr. Gordon instructed Mr. Freid not to answer questions regarding conversations he had with Mr. Gordon prior to the closing of the Epoch transaction based on attorney-client privilege. (G. Freid Depo. Transcript, pp. 82-83, 103-109).

Given that it is not clear (even to one of Mr. Gordon's own clients in this litigation, Gerald Freid) who Mr. Gordon represented, if anyone, in connection with the Epoch transaction,

CBW requests that, notwithstanding TPG's objection, the Court compel TPG to prepare a list of withheld documents in the form of a privilege log, identifying the documents withheld by date, author, recipient(s), general subject matter, and privilege asserted.[3]

WHEREFORE, Casas, Benjamin & White, LLC respectfully requests that this Court grant its Motion to Compel The Pointe Group, Inc. to supplement its responses to Request Nos. 2, 4, and 32 of CBW's First Request for Production of Documents, to produce any responsive documents within ten (10) days of the Court's Order, and to prepare a list of withheld documents in the form of a privilege log, identifying the documents withheld by date, author, recipient(s), general subject matter, and privilege asserted.

A proposed form of Order is attached hereto.

---

[3]     In TPG's response to CBW's First Request for Production, TPG indicated in thirteen of its responses that TPG "does not have possession, custody or control over certain documents belonging to the Healthcare Entities." See Response Nos. 3, 4, 8, 9, 13, 18, 23, 26, 32, 33, 34, 41, and 42. In response, CBW drafted deposition subpoenas to the "Healthcare Entities," seeking, among other information, documents responsive to the requests served on TPG. CBW's counsel contacted Mr. Gordon in early April, 2005 to inquire as to whether he would accept service of the deposition subpoenas on behalf of the five entities. Mr. Gordon responded that he could not accept service because he did not represent any of the entities. As a result, at the cost of $287, CBW had the deposition subpoenas formally served on the entities at their offices at 3 Allied Drive, Dedham, MA (which also is the corporate address for TPG). (A true and accurate copy of the invoice from Dewsnap & Associates, LLC is attached hereto at Tab F). Yet, merely six days later, on April 18, 2005, Mr. Gordon contacted CBW's counsel by letter, formally objecting on behalf of all five entities to the production of any documents. (A true and accurate copy of Mr. Gordon's April 18, 2005 letter is attached hereto at Tab G). Mr. Gordon also represented one of the entities at its Keeper of Records deposition on April 25, 2005. This most recent series of events, which is the subject of contemporaneously filed motion to compel by CBW, is yet another reason to question who Mr. Gordon has represented (and currently represents – and during what time period) among the entities and individuals asked to respond to discovery in this case. In light of this and other events bearing on the identity of Mr. Gordon's clients, CBW's request that TPG produce a privilege log is well grounded.

Respectfully submitted,

CASAS, BENJAMIN & WHITE, LLC

By its attorneys,


/s/ Michael R. Bernardo
Thomas E. Peisch (BBO# 393260)
Erin K. Higgins (BBO# 559510)
Michael R. Bernardo (BBO# 648310)
CONN KAVANAUGH ROSENTHAL
 PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA  02109
(617) 482-8200

Dated: May 9, 2005
      Boston, Massachusetts


## LOCAL RULE 7.1 & 37.1 CERTIFICATION

The undersigned counsel hereby certifies that plaintiff's counsel has conferred with counsel for TPG, Stephen F. Gordon, Esq., through written communications, and attempted in good faith to resolve or narrow the issues raised in this motion.

/s/ Michael R. Bernardo
Michael R. Bernardo

Dated: May 9, 2005

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CASAS, BENJAMIN & WHITE, LLC, | ) | |
| | ) | No.  04-12333-MEL |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE POINTE GROUP, INC., a | ) | |
| Massachusetts corporation d/b/a The Pointe | ) | |
| Group Healthcare and Senior Living; | ) | |
| GERALD S. FREID; BARRY FREID; and | ) | |
| KEY CORPORATE CAPITAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter having come on for hearing on the plaintiff's motion to compel supplemental production of documents from defendant, The Pointe Group, Inc., it is hereby Ordered:

A.     The Pointe Group, Inc. shall produce to the plaintiff, within ten (10) days of the date of this Order, all documents in its possession, custody or control that are responsive to Request Numbers 2, 4, and 32 of the plaintiff's First Request for Production of Documents; and

B.     The Pointe Group, Inc. shall prepare and produce to the plaintiff, within ten (10) days of this Order, a list of withheld documents in the form of a privilege log, identifying the documents withheld by date, author, recipient(s), general subject matter, and privilege asserted.

So Ordered.

Dated:  May ___, 2005                  _____

                                       Lasker, D.J.

224893.1

**A**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CASAS, BENJAMIN & WHITE, LLC,    )
    )
       Plaintiff,    )
    )     No.  04-12333-MEL
       vs.    )
    )
THE POINTE GROUP, INC., a    )
Massachusetts corporation d/b/a The Pointe    )
Group Healthcare and Senior Living;    )
GERALD S. FREID; BARRY FREID; and    )
KEY CORPORATE CAPITAL, INC.,    )
    )
       Defendants.    )

## PLAINTIFF CASAS, BENJAMIN & WHITE, LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, THE POINTE GROUP, INC.

Pursuant to Fed. R. Civ. P. 26 and 34, Plaintiff, Casas, Benjamin & White, LLC

("CBW") hereby serves its First Request for Production of Documents upon Defendant The

Pointe Group, Inc. ("TPG").  Pursuant to Rule 34, TPG is required to respond to this document

request by producing a document response and the originals (and where originals are

unavailable, copies) of all documents and things designated below which are within its

possession, custody, or control.  The document response and documents requested shall be

produced on or before February 16, 2005, to Michael R. Bernardo, Esq. at the offices of Conn

Kavanaugh Rosenthal Peisch & Ford, LLP, Ten Post Office Square, 4th Floor, Boston,

Massachusetts.

In the alternative, said production may be made by mailing or delivering the document

response and copies of all of the designated documents to Michael R. Bernardo, Esq., at the

above address upon the condition that said copies are received by Mr. Bernardo on or before

February 18, 2005. When produced, the documents shall be segregated and identified by paragraph number of the request to which they are responsive.

## GENERAL INSTRUCTIONS

(1)    You are requested to produce all documents in your custody, possession or control, including all documents which are in the custody of your servants, attorneys, consultants, accountants or agents regardless of the location of such documents.

(2)    In the event that you object to or claim a privilege with respect to any Request for Production, in whole or in part, you are requested to produce all documents (or portions thereof) requested in that portion of the Request for Production as to which you have no objection or claim of privilege.

(3)    With respect to each responsive document withheld from production on any basis whatsoever, please identify the precise basis, in detail, for the privilege claimed or objection made with respect to the document. Further, with respect to each responsive document withheld from production, state:

(a)    the name of each signatory to the document and the capacity in which each signed, if any;
(b)    the date of document, if any;
(c)    the name of each addressor of the document in the capacity in which each was acting at the time he or she addressed the document, if any;
(d)    the name of each addressee of the document (including all persons to whom copies were sent) and the capacity in which each such addressee was addressed, if any; and
(e)    the subject matter of the document.

(4)    If any documents responsive to this request have been destroyed, please describe such documents and state:

(a)    the date of the destruction of such documents;
(b)    the names of the persons who destroyed such documents; and
(c)    the reasons why such documents were destroyed.

(5)    This First Request for Production of Documents shall be deemed continuing so as to require an immediate supplemental response to the extent required by Fed. R. Civ. P. 26(e).

(6)    Unless otherwise stated, you are to produce any and all documents responsive to these requests.

2

## DEFINITIONS

For the purposes of this request, the following words shall be given the indicated meaning or meanings:

(1)     "Document" or "documents" shall mean and refer to any written or other recorded, graphic or photographic matter or other data compilations from which information can be obtained (translated, if necessary, by you into reasonably usable form) of every kind or character, however produced or reproduced, in the actual or constructive possession, custody, care or control of, or available to, you, including, without limiting the generality of the foregoing, all computer tapes or printouts, magnetic or laser-readable disks, other computer-readable memory devices, letters, telegrams, teletypes, correspondence, contracts, agreements, purchase or sale orders, drafts, work papers, notes to the files, reports, memoranda, mechanical and electronic sound recordings or transcripts thereof, videotapes, films, photographs, blueprints, formal or informal drawings or diagrams, calendar or diary entries, memoranda or notes of telephone or personal conversations or of meetings or conferences, studies, reports, interoffice communications, price lists, manuals, summaries or compilations, minutes of meetings, charts, graphs, indices, articles, announcements, books, catalogs, pamphlets, periodicals, records, tables, books of account, ledgers, vouchers, receipts, canceled checks, invoices, order forms, bank statements, financial statements, accounting work papers, bills, and analyses or other statistical data, including originals, drafts, and copies of any of the foregoing, whether typed, printed, handwritten or on tape or other form of recording,  and all materials underlying, supporting or used in the preparation of any such document or documents.  "Document" also means and refers to all copies of documents, by whatever means made, if the copy bears any other marking or notation or contains any information not found on or in the original.  Documents in computer-readable form shall be produced by providing a printout.

(2)     The term "related to" or "relating to" means any and all documents which pertain in any way to the subject of the request, including, without limitation, documents containing a reference thereof, documents consisting in and of themselves the item requested, documents which reflect, evidence, support, or show any information regarding the subject matter of the request, or documents which are part of other documents requested.

(3)     The term "communication" or "communicate" includes all information relating to any oral communications and/or documents (as defined above), whether or not any oral communications were repeated or any such document, or the information contained therein, was transmitted by its author to any other person.

(4)     "Person" or "persons" shall mean and include a natural person, partnership, firm or corporation, or any other kind of business or legal entity, its agents, or employees.

(5)     "CBW" or "Plaintiff" means Casas, Benjamin & White, LLC, and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

(6)     "Key Bank" means defendant, Key Corporate Capital, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

(7)     "TPG" means defendant The Pointe Group, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on their behalf, including, but not limited to, any entity doing business as The Pointe Group Healthcare and Senior Living, and Stephen F. Gordon, Esq. of the law firm Gordon Haley, LLP.

(8)     "Epoch" means Epoch Senior Living and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

(9)     "Gerald Freid" means the individually-named defendant, Gerald S. Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

(10)    "Barry Freid" means the individually-named defendant, Barry Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

(11)    "Combined Operations" means the following facilities: (1) Hammond Pointe Nursing Home, LLC, a business providing long-term care, Alzheimer's care, and sub-acute care; (2) Boylston Place At Chestnut Hill, LLC, a business providing assisted living services; and (3) Cranberry Pointe Nursing Home, Inc., a business providing long-term care, Alzheimer's care, and sub-acute care among other services.

## DOCUMENTS REQUESTED

<u>Request No.1</u>

     All documents which relate or refer to the incorporation of TPG, including but not limited to Articles of Incorporation, By-Laws, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of TPG.

<u>Request No. 2</u>

     All documents related to the formation, operation, membership, mission and purpose of TPG, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of TPG.

<u>Request No.3</u>

     All documents which relate or refer to the incorporation or formation of each of the entities comprising the Combined Operations, including but not limited to Articles of Incorporation, By-Laws, Limited Liability Company Operating Agreement, Annual Reports, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of the Combined Operations.

<u>Request No. 4</u>

     All documents related to the formation, operation, membership, mission and purpose of each of the entities comprising the Combined Operations, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of the Combined Operations.

Request No. 5

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the Engagement Letter between TPG and CBW, dated September 4, 2003.

Request No. 6

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the Indemnification Agreement between TPG and CBW, dated September 4, 2003.

Request No. 7

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the written amendment to the Engagement Letter, dated December 20, 2003.

Request No. 8

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the Letters of Interest from parties indicating interest in either acquiring or refinancing the Combined Operations at issue in this action.

Request No. 9

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer

or relate to the Letters of Intent from parties indicating an intention to either acquire or refinance the Combined Operations at issue in this action.

Request No. 10

Copies of all checks sent from TPG, its officers, directors, employees, representatives, agents, or attorneys to CBW.

Request No. 11

The Purchase & Sale Agreement (with exhibit schedules and all other documents referenced in the Agreement), including all drafts of the Agreement and the final executed Agreement between TPG and Epoch.

Request No. 12

CBW's invoices for services provided pursuant to the Engagement Letter, including but not limited to the invoice dated September 29, 2004.

Request No. 13

All documents referencing, pertaining to, or generated in connection with the closing on the sale of the Combined Operations to Epoch, whether in draft or final form, and including documents generated in advance of, at, or following the closing.

Request No. 14

All documents which refer to, relate to, reflect or constitute communications between TPG and CBW.

Request No. 15

All documents which refer to, relate to, reflect or constitute communications between TPG and Key Bank during the time period September 1, 2003 to January 31, 2005.

Request No. 16

 All documents which refer to, relate to, reflect or constitute communications between TPG and Epoch during the time period September 1, 2003 to January 31, 2005.

Request No. 17

 All correspondence, electronic messages, statements, or handwritten notes that TPG or its officers, directors, employees, agents, attorneys, representatives, members, stockholders or consultants have sent to or received from any person or entity relating or referring to the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

Request No. 18

 All documents which refer to, relate to or evidence gross revenues and net profits or losses of (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and (3) Cranberry Pointe Nursing Home, Inc. for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by the three facilities for each of the years 1999 to 2004.

Request No. 19

 All documents which refer to, relate to or evidence gross revenues and net profits or losses of TPG for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by TPG for each of the years 1999 to 2004.

Request No. 20

All documents which constitute, refer or relate to internal, intra-company, or other similar communications by and among TPG, its officers, directors, employees, agents, representatives, attorneys, stockholders or consultants, including Gerald Freid, Barry Freid and Stephen F. Gordon, Esq., regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

Request No. 21

All documents which constitute, refer or relate to communications by and among Gerald Freid, Barry Freid and other members of the Freid family regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

Request No. 22

All documents which constitute, refer or relate to communications by and between TPG, or its officers, directors, employees, agents, representatives, attorneys, stockholders or consultants, including Gerald Freid and Barry Freid, and Stephen F. Gordon, Esq., regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase

9

& Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined

Operations, the purchase price for the Combined Operations, or CBW's fees for services.

Request No. 23

All documents which refer to, relate to or evidence loan(s) made by Key Bank for (1)

Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and/or (3)

Cranberry Pointe Nursing Home, Inc., including all documents that evidence, refer to or relate to

descriptions or lists of the business assets, real property, personal property, accounts receivable

and/or inventory of TPG, the Combined Operations, Gerald Freid, Barry Freid and/or any other

collateral used to secure the loan(s) made by Key Bank for the Combined Operations.

Request No. 24

All documents including correspondence, notes, memoranda, and e-mails that

constitute, embody, refer or relate to:

> (1) civil or criminal investigation(s) or complaint(s) brought by or on behalf of any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board concerning the Combined Operations from 1999 to the present;

> (2) agency or board hearings, decisions, and/or dispositions on said civil or criminal investigation(s) and/or complaint(s) concerning the Combined Operations;

> (3) appeals submissions and/or decisions; and

> (4) settlement agreements between TPG, the Combined Operations, Gerald Freid, Barry Freid, and any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board.

Request No. 25

All documents including notes, memoranda, correspondence, and e-mail that constitute,

embody, refer or relate to any communications, oral or written, that TPG and/or the

Combined Operations has had at any time with any federal, state, local, and/or municipal agency or board and/or any other non-governmental agency or board or Epoch regarding or relating to any civil or criminal investigation or complaint, agency or board hearings and decisions on said investigation(s) or complaint(s), appeals submissions and/or decisions, or settlement agreements.

Request No. 26

All correspondence, electronic messages, statements, or handwritten notes in the possession, custody or control of TPG or its officers, directors, employees, agents, attorneys, representatives, members, stockholders or consultants that refer or relate to proposed or agreed purchase prices for the Combined Operations.

Request No. 27

All documents which support TPG's contention in paragraph 46 of the Answer, Affirmative Defenses and Counterclaim of Defendants, The Pointe Group, Inc., Gerald S. Freid and Barry Freid ("Answer"), that "the sellers under the purchase and sale agreement were represented in the sale process by counsel other than [Stephen F.] Gordon."

Request No. 28

All documents including notes, memoranda, correspondence, and e-mail that refer or relate to the meeting held on July 13, 2004 among representatives of Epoch, Key Bank, TPG and CBW, as referenced in paragraph 64 of TPG's Answer.

Request No. 29

All documents including notes, memoranda, correspondence, and e-mail that refer or relate to TPG's request(s) to CBW to lower its fee in connection with the sale of the Combined Operations to Epoch.

Request No. 30

All documents in TPG's possession, custody or control regarding or relating to Key Bank's threat to foreclose on one or more of the facilities constituting the Combined Operations.

Request No. 31

All documents which refer to or relate to or evidence damages and any other losses and expenses, financial or otherwise, which TPG claims it has suffered or will suffer as a direct and proximate result of the conduct of CBW, as alleged in its Counterclaim.

Request No. 32

All documents which refer or relate to any entity or individual with an ownership interest in TPG and/or one or more of the Combined Operations, including but not limited to, the name and address of each owner, officer, director and shareholder, the date and amount of any such shares purchased and the consideration, if any, paid for such shares.

Request No. 33

All audit opinions and audited financial statements of TPG and each of the Combined Operations for the calendar years 2003 and 2004.

Request No. 34

All documents that evidence, refer to or relate to Gerald and/or Barry Freid's employment relationship, if any, with TPG and/or the Combined Operations, including their terms and conditions of employment, their employment agreements, duties and responsibilities, compensation and benefits, and separation from employment.

Request No. 35

Any and all recorded, written or transcribed statements of any persons who have knowledge or information relative to any allegations made by CBW in its Complaint in the above-captioned action.

Request No. 36

Any and all recorded, written or transcribed statements of any persons who have knowledge or information relative to any allegations made by TPG in its Answer to CBW's Complaint and/or its Counterclaim in the above-captioned matter.

Request No. 37

Any and all reports prepared in connection with this lawsuit by expert(s) who are expected to testify or may testify at the trial of this matter on behalf of TPG.

Request No. 38

All documents that were, or will be relied upon in whole or in part by any testifying expert in this case on behalf of TPG.

Request No. 39

A curriculum vitae, or resume, for each individual who TPG expects to call as an expert witness at the trial of this matter.

Request No. 40

All documents identified in TPG's initial automatic disclosures.

Request No. 41

All documents relating to or reflecting the establishment of escrows at the closing on the sale of the Combined Operations.



Request No. 42

All documents relating to or reflecting disbursements made at the closing on the sale of the Combined Operations or from the date of the closing to the date of TPG's response to this request (i.e. CBW's First Request for Production of Documents), including any disbursements of deposit or escrowed funds.

Request No. 43

All documents within TPG's possession, custody or control not otherwise identified above that TPG intends to introduce at the trial of this matter.

Request No. 44

A listing of all documents withheld from this request (i.e. CBW's First Request for Production of Documents) because of the claim of attorney/client work product or other privilege. In addition, kindly state the privilege asserted for each document withheld.

CASAS, BENJAMIN & WHITE, LLC

By its attorneys,


/s/ Erin K. Higgins
Thomas E. Peisch (BBO# 393260)
Erin E. Higgins (BBO# 559510)
Michael R. Bernardo (BBO# 648310)
CONN KAVANAUGH ROSENTHAL
  PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA  02109
(617) 482-8200


/s/ Richard P. Steinken (ekh)
Richard P. Steinken, admitted *pro hac vice*
Jeff J. Marwil, admitted *pro hac vice*
David W. Austin, admitted *pro hac vice*
JENNER & BLOCK, LLP
One IBM Plaza
Chicago, IL  60611-7603

Dated: January 27, 2005
        Boston, Massachusetts

218510.1

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on __1/27/05__

**B**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 04CV12333 MEL

| | |
|---|---|
| CASAS, BENJAMIN & WHITE, LLC | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE POINTE GROUP, INC., | ) |
| GERALD S. FREID; BARRY FREID; | ) |
| KEY CORPORATE CAPITAL, INC. | ) |
| Defendants. | ) |

DEFENDANT, THE POINTE GROUP, INC.'S RESPONSE TO PLAINTIFF, CASAS,
BENJAMIN & WHITE, LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant, The Pointe Group, Inc. (the "Defendant") submits this response to the
Plaintiff, Casas, Benjamin & White, LLC's First Request for Production of Documents. The
responsive, nonprivileged documents will be produced at a time and place agreed upon by
counsel for the parties to this action.

## GENERAL RESPONSES AND OBJECTIONS

1.   The Defendant generally objects to the numbered requests to the extent they include
documents protected by the attorney/client privilege or the work product doctrine.

2.   The Defendant states that its review is ongoing to determine whether responsive
nonprivileged documents are in the custody or control of the Defendant. The
length and breadth of the Plaintiff's Request and the minimal time allowed for
response, make it impossible for Defendant to be certain that it has collected all
appropriately responsive documents immediately. The Defendant further states
that the responses set forth below are not meant to be, and should not be construed
as, any representation that responsive documents are in the custody or control of
the Defendant. As Defendant locates additional documents responsive to
Plaintiff's Request, it will produce forthwith.

3.   Defendant states that it has moved its offices twice in recent months and therefore
many of the documents sought in this Request may not be locatable in the
minimal time provided for response.

4.   The Defendant generally objects to the document request on the grounds that The
Pointe Group, Inc. cannot be asked to produce documents in the possession,

custody or control of Hammond Pointe Nursing Home, LLC, Boylston Place At Chestnut Hill, LLC and Cranberry Pointe Nursing Home, Inc. (the "Healthcare Entities").

5.    The Defendant generally objects to the document request to the extent the "Instructions" or "Definitions" seek to impose obligations different from, or in addition to, the requirements set forth in the Federal Rules of Civil Procedure.

Notwithstanding these objections, the Defendant responds as follows:

**REQUEST NO. 1**

All documents which relate or refer to the incorporation of TPG, including but not limited to Articles of Incorporation, By-Laws, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of TPG.

**RESPONSE NO. 1**

The Defendant will produce documents responsive to Request No. 1 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 2**

All documents related to the formation, operation, membership, mission and purpose of TPG, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of TPG.

**RESPONSE NO. 2**

The Defendant objects to Request No. 2 on the grounds that it is overbroad and unduly burdensome and seeks documents irrelevant to the issues raised in this litigation and is not limited in time or scope. The Defendant further objects to Request No. 2 on the grounds that the

documents sought in Request No. 2 are not reasonably calculated to lead to the discovery of admissible evidence.

## REQUEST NO. 3

All documents which relate or refer to the incorporation or formation of each of the entities comprising the Combined Operations, including but not limited to Articles of Incorporation, By-Laws, Limited Liability Company Operating Agreement, Annual Reports, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of the Combined Operations.

## RESPONSE NO. 3

The Defendant will produce documents responsive to Request No. 3 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

## REQUEST NO. 4

All documents related to the formation, operation, membership, mission and purpose of each of the entities comprising the Combined Operations, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of the Combined Operations.

## RESPONSE NO. 4

The Defendant objects to Request No. 4 on the grounds that it is overbroad and unduly burdensome and seeks documents irrelevant to the issues raised in this litigation and is not limited in time or scope. The Defendant further objects to Request No. 4 on the grounds that the documents sought in Request No. 4 are not reasonably calculated to lead to the discovery of

admissible evidence. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

## REQUEST NO. 5

All documents that TPG or its officers, directors, employees, representatives, agents, or attorneys have in their possession, custody or control which refer or relate to the Engagement Letter between TPG and CBW, dated September 4, 2003.

## RESPONSE NO. 5

The Defendant will produce documents responsive to Request No. 5 in its possession, custody or control at a place and time mutually agreed upon by counsel.

## REQUEST NO. 6

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the Indemnification Agreement between TPG and CBW, dated September 4, 2003.

## RESPONSE NO. 6

The Defendant will produce documents responsive to Request No. 6 in its possession, custody or control at a place and time mutually agreed upon by counsel, however, as of the date of this response, the Defendant has located no documents responsive to Request No. 6.

## REQUEST NO. 7

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the written amendment to the Engagement Letter, dated December 20, 2003.

**RESPONSE NO. 7**

The Defendant will produce documents responsive to Request No. 7 in its possession, custody or control at a place and time mutually agreed upon by counsel, however, as of the date of this response, the Defendant has located no documents responsive to Request No. 7.

**REQUEST NO. 8**

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the Letters of Interest from parties indicating interest in either acquiring or refinancing the Combined Operations at issue in this action.

**RESPONSE NO. 8**

The Defendant will produce documents responsive to Request No. 8 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 9**

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the Letters of Intent from parties indicating an intention to either acquire or refinance the Combined Operations at issue in this action.

**RESPONSE NO. 9**

The Defendant will produce documents responsive to Request No. 9 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 10**

Copies of all checks sent from TPG, its officers, directors, employees, representatives, agents, or attorneys to CBW.

**RESPONSE NO. 10**

The Defendant will produce documents responsive to Request No. 10 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 11**

The Purchase & Sale Agreement (with exhibit schedules and all other documents referenced in the Agreement), including all drafts of the Agreement and the final executed Agreement between TPG and Epoch.

**RESPONSE NO. 11**

The Defendant will produce documents responsive to Request No. 11 in its possession, custody or control at a place and time mutually agreed upon by counsel. Further responding, the Defendant states there was no agreement between TPG and Epoch, but understanding the request with respect to only the Purchase & Sale Agreement in issue, Defendant will produce the documents Plaintiff, it believes, meant to request.

**REQUEST NO. 12**

CBW's invoices for services provided pursuant to the Engagement Letter, including but not limited to the invoice dated September 29, 2004.

**RESPONSE NO. 12**

The Defendant will produce documents responsive to Request No. 12 in its possession, custody or control at a place and time mutually agreed upon by counsel.

## REQUEST NO. 13

All documents referencing, pertaining to, or generated in connection with the closing on the sale of the Combined Operations to Epoch, whether in draft or final form, and including documents generated in advance of, at, or following the closing.

## RESPONSE NO. 13

The Defendant objects to Request No. 13 on the grounds that it is overbroad and unduly burdensome and is not limited in time or scope. Subject to and without waiving this objection, the Defendant will produce documents responsive to Request No. 13 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

## REQUEST NO. 14

All documents which refer to, relate to, reflect or constitute communications between TPG and CBW.

## RESPONSE NO. 14

The Defendant will produce documents responsive to Request No. 14 in its possession, custody or control at a place and time mutually agreed upon by counsel.

## REQUEST NO. 15

All documents which refer to, relate to, reflect or constitute communications between TPG and Key Bank during the time period September 1, 2003 to January 31, 2005.

## RESPONSE NO. 15

The Defendant will produce documents responsive to Request No. 15 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 16**

All documents which refer to, relate to, reflect or constitute communications between TPG and Epoch during the time period September 1, 2003 to January 31, 2005.

**RESPONSE NO. 16**

The Defendant will produce documents responsive to Request No. 16 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 17**

All correspondence, electronic messages, statements, or handwritten notes that TPG or its officers, directors, employees, agents, attorneys, representatives, members, stockholders or consultants have sent to or received from any person or entity relating or referring to the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG and CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

**RESPONSE NO. 17**

The Defendant will produce documents responsive to Request No. 17 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 18**

All documents which refer to, relate to or evidence gross revenues and net profits or losses of (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place at Chestnut Hill, LLC; and (3) Cranberry Pointe Nursing Home, Inc. for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by the three facilities for each of the years 1999 to 2004.

8

**RESPONSE NO. 18**

The Defendant objects to Request No. 18 on the grounds that the documents sought in Request No. 18 are irrelevant to the issues raised in this litigation and are not reasonably calculated to lead to the discovery of admissible evidence.  Further responding, the Defendant states that the documents sought in Request No. 18 belong to the Healthcare Entities which are not parties to this litigation.

**REQUEST NO. 19**

All documents which refer to, relate to or evidence gross revenues and net profits or losses of TPG for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by TPG for each of the years 1999 to 2004.

**RESPONSE NO. 19**

The Defendant objects to Request No. 19 on the grounds that the documents sought in Request No. 19 are irrelevant to the issues raised in this litigation and are not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 20**

All documents which constitute, refer or relate to internal, intra-company, or other similar communications by and among TPG, its officers, directors, employees, agents, representatives, attorneys, stockholders or consultants, including Gerald Freid, Barry Freid and Stephen F. Gordon, Esq. regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

**RESPONSE NO. 20**

The Defendant objects to Request No. 20 on the grounds that it seeks documents protected by the attorney/client privilege and the work-product doctrine. Subject to and without waiving this objection and the General Objections, Defendant agrees to produce any nonprivileged documents that are responsive to this Request at a place and time mutually agreeable to counsel.

**REQUEST NO. 21**

All documents which constitute, refer or relate to communications by and among Gerald Freid, Barry Freid and other members of the Freid family regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

**RESPONSE NO. 21**

The Defendant has no documents responsive to Request No. 21 in its possession, custody or control.

**REQUEST NO. 22**

All documents which constitute, refer or relate to communications by and between TPG, or its officers, directors, employees, agents, representatives, attorneys, stockholders or consultants, including Gerald Freid and Barry Freid, and Stephen F. Gordon, Esq., regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase

& Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

## RESPONSE NO. 22

The Defendant objects to Request No. 22 on the grounds that it seeks documents protected by the attorney/client privilege and the work-product doctrine. Subject to and without waiving this objection and the General Objections, Defendant agrees to produce any nonprivileged documents that are responsive to this Request at a place and time mutually agreeable to counsel.

## REQUEST NO. 23

All documents which refer to, relate to or evidence loan(s) made by Key Bank for (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and/or (3) Cranberry Pointe Nursing Home, Inc., including all documents that evidence, refer to or relate to descriptions or lists of the business assets, real property, personal property, accounts receivable and/or inventory of TPG, the Combined Operations, Gerald Freid, Barry Freid and/or any other collateral used to secure the loan(s) made by Key Bank for the Combined Operations.

## RESPONSE NO. 23

The Defendant objects to Request No. 23 on the grounds that it is overbroad and unduly burdensome and is not limited in time or scope. Further responding, the Defendant states that it cannot be asked to produce documents in the possession, custody and control of the Healthcare Entities. Subject to and without waiving these objections, the Defendant will produce documents responsive to Request No. 23 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 24**

All documents including correspondence, notes, memoranda, and e-mails that constitute,

embody, refer or relate to:

      (1)     civil or criminal investigation(s) or complaint(s) brought by or on behalf of any federal, state, local and/or municipal agency or broad and/or any non-governmental agency or broad concerning the Combined Operations from 1999 to the present;

      (2)     agency or board hearings, decisions, and/or dispositions on said civil or criminal investigation(s) and/or complaint(s) concerning the Combined Operations;

      (3)     appeals submissions and/or decisions; and

      (4)     settlement agreements between TPG, the Combined Operations, Gerald Freid, Barry Freid, and any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board.

**RESPONSE NO. 24**

The Defendant objects to Request No. 24 on the grounds that it is overbroad and unduly

burdensome and seeks documents irrelevant to the issues raised in this litigation and is not

limited in time or scope. The Defendant further objects to Request No. 24 on the grounds that

the documents sought in Request No. 24 are not reasonably calculated to lead to the discovery of

admissible evidence. The Defendant further states that the documents sought in Request No. 24

are not in the possession, custody or control of the Defendant.

**REQUEST NO. 25**

All documents including notes, memoranda, correspondence, and e-mail that constitute,

embody, refer or relate to any communications, oral or written, that TPG, and/or the Combined

Operations has had at any time with any federal, state, local, and/or municipal agency or board

and/or any other non-governmental agency or board or Epoch regarding or relating to any civil

12

or criminal investigation or complaint, agency or board hearings and decisions on said

investigation(s) or complaint(s), appeals submissions and/or decisions, or settlement agreements.

## RESPONSE NO. 25

The Defendant objects to Request No. 25 on the grounds that it is overbroad and unduly

burdensome and seeks documents irrelevant to the issues raised in this litigation and is not

limited in time or scope. The Defendant further objects to Request No. 25 on the grounds that

the documents sought in Request No. 25 are not reasonably calculated to lead to the discovery of

admissible evidence. The Defendant further states that the documents sought in Request No. 25

are not in the possession, custody or control of the Defendant.

## REQUEST NO. 26

All correspondence, electronic messages, statements, or handwritten notes in the

possession, custody or control of TPG or its officers, directors, employees, agents, attorneys,

representatives, members, stockholders or consultants that refer or relate to proposed or agreed

purchase prices for the Combined Operations.

## RESPONSE NO. 26

The Defendant will produce documents responsive to Request No. 26 in its possession,

custody or control at a place and time mutually agreed upon by counsel. The Defendant does not

have possession, custody or control over certain documents belonging to the Healthcare Entities.

## REQUEST NO. 27

All documents which support Mr. Freid's contention in paragraph 46 of the Answer,

Affirmative Defenses and Counterclaim of Defendants, The Pointe Group, Inc., Gerald S. Freid

and Barry Freid ("Answer"), that "the sellers under the purchase and sale agreement were

represented in the sale process by counsel other than [Stephen F.] Gordon."

**RESPONSE NO. 27**

      The Defendant will produce documents responsive to Request No. 27 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 28**

      All documents including notes, memoranda, correspondence, and e-mail that refer or relate to the meeting held on July 13, 2004 among representatives of Epoch, Key Bank, TPG and CBW, as referenced in paragraph 64 of TPG's Answer.

**RESPONSE NO. 28**

      The Defendant will produce documents responsive to Request No. 28 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 29**

      All documents including notes, memoranda, correspondence, and e-mail that refer or relate to TPG's request(s) to CBW to lower its fee in connection with the sale of the Combined Operations to Epoch.

**RESPONSE NO. 29**

      The Defendant will produce documents responsive to Request No. 29 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 30**

      All documents in TPG's possession, custody or control regarding or relating to Key Bank's threat to foreclose on one or more of the facilities constituting the Combined Operations.

**RESPONSE NO. 30**

      The Defendant will produce documents responsive to Request No. 30 in its possession, custody or control at a place and time mutually agreed upon by counsel.



**REQUEST NO. 31**

All documents which refer to or relate to or evidence damages and any other losses and expenses, financial or otherwise, which TPG claims it has suffered or will suffer as a direct and proximate result of the conduct of CBW, as alleged in its Counterclaim.

**RESPONSE NO. 31**

The Defendant will produce documents responsive to Request No. 31 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 32**

All documents which refer or relate to any entity or individual with an ownership interest in TPG and/or one or more of the Combined Operations, including but not limited to, the name and address of each owner, officer, director and stockholder, the date and amount of each such shares purchase and the consideration, if any, paid for such shares.

**RESPONSE NO. 32**

The Defendant objects to Request No. 32 on the grounds that it is overbroad and unduly burdensome and seeks documents irrelevant to the issues raised in this litigation and is not limited in time or scope. The Defendant further objects to Request No. 32 on the grounds that the documents sought in Request No. 32 are not reasonably calculated to lead to the discovery of admissible evidence. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 33**

All audit opinions and audited financial statements of TPG and each of the Combined Operations for the calendar years 2003 and 2004.

15

**RESPONSE NO. 33**

The Defendant objects to Request No. 33 on the grounds that it seeks documents irrelevant to the issues raised in this litigation. The Defendant further objects to Request No. 33 on the grounds that the documents sought in Request No. 33 are not reasonably calculated to lead to the discovery of admissible evidence. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 34**

All documents that evidence, refer to or relate to Gerald and/or Barry Freid's employment relationship, if any, with TPG and/or the Combined Operations, including their terms and conditions of employment, their employment agreements, duties and responsibilities, compensation and benefits, and separation from employment.

**RESPONSE NO. 34**

The Defendant objects to Request No. 34 on the grounds that it is overbroad and unduly burdensome. Subject to and without waiving this objection, the Defendant will produce documents responsive to Request No. 34 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 35**

Any and all recorded, written or transcribed statements of any persons who have knowledge or information relative to any allegations made by CBW in its Complaint in the above-captioned action.

16



**RESPONSE NO. 35**

The Defendant has no documents responsive to Request No. 35 in its possession, custody or control responsive to Request No. 35 not otherwise to be produced hereunder.

**REQUEST NO. 36**

Any and all recorded, written or transcribed statements of any persons who have knowledge or information relative to any allegations made by TPG in their Answer to CBW's Complaint and/or TPG's Counterclaim in the above-captioned matter.

**RESPONSE NO. 36**

To the extent that any such documents exist, the Defendant will produce documents responsive to Request No. 36 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 37**

Any and all reports prepared in connection with this lawsuit by expert(s) who are expected to testify or may testify at the trial of this matter on behalf of TPG.

**RESPONSE NO. 37**

The Defendant has no documents in its possession, custody or control responsive to Request No. 37 at this time. The Defendant reserves the right to supplement Response No. 37 as necessary.

**REQUEST NO. 38**

All documents that were, or will be relied upon in whole or in part by any testifying expert in this case on behalf of TPG.

**RESPONSE NO. 38**

The Defendant has no documents in its possession, custody or control responsive to Request No. 38 at this time.  The Defendant reserves the right to supplement Response No. 38 as necessary.

**REQUEST NO. 39**

A curriculum vitae, or resume, for each individual who TPG expects to call as an expert witness at the trial of this matter.

**RESPONSE NO. 39**

The Defendant has no documents in its possession, custody or control responsive to Request No. 39 at this time.  The Defendant reserves the right to supplement Response No. 39 as necessary.

**REQUEST NO. 40**

All documents identified in TPG's initial automatic disclosures.

**RESPONSE NO. 40**

The Defendant will produce documents responsive to Request No. 40 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 41**

All documents relating to or reflecting the establishment of escrows at the closing on the sale of the Combined Operations.

**RESPONSE NO. 41**

The Defendant will produce documents responsive to Request No. 41 in its possession, custody or control at a place and time mutually agreed upon by counsel.  The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 42**

All documents relating to or reflecting disbursements made at the closing on the sale of the Combined Operations or from the date of the closing to the date of TPG's response to this request (i.e. CBW's First Request for Production of Documents), including any disbursements of deposit or escrowed funds.

**RESPONSE NO. 42**

The Defendant will produce documents responsive to Request No. 42 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 43**

All documents within TPG's possession, custody or control not otherwise identified above that TPG intends to introduce at the trial of this matter.

**RESPONSE NO. 43**

The Defendant has not yet determined which documents it intends to introduce into evidence at the trial of this matter. The Defendant will supplement this Response as necessary.

**REQUEST NO. 44**

A listing of all documents withheld from this request (i.e. CBW's First Request for Production of documents) because of the claim of attorney/client work product or other privilege. In addition, kindly state the privilege asserted for each document withheld.

**RESPONSE NO. 44**

The Defendant has withheld communications with its attorneys as to which no third-parties were privy. The Defendant objects to the burden of creating a list of such documents

where the Plaintiff has specifically requested attorney/client documents unless the Plaintiff is

willing to bear the cost of preparing such a list.

THE POINTE GROUP, INC.
By its attorneys,

Stephen F. Gordon (BBO No. 203600)
Todd B. Gordon (BBO No. 652482)
Gordon Haley LLP
101 Federal Street
Boston, Massachusetts 02110
Tel:    (617) 261-0100
Fax:    (617) 261-0789
email:  sgordon@gordonhaley.com
        tgordon@gordonhaley.com

Dated: February 28, 2005
P:\Clients\Pointe Group\CBW Plead\Pointe Group's 1st resp to pltf's r.f.p.d. 02-08-05.doc

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the foregoing
was served upon the attorney of record for each
party by mail.
Date 2-28-05

C

# CONN KAVANAUGH ROSENTHAL PEISCH & FORD, LLP

### COUNSELORS AT LAW

THOMAS E. PEISCH
BOB B. ROSENTHAL
JAMES F. KAVANAUGH, JR.
RUSSELL F. CONN
GEORGE M. FORD
JAMES B. PELOQUIN
BARRY E. GOLD
THOMAS J. GALLITANO
JAMES GRAY WAGNER
ERIN K. HIGGINS
STEVEN E. GURDIN
MICHAEL T. SULLIVAN
CONSTANCE M. MCGRANE

Ten Post Office Square, Boston, Massachusetts 02109

Tel: (617) 482-8200
Fax: (617) 482-6444

WRITER'S DIRECT DIAL: 617-348-8297
E-MAIL: MBERNARDO@CKRPF.COM

KURT B. FLIEGAUF
RONALD M. JACOBS
CAROL A. STARKEY
JENNIFER M. NORTON
SARA L. GOODMAN
MICHAEL R. BERNARDO
JACOB A. LABOVITZ
CARA A. FAUCI
JOHANNA L. MATLOFF
AMY C. STEWART
BETH NUZZO NEWMARK
SARAH E. WEBER

April 5, 2005

**BY FACSIMILE AND MAIL**

Stephen F. Gordon, Esq.
Gordon Haley, LLP
101 Federal Street
Boston, MA  02110

      RE:    <u>Casas, Benjamin & White, LLC v. The Pointe Group, et al.</u>
              C.A. No. 04-CV-12333-MEL

Dear Steve:

        Pursuant to Rule 7.1 of the Local Rules of the U.S. District Court for the District of Massachusetts, I write to request that The Pointe Group, Inc. ("TPG") supplement its responses to Casas, Benjamin & White, LLC's ("CBW") First Request for Production of Documents ("TPG's Response") as follows.  TPG has objected to producing documents relating to the ownership, formation, operation, membership, mission, and purpose of TPG, and Hammond Point Nursing Home, LLC, Boylston Place at Chestnut Hill, LLC, and Cranberry Point Nursing Home, Inc. ("Combined Operations"), on the grounds that such requests are overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. (TPG's Responses 2, 4 and 32).

        As an initial matter, TPG has provided no factual support for its claim that Requests 2, 4 and 32 are overbroad, nor has TPG established that responding to said Requests would place any sort of undue burden on TPG.  CBW, however, is willing to limit the time period applicable to Requests 2, 4, and 32 to January 1, 2003 to December 31, 2004.

        As to TPG's other grounds for objection, documents concerning the ownership, formation, operation, membership, mission, and purpose of TPG and the Combined Operations are relevant to the claims and defenses in this case for several reasons.  <u>See</u> Fed.R.Civ.P. 26(b)(1).  First, Requests 2, 4, and 32 seek documents relevant to the allegations underlying several of CBW's claims against TPG.  Specifically, CBW's claims are based, in part, on its allegations that (1) Gerald Freid executed the September 4, 2003 Engagement Letter with CBW (as well as other related contractual documents) on behalf of TPG and/or the Combined Operations; (2) that the individually-named defendants and/or TPG had ownership interest(s) in the Combined Operations sold to Epoch Living Center ("Epoch") and therefore received a benefit from the transaction; and (3) that TPG and/or the individually-named defendants had the

Stephen F. Gordon, Esq.
April 5, 2005
Page 2

authority of the Combined Operations to instruct, and did in fact instruct the buyer, Epoch and/or its attorneys, Goodwin Procter, LLP, to remove CBW's fee (earned in accordance with the Engagement Letter) of more than $1,028,000 from the Closing Statement on or about September 30, 2004.

Requests 2, 4, and 32 seek documents that reveal the relationships between the individually-named defendants and TPG, and the relationship between TPG and the Combined Operations sold to Epoch. It is expected that responsive documents will establish close relationships between the individually-named defendants, TPG and the Combined Operations, which, in turn, provide support for CBW's allegations that TPG had an interest in, and authority and control over, the Combined Operations in connection with the transaction with Epoch. As such, Requests 2, 4, and 32 bear directly on CBW's claims against TPG, including Count I (Breach of Contract), Count II (Breach of Implied Covenant of Good Faith and Fair Dealing), Count III Promissory Estoppel/Detrimental Reliance), Count IV (Fraudulent Misrepresentation), Count V (Civil Conspiracy), Count VI (Chapter 93A), Count VII (Fraudulent Transfer) and Count IX (Unjust Enrichment).

Requests 2, 4, and 32 are also relevant to TPG's defenses to CBW's claims. Specifically, a primary basis for TPG's defense in this matter appears to be that it cannot be liable on CBW's contract-based claims because it never entered into any agreements with CBW, never had an interest in the sale of the Combined Operations to Epoch, and had no liability to Key Bank on loans that were discharged as a result of the purchase and sale of the Combined Operations to Epoch. (Paragraphs 5, 6, 12, 19, 92, and 111 of the Answer, Affirmative Defenses and Counterclaim of Defendants The Pointe Group, Inc., Gerald S. Freid and Barry Freid). Based on the foregoing, it is clear that the corporate and ownership documents requested by CBW in Requests 2, 4, and 32 are relevant to TPG's defenses in this matter as well as CBW's claims. CBW therefore requests that TPG supplement its responses to Requests 2, 4, and 32 and produce any responsive documents immediately.

Finally, in TPG's Response to Request 44, which seeks a listing of all documents withheld from TPG's document production because of the claim of attorney-client, work product or other privilege, TPG objected to the burden of creating a list of such documents unless CBW agrees to bear the cost of preparing such list. TPG has provided no basis for its claim that preparation of a privilege list or log would cause an undue burden, financial or otherwise. Moreover, CBW has strong grounds to request a privilege log. One of your clients in this case, Gerald Freid, is "not sure" whether you represented TPG in the Epoch transaction at issue in this case. (G. Freid Depo. Transcript, p. 83). In TPG's answer to the Complaint in this matter, TPG asserted that you "acted only as legal counsel for the Key Bank Financed Facilities and not on behalf of TPG or the Freids." (Answer, ¶ 43). Nevertheless, you instructed Mr. Freid not to answer questions pertaining to communications you had with TPG representatives, on the grounds of attorney-client privilege. (G. Freid Depo. Transcript, pp. 107-09). Further, despite Mr. Freid's unequivocal acknowledgement that you did not represent him in connection with the Epoch transaction (id. at pp. 82-83), at his deposition you instructed him not to answer questions

Stephen F. Gordon, Esq.
April 5, 2005
Page 3

regarding conversations he had with you prior to the closing of the Epoch transaction based on attorney-client privilege. (G. Freid Depo. Transcript, pp. 82-83, 103-109).

      Given that it is not clear (even to your own client) who you represented, if anyone, in connection with the Epoch transaction, CBW requests that TPG prepare a list of withheld documents in the form of a privilege log, identifying the documents withheld by date, author, recipient(s), general subject matter, and privilege asserted. CBW requests in particular a detailed privilege log concerning all documents withheld in response to Requests 20 and 22, on the grounds of attorney-client privilege, work product doctrine or other privilege.

      I look forward to your prompt response.

                              Very truly yours,

                              Michael R. Bernardo

MRB:1915-000
cc:    W. Scott O'Connell, Esq.
       Richard P. Steinken, Esq.
       Thomas E. Peisch, Esq.
       Erin K. Higgins, Esq.

222796.1

**D**

## GORDON HALEY LLP

COUNSELLORS AT LAW

101 FEDERAL STREET

BOSTON, MASSACHUSETTS 02110-1844

(617) 261-0100

FAX (617) 261-0789

April 18, 2005

By Hand

Michael R. Bernardo, Esquire
Conn Kavanaugh Rosenthal Peisch & Ford, LLP
Ten Post Office Square
Boston, Massachusetts 02109

Re:    Casas, Benjamin & White, LLC v. The Pointe Group, Inc. et al (Response to your letter
       of April 5, 2005)
       USDC Case No. 04-CV-12333-MEL

Dear Michael:

I have carefully read (and re-read) your letter of April 5, 2005 regarding the production of
documents in this matter from parties and non-parties. It is my hope that we can reach
agreement with respect to the production of documents. Please note that, in many cases, we have
objected to the production of documents but, in fact, it does not appear that responsive
documents exist or are in the possession, custody or control of the parties from whom you have
sought the documents.

With respect to The Pointe Group, you have sought documents relating to the ownership,
formation, operation, membership, mission and purpose of The Pointe Group. Taking each of
those items separately, I do not believe that the documents relating to ownership or formation (to
the extent that The Pointe Group has them) would be burdensome. Limiting the documents to
the period from January 1, 2003 to December 31, 2004 would not, however, be likely to yield
any responsive documents. Therefore, although I appreciate the spirit in which you placed a
time limit on the documents, I will redouble my efforts to obtain ownership and formation
documents regarding The Pointe Group without your much appreciated time limitation. I have a
similar response with respect to the "mission" and "purpose" of The Pointe Group, although I
doubt that there are any documents in existence that would deal directly with those issues (except
those documents as may be redundant to the request regarding "formation"). There would, of
course, be no "membership" documents regarding The Pointe Group as it is a corporation. I
continue to have a problem with the burdensome nature of requests for all documents (even
limited to a two year period) regarding the very extensive operations of The Pointe Group. I

# GORDON HALEY LLP

Michael R. Bernardo, Esquire
April 18, 2005
Page 2

understand why ownership and formation are relevant to our dispute; I fail to understand how operations are relevant.

With respect to Hammond Pointe Nursing Home, LLC, Boylston Place at Chestnut Hill, LLC and Cranberry Pointe Nursing Home, Inc. (the "Healthcare Entities"), again, without regard to your time limitation, I will try to locate documents relating to ownership, formation, membership, mission and purpose. All documents concerning the operations of the Healthcare Entities (which are also subject to privacy issues) would be burdensome and irrelevant.

With respect to the claims of relevancy set forth in the third paragraph of your April 5, 2005 letter, I believe that Gerald Freid testified that he executed the September 4, 2003 Engagement Letter with CBW on behalf of The Pointe Group. In your letter you make the allegation that the Engagement Letter was executed (perhaps) on behalf of Hammond Pointe Nursing Home, LLC, Boylston Place at Chestnut Hill, LLC and Cranberry Pointe Nursing Home, Inc. Can you tell me where in your papers this allegation has been made?

That neither the individual Defendants nor The Pointe Group had any ownership interests in the Healthcare Entities is painfully clear, but I will, as set forth above, try to find documents relating to the ownership of The Pointe Group and the Healthcare Entities without regard to the time limitation. There will, of course, be no documents that either The Pointe Group or the individual Defendants had the authority of the Healthcare Entities to instruct anybody with respect to anything having to do with CBW's fee at the closing. There were, however, management agreements between The Pointe Group and Hammond Pointe Nursing Home, LLC and Cranberry Pointe Nursing, Inc. Please let me know whether those management agreements have previously been produced and, if not, and they can be located, they will be produced. Those would be the only documents that would indicate anything like The Pointe Group's "authority and control over" two of the Healthcare Entities.

We disagree, of course, with your description of the "primary basis" for The Pointe Group defenses and, once again, note that Gerald Freid testified that he did enter into the Engagement Letter on behalf of The Pointe Group (so that would not appear to be an issue any longer). While the Defendants' documents regarding Key Bank's loans are, unfortunately, incomplete, you will, no doubt, be able to obtain complete loan documents from Key Bank and they will disclose whether or not The Pointe Group had any liability to Key Bank. I believe that we have already produced all of the documents that we have relating to Key Bank, including loan documents and communications.

Lastly, I must continue to object to the time and expense of preparing an unnecessary privileged document log. I do not find it surprising that Gerald Freid was not sure whether I represented

# GORDON HALEY LLP

Michael R. Bernardo, Esquire
April 18, 2005
Page 3

The Pointe Group in the Epoch transaction. The Pointe Group had no need for any representation in the Epoch transaction as it had nothing to sell to Epoch. It is the case that my involvement in the Epoch transaction was with respect to Key Bank matters and the satisfaction of Key Bank's liens on the assets sold to Epoch (none of which were owned by any of the Defendants and none of the selling entities were in whole or in part owned by the Defendants). Consequently, while none of the Defendants had (or needed) any representation with respect to the Epoch transaction, this office has represented them on a number of matters, and continues to represent them on a number of matters other than the CBW litigation, thus (together with the fact that the sellers obviously acted from time to time through various individuals) accounting for the attorney-client privilege.

I will continue to try to accommodate you in every reasonable way with respect to the production of documents. I must, however, resist attempts to make this litigation onerous and burdensome on parties and non-parties whom I represent, or are asked to represent, and I hope that you will agree that neither you nor your client has any intention or desire to unnecessarily add to the costs of this already quite expensive litigation.

Sincerely,

Stephen F. Gordon
SFG:vsh

cc:     W. Scott O'Connell, Esquire (By First Class Mail)
        Erin K. Higgins, Esquire (By First Class Mail)
        Todd B. Gordon, Esquire

P:\Clients\Pointe Group\CBW Corr\Bernardo ltr02 04-18-05.doc

**E**

Gerald S. Freid

03/09/05

1

1                      Volume:  I

2      CERTIFIED ORIGINAL    Pages:  1 - 236

3      LEGALINK BOSTON    Exhibits:  32 - 38

4

5           UNITED STATES DISTRICT COURT

6            DISTRICT OF MASSACHUSETTS

7              No. 04CV12333MEL

8  - - - - - - - - - - - - - - - - - - - - - - - -

9  CASAS, BENJAMIN & WHITE, LLC.,

10                Plaintiff,

11

12  vs.

13

14  THE POINTE GROUP, INC., GERALD S. FREID; BARRY

15  FREID; KEY CORPORATE CAPITAL, INC.,

16              Defendants.

17  - - - - - - - - - - - - - - - - - - - - - - - -

18        DEPOSITION OF GERALD S. FREID

19        March 9, 2005 - 10:35 a.m.

20    Conn, Kavanaugh, Rosenthal, Peisch & Ford

21          10 Post Office Square

22          Boston, Massachusetts

23

24    Reporter:  Donna J. Whitcomb, CSR/RPR/RMR

Gerald S. Freid                                             03/09/05

82

1    Bank situation to the best of my knowledge.

2        Q.   And after Steve Gordon became involved

3    did you continue to have discussions directly with

4    Mr. Dunham?

5        A.   Yes.

6        Q.   Did you ever have discussions with anyone

7    at Epoch after the decision was made to go forward

8    with the Epoch proposal?

9        A.   Yes.

10       Q.   And who at Epoch did you speak to?

11       A.   Larry Gerber.

12       Q.   Anyone other than Mr. Gerber?

13       A.   No.

14       Q.   Who did Steve Gordon represent; did he

15   represent you?

16       A.   No, he represented the entities that owed

17   Key Bank the money which were the two real estate

18   companies; that's what I believed that's who he

19   represented.

20       Q.   Okay.   Now, were you an officer, director,

21   employee of any of those companies?

22       A.   No.

23       Q.   And did you have any ownership interest in

24   any of those companies?

Gerald S. Freid

03/09/0

83

1       A.    No.

2       Q.    Why was it that you would have

3   communications with Steve Gordon then?

4       A.    Helping my mother.

5       Q.    Was there some reason your mother wouldn't

6   be capable of talking to Steve Gordon herself?

7       A.    Not qualified in the business sense of the

8   word.  My mother was a homemaker.

9       Q.    So is it your testimony that Mr. Gordon

10  did not represent you?

11      A.    Yes.

12      Q.    And did Mr. Gordon represent the company

13  that employed you, The Pointe Group, Inc.?

14      A.    I'm not sure.

15      Q.    Mr. Freid, I'm handing you what's been

16  marked as Exhibit 21.  Mr. Freid, would you agree

17  that this June 3rd, 2004 letter is addressed to,

18  among other people, you?

19      A.    Yes.

20      Q.    And you signed the document at the end,

21  correct?

22      A.    Yes.

23      Q.    Did you see any drafts of this June 3rd

24  letter before this final one that you signed?

Gerald S. Freid

1    Gordon?

2        A.    No.

3        Q.    So John McCullough was not part of the

4    picture yet?

5        A.    No.

6        Q.    Once Mr. Caine left what was discussed in

7    that meeting?

8                MR. GORDON:   I'm going to instruct

9    you not to answer the question.

10               MS. HIGGINS:   On what grounds?

11               MR. GORDON:   Attorney-client

12   privilege.

13               MS. HIGGINS:   But he's testified he

14   didn't have a privilege with you.

15               MR. GORDON:   No, he testified that I

16   was representing the borrower entities.

17               MS. HIGGINS:   With whom he has no

18   affiliation.

19               MR. GORDON:   That's not true.

20   BY MS. HIGGINS:

21       Q.    Do you have any affiliation with the

22   borrower entities?

23       A.    Well, I signed that piece of paper

24   guarantying it.

Gerald S. Freid
03/09/05

104

1    Q.    So was Mr. Gordon representing you,

2 because I think you previously testified he wasn't

3 representing you?

4              MR. GORDON:  That's been asked and

5 answered.

6              MS. HIGGINS:  Well, I'm going to ask

7 him again.

8              MR. GORDON:  He's not going to answer

9 it.  You get to ask question once, he answered once

10 , and then we move on to the next question.

11              MS. HIGGINS:  I don't think that's a

12 rule, Steve.

13              MR. GORDON:  Asked and answered.

14              MS. HIGGINS:  Okay, that's your

15 objection, fine.

16    Q.    Was Mr. Gordon representing you in your

17 capacity as a guarantor?

18              MR. GORDON:  I'm going to instruct

19 the witness not to answer.

20              MS. HIGGINS:  That's a different

21 question.

22              MR. GORDON:  He has answered the

23 question.

24              MS. HIGGINS:  He has not answered

Gerald S. Freid                                         03/09/05

105

1.   that question.

2               MR. GORDON:  He's answered the

3    question.  If you think he hasn't then you can get

4    an order compelling him to answer.  He has answered

5    that question.

6               MS. HIGGINS:  What was his answer?

7               MR. GORDON:  The transcript will

8    show what his answer was.

9               MS. HIGGINS:  I'm not going to make

10   the court reporter go back to the beginning of this

11   day and -- unless you're willing to sit here past

12   four o'clock and bring him back another day?  It's a

13   ridiculous waste of time.

14              MR. GORDON:  He's answered the

15   question as to who I was representing and I believe

16   that the cast of characters in that room were all

17   covered by the attorney-client privilege.

18              MS. HIGGINS:  And I'm trying to

19   clarify the facts.

20              MR. GORDON:  And if you think

21   otherwise then you move to compel the testimony.

22              MS. HIGGINS:  I can't move to compel

23   unless I have the facts, Steve.

24              MR. GORDON:  You have the facts.

Gerald S. Freid

03/09/0[

106

1    He's answered the question as to who was
2    represented.

3              MS. HIGGINS:  I don't believe he's
4    answered the question that I just asked.  I don't
5    want to waste the time it's going to take to have
6    her go back and read a question that was asked
7    several hours ago which I know was:  Did Mr. Gordon
8    represent you individually?  At which point he said,
9    no.

10             MR. GORDON:  Then the question has
11   indeed been asked and answered.

12             MS. HIGGINS:  No, but that's not the
13   question I just asked.

14             MR. GORDON:  You asked him the
15   question as to whether I was representing him as
16   guarantor.

17             MS. HIGGINS:  Yes, that's a different
18   question.

19             MR. GORDON:  I find it to be the same
20   question.

21             MS. HIGGINS:  It's different words.

22             MR. GORDON:  I find it to be the same
23   question.  If we disagree, respectfully I disagree,
24   and we'll have to get someone to decide it.

Gerald S. Freid                                    03/09/05

107

1            MS. HIGGINS:  All right then, I just

2    want to be clear on what -- you're instructing him

3    not to answer my question because it's been asked

4    and answered?

5            MR. GORDON:  That's correct.

6            MS. HIGGINS:  Not because the

7    question itself requires a privileged answer?

8            MR. GORDON:  The question has been

9    asked and answered.  I think we should move on.

10   It's actually been asked and answered by the witness

11   and asked and answered by you.  I think we should

12   move on.

13           MS. HIGGINS:  Well, I'm just going to

14   take a minute to think about whether I do have, in

15   fact, all the facts I need.

16           MR. GORDON:  By all means.

17           (Pause)

18     BY MS. HIGGINS:

19      Q.   Now, you said Mr. Barker was present for

20   this meeting, correct?

21      A.   Correct.

22      Q.   And Mr. Barker was the comptroller for The

23   Pointe Group, Inc., correct?

24      A.   Correct.

Gerald S. Freid

108

1    Q.   And to the best of your knowledge did Mr.

2    Barker have any ownership interest in any of the

3    entities that owed money to Key Bank?

4    A.   None.

5    Q.   And to the best of your knowledge did Mr.

6    Barker guaranty any of the obligations that the

7    borrowers had to Key?

8    A.   No.

9    Q.   Was Mr. Barker to the best of your

10   knowledge an officer or director of any of the

11   entities that owed money to Key Bank?

12   A.   I don't believe so.

13   Q.   Then I'm going to ask my question again.

14   After Mr. Caine left the room what was discussed

15   with Mr. Gordon?

16          MR. GORDON:  I'm going to instruct

17   the witness not to answer.

18          MS. HIGGINS:  Could you specify the

19   grounds?

20          MR. GORDON:  On the grounds of

21   attorney-client privilege.

22          MS. HIGGINS:  Okay.  Well, I

23   respectfully disagree.  I think the presence of Mr.

24   Barker at a minimum destroyed the privilege and

Gerald S. Freid

03/09/05

109

1    we'll reserve our rights to move to compel Mr. Freid

2    to answer those questions and I'm not going to

3    bother asking subsequent questions at today's

4    deposition as to communications that were had with

5    Mr. Gordon once I identify the participants to those

6    communications.  But I reserve the right to move to

7    compel Mr. Freid to answer questions that he's

8    instructed not to answer on the grounds of privilege

9    today along the same line of questioning.

10            MR. GORDON:  You may want to ask him,

11    and I don't know what the answer is, but you may

12    want to ask him if he recalls the discussion before

13    we waste a lot of time compelling him to answer as

14    to what the discussion was.

15            MS. HIGGINS:  I don't think that's

16    fair because, you know, you're obviously not going

17    to let me ask follow-up questions to see if I can

18    refresh his memory as to what he recalls, so I'm not

19    sure that's going to really be very helpful.

20            MR. GORDON:  Okay.

21    BY MS. HIGGINS:

22      Q.   I guess I will ask one follow-up question.

23            After Mr. Caine left the room do you

24    recall that there was further discussion among those

**F**

TRIAL AND DEPOSITION SUBPOENAS SERVED THROUGHOUT MASSACHUSETTS

# DEWSNAP & ASSOCIATES, L.L.C.

*Process Servers - Notary Public*
**92 State Street**
**BOSTON, MA 02109**
**Phone: (617) 367-1070**
**FAX: (617) 367-1072**

| | |
|---|---|
| **CONN, KAVANAUGH, ROSENTHAL, PEISCH & FORD**<br>**TEN POST OFFICE SQ.**<br>**BOSTON, MA 02109**<br><br>ATTN: **MICHAEL R BERNARDO, ESQ** | INVOICE #:    **DB19052**<br><br>INVOICE DATE: **04/12/2005**<br>TYPE OF<br>SERVICE MADE: **DEPOSITION** |

DOCKET #:   **04-CV-12333-MEL**              YOUR FILE # :

PLAINTIFF:   **CASAS, BENJAMIN & WHITE, LLC**

             **vs.**

DEFENDANT: **THE POINTE GROUP, INC., ET AL**

| Title | Served | City | Service Fee | Witness Fee |
|---|---|---|---|---|
| PMK | FIDELITY NATIONAL TITLE INS c/o TERENCE NOLAN, ESC | BOSTON | 27.00 | 41.00 |
| PMK | MELLON TRUST OF NEW ENGLAND, N.A.<br>*04/8 - Att: JR*<br>*ATTEMPTED TO SERVE GARY LUCIA; INFORMED HE DOES NOT WORK FOR MELLON TRUST.* | BOSTON | 27.00 | 41.00 |
| KOR | CRANBERRY POINT PARTNERSHIP | DEDHAM | 27.00 | 48.00 |
| KOR | BOYLSTON PLACE AT CHESTNUT HILL, LLC | DEDHAM | 5.00 | 48.00 |
| KOR | CRANBERRY POINTE NURSING HOME, INC. | DEDHAM | 5.00 | 48.00 |
| KOR | HAMMOND POINTE NURSING HOME, LLC | DEDHAM | 5.00 | 48.00 |
| KOR | CHESTNUT HILL LIFE CARE REALTY, LLC | DEDHAM | 5.00 | 48.00 |

| Payment & Correspondence Address | | |
|---|---|---|
| **DEWSNAP & ASSOCIATES, L.L.C.**<br>*92 State Street*<br>**BOSTON, MA 02109**<br>*Federal Tax I.D. #04-3402773* | **Witness Fees:**<br>**Service Fees:**<br><br>**Total:** | **$322.00**<br>**$101.00**<br><br>**$423.00** |

Remittance Copy

G

# GORDON HALEY LLP

COUNSELLORS AT LAW

101 FEDERAL STREET

BOSTON, MASSACHUSETTS 02110-1844

(617) 261-0100

FAX (617) 261-0789

April 18, 2005

By Hand

Michael R. Bernardo, Esquire
Conn Kavanaugh Rosenthal Peisch & Ford, LLP
Ten Post Office Square
Boston, Massachusetts 02109

Re:    Casas, Benjamin & White, LLC v. The Pointe Group, Inc. et al
       USDC Case No. 04-CV-12333-MEL

Dear Michael:

While not included in your letter of April 8, 2005 to counsel, I have now received copies of the
Subpoenas for the keeper of the records depositions of Cranberry Pointe Nursing Home, Inc.,
Cranberry Pointe Partnership, Chestnut Hill Life Care Realty, LLC, Hammond Pointe Nursing
Home, LLC and Boylston Place at Chestnut Hill, LLC.  As you know, I was not able to accept
service of the subpoenas for any of those entities and I do not agree that they were properly
served.  Nonetheless, subject to the objections to document production set forth below, the
keeper of the records of each will appear at the time and place designated for appearance in the
Notices of Deposition (except for the one conflict noted below).

Accordingly, the keeper of the records of Chestnut Hill Life Care Realty, LLC will appear at
your offices on April 25, 2005 at 10:00 a.m.  The keepers of the records of Hammond Pointe
Nursing Home, LLC and Cranberry Pointe Partnership will appear at your offices at 10:00 a.m.
and 2:00 p.m., respectively, on April 26, 2005 (although my deposition will have to be delayed
or paused for what I expect to be brief keeper of records depositions).  The keeper of the records
of Boylston Place at Chestnut Hill, LLC will appear at your offices at 10:00 a.m. on April 27,
2005.  With respect to the deposition of the keeper of the records of Cranberry Pointe Nursing
Home, Inc., I, unfortunately, have a long-scheduled Summary Judgment hearing in Middlesex
Superior Court at 2:00 p.m. on April 27, 2005.  Would it be possible to have the Cranberry
Pointe Nursing Home, Inc. keeper of the record's deposition immediately following the Boylston
Place at Chestnut Hill, LLC keeper of the record's deposition on the same day?

On behalf of Chestnut Hill Life Care Realty, LLC, Hammond Pointe Nursing Home, LLC,
Cranberry Pointe Partnership, Boylston Place at Chestnut Hill, LLC and Cranberry Pointe

# GORDON HALEY LLP

Michael R. Bernardo, Esquire
April 18, 2005
Page 2


Nursing Home, Inc., objection is hereby made to the production and copying of all of the documents sought. The requested production would be onerous and burdensome on these non-parties and much of the documentation would involve serious privacy issues (of residents, not the entities) and would not be relevant to this litigation nor likely to lead to relevant evidence. Additionally, documents which might be relevant would be redundant of that already produced by the parties to this litigation.

Please let me know whether you are able to change only the time of the Cranberry Pointe Nursing Home, Inc. keeper of the records deposition or wish to make some other change.

Sincerely,

Stephen F. Gordon
SFG:vsh

cc:    W. Scott O'Connell, Esquire (By First Class Mail)
       Erin K. Higgins, Esquire (By First Class Mail)
       Todd B. Gordon, Esquire

P:\Clients\Pointe Group\CBW Corr\Bernardo ltr03 04-18-05.doc