# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CASAS, BENJAMIN & WHITE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-12333-MEL |
| vs. | ) | |
| | ) | |
| THE POINTE GROUP, INC., a | ) | |
| Massachusetts corporation d/b/a The Pointe | ) | |
| Group Healthcare and Senior Living; | ) | |
| GERALD S. FREID; BARRY FREID; and | ) | |
| KEY CORPORATE CAPITAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION OF PLAINTIFF, CASAS, BENJAMIN & WHITE, LLC, TO COMPEL PRODUCTION OF DOCUMENTS FROM CRANBERRY POINT PARTNERSHIP, BOYLSTON PLACE AT CHESTNUT HILL, LLC, CRANBERRY POINTE NURSING HOME, INC., HAMMOND POINTE NURSING HOME, LLC, AND CHESTNUT HILL LIFE CARE REALTY, LLC.

The plaintiff, Casas, Benjamin & White, LLC ("CBW"), moves pursuant to Rules 37 (a)(2)(B) and 45 of the Federal Rules of Civil Procedure for an order requiring Cranberry Pointe Partnership, Boylston Place at Chestnut Hill, LLC, Cranberry Pointe Nursing Home, Inc., Hammond Pointe Nursing Home, LLC, and Chestnut Hill Life Care Realty, LLC to produce documents in response to Schedule A of CBW's deposition subpoenas, served on said entities on April 12, 2005, and to undertake a good faith search for responsive documents. In support of this motion, CBW submits a Certificate of Compliance with Rules 7.1 and 37.1 of the Local Rules of the U.S. District Court for the District of Massachusetts, and further states as follows.

This case is brought against The Pointe Group, Inc. ("TPG"), Barry and Gerald Freid, and Key Bank (hereinafter, collectively, "Defendants") to recover money damages in excess of one million dollars that CBW suffered because it was never paid for services CBW performed for the benefit of Defendants. Specifically, TPG and the Freids retained CBW to provide certain

investment banking services in connection with the sale or refinance of certain nursing homes and assisted living facilities, and agreed to pay CBW a percentage of the value of any transactions consummated in connection with the sale or refinance of those facilities. After CBW performed all of its obligations under the parties' contract, and the facilities were in fact sold, Defendants wrongfully failed and refused to pay CBW's contracted-for fee, and instead retained sale proceeds that should have been paid to CBW.

CBW alleges that TPG breached a contract with CBW, breached the implied covenant of good faith and fair dealing, that the Freids aided and abetted TPG's misconduct, and that all Defendants were unjustly enriched by the benefits that they wrongfully derived from CBW's services, and engaged in fraudulent misrepresentation, civil conspiracy, and violations of M.G.L. c. 93A. CBW seeks recovery of actual damages, double or treble damages, costs and attorneys' fees by virtue of Defendants' willful or knowing, unfair and/or deceptive acts.

On January 27, 2005, CBW served its First Request for Production of Documents on TPG. (A true and accurate copy of this request for production is attached hereto at Tab A.) TPG responded to CBW's request on February 28, 2005. (A true and accurate copy of TPG's response to CBW's request for production is attached hereto at Tab B.) In its response to CBW's First Request for Production of Documents, TPG indicated in thirteen of its responses that TPG "does not have possession, custody or control over certain documents belonging to the Healthcare Entities." See Response Nos. 3, 4, 8, 9, 13, 18, 23, 26, 32, 33, 34, 41, and 42. In response, CBW drafted deposition subpoenas to Cranberry Pointe Partnership, Boylston Place at Chestnut Hill, LLC, Cranberry Pointe Nursing Home, Inc., Hammond Pointe Nursing Home, LLC, and Chestnut Hill Life Care Realty, LLC (the "Combined Operations"), the five entities affiliated with or operating the "Healthcare Entities," seeking, among other information, documents

responsive to the thirteen requests TPG implied in its own document response may be in the possession, custody or control of the "Healthcare Entities" or their affiliates.

CBW's counsel contacted Stephen F. Gordon, Esq., counsel for TPG, in early April, 2005 to inquire as to whether he would accept service of the deposition subpoenas on behalf of the Combined Operations. Mr. Gordon responded that he could not accept service because he did not represent any of the entities. As a result, CBW had the deposition subpoenas formally served on the Combined Operations at their offices at 3 Allied Drive, Dedham, MA (which also is the corporate address for TPG) on April 12, 2005 at the cost of $287. (True and accurate copies of the five deposition subpoenas and the service of process invoice from Dewsnap & Associates, LLC are attached hereto at Tab C).

Merely six days later, on April 18, 2005, Mr. Gordon contacted CBW's counsel by letter, formally objecting on behalf of the Combined Operations to the production of _any_ documents in response to the deposition subpoenas. (A true and accurate copy of Mr. Gordon's April 18, 2005 letter is attached hereto at Tab D). Mr. Gordon also represented one of the Combined Operations, Chestnut Hill Life Care Realty, LLC ("Chestnut Hill Realty"), at its Keeper of Records deposition on April 25, 2005.

At the Keeper of Records deposition, Chestnut Hill Realty's purported Keeper of Records, Frank Barker (who also is TPG's controller), testified that on the advice of counsel he had conducted no search for documents responsive to CBW's deposition subpoena. Mr. Barker further testified, however, that he knew (or, in some cases, believed) that Chestnut Hill Realty did have documents responsive to many of the requests set forth in the subpoena. Moreover, Mr. Barker indicated that these responsive documents are located in one file room at Chestnut Hill Realty's office at 3 Allied Drive, Dedham, Massachusetts.

3

According to Mr. Gordon's above referenced letter of April 18, 2005, Chestnut Hill Realty's failure to search for or produce any responsive documents is based on a claim that such a production would be onerous, burdensome, and redundant of the document production made by TPG. Chestnut Hill Realty also objected on the ground that any responsive documents would be irrelevant to any claims or defenses in this case. Mr. Gordon indicated at the Keeper of Records deposition of Chestnut Hill Realty that the other four entities subpoenaed would not produce any documents in response to their deposition subpoenas, based on the same objections. After the April 25, 2005 deposition, however, Mr. Gordon emailed CBW's counsel, offering to produce some (but not all) of the subpoenaed documents in lieu of a complete production and further depositions. (A true and accurate copy of Mr. Gordon's April 25, 2005 email is attached hereto at Tab E).

On April 26, 2005, CBW's counsel formally requested, in writing, that Chestnut Hill Realty search for and produce documents responsive to CBW's deposition subpoena. Moreover, in order to expedite the process of obtaining responsive documents from Chestnut Hill Realty and the other entities, CBW offered to conduct an inspection of the files of all of the entities at their offices at 3 Allied Drive, Dedham, Massachusetts. (A true and accurate copy of CBW's April 26, 2005 letter is attached hereto at Tab F).

By letter dated April 27, 2005, Mr. Gordon accused CBW's counsel of "ignoring the relative rights and responsibilities" of a party issuing a subpoena and a non-party responding to a subpoena, and stated that CBW would have to proceed with its Keeper of Records depositions. (A true and accurate copy of Mr. Gordon's April 27, 2005 letter is attached hereto at Tab G). As a result, and based on Mr. Gordon's representation that the Keepers of Record of the other entities would not be producing any documents, CBW continued the remaining Keeper of

Record depositions pending the instant motion to compel production of documents from all of the entities. (A true and accurate copy of CBW's April 27, 2005 email is attached hereto at Tab H).

In light of this procedural history, CBW respectfully requests that the Court compel all of the entities that comprise the Combined Operations to conduct good faith searches of their files for documents responsive to CBW's subpoenas, and to produce those records for inspection and copying on rescheduled deposition dates.

Neither Chestnut Hill Realty nor any of the other entities has provided any factual support for their claim (as advanced by their attorney, Mr. Gordon) that responding to the document requests in CBW's deposition subpoenas would be onerous or burdensome. Indeed, Mr. Barker testified that he made no effort to search for or identify responsive documents – documents which he acknowledged are located in one room in Chestnut Hill Realty's office. Further, there is no reasonable basis for Chestnut Hill Realty's claim that there are no relevant documents in its possession, custody or control given Mr. Barker's admission that, as Keeper of the Records, he had undertaken no efforts to even identify (much less determine the relevance of) responsive documents.

Finally, Chestnut Hill Realty has provided no factual support for its claim that any responsive documents in its possession, custody or control would be duplicates of documents already produced by TPG. Mr. Barker testified that he had not reviewed TPG's document production, and apparently no one has reviewed Chestnut Hill Realty's documents. Therefore, Chestnut Hill Realty has no basis to conclude that all (or any) of its responsive documents would be duplicative of documents already produced by TPG.

WHEREFORE, Casas, Benjamin & White, LLC, respectfully requests that this Court grant its Motion to Compel Cranberry Pointe Partnership, Boylston Place at Chestnut Hill, LLC, Cranberry Pointe Nursing Home, Inc., Hammond Pointe Nursing Home, LLC, and Chestnut Hill Life Care Realty, LLC to undertake a good faith search for documents responsive to the schedules attached to CBW's deposition subpoenas, and to produce those documents for inspection and copying at rescheduled deposition dates.

A proposed form of Order is attached hereto.

Respectfully submitted,

CASAS, BENJAMIN & WHITE, LLC

By its attorneys,

/s/ Michael R. Bernardo
Thomas E. Peisch (BBO# 393260)
Erin E. Higgins (BBO# 559510)
Michael R. Bernardo (BBO# 648310)
CONN KAVANAUGH ROSENTHAL
  PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA  02109
(617) 482-8200

Dated: May 9, 2005
      Boston, Massachusetts

## LOCAL RULE 7.1 & 37.1 CERTIFICATION

The undersigned counsel hereby certifies that plaintiff's counsel has conferred with counsel for the non-moving parties, Stephen F. Gordon, Esq., through written and oral communications, and attempted in good faith to resolve or narrow the issues raised in this motion.

/s/ Michael R. Bernardo
Michael R. Bernardo

Dated: May 9, 2005

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CASAS, BENJAMIN & WHITE, LLC, | ) | No.  04-12333-MEL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE POINTE GROUP, INC., a | ) | |
| Massachusetts corporation d/b/a The Pointe | ) | |
| Group Healthcare and Senior Living; | ) | |
| GERALD S. FREID; BARRY FREID; and | ) | |
| KEY CORPORATE CAPITAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter having come on for hearing on the plaintiff's motion to compel production of documents from Cranberry Point Partnership, Boylston Place at Chestnut Hill, LLC, Cranberry Pointe Nursing Home, Inc., Hammond Pointe Nursing Home, LLC, and Chestnut Hill Life Care Realty, LLC, it is hereby Ordered:

Cranberry Point Partnership, Boylston Place at Chestnut Hill, LLC, Cranberry Pointe Nursing Home, Inc., Hammond Pointe Nursing Home, LLC, and Chestnut Hill Life Care Realty shall, within ten (10) days of this Order, undertake a good faith search for documents responsive to the schedules attached to plaintiff's deposition subpoenas, and to produce those documents for inspection and copying at depositions to take place on mutually agreeable dates within forty-five (45) days from the date of this Order.

So Ordered.

Dated:  May ___, 2005

_____
Lasker, D.J.

225714.1

7

**A**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CASAS, BENJAMIN & WHITE, LLC,   )
  )
    Plaintiff,   )
  )
       vs.   )     No. 04-12333-MEL
  )
THE POINTE GROUP, INC., a   )
Massachusetts corporation d/b/a The Pointe   )
Group Healthcare and Senior Living;   )
GERALD S. FREID; BARRY FREID; and   )
KEY CORPORATE CAPITAL, INC.,   )
  )
    Defendants.   )

## PLAINTIFF CASAS, BENJAMIN & WHITE, LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, THE POINTE GROUP, INC.

Pursuant to Fed. R. Civ. P. 26 and 34, Plaintiff, Casas, Benjamin & White, LLC

("CBW") hereby serves its First Request for Production of Documents upon Defendant The

Pointe Group, Inc. ("TPG"). Pursuant to Rule 34, TPG is required to respond to this document

request by producing a document response and the originals (and where originals are

unavailable, copies) of all documents and things designated below which are within its

possession, custody, or control. The document response and documents requested shall be

produced on or before February 16, 2005, to Michael R. Bernardo, Esq. at the offices of Conn

Kavanaugh Rosenthal Peisch & Ford, LLP, Ten Post Office Square, 4th Floor, Boston,

Massachusetts.

In the alternative, said production may be made by mailing or delivering the document

response and copies of all of the designated documents to Michael R. Bernardo, Esq., at the

above address upon the condition that said copies are received by Mr. Bernardo on or before

February 18, 2005. When produced, the documents shall be segregated and identified by

paragraph number of the request to which they are responsive.

## GENERAL INSTRUCTIONS

(1)    You are requested to produce all documents in your custody, possession or
control, including all documents which are in the custody of your servants,
attorneys, consultants, accountants or agents regardless of the location of such
documents.

(2)    In the event that you object to or claim a privilege with respect to any Request for
Production, in whole or in part, you are requested to produce all documents (or
portions thereof) requested in that portion of the Request for Production as to
which you have no objection or claim of privilege.

(3)    With respect to each responsive document withheld from production on any basis
whatsoever, please identify the precise basis, in detail, for the privilege claimed or
objection made with respect to the document.  Further, with respect to each
responsive document withheld from production, state:

   (a)    the name of each signatory to the document and the capacity in which
each signed, if any;
   (b)    the date of document, if any;
   (c)    the name of each addressor of the document in the capacity in which each
was acting at the time he or she addressed the document, if any;
   (d)    the name of each addressee of the document (including all persons to
whom copies were sent) and the capacity in which each such addressee
was addressed, if any; and
   (e)    the subject matter of the document.

(4)    If any documents responsive to this request have been destroyed, please describe
such documents and state:

   (a)    the date of the destruction of such documents;
   (b)    the names of the persons who destroyed such documents; and
   (c)    the reasons why such documents were destroyed.

(5)    This First Request for Production of Documents shall be deemed continuing so as
to require an immediate supplemental response to the extent required by Fed. R.
Civ. P. 26(e).

(6)    Unless otherwise stated, you are to produce any and all documents responsive to
these requests.

2

## DEFINITIONS

For the purposes of this request, the following words shall be given the indicated meaning or meanings:

(1)    "Document" or "documents" shall mean and refer to any written or other recorded, graphic or photographic matter or other data compilations from which information can be obtained (translated, if necessary, by you into reasonably usable form) of every kind or character, however produced or reproduced, in the actual or constructive possession, custody, care or control of, or available to, you, including, without limiting the generality of the foregoing, all computer tapes or printouts, magnetic or laser-readable disks, other computer-readable memory devices, letters, telegrams, teletypes, correspondence, contracts, agreements, purchase or sale orders, drafts, work papers, notes to the files, reports, memoranda, mechanical and electronic sound recordings or transcripts thereof, videotapes, films, photographs, blueprints, formal or informal drawings or diagrams, calendar or diary entries, memoranda or notes of telephone or personal conversations or of meetings or conferences, studies, reports, interoffice communications, price lists, manuals, summaries or compilations, minutes of meetings, charts, graphs, indices, articles, announcements, books, catalogs, pamphlets, periodicals, records, tables, books of account, ledgers, vouchers, receipts, canceled checks, invoices, order forms, bank statements, financial statements, accounting work papers, bills, and analyses or other statistical data, including originals, drafts, and copies of any of the foregoing, whether typed, printed, handwritten or on tape or other form of recording, and all materials underlying, supporting or used in the preparation of any such document or documents. "Document" also means and refers to all copies of documents, by whatever means made, if the copy bears any other marking or notation or contains any information not found on or in the original. Documents in computer-readable form shall be produced by providing a printout.

(2)    The term "related to" or "relating to" means any and all documents which pertain in any way to the subject of the request, including, without limitation, documents containing a reference thereof, documents consisting in and of themselves the item requested, documents which reflect, evidence, support, or show any information regarding the subject matter of the request, or documents which are part of other documents requested.

(3)    The term "communication" or "communicate" includes all information relating to any oral communications and/or documents (as defined above), whether or not any oral communications were repeated or any such document, or the information contained therein, was transmitted by its author to any other person.

3

(4)     "Person" or "persons" shall mean and include a natural person, partnership, firm or corporation, or any other kind of business or legal entity, its agents, or employees.

(5)     "CBW" or "Plaintiff" means Casas, Benjamin & White, LLC, and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

(6)     "Key Bank" means defendant, Key Corporate Capital, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

(7)     "TPG" means defendant The Pointe Group, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on their behalf, including, but not limited to, any entity doing business as The Pointe Group Healthcare and Senior Living, and Stephen F. Gordon, Esq. of the law firm Gordon Haley, LLP.

(8)     "Epoch" means Epoch Senior Living and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

(9)     "Gerald Freid" means the individually-named defendant, Gerald S. Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

(10)    "Barry Freid" means the individually-named defendant, Barry Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

(11)    "Combined Operations" means the following facilities: (1) Hammond Pointe Nursing Home, LLC, a business providing long-term care, Alzheimer's care, and sub-acute care; (2) Boylston Place At Chestnut Hill, LLC, a business providing assisted living services; and (3) Cranberry Pointe Nursing Home, Inc., a business providing long-term care, Alzheimer's care, and sub-acute care among other services.

## DOCUMENTS REQUESTED

Request No.1

All documents which relate or refer to the incorporation of TPG, including but not limited to Articles of Incorporation, By-Laws, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of TPG.

Request No. 2

All documents related to the formation, operation, membership, mission and purpose of TPG, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of TPG.

Request No.3

All documents which relate or refer to the incorporation or formation of each of the entities comprising the Combined Operations, including but not limited to Articles of Incorporation, By-Laws, Limited Liability Company Operating Agreement, Annual Reports, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of the Combined Operations.

Request No. 4

All documents related to the formation, operation, membership, mission and purpose of each of the entities comprising the Combined Operations, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of the Combined Operations.

Request No. 5

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the Engagement Letter between TPG and CBW, dated September 4, 2003.

Request No. 6

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the Indemnification Agreement between TPG and CBW, dated September 4, 2003.

Request No. 7

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the written amendment to the Engagement Letter, dated December 20, 2003.

Request No. 8

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the Letters of Interest from parties indicating interest in either acquiring or refinancing the Combined Operations at issue in this action.

Request No. 9

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer

or relate to the Letters of Intent from parties indicating an intention to either acquire or refinance the Combined Operations at issue in this action.

Request No. 10

Copies of all checks sent from TPG, its officers, directors, employees, representatives, agents, or attorneys to CBW.

Request No. 11

The Purchase & Sale Agreement (with exhibit schedules and all other documents referenced in the Agreement), including all drafts of the Agreement and the final executed Agreement between TPG and Epoch.

Request No. 12

CBW's invoices for services provided pursuant to the Engagement Letter, including but not limited to the invoice dated September 29, 2004.

Request No. 13

All documents referencing, pertaining to, or generated in connection with the closing on the sale of the Combined Operations to Epoch, whether in draft or final form, and including documents generated in advance of, at, or following the closing.

Request No. 14

All documents which refer to, relate to, reflect or constitute communications between TPG and CBW.

Request No. 15

All documents which refer to, relate to, reflect or constitute communications between TPG and Key Bank during the time period September 1, 2003 to January 31, 2005.

Request No. 16

All documents which refer to, relate to, reflect or constitute communications between TPG and Epoch during the time period September 1, 2003 to January 31, 2005.

Request No. 17

All correspondence, electronic messages, statements, or handwritten notes that TPG or its officers, directors, employees, agents, attorneys, representatives, members, stockholders or consultants have sent to or received from any person or entity relating or referring to the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

Request No. 18

All documents which refer to, relate to or evidence gross revenues and net profits or losses of (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and (3) Cranberry Pointe Nursing Home, Inc. for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by the three facilities for each of the years 1999 to 2004.

Request No. 19

All documents which refer to, relate to or evidence gross revenues and net profits or losses of TPG for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by TPG for each of the years 1999 to 2004.



Request No. 20

All documents which constitute, refer or relate to internal, intra-company, or other similar communications by and among TPG, its officers, directors, employees, agents, representatives, attorneys, stockholders or consultants, including Gerald Freid, Barry Freid and Stephen F. Gordon, Esq., regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

Request No. 21

All documents which constitute, refer or relate to communications by and among Gerald Freid, Barry Freid and other members of the Freid family regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

Request No. 22

All documents which constitute, refer or relate to communications by and between TPG, or its officers, directors, employees, agents, representatives, attorneys, stockholders or consultants, including Gerald Freid and Barry Freid, and Stephen F. Gordon, Esq., regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase

& Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined

Operations, the purchase price for the Combined Operations, or CBW's fees for services.

Request No. 23

All documents which refer to, relate to or evidence loan(s) made by Key Bank for (1)

Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and/or (3)

Cranberry Pointe Nursing Home, Inc., including all documents that evidence, refer to or relate to

descriptions or lists of the business assets, real property, personal property, accounts receivable

and/or inventory of TPG, the Combined Operations, Gerald Freid, Barry Freid and/or any other

collateral used to secure the loan(s) made by Key Bank for the Combined Operations.

Request No. 24

All documents including correspondence, notes, memoranda, and e-mails that

constitute, embody, refer or relate to:

> (1) civil or criminal investigation(s) or complaint(s) brought by or on behalf of any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board concerning the Combined Operations from 1999 to the present;
>
> (2) agency or board hearings, decisions, and/or dispositions on said civil or criminal investigation(s) and/or complaint(s) concerning the Combined Operations;
>
> (3) appeals submissions and/or decisions; and
>
> (4) settlement agreements between TPG, the Combined Operations, Gerald Freid, Barry Freid, and any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board.

Request No. 25

All documents including notes, memoranda, correspondence, and e-mail that constitute,

embody, refer or relate to any communications, oral or written, that TPG and/or the

Combined Operations has had at any time with any federal, state, local, and/or municipal agency or board and/or any other non-governmental agency or board or Epoch regarding or relating to any civil or criminal investigation or complaint, agency or board hearings and decisions on said investigation(s) or complaint(s), appeals submissions and/or decisions, or settlement agreements.

Request No. 26

All correspondence, electronic messages, statements, or handwritten notes in the possession, custody or control of TPG or its officers, directors, employees, agents, attorneys, representatives, members, stockholders or consultants that refer or relate to proposed or agreed purchase prices for the Combined Operations.

Request No. 27

All documents which support TPG's contention in paragraph 46 of the Answer, Affirmative Defenses and Counterclaim of Defendants, The Pointe Group, Inc., Gerald S. Freid and Barry Freid ("Answer"), that "the sellers under the purchase and sale agreement were represented in the sale process by counsel other than [Stephen F.] Gordon."

Request No. 28

All documents including notes, memoranda, correspondence, and e-mail that refer or relate to the meeting held on July 13, 2004 among representatives of Epoch, Key Bank, TPG and CBW, as referenced in paragraph 64 of TPG's Answer.

Request No. 29

All documents including notes, memoranda, correspondence, and e-mail that refer or relate to TPG's request(s) to CBW to lower its fee in connection with the sale of the Combined Operations to Epoch.



Request No. 30

All documents in TPG's possession, custody or control regarding or relating to Key Bank's threat to foreclose on one or more of the facilities constituting the Combined Operations.

Request No. 31

All documents which refer to or relate to or evidence damages and any other losses and expenses, financial or otherwise, which TPG claims it has suffered or will suffer as a direct and proximate result of the conduct of CBW, as alleged in its Counterclaim.

Request No. 32

All documents which refer or relate to any entity or individual with an ownership interest in TPG and/or one or more of the Combined Operations, including but not limited to, the name and address of each owner, officer, director and shareholder, the date and amount of any such shares purchased and the consideration, if any, paid for such shares.

Request No. 33

All audit opinions and audited financial statements of TPG and each of the Combined Operations for the calendar years 2003 and 2004.

Request No. 34

All documents that evidence, refer to or relate to Gerald and/or Barry Freid's employment relationship, if any, with TPG and/or the Combined Operations, including their terms and conditions of employment, their employment agreements, duties and responsibilities, compensation and benefits, and separation from employment.

Request No. 35

Any and all recorded, written or transcribed statements of any persons who have knowledge or information relative to any allegations made by CBW in its Complaint in the above-captioned action.

Request No. 36

Any and all recorded, written or transcribed statements of any persons who have knowledge or information relative to any allegations made by TPG in its Answer to CBW's Complaint and/or its Counterclaim in the above-captioned matter.

Request No. 37

Any and all reports prepared in connection with this lawsuit by expert(s) who are expected to testify or may testify at the trial of this matter on behalf of TPG.

Request No. 38

All documents that were, or will be relied upon in whole or in part by any testifying expert in this case on behalf of TPG.

Request No. 39

A curriculum vitae, or resume, for each individual who TPG expects to call as an expert witness at the trial of this matter.

Request No. 40

All documents identified in TPG's initial automatic disclosures.

Request No. 41

All documents relating to or reflecting the establishment of escrows at the closing on the sale of the Combined Operations.

Request No. 42

All documents relating to or reflecting disbursements made at the closing on the sale of the Combined Operations or from the date of the closing to the date of TPG's response to this request (i.e. CBW's First Request for Production of Documents), including any disbursements of deposit or escrowed funds.

Request No. 43

All documents within TPG's possession, custody or control not otherwise identified above that TPG intends to introduce at the trial of this matter.

Request No. 44

A listing of all documents withheld from this request (i.e. CBW's First Request for Production of Documents) because of the claim of attorney/client work product or other privilege. In addition, kindly state the privilege asserted for each document withheld.

CASAS, BENJAMIN & WHITE, LLC

By its attorneys,


/s/ Erin K. Higgins
Thomas E. Peisch (BBO# 393260)
Erin E. Higgins (BBO# 559510)
Michael R. Bernardo (BBO# 648310)
CONN KAVANAUGH ROSENTHAL
  PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA  02109
(617) 482-8200


/s/ Richard P. Steinken (ekh)
Richard P. Steinken, admitted *pro hac vice*
Jeff J. Marwil, admitted *pro hac vice*
David W. Austin, admitted *pro hac vice*
JENNER & BLOCK, LLP
One IBM Plaza
Chicago, IL  60611-7603

Dated: January 27, 2005
        Boston, Massachusetts

218510.1


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on 1/27/05.

**B**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 04CV12333 MEL

|  |  |
|---|---|
| CASAS, BENJAMIN & WHITE, LLC | ) |
| Plaintiff, | ) |
|  | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE POINTE GROUP, INC., | ) |
| GERALD S. FREID; BARRY FREID; | ) |
| KEY CORPORATE CAPITAL, INC. | ) |
| Defendants. | ) |
|  | ) |

DEFENDANT, THE POINTE GROUP, INC.'S RESPONSE TO PLAINTIFF, CASAS, BENJAMIN & WHITE, LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant, The Pointe Group, Inc. (the "Defendant") submits this response to the Plaintiff, Casas, Benjamin & White, LLC's First Request for Production of Documents. The responsive, nonprivileged documents will be produced at a time and place agreed upon by counsel for the parties to this action.

## GENERAL RESPONSES AND OBJECTIONS

1. The Defendant generally objects to the numbered requests to the extent they include documents protected by the attorney/client privilege or the work product doctrine.

2. The Defendant states that its review is ongoing to determine whether responsive nonprivileged documents are in the custody or control of the Defendant. The length and breadth of the Plaintiff's Request and the minimal time allowed for response, make it impossible for Defendant to be certain that it has collected all appropriately responsive documents immediately. The Defendant further states that the responses set forth below are not meant to be, and should not be construed as, any representation that responsive documents are in the custody or control of the Defendant. As Defendant locates additional documents responsive to Plaintiff's Request, it will produce forthwith.

3. Defendant states that it has moved its offices twice in recent months and therefore many of the documents sought in this Request may not be locatable in the minimal time provided for response.

4. The Defendant generally objects to the document request on the grounds that The Pointe Group, Inc. cannot be asked to produce documents in the possession,

custody or control of Hammond Pointe Nursing Home, LLC, Boylston Place At Chestnut Hill, LLC and Cranberry Pointe Nursing Home, Inc. (the "Healthcare Entities").

5.     The Defendant generally objects to the document request to the extent the "Instructions" or "Definitions" seek to impose obligations different from, or in addition to, the requirements set forth in the Federal Rules of Civil Procedure.

Notwithstanding these objections, the Defendant responds as follows:

**REQUEST NO. 1**

All documents which relate or refer to the incorporation of TPG, including but not limited to Articles of Incorporation, By-Laws, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of TPG.

**RESPONSE NO. 1**

The Defendant will produce documents responsive to Request No. 1 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 2**

All documents related to the formation, operation, membership, mission and purpose of TPG, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of TPG.

**RESPONSE NO. 2**

The Defendant objects to Request No. 2 on the grounds that it is overbroad and unduly burdensome and seeks documents irrelevant to the issues raised in this litigation and is not limited in time or scope. The Defendant further objects to Request No. 2 on the grounds that the

2

documents sought in Request No. 2 are not reasonably calculated to lead to the discovery of admissible evidence.

## REQUEST NO. 3

All documents which relate or refer to the incorporation or formation of each of the entities comprising the Combined Operations, including but not limited to Articles of Incorporation, By-Laws, Limited Liability Company Operating Agreement, Annual Reports, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of the Combined Operations.

## RESPONSE NO. 3

The Defendant will produce documents responsive to Request No. 3 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

## REQUEST NO. 4

All documents related to the formation, operation, membership, mission and purpose of each of the entities comprising the Combined Operations, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of the Combined Operations.

## RESPONSE NO. 4

The Defendant objects to Request No. 4 on the grounds that it is overbroad and unduly burdensome and seeks documents irrelevant to the issues raised in this litigation and is not limited in time or scope. The Defendant further objects to Request No. 4 on the grounds that the documents sought in Request No. 4 are not reasonably calculated to lead to the discovery of

admissible evidence.  The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

### REQUEST NO. 5

All documents that TPG or its officers, directors, employees, representatives, agents, or attorneys have in their possession, custody or control which refer or relate to the Engagement Letter between TPG and CBW, dated September 4, 2003.

### RESPONSE NO. 5

The Defendant will produce documents responsive to Request No. 5 in its possession, custody or control at a place and time mutually agreed upon by counsel.

### REQUEST NO. 6

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the Indemnification Agreement between TPG and CBW, dated September 4, 2003.

### RESPONSE NO. 6

The Defendant will produce documents responsive to Request No. 6 in its possession, custody or control at a place and time mutually agreed upon by counsel, however, as of the date of this response, the Defendant has located no documents responsive to Request No. 6.

### REQUEST NO. 7

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the written amendment to the Engagement Letter, dated December 20, 2003.



**RESPONSE NO. 7**

The Defendant will produce documents responsive to Request No. 7 in its possession, custody or control at a place and time mutually agreed upon by counsel, however, as of the date of this response, the Defendant has located no documents responsive to Request No. 7.

**REQUEST NO. 8**

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the Letters of Interest from parties indicating interest in either acquiring or refinancing the Combined Operations at issue in this action.

**RESPONSE NO. 8**

The Defendant will produce documents responsive to Request No. 8 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 9**

All documents that TPG or its officers, directors, employees, representatives, agents, attorneys, stockholders and/or members have in their possession, custody or control which refer or relate to the Letters of Intent from parties indicating an intention to either acquire or refinance the Combined Operations at issue in this action.

**RESPONSE NO. 9**

The Defendant will produce documents responsive to Request No. 9 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 10**

Copies of all checks sent from TPG, its officers, directors, employees, representatives, agents, or attorneys to CBW.

**RESPONSE NO. 10**

The Defendant will produce documents responsive to Request No. 10 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 11**

The Purchase & Sale Agreement (with exhibit schedules and all other documents referenced in the Agreement), including all drafts of the Agreement and the final executed Agreement between TPG and Epoch.

**RESPONSE NO. 11**

The Defendant will produce documents responsive to Request No. 11 in its possession, custody or control at a place and time mutually agreed upon by counsel. Further responding, the Defendant states there was no agreement between TPG and Epoch, but understanding the request with respect to only the Purchase & Sale Agreement in issue, Defendant will produce the documents Plaintiff, it believes, meant to request.

**REQUEST NO. 12**

CBW's invoices for services provided pursuant to the Engagement Letter, including but not limited to the invoice dated September 29, 2004.

**RESPONSE NO. 12**

The Defendant will produce documents responsive to Request No. 12 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 13**

All documents referencing, pertaining to, or generated in connection with the closing on the sale of the Combined Operations to Epoch, whether in draft or final form, and including documents generated in advance of, at, or following the closing.

**RESPONSE NO. 13**

The Defendant objects to Request No. 13 on the grounds that it is overbroad and unduly burdensome and is not limited in time or scope. Subject to and without waiving this objection, the Defendant will produce documents responsive to Request No. 13 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 14**

All documents which refer to, relate to, reflect or constitute communications between TPG and CBW.

**RESPONSE NO. 14**

The Defendant will produce documents responsive to Request No. 14 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 15**

All documents which refer to, relate to, reflect or constitute communications between TPG and Key Bank during the time period September 1, 2003 to January 31, 2005.

**RESPONSE NO. 15**

The Defendant will produce documents responsive to Request No. 15 in its possession, custody or control at a place and time mutually agreed upon by counsel.

7

**REQUEST NO. 16**

All documents which refer to, relate to, reflect or constitute communications between TPG and Epoch during the time period September 1, 2003 to January 31, 2005.

**RESPONSE NO. 16**

The Defendant will produce documents responsive to Request No. 16 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 17**

All correspondence, electronic messages, statements, or handwritten notes that TPG or its officers, directors, employees, agents, attorneys, representatives, members, stockholders or consultants have sent to or received from any person or entity relating or referring to the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG and CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

**RESPONSE NO. 17**

The Defendant will produce documents responsive to Request No. 17 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 18**

All documents which refer to, relate to or evidence gross revenues and net profits or losses of (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place at Chestnut Hill, LLC; and (3) Cranberry Pointe Nursing Home, Inc. for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by the three facilities for each of the years 1999 to 2004.

**RESPONSE NO. 18**

The Defendant objects to Request No. 18 on the grounds that the documents sought in Request No. 18 are irrelevant to the issues raised in this litigation and are not reasonably calculated to lead to the discovery of admissible evidence. Further responding, the Defendant states that the documents sought in Request No. 18 belong to the Healthcare Entities which are not parties to this litigation.

**REQUEST NO. 19**

All documents which refer to, relate to or evidence gross revenues and net profits or losses of TPG for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by TPG for each of the years 1999 to 2004.

**RESPONSE NO. 19**

The Defendant objects to Request No. 19 on the grounds that the documents sought in Request No. 19 are irrelevant to the issues raised in this litigation and are not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 20**

All documents which constitute, refer or relate to internal, intra-company, or other similar communications by and among TPG, its officers, directors, employees, agents, representatives, attorneys, stockholders or consultants, including Gerald Freid, Barry Freid and Stephen F. Gordon, Esq. regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

**RESPONSE NO. 20**

The Defendant objects to Request No. 20 on the grounds that it seeks documents protected by the attorney/client privilege and the work-product doctrine. Subject to and without waiving this objection and the General Objections, Defendant agrees to produce any nonprivileged documents that are responsive to this Request at a place and time mutually agreeable to counsel.

**REQUEST NO. 21**

All documents which constitute, refer or relate to communications by and among Gerald Freid, Barry Freid and other members of the Freid family regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

**RESPONSE NO. 21**

The Defendant has no documents responsive to Request No. 21 in its possession, custody or control.

**REQUEST NO. 22**

All documents which constitute, refer or relate to communications by and between TPG, or its officers, directors, employees, agents, representatives, attorneys, stockholders or consultants, including Gerald Freid and Barry Freid, and Stephen F. Gordon, Esq., regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase



& Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

**RESPONSE NO. 22**

The Defendant objects to Request No. 22 on the grounds that it seeks documents protected by the attorney/client privilege and the work-product doctrine. Subject to and without waiving this objection and the General Objections, Defendant agrees to produce any nonprivileged documents that are responsive to this Request at a place and time mutually agreeable to counsel.

**REQUEST NO. 23**

All documents which refer to, relate to or evidence loan(s) made by Key Bank for (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and/or (3) Cranberry Pointe Nursing Home, Inc., including all documents that evidence, refer to or relate to descriptions or lists of the business assets, real property, personal property, accounts receivable and/or inventory of TPG, the Combined Operations, Gerald Freid, Barry Freid and/or any other collateral used to secure the loan(s) made by Key Bank for the Combined Operations.

**RESPONSE NO. 23**

The Defendant objects to Request No. 23 on the grounds that it is overbroad and unduly burdensome and is not limited in time or scope. Further responding, the Defendant states that it cannot be asked to produce documents in the possession, custody and control of the Healthcare Entities. Subject to and without waiving these objections, the Defendant will produce documents responsive to Request No. 23 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 24**

All documents including correspondence, notes, memoranda, and e-mails that constitute, embody, refer or relate to:

(1)    civil or criminal investigation(s) or complaint(s) brought by or on behalf of any federal, state, local and/or municipal agency or broad and/or any non-governmental agency or broad concerning the Combined Operations from 1999 to the present;

(2)    agency or board hearings, decisions, and/or dispositions on said civil or criminal investigation(s) and/or complaint(s) concerning the Combined Operations;

(3)    appeals submissions and/or decisions; and

(4)    settlement agreements between TPG, the Combined Operations, Gerald Freid, Barry Freid, and any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board.

**RESPONSE NO. 24**

The Defendant objects to Request No. 24 on the grounds that it is overbroad and unduly burdensome and seeks documents irrelevant to the issues raised in this litigation and is not limited in time or scope. The Defendant further objects to Request No. 24 on the grounds that the documents sought in Request No. 24 are not reasonably calculated to lead to the discovery of admissible evidence. The Defendant further states that the documents sought in Request No. 24 are not in the possession, custody or control of the Defendant.

**REQUEST NO. 25**

All documents including notes, memoranda, correspondence, and e-mail that constitute, embody, refer or relate to any communications, oral or written, that TPG, and/or the Combined Operations has had at any time with any federal, state, local, and/or municipal agency or board and/or any other non-governmental agency or board or Epoch regarding or relating to any civil

or criminal investigation or complaint, agency or board hearings and decisions on said

investigation(s) or complaint(s), appeals submissions and/or decisions, or settlement agreements.

## RESPONSE NO. 25

The Defendant objects to Request No. 25 on the grounds that it is overbroad and unduly

burdensome and seeks documents irrelevant to the issues raised in this litigation and is not

limited in time or scope. The Defendant further objects to Request No. 25 on the grounds that

the documents sought in Request No. 25 are not reasonably calculated to lead to the discovery of

admissible evidence. The Defendant further states that the documents sought in Request No. 25

are not in the possession, custody or control of the Defendant.

## REQUEST NO. 26

All correspondence, electronic messages, statements, or handwritten notes in the

possession, custody or control of TPG or its officers, directors, employees, agents, attorneys,

representatives, members, stockholders or consultants that refer or relate to proposed or agreed

purchase prices for the Combined Operations.

## RESPONSE NO. 26

The Defendant will produce documents responsive to Request No. 26 in its possession,

custody or control at a place and time mutually agreed upon by counsel. The Defendant does not

have possession, custody or control over certain documents belonging to the Healthcare Entities.

## REQUEST NO. 27

All documents which support Mr. Freid's contention in paragraph 46 of the Answer,

Affirmative Defenses and Counterclaim of Defendants, The Pointe Group, Inc., Gerald S. Freid

and Barry Freid ("Answer"), that "the sellers under the purchase and sale agreement were

represented in the sale process by counsel other than [Stephen F.] Gordon."

**RESPONSE NO. 27**

The Defendant will produce documents responsive to Request No. 27 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 28**

All documents including notes, memoranda, correspondence, and e-mail that refer or relate to the meeting held on July 13, 2004 among representatives of Epoch, Key Bank, TPG and CBW, as referenced in paragraph 64 of TPG's Answer.

**RESPONSE NO. 28**

The Defendant will produce documents responsive to Request No. 28 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 29**

All documents including notes, memoranda, correspondence, and e-mail that refer or relate to TPG's request(s) to CBW to lower its fee in connection with the sale of the Combined Operations to Epoch.

**RESPONSE NO. 29**

The Defendant will produce documents responsive to Request No. 29 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 30**

All documents in TPG's possession, custody or control regarding or relating to Key Bank's threat to foreclose on one or more of the facilities constituting the Combined Operations.

**RESPONSE NO. 30**

The Defendant will produce documents responsive to Request No. 30 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 31**

All documents which refer to or relate to or evidence damages and any other losses and expenses, financial or otherwise, which TPG claims it has suffered or will suffer as a direct and proximate result of the conduct of CBW, as alleged in its Counterclaim.

**RESPONSE NO. 31**

The Defendant will produce documents responsive to Request No. 31 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 32**

All documents which refer or relate to any entity or individual with an ownership interest in TPG and/or one or more of the Combined Operations, including but not limited to, the name and address of each owner, officer, director and stockholder, the date and amount of each such shares purchase and the consideration, if any, paid for such shares.

**RESPONSE NO. 32**

The Defendant objects to Request No. 32 on the grounds that it is overbroad and unduly burdensome and seeks documents irrelevant to the issues raised in this litigation and is not limited in time or scope. The Defendant further objects to Request No. 32 on the grounds that the documents sought in Request No. 32 are not reasonably calculated to lead to the discovery of admissible evidence. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 33**

All audit opinions and audited financial statements of TPG and each of the Combined Operations for the calendar years 2003 and 2004.

15



**RESPONSE NO. 33**

The Defendant objects to Request No. 33 on the grounds that it seeks documents irrelevant to the issues raised in this litigation. The Defendant further objects to Request No. 33 on the grounds that the documents sought in Request No. 33 are not reasonably calculated to lead to the discovery of admissible evidence. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 34**

All documents that evidence, refer to or relate to Gerald and/or Barry Freid's employment relationship, if any, with TPG and/or the Combined Operations, including their terms and conditions of employment, their employment agreements, duties and responsibilities, compensation and benefits, and separation from employment.

**RESPONSE NO. 34**

The Defendant objects to Request No. 34 on the grounds that it is overbroad and unduly burdensome. Subject to and without waiving this objection, the Defendant will produce documents responsive to Request No. 34 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 35**

Any and all recorded, written or transcribed statements of any persons who have knowledge or information relative to any allegations made by CBW in its Complaint in the above-captioned action.

16

**RESPONSE NO. 35**

The Defendant has no documents responsive to Request No. 35 in its possession, custody or control responsive to Request No. 35 not otherwise to be produced hereunder.

**REQUEST NO. 36**

Any and all recorded, written or transcribed statements of any persons who have knowledge or information relative to any allegations made by TPG in their Answer to CBW's Complaint and/or TPG's Counterclaim in the above-captioned matter.

**RESPONSE NO. 36**

To the extent that any such documents exist, the Defendant will produce documents responsive to Request No. 36 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 37**

Any and all reports prepared in connection with this lawsuit by expert(s) who are expected to testify or may testify at the trial of this matter on behalf of TPG.

**RESPONSE NO. 37**

The Defendant has no documents in its possession, custody or control responsive to Request No. 37 at this time.  The Defendant reserves the right to supplement Response No. 37 as necessary.

**REQUEST NO. 38**

All documents that were, or will be relied upon in whole or in part by any testifying expert in this case on behalf of TPG.



**RESPONSE NO. 38**

The Defendant has no documents in its possession, custody or control responsive to Request No. 38 at this time. The Defendant reserves the right to supplement Response No. 38 as necessary.

**REQUEST NO. 39**

A curriculum vitae, or resume, for each individual who TPG expects to call as an expert witness at the trial of this matter.

**RESPONSE NO. 39**

The Defendant has no documents in its possession, custody or control responsive to Request No. 39 at this time. The Defendant reserves the right to supplement Response No. 39 as necessary.

**REQUEST NO. 40**

All documents identified in TPG's initial automatic disclosures.

**RESPONSE NO. 40**

The Defendant will produce documents responsive to Request No. 40 in its possession, custody or control at a place and time mutually agreed upon by counsel.

**REQUEST NO. 41**

All documents relating to or reflecting the establishment of escrows at the closing on the sale of the Combined Operations.

**RESPONSE NO. 41**

The Defendant will produce documents responsive to Request No. 41 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 42**

All documents relating to or reflecting disbursements made at the closing on the sale of the Combined Operations or from the date of the closing to the date of TPG's response to this request (i.e. CBW's First Request for Production of Documents), including any disbursements of deposit or escrowed funds.

**RESPONSE NO. 42**

The Defendant will produce documents responsive to Request No. 42 in its possession, custody or control at a place and time mutually agreed upon by counsel. The Defendant does not have possession, custody or control over certain documents belonging to the Healthcare Entities.

**REQUEST NO. 43**

All documents within TPG's possession, custody or control not otherwise identified above that TPG intends to introduce at the trial of this matter.

**RESPONSE NO. 43**

The Defendant has not yet determined which documents it intends to introduce into evidence at the trial of this matter. The Defendant will supplement this Response as necessary.

**REQUEST NO. 44**

A listing of all documents withheld from this request (i.e. CBW's First Request for Production of documents) because of the claim of attorney/client work product or other privilege. In addition, kindly state the privilege asserted for each document withheld.

**RESPONSE NO. 44**

The Defendant has withheld communications with its attorneys as to which no third-parties were privy. The Defendant objects to the burden of creating a list of such documents

where the Plaintiff has specifically requested attorney/client documents unless the Plaintiff is willing to bear the cost of preparing such a list.

THE POINTE GROUP, INC.
By its attorneys,

Stephen F. Gordon (BBO No. 203600)
Todd B. Gordon (BBO No. 652482)
Gordon Haley LLP
101 Federal Street
Boston, Massachusetts 02110
Tel:    (617) 261-0100
Fax:    (617) 261-0789
email:  sgordon@gordonhaley.com
        tgordon@gordonhaley.com

Dated: February 28, 2005
P:\Clients\Pointe Group\CBW Plead\Pointe Group's 1st resp to pltf's r.f.p.d. 02-08-05.doc

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was served upon the attorney of record for each party by mail.

Date 2·28·05

20

**C**

TRIAL AND DEPOSITION SUBPOENAS SERVED THROUGHOUT MASSACHUSETTS

# DEWSNAP & ASSOCIATES, L.L.C.

*Process Servers - Notary Public*
**92 State Street**
**BOSTON, MA 02109**
**Phone: (617) 367-1070**
**FAX:  (617) 367-1072**

CONN, KAVANAUGH, ROSENTHAL, PEISCH & FORD
TEN POST OFFICE SQ.
BOSTON, MA  02109

ATTN: **MICHAEL R BERNARDO, ESQ**

INVOICE #:      **DB19052**

INVOICE DATE: **04/12/2005**
TYPE OF
SERVICE MADE: **DEPOSITION**

DOCKET #:   **04-CV-12333-MEL**

YOUR FILE # :

PLAINTIFF:   **CASAS, BENJAMIN & WHITE, LLC**

vs.

DEFENDANT: **THE POINTE GROUP, INC., ET AL**

| Title | Served | City | Service Fee | Witness Fee |
|-------|--------|------|-------------|-------------|
| PMK | FIDELITY NATIONAL TITLE INS c/o TERENCE NOLAN, ESC | BOSTON | 27.00 | 41.00 |
| PMK | MELLON TRUST OF NEW ENGLAND, N.A. | BOSTON | 27.00 | 41.00 |
| | *04/8 - Att: JR* | | | |
| | *ATTEMPTED TO SERVE GARY LUCIA; INFORMED HE DOES NOT WORK FOR MELLON TRUST.* | | | |
| KOR | CRANBERRY POINT PARTNERSHIP | DEDHAM | 27.00 | 48.00 |
| KOR | BOYLSTON PLACE AT CHESTNUT HILL, LLC | DEDHAM | 5.00 | 48.00 |
| KOR | CRANBERRY POINTE NURSING HOME, INC. | DEDHAM | 5.00 | 48.00 |
| KOR | HAMMOND POINTE NURSING HOME, LLC | DEDHAM | 5.00 | 48.00 |
| KOR | CHESTNUT HILL LIFE CARE REALTY, LLC | DEDHAM | 5.00 | 48.00 |

Payment & Correspondence Address

**DEWSNAP & ASSOCIATES, L.L.C.**
*92 State Street*
*BOSTON, MA 02109*
*Federal Tax I.D. #04-3402773*

| | |
|---|---|
| **Witness Fees:** | **$322.00** |
| **Service Fees:** | **$101.00** |
| **Total:** | **$423.00** |

Original Invoice

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

CASAS, BENJAMIN & WHITE, LLC,
      Plaintiff,

      v.

THE POINTE GROUP, INC., a
Massachusetts corporation d/b/a
The Pointe Group Healthcare and
Senior Living; GERALD S. FREID;
BARRY FREID; and KEY
CORPORATE CAPITAL, INC.,
      Defendants.

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: 04-CV-12333-MEL

TO:    Keeper of Records
      Cranberry Pointe Partnership
      3 Allied Drive, Suite 106
      Dedham, MA  02026

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case and relative to an action pending in the United States District Court for the Eastern District of Massachusetts, titled Casas, Benjamin & White, LLC v. The Pointe Group, Inc., a Massachusetts corporation d/b/a The Pointe Group Healthcare and Senior Living; Gerald S. Freid; Barry Freid; and Key Corporate Capital, Inc., Docket Number 04CV12333MEL.  Examination is requested on the topics which are the subject of the document requests attached as Schedule "A."

| PLACE OF DEPOSITION<br>Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP<br>Ten Post Office Square<br>Boston, MA  02109 | DATE AND TIME<br>April 26, 2005<br>2:00 P.M. |
|---|---|

☒ YOU ARE ALSO COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Schedule "A".

| PLACE<br>Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP<br>Ten Post Office Square<br>Boston, MA  02109 | DATE AND TIME<br>April 19, 2005<br>9:00 A.M. |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| (ISSUING OFFICER SIGNATURE AND TITLE INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>_Michael Bernardo_ | DATE<br>4/8/05 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michael R. Bernardo, Esq., Conn Kavanaugh Rosenthal Peisch & Ford, LLP,
Ten Post Office Square, Boston, Massachusetts  02109 – Tel. 617-482-8200

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on following page)

AO 88 (11/91) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | APRIL 11, 2005 | KEEPER OF THE RECORDS<br>CRANBERRY POINT PARTNERSHIP<br>3 ALLIED DRIVE, SUITE 106<br>DEDHAM, MA |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| FRANK BARKER, CONTROLLER | IN-HAND |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| BRUCE LEMAY | PROCESS SERVER & DISINTERESTED |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____ APRIL 11, 2005 _____
                        DATE

*Bruce Lemay*
SIGNATURE OF SERVER

92 STATE STREET, 7TH FLOOR

ADDRESS OF SERVER

BOSTON, MA  02109

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## SCHEDULE A

### Definitions

Casas, Benjamin & White, LLC requests Cranberry Pointe Partnership to produce, for inspection and copying, the following documents and things.  As used herein, the following words shall have the following definitions.

A.    "You" or "your" shall refer to Cranberry Pointe Partnership and each and all of its agents, servants, employees, representatives, officers, directors, insurers, and attorneys.

B.    "CBW" or "Plaintiff" means Casas, Benjamin & White, LLC, and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

C.    "Key Bank" means defendant, Key Corporate Capital, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

D.    "TPG" means defendant The Pointe Group, Inc., and its past or present officers, directors, employees,  representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on their behalf, including, but not limited to, any entity  doing business as The Pointe Group Healthcare and Senior Living, and Stephen F. Gordon, Esq. of the law firm Gordon Haley, LLP.

E.    "Epoch" means Epoch Senior Living and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

F.    "Gerald Freid" means the individually-named defendant, Gerald S. Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

G.    "Barry Freid" means the individually-named defendant, Barry Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

H.     "Combined Operations" means the following facilities: (1) Hammond Pointe Nursing Home, LLC, a business providing long-term care, Alzheimer's care, and sub-acute care; (2) Boylston Place At Chestnut Hill, LLC, a business providing assisted living services; and (3) Cranberry Pointe Nursing Home, Inc., a business providing long-term care, Alzheimer's care, and sub-acute care among other services.

I.     "Communication" shall refer to the transmission of information between one person and another, whether orally, in writing, or by electronic mail.

J.     "Document" shall be given the broadest construction permissible under the Federal Rules of Civil Procedure, and shall include papers and writings of any kind. If any responsive document is in electronic form, it shall be printed onto paper and produced in that form unless otherwise agreed.

## Requests

1.     All documents relating to or reflecting the establishment of escrows at the closing on the sale of the Combined Operations.

2.     All documents relating to or reflecting disbursements made at the closing on the sale of the Combined Operations or from the date of the closing to the date of Cranberry Pointe Partnership's response to this document request, including any disbursements of the buyer's deposit or any escrowed funds.

3.     All documents which relate or refer to the incorporation of Cranberry Pointe Partnership, including but not limited to Articles of Incorporation, By-Laws, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of Cranberry Pointe Partnership.

4.     All documents related to the formation, operation, membership, mission and purpose of Cranberry Pointe Partnership, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of Cranberry Pointe Partnership.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

5.    All documents which relate or refer to the incorporation of or formation of each of the entities comprising the Combined Operations, including but not limited to Articles of Incorporation, By-Laws, Limited Liability Company Operating Agreement, Annual Reports, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of the Combined Operations.

6.    All documents related to the formation, operation, membership, mission and purpose of each of the entities comprising the Combined Operations, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of the Combined Operations.

7.    All documents referencing, pertaining to, or generated in connection with the closing on the sale of the Combined Operations to Epoch, whether in draft or final form, and including documents generated in advance of, at, or following the closing.

8.    All documents which refer to, relate to, reflect or constitute communications between Cranberry Pointe Partnership and CBW.

9.    All documents which refer to, relate to, reflect or constitute communications between TPG and CBW.

10.    All documents which refer to, relate to, reflect or constitute communications between Cranberry Pointe Partnership and Key Bank during the time period September 1, 2003 to January 31, 2005.

11.    All documents which refer to, relate to, reflect or constitute communications between TPG and Key Bank during the time period September 1, 2003 to January 31, 2005.

12.    All documents which refer to, relate to, reflect or constitute communications

AO 88 (Rev. 1/94) Subpoena in a Civil Case

between Cranberry Pointe Partnership and Epoch during the time period September 1, 2003 to January 31, 2005.

13.    All documents which refer to, relate to, reflect or constitute communications between TPG and Epoch during the time period September 1, 2003 to January 31, 2005.

14.    All documents which refer to, relate to, reflect or constitute communications by and among you, TPG, CBW, Epoch, and/or Key Bank during the time period September 1, 2003 to January 31, 2005.

15.    All documents which refer to, relate to or evidence gross revenues and net profits or losses of (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and (3) Cranberry Pointe Nursing Home, Inc. for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by the three facilities for each of the years 1999 to 2004.

16.    All documents which refer to, relate to or evidence gross revenues and net profits or losses of Cranberry Pointe Partnership and TPG for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by Cranberry Pointe Partnership and TPG for each of the years 1999 to 2004.

17.    All documents which constitute, refer or relate to communications by and among you, Gerald Freid, Barry Freid and other members of the Freid family regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from Cranberry Pointe Partnership to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

18.    All documents which constitute, refer or relate to communications by and between Cranberry Pointe Partnership, or its officers, directors, employees, agents, representatives, attorneys, stockholders or consultants, including you, Mark Tobin, TPG, Gerald Freid and Barry Freid, and Stephen F. Gordon, Esq., regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from Cranberry Pointe Partnership or TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

19.    All documents which refer to, relate to or evidence loan(s) made by Key Bank for (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and/or (3) Cranberry Pointe Nursing Home, Inc., including all documents that evidence, refer to or relate to descriptions or lists of the business assets, real property, personal property, accounts receivable and/or inventory of TPG, the Combined Operations, you, the Estate of William Freid, Gerald Freid, Barry Freid and/or any other collateral used to secure the loan(s) made by Key Bank for the Combined Operations.

20.    All documents including correspondence, notes, memoranda, and e-mails that constitute, embody, refer or relate to:

(a) civil or criminal investigation(s) or complaint(s) brought by or on behalf of any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board concerning the Combined Operations from 1999 to the present;

(b) agency or board hearings, decisions, and/or dispositions on said civil or criminal investigation(s) and/or complaint(s) concerning the Combined Operations;

(c) appeals submissions and/or decisions; and

(d) settlement agreements between Cranberry Pointe Partnership, TPG,

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Combined Operations, Gerald Freid, Barry Freid, and any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board.

21.    All documents including notes, memoranda, correspondence, and e-mail that constitute, embody, refer or relate to any communications, oral or written, that Cranberry Pointe Partnership, TPG and/or the Combined Operations has had at any time with any federal, state, local, and/or municipal agency or board and/or any other non-governmental agency or board or Epoch regarding or relating to any civil or criminal investigation or complaint, agency or board hearings and decisions on said investigation(s) or complaint(s), appeals submissions and/or decisions, or settlement agreements.

22.    All correspondence, electronic messages, statements, or handwritten notes in your possession, custody or control that refer or relate to proposed or agreed purchase prices for the Combined Operations.

23.    All documents in your possession, custody or control regarding or relating to Key Bank's threat to foreclose on one or more of the facilities constituting the Combined Operations.

24.    All documents which refer or relate to any entity or individual with an ownership interest in Cranberry Pointe Partnership, TPG and/or one or more of the Combined Operations, including but not limited to, the name and address of each owner, officer, director and shareholder, the date and amount of any such shares purchased and the consideration, if any, paid for such shares.

25.    All audit opinions and audited financial statements of Cranberry Pointe Partnership, TPG and each of the Combined Operations for the calendar years 2003 and 2004.

26.    All documents that evidence, refer to or relate to Gerald and/or Barry Freid's employment relationship, if any, with Cranberry Pointe Partnership, TPG and/or the Combined Operations, including their terms and conditions of employment, their employment agreements,

AO 88 (Rev. 1/94) Subpoena in a Civil Case

duties and responsibilities, compensation and benefits, and separate

on from employment.

224321.1

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

CASAS, BENJAMIN & WHITE, LLC,

Plaintiff,

v.

THE POINTE GROUP, INC., a
Massachusetts corporation d/b/a
The Pointe Group Healthcare and
Senior Living; GERALD S. FREID;
BARRY FREID; and KEY
CORPORATE CAPITAL, INC.,

Defendants.

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: 04-CV-12333-MEL

TO:     Keeper of Records
        Boylston Place at Chestnut Hill, LLC
        3 Allied Drive, Suite 106
        Dedham, MA  02026

---

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case and relative to an action pending in the United States District Court for the Eastern District of Massachusetts, titled Casas, Benjamin & White, LLC v. The Pointe Group, Inc., a Massachusetts corporation d/b/a The Pointe Group Healthcare and Senior Living; Gerald S. Freid; Barry Freid; and Key Corporate Capital, Inc., Docket Number 04CV12333MEL.  Examination is requested on the topics which are the subject of the document requests attached as Schedule "A."

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP<br>Ten Post Office Square<br>Boston, MA  02109 | April 27, 2005<br>10:00 A.M. |

☒  YOU ARE ALSO COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Schedule "A".

| PLACE | DATE AND TIME |
|---|---|
| Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP<br>Ten Post Office Square<br>Boston, MA  02109 | April 20, 2005<br>9:00 A.M. |

---

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| (ISSUING OFFICER SIGNATURE AND TITLE INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Michael Bernardo* | 4/8/05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michael R. Bernardo, Esq., Conn Kavanaugh Rosenthal Peisch & Ford, LLP,
Ten Post Office Square, Boston, Massachusetts  02109 – Tel. 617-482-8200

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on following page)

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** | APRIL 11, 2005 | KEEPER OF THE RECORDS<br>BOYLSTON PLACE AT CHESTNUT HILL, LLC<br>3 ALLIED DRIVE, SUITE 106<br>DEDHAM, MA |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| FRANK BARKER, CONTROLLER | IN-HAND |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| BRUCE LEMAY | PROCESS SERVER & DISINTERESTED |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___APRIL 11, 2005___
DATE

_Bruce Lemay_
SIGNATURE OF SERVER

92 STATE STREET, 7TH FLOOR

ADDRESS OF SERVER

BOSTON, MA  02109

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## SCHEDULE A

### Definitions

Casas, Benjamin & White, LLC requests Boylston Place at Chestnut Hill, LLC to produce, for inspection and copying, the following documents and things. As used herein, the following words shall have the following definitions.

A.  "You" or "your" shall refer to Boylston Place at Chestnut Hill, LLC and each and all of its agents, servants, employees, representatives, officers, directors, insurers, and attorneys.

B.  "CBW" or "Plaintiff" means Casas, Benjamin & White, LLC, and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

C.  "Key Bank" means defendant, Key Corporate Capital, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

D.  "TPG" means defendant The Pointe Group, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on their behalf, including, but not limited to, any entity doing business as The Pointe Group Healthcare and Senior Living, and Stephen F. Gordon, Esq. of the law firm Gordon Haley, LLP.

E.  "Epoch" means Epoch Senior Living and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

F.  "Gerald Freid" means the individually-named defendant, Gerald S. Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

G.  "Barry Freid" means the individually-named defendant, Barry Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

H.    "Combined Operations" means the following facilities: (1) Hammond Pointe Nursing Home, LLC, a business providing long-term care, Alzheimer's care, and sub-acute care; (2) Boylston Place At Chestnut Hill, LLC, a business providing assisted living services; and (3) Cranberry Pointe Nursing Home, Inc., a business providing long-term care, Alzheimer's care, and sub-acute care among other services.

I.    "Communication" shall refer to the transmission of information between one person and another, whether orally, in writing, or by electronic mail.

J.    "Document" shall be given the broadest construction permissible under the Federal Rules of Civil Procedure, and shall include papers and writings of any kind. If any responsive document is in electronic form, it shall be printed onto paper and produced in that form unless otherwise agreed.

### Requests

1.    All documents relating to or reflecting the establishment of escrows at the closing on the sale of the Combined Operations.

2.    All documents relating to or reflecting disbursements made at the closing on the sale of the Combined Operations or from the date of the closing to the date of Boylston Place at Chestnut Hill, LLC's response to this document request, including any disbursements of the buyer's deposit or any escrowed funds.

3.    All documents which relate or refer to the incorporation of Boylston Place at Chestnut Hill, LLC, including but not limited to Articles of Incorporation, By-Laws, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of Boylston Place at Chestnut Hill, LLC.

4.    All documents related to the formation, operation, membership, mission and purpose of Boylston Place at Chestnut Hill, LLC, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of Boylston Place at Chestnut Hill, LLC.

5.    All documents which relate or refer to the incorporation of or formation of each of the entities comprising the Combined Operations, including but not limited to Articles of Incorporation, By-Laws, Limited Liability Company Operating Agreement, Annual Reports, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of the Combined Operations.

6.    All documents related to the formation, operation, membership, mission and purpose of each of the entities comprising the Combined Operations, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of the Combined Operations.

7.    All documents referencing, pertaining to, or generated in connection with the closing on the sale of the Combined Operations to Epoch, whether in draft or final form, and including documents generated in advance of, at, or following the closing.

8.    All documents which refer to, relate to, reflect or constitute communications between Boylston Place at Chestnut Hill, LLC and CBW.

9.    All documents which refer to, relate to, reflect or constitute communications between TPG and CBW.

10.    All documents which refer to, relate to, reflect or constitute communications between Boylston Place at Chestnut Hill, LLC and Key Bank during the time period September 1, 2003 to January 31, 2005.

11.    All documents which refer to, relate to, reflect or constitute communications between TPG and Key Bank during the time period September 1, 2003 to January 31, 2005.

12.    All documents which refer to, relate to, reflect or constitute communications

between Boylston Place at Chestnut Hill, LLC and Epoch during the time period September 1, 2003 to January 31, 2005.

13.    All documents which refer to, relate to, reflect or constitute communications between TPG and Epoch during the time period September 1, 2003 to January 31, 2005.

14.    All documents which refer to, relate to, reflect or constitute communications by and among you, TPG, CBW, Epoch, and/or Key Bank during the time period September 1, 2003 to January 31, 2005.

15.    All documents which refer to, relate to or evidence gross revenues and net profits or losses of (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and (3) Cranberry Pointe Nursing Home, Inc. for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by the three facilities for each of the years 1999 to 2004.

16.    All documents which refer to, relate to or evidence gross revenues and net profits or losses of Boylston Place at Chestnut Hill, LLC and TPG for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by Boylston Place at Chestnut Hill, LLC and TPG for each of the years 1999 to 2004.

17.    All documents which constitute, refer or relate to communications by and among you, Gerald Freid, Barry Freid and other members of the Freid family regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from Boylston Place at Chestnut Hill, LLC to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

18.    All documents which constitute, refer or relate to communications by and between Boylston Place at Chestnut Hill, LLC, or its officers, directors, employees, agents, representatives, attorneys, stockholders or consultants, including you, Mark Tobin, TPG, Gerald Freid and Barry Freid, and Stephen F. Gordon, Esq., regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from Boylston Place at Chestnut Hill, LLC or TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

19.    All documents which refer to, relate to or evidence loan(s) made by Key Bank for (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and/or (3) Cranberry Pointe Nursing Home, Inc., including all documents that evidence, refer to or relate to descriptions or lists of the business assets, real property, personal property, accounts receivable and/or inventory of TPG, the Combined Operations, you, the Estate of William Freid, Gerald Freid, Barry Freid and/or any other collateral used to secure the loan(s) made by Key Bank for the Combined Operations.

20.    All documents including correspondence, notes, memoranda, and e-mails that constitute, embody, refer or relate to:

> (a) civil or criminal investigation(s) or complaint(s) brought by or on behalf of any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board concerning the Combined Operations from 1999 to the present;

> (b) agency or board hearings, decisions, and/or dispositions on said civil or criminal investigation(s) and/or complaint(s) concerning the Combined Operations;

> (c) appeals submissions and/or decisions; and

AO 88 (Rev. 1/94) Subpoena in a Civil Case

(d) settlement agreements between Boylston Place at Chestnut Hill, LLC, TPG, Combined Operations, Gerald Freid, Barry Freid, and any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board.

21.    All documents including notes, memoranda, correspondence, and e-mail that constitute, embody, refer or relate to any communications, oral or written, that Boylston Place at Chestnut Hill, LLC, TPG and/or the Combined Operations has had at any time with any federal, state, local, and/or municipal agency or board and/or any other non-governmental agency or board or Epoch regarding or relating to any civil or criminal investigation or complaint, agency or board hearings and decisions on said investigation(s) or complaint(s), appeals submissions and/or decisions, or settlement agreements.

22.    All correspondence, electronic messages, statements, or handwritten notes in your possession, custody or control that refer or relate to proposed or agreed purchase prices for the Combined Operations.

23.    All documents in your possession, custody or control regarding or relating to Key Bank's threat to foreclose on one or more of the facilities constituting the Combined Operations.

24.    All documents which refer or relate to any entity or individual with an ownership interest in Boylston Place at Chestnut Hill, LLC, TPG and/or one or more of the Combined Operations, including but not limited to, the name and address of each owner, officer, director and shareholder, the date and amount of any such shares purchased and the consideration, if any, paid for such shares.

25.    All audit opinions and audited financial statements of Boylston Place at Chestnut Hill, LLC, TPG and each of the Combined Operations for the calendar years 2003 and 2004.

26.    All documents that evidence, refer to or relate to Gerald and/or Barry Freid's employment relationship, if any, with Boylston Place at Chestnut Hill, LLC, TPG and/or the

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Combined Operations, including their terms and conditions of employment, their employment

agreements, duties and responsibilities, compensation and benefits, and separation from

employment.

222330.1

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

CASAS, BENJAMIN & WHITE, LLC,

Plaintiff,

v.

THE POINTE GROUP, INC., a
Massachusetts corporation d/b/a
The Pointe Group Healthcare and
Senior Living; GERALD S. FREID;
BARRY FREID; and KEY
CORPORATE CAPITAL, INC.,
Defendants.

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: 04-CV-12333-MEL

TO:    Keeper of Records
       Cranberry Pointe Nursing Home, Inc.
       3 Allied Drive, Suite 106
       Dedham, MA  02026

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case and relative to an action pending in the United States District Court for the Eastern District of Massachusetts, titled Casas, Benjamin & White, LLC v. The Pointe Group, Inc., a Massachusetts corporation d/b/a The Pointe Group Healthcare and Senior Living; Gerald S. Freid; Barry Freid; and Key Corporate Capital, Inc., Docket Number 04CV12333MEL.  Examination is requested on the topics which are the subject of the document requests attached as Schedule "A."

| PLACE OF DEPOSITION<br>Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP<br>Ten Post Office Square<br>Boston, MA  02109 | DATE AND TIME<br>April 27, 2005<br>2:00 P.M. |
|---|---|

☒ YOU ARE ALSO COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Schedule "A."

| PLACE<br>Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP<br>Ten Post Office Square<br>Boston, MA  02109 | DATE AND TIME<br>April 20, 2005<br>9:00 A.M. |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| (ISSUING OFFICER SIGNATURE AND TITLE INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>*Michael Bernardo* | DATE<br>4/8/05 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michael R. Bernardo, Esq., Conn Kavanaugh Rosenthal Peisch & Ford, LLP,
Ten Post Office Square, Boston, Massachusetts  02109 – Tel. 617-482-8200

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on following page)

AO 88 (11/91) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE | KEEPER OF THE RECORDS |
|---|---|---|---|
| SERVED | APRIL 11, 2005 | | CRANBERRY POINTE NURSING HOME, INC.<br>3 ALLIED DRIVE, SUITE 106<br>DEDHAM, MA |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| FRANK BARKER, CONTROLLER | IN-HAND |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| BRUCE LEMAY | PROCESS SERVER & DISINTERESTED |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____ APRIL 11, 2005 _____
DATE

*Bruce Lemay*
SIGNATURE OF SERVER

92 STATE STREET, 7TH FLOOR
ADDRESS OF SERVER

BOSTON, MA 02109

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in per-

son, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## SCHEDULE A

## Definitions

Casas, Benjamin & White, LLC requests Cranberry Pointe Nursing Home, Inc. to

produce, for inspection and copying, the following documents and things. As used herein, the

following words shall have the following definitions.

A.   "You" or "your" shall refer to Cranberry Pointe Nursing Home, Inc. and each and all of its agents, servants, employees, representatives, officers, directors, insurers, and attorneys.

B.   "CBW" or "Plaintiff" means Casas, Benjamin & White, LLC, and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

C.   "Key Bank" means defendant, Key Corporate Capital, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

D.   "TPG" means defendant The Pointe Group, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on their behalf, including, but not limited to, any entity doing business as The Pointe Group Healthcare and Senior Living, and Stephen F. Gordon, Esq. of the law firm Gordon Haley, LLP.

E.   "Epoch" means Epoch Senior Living and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

F.   "Gerald Freid" means the individually-named defendant, Gerald S. Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

G.   "Barry Freid" means the individually-named defendant, Barry Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

H.   "Combined Operations" means the following facilities: (1) Hammond Pointe Nursing Home, LLC, a business providing long-term care, Alzheimer's care, and sub-acute care; (2) Boylston Place At Chestnut Hill, LLC, a business providing

AO 88 (Rev. 1/94) Subpoena in a Civil Case

assisted living services; and (3) Cranberry Pointe Nursing Home, Inc., a business providing long-term care, Alzheimer's care, and sub-acute care among other services.

I.    "Communication" shall refer to the transmission of information between one person and another, whether orally, in writing, or by electronic mail.

J.    "Document" shall be given the broadest construction permissible under the Federal Rules of Civil Procedure, and shall include papers and writings of any kind. If any responsive document is in electronic form, it shall be printed onto paper and produced in that form unless otherwise agreed.

### Requests

1.    All documents relating to or reflecting the establishment of escrows at the closing on the sale of the Combined Operations.

2.    All documents relating to or reflecting disbursements made at the closing on the sale of the Combined Operations or from the date of the closing to the date of Cranberry Pointe Nursing Home, Inc.'s response to this document request, including any disbursements of the buyer's deposit or any escrowed funds.

3.    All documents which relate or refer to the incorporation of Cranberry Pointe Nursing Home, Inc., including but not limited to Articles of Incorporation, By-Laws, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of Cranberry Pointe Nursing Home, Inc.

4.    All documents related to the formation, operation, membership, mission and purpose of Cranberry Pointe Nursing Home, Inc., including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of Cranberry Pointe Nursing Home, Inc.

5.    All documents which relate or refer to the incorporation of or formation of each of

AO 88 (Rev. 1/94) Subpoena in a Civil Case

the entities comprising the Combined Operations, including but not limited to Articles of

Incorporation, By-Laws, Limited Liability Company Operating Agreement, Annual Reports,

Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of

State by or on behalf of the Combined Operations.

6.    All documents related to the formation, operation, membership, mission and

purpose of each of the entities comprising the Combined Operations, including but not limited to,

meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-

mails, journals, telephone logs, expense reports, or other written correspondence or documents

that reflect or evidence the activities of the Combined Operations.

7.    All documents referencing, pertaining to, or generated in connection with the

closing on the sale of the Combined Operations to Epoch, whether in draft or final form, and

including documents generated in advance of, at, or following the closing.

8.    All documents which refer to, relate to, reflect or constitute communications

between Cranberry Pointe Nursing Home, Inc. and CBW.

9.    All documents which refer to, relate to, reflect or constitute communications

between TPG and CBW.

10.    All documents which refer to, relate to, reflect or constitute communications

between Cranberry Pointe Nursing Home, Inc. and Key Bank during the time period September

1, 2003 to January 31, 2005.

11.    All documents which refer to, relate to, reflect or constitute communications

between TPG and Key Bank during the time period September 1, 2003 to January 31, 2005.

12.    All documents which refer to, relate to, reflect or constitute communications

between Cranberry Pointe Nursing Home, Inc. and Epoch during the time period September 1,

2003 to January 31, 2005.

13.    All documents which refer to, relate to, reflect or constitute communications between TPG and Epoch during the time period September 1, 2003 to January 31, 2005.

14.    All documents which refer to, relate to, reflect or constitute communications by and among you, TPG, CBW, Epoch, and/or Key Bank during the time period September 1, 2003 to January 31, 2005.

15.    All documents which refer to, relate to or evidence gross revenues and net profits or losses of (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and (3) Cranberry Pointe Nursing Home, Inc. for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by the three facilities for each of the years 1999 to 2004.

16.    All documents which refer to, relate to or evidence gross revenues and net profits or losses of Cranberry Pointe Nursing Home, Inc. and TPG for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by Cranberry Pointe Nursing Home, Inc. and TPG for each of the years 1999 to 2004.

17.    All documents which constitute, refer or relate to communications by and among you, Gerald Freid, Barry Freid and other members of the Freid family regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from Cranberry Pointe Nursing Home, Inc. to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

18.    All documents which constitute, refer or relate to communications by and

AO 88 (Rev. 1/94) Subpoena in a Civil Case

between Cranberry Pointe Nursing Home, Inc., or its officers, directors, employees, agents, representatives, attorneys, stockholders or consultants, including you, Mark Tobin, TPG, Gerald Freid and Barry Freid, and Stephen F. Gordon, Esq., regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from Cranberry Pointe Nursing Home, Inc. or TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

19.    All documents which refer to, relate to or evidence loan(s) made by Key Bank for (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and/or (3) Cranberry Pointe Nursing Home, Inc., including all documents that evidence, refer to or relate to descriptions or lists of the business assets, real property, personal property, accounts receivable and/or inventory of TPG, the Combined Operations, you, the Estate of William Freid, Gerald Freid, Barry Freid and/or any other collateral used to secure the loan(s) made by Key Bank for the Combined Operations.

20.    All documents including correspondence, notes, memoranda, and e-mails that constitute, embody, refer or relate to:

(a) civil or criminal investigation(s) or complaint(s) brought by or on behalf of any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board concerning the Combined Operations from 1999 to the present;

(b) agency or board hearings, decisions, and/or dispositions on said civil or criminal investigation(s) and/or complaint(s) concerning the Combined Operations;

(c) appeals submissions and/or decisions; and

(d) settlement agreements between Cranberry Pointe Nursing Home, Inc., TPG,

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Combined Operations, Gerald Freid, Barry Freid, and any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board.

21.　All documents including notes, memoranda, correspondence, and e-mail that constitute, embody, refer or relate to any communications, oral or written, that Cranberry Pointe Nursing Home, Inc., TPG and/or the Combined Operations has had at any time with any federal, state, local, and/or municipal agency or board and/or any other non-governmental agency or board or Epoch regarding or relating to any civil or criminal investigation or complaint, agency or board hearings and decisions on said investigation(s) or complaint(s), appeals submissions and/or decisions, or settlement agreements.

22.　All correspondence, electronic messages, statements, or handwritten notes in your possession, custody or control that refer or relate to proposed or agreed purchase prices for the Combined Operations.

23.　All documents in your possession, custody or control regarding or relating to Key Bank's threat to foreclose on one or more of the facilities constituting the Combined Operations.

24.　All documents which refer or relate to any entity or individual with an ownership interest in Cranberry Pointe Nursing Home, Inc., TPG and/or one or more of the Combined Operations, including but not limited to, the name and address of each owner, officer, director and shareholder, the date and amount of any such shares purchased and the consideration, if any, paid for such shares.

25.　All audit opinions and audited financial statements of Cranberry Pointe Nursing Home, Inc., TPG and each of the Combined Operations for the calendar years 2003 and 2004.

26.　All documents that evidence, refer to or relate to Gerald and/or Barry Freid's employment relationship, if any, with Cranberry Pointe Nursing Home, Inc., TPG and/or the Combined Operations, including their terms and conditions of employment, their employment

AO 88 (Rev. 1/94) Subpoena in a Civil Case

agreements, duties and responsibilities, compensation and benefits, and separation from employment.

224183.1

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

CASAS, BENJAMIN & WHITE, LLC,

      Plaintiff,

      v.

THE POINTE GROUP, INC., a
Massachusetts corporation d/b/a
The Pointe Group Healthcare and
Senior Living; GERALD S. FREID;
BARRY FREID; and KEY
CORPORATE CAPITAL, INC.,

      Defendants.

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: 04-CV-12333-MEL

TO:    Keeper of Records
        Hammond Pointe Nursing Home, LLC
        3 Allied Drive, Suite 106
        Dedham, MA 02026

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case and relative to an action pending in the United States District Court for the Eastern District of Massachusetts, titled Casas, Benjamin & White, LLC v. The Pointe Group, Inc., a Massachusetts corporation d/b/a The Pointe Group Healthcare and Senior Living; Gerald S. Freid; Barry Freid; and Key Corporate Capital, Inc., Docket Number 04CV12333MEL. Examination is requested on the topics which are the subject of the document requests attached as Schedule "A."

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP<br>Ten Post Office Square<br>Boston, MA 02109 | April 26, 2005<br>10:00 A.M. |

☒ YOU ARE ALSO COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Schedule "A".

| PLACE | DATE AND TIME |
|---|---|
| Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP<br>Ten Post Office Square<br>Boston, MA 02109 | April 19, 2005<br>9:00 A.M. |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Michael Bernardo* | 4/8/05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michael R. Bernardo, Esq., Conn Kavanaugh Rosenthal Peisch & Ford, LLP,
Ten Post Office Square, Boston, Massachusetts  02109 – Tel. 617-482-8200

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on following page)

AO 88 ( 11/91) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | APRIL 11, 2005 | KEEPER OF THE RECORDS<br>HAMMOND POINTE NURSING HOME, LLC<br>3 ALLIED DRIVE, SUITE 106<br>DEDHAM, MA |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| FRANK BARKER, CONTROLLER | IN-HAND |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| BRUCE LEMAY | PROCESS SERVER & DISINTERESTED |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___APRIL 11, 2005___
　　　　　　　　　　DATE

_Bruce Lemay_
SIGNATURE OF SERVER

92 STATE STREET, 7TH FLOOR
ADDRESS OF SERVER

BOSTON, MA  02109

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in per-

son, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# **SCHEDULE A**

### **Definitions**

Casas, Benjamin & White, LLC requests Hammond Pointe Nursing Home, LLC to

produce, for inspection and copying, the following documents and things. As used herein, the

following words shall have the following definitions.

A.    "You" or "your" shall refer to Hammond Pointe Nursing Home, LLC and each and all of its agents, servants, employees, representatives, officers, directors, insurers, and attorneys.

B.    "CBW" or "Plaintiff" means Casas, Benjamin & White, LLC, and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

C.    "Key Bank" means defendant, Key Corporate Capital, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

D.    "TPG" means defendant The Pointe Group, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on their behalf, including, but not limited to, any entity doing business as The Pointe Group Healthcare and Senior Living, and Stephen F. Gordon, Esq. of the law firm Gordon Haley, LLP.

E.    "Epoch" means Epoch Senior Living and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

F.    "Gerald Fried" means the individually-named defendant, Gerald S. Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

G.    "Barry Freid" means the individually-named defendant, Barry Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

H.    "Combined Operations" means the following facilities: (1) Hammond Pointe Nursing Home, LLC, a business providing long-term care, Alzheimer's care, and sub-acute care; (2) Boylston Place At Chestnut Hill, LLC, a business providing assisted living services; and (3) Cranberry Pointe Nursing Home, Inc., a business providing long-term care, Alzheimer's care, and sub-acute care among other services.

I.    "Communication" shall refer to the transmission of information between one person and another, whether orally, in writing, or by electronic mail.

J.    "Document" shall be given the broadest construction permissible under the Federal Rules of Civil Procedure, and shall include papers and writings of any kind.  If any responsive document is in electronic form, it shall be printed onto paper and produced in that form unless otherwise agreed.

## Requests

1.    All documents relating to or reflecting the establishment of escrows at the closing on the sale of the Combined Operations.

2.    All documents relating to or reflecting disbursements made at the closing on the sale of the Combined Operations or from the date of the closing to the date of Hammond Pointe Nursing Home, LLC response to this document request, including any disbursements of the buyer's deposit or any escrowed funds.

3.    All documents which relate or refer to the incorporation of Hammond Pointe Nursing Home, LLC, including but not limited to Articles of Incorporation, By-Laws, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of Hammond Pointe Nursing Home, LLC.

4.    All documents related to the formation, operation, membership, mission and purpose of Hammond Pointe Nursing Home, LLC, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of Hammond Pointe Nursing Home, LLC.

5.     All documents which relate or refer to the incorporation of or formation of each of the entities comprising the Combined Operations, including but not limited to Articles of Incorporation, By-Laws, Limited Liability Company Operating Agreement, Annual Reports, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of the Combined Operations.

6.     All documents related to the formation, operation, membership, mission and purpose of each of the entities comprising the Combined Operations, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of the Combined Operations.

7.     All documents referencing, pertaining to, or generated in connection with the closing on the sale of the Combined Operations to Epoch, whether in draft or final form, and including documents generated in advance of, at, or following the closing.

8.     All documents which refer to, relate to, reflect or constitute communications between Hammond Pointe Nursing Home, LLC and CBW.

9.     All documents which refer to, relate to, reflect or constitute communications between TPG and CBW.

10.     All documents which refer to, relate to, reflect or constitute communications between Hammond Pointe Nursing Home, LLC and Key Bank during the time period September 1, 2003 to January 31, 2005.

11.     All documents which refer to, relate to, reflect or constitute communications between TPG and Key Bank during the time period September 1, 2003 to January 31, 2005.

12.     All documents which refer to, relate to, reflect or constitute communications

AO 88 (Rev. 1/94) Subpoena in a Civil Case

between Hammond Pointe Nursing Home, LLC and Epoch during the time period September 1, 2003 to January 31, 2005.

13.    All documents which refer to, relate to, reflect or constitute communications between TPG and Epoch during the time period September 1, 2003 to January 31, 2005.

14.    All documents which refer to, relate to, reflect or constitute communications by and among you, TPG, CBW, Epoch, and/or Key Bank during the time period September 1, 2003 to January 31, 2005.

15.    All documents which refer to, relate to or evidence gross revenues and net profits or losses of (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and (3) Cranberry Pointe Nursing Home, Inc. for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by the three facilities for each of the years 1999 to 2004.

16.    All documents which refer to, relate to or evidence gross revenues and net profits or losses of Hammond Pointe Nursing Home, LLC and TPG for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by Hammond Pointe Nursing Home, LLC or TPG for each of the years 1999 to 2004.

17.    All documents which constitute, refer or relate to communications by and among you, Gerald Freid, Barry Freid and other members of the Freid family regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from Hammond Pointe Nursing Home, LLC to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

18.    All documents which constitute, refer or relate to communications by and between Hammond Pointe Nursing Home, LLC, or its officers, directors, employees, agents, representatives, attorneys, stockholders or consultants, including you, Mark Tobin, TPG, Gerald Freid and Barry Freid, and Stephen F. Gordon, Esq., regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from Hammond Pointe Nursing Home, LLC or TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

19.    All documents which refer to, relate to or evidence loan(s) made by Key Bank for (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and/or (3) Cranberry Pointe Nursing Home, Inc., including all documents that evidence, refer to or relate to descriptions or lists of the business assets, real property, personal property, accounts receivable and/or inventory of TPG, the Combined Operations, you, the Estate of William Freid, Gerald Freid, Barry Freid and/or any other collateral used to secure the loan(s) made by Key Bank for the Combined Operations.

20.    All documents including correspondence, notes, memoranda, and e-mails that constitute, embody, refer or relate to:

> (a) civil or criminal investigation(s) or complaint(s) brought by or on behalf of any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board concerning the Combined Operations from 1999 to the present;
>
> (b) agency or board hearings, decisions, and/or dispositions on said civil or criminal investigation(s) and/or complaint(s) concerning the Combined Operations;
>
> (c) appeals submissions and/or decisions; and

AO 88 (Rev. 1/94) Subpoena in a Civil Case

(d) settlement agreements between Hammond Pointe Nursing Home, LLC, TPG, Combined Operations, Gerald Freid, Barry Freid, and any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board.

21.    All documents including notes, memoranda, correspondence, and e-mail that constitute, embody, refer or relate to any communications, oral or written, that Hammond Pointe Nursing Home, LLC, TPG and/or the Combined Operations has had at any time with any federal, state, local, and/or municipal agency or board and/or any other non-governmental agency or board or Epoch regarding or relating to any civil or criminal investigation or complaint, agency or board hearings and decisions on said investigation(s) or complaint(s), appeals submissions and/or decisions, or settlement agreements.

22.    All correspondence, electronic messages, statements, or handwritten notes in your possession, custody or control that refer or relate to proposed or agreed purchase prices for the Combined Operations.

23.    All documents in your possession, custody or control regarding or relating to Key Bank's threat to foreclose on one or more of the facilities constituting the Combined Operations.

24.    All documents which refer or relate to any entity or individual with an ownership interest in Hammond Pointe Nursing Home, LLC, TPG and/or one or more of the Combined Operations, including but not limited to, the name and address of each owner, officer, director and shareholder, the date and amount of any such shares purchased and the consideration, if any, paid for such shares.

25.    All audit opinions and audited financial statements of Hammond Pointe Nursing Home, LLC, TPG and each of the Combined Operations for the calendar years 2003 and 2004.

26.    All documents that evidence, refer to or relate to Gerald and/or Barry Freid's employment relationship, if any, with Hammond Pointe Nursing Home, LLC, TPG and/or the

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Combined Operations, including their terms and conditions of employment, their employment

agreements, duties and responsibilities, compensation and benefits, and separation from

employment.

222325.1

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

CASAS, BENJAMIN & WHITE, LLC,

Plaintiff,

v.

THE POINTE GROUP, INC., a
Massachusetts corporation d/b/a
The Pointe Group Healthcare and
Senior Living; GERALD S. FREID;
BARRY FREID; and KEY
CORPORATE CAPITAL, INC.,

Defendants.

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: 04-CV-12333-MEL

TO:    Keeper of Records
       Chestnut Hill Life Care Realty, LLC
       3 Allied Drive, Suite 106
       Dedham, MA  02026

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case and relative to an action pending in the United States District Court for the Eastern District of Massachusetts, titled Casas, Benjamin & White, LLC v. The Pointe Group, Inc., a Massachusetts corporation d/b/a The Pointe Group Healthcare and Senior Living; Gerald S. Freid; Barry Freid; and Key Corporate Capital, Inc., Docket Number 04CV12333MEL.  Examination is requested on the topics which are the subject of the document requests attached as Schedule "A."

| PLACE OF DEPOSITION<br>Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP<br>Ten Post Office Square<br>Boston, MA  02109 | DATE AND TIME<br>April 25, 2005<br>10:00 A.M. |
|---|---|

☒  YOU ARE ALSO COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Schedule "A".

| PLACE<br>Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP<br>Ten Post Office Square<br>Boston, MA  02109 | DATE AND TIME<br>April 18, 2005<br>9:00 A.M. |
|---|---|

|  |  |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| (ISSUING OFFICER SIGNATURE AND TITLE INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>*Michael Bernardo* | DATE<br>4/8/05 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michael R. Bernardo, Esq., Conn Kavanaugh Rosenthal Peisch & Ford, LLP,
Ten Post Office Square, Boston, Massachusetts  02109 – Tel. 617-482-8200

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on following page)

AO 88 (11/91) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | APRIL 11, 2005 | KEEPER OF THE RECORDS<br>CHESTNUT HILL LIFE CARE REALTY, LLC<br>3 ALLIED DRIVE, SUITE 106<br>DEDHAM, MA |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| FRANK BARKER, CONTROLLER | IN-HAND |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| BRUCE LEMAY | PROCESS SERVER & DISINTERESTED |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___APRIL 11, 2005___
DATE

_Bruce Lemay_
SIGNATURE OF SERVER

92 STATE STREET, 7TH FLOOR

ADDRESS OF SERVER

BOSTON, MA  02109

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## SCHEDULE A

### Definitions

Casas, Benjamin & White, LLC requests Chestnut Hill Life Care Realty, LLC to produce, for inspection and copying, the following documents and things.  As used herein, the following words shall have the following definitions.

A.  "You" or "your" shall refer to Chestnut Hill Life Care Realty, LLC and each and all of its agents, servants, employees, representatives, officers, directors, insurers, and attorneys.

B.  "CBW" or "Plaintiff" means Casas, Benjamin & White, LLC, and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

C.  "Key Bank" means defendant, Key Corporate Capital, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

D.  "TPG" means defendant The Pointe Group, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on their behalf, including, but not limited to, any entity doing business as The Pointe Group Healthcare and Senior Living, and Stephen F. Gordon, Esq. of the law firm Gordon Haley, LLP.

E.  "Epoch" means Epoch Senior Living and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

F.  "Gerald Freid" means the individually-named defendant, Gerald S. Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

G.  "Barry Freid" means the individually-named defendant, Barry Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

H.  "Combined Operations" means the following facilities: (1) Hammond Pointe Nursing Home, LLC, a business providing long-term care, Alzheimer's care, and sub-acute care; (2) Boylston Place At Chestnut Hill, LLC, a business providing assisted living services; and (3) Cranberry Pointe Nursing Home, Inc., a business providing long-term care, Alzheimer's care, and sub-acute care among other services.

I.  "Communication" shall refer to the transmission of information between one person and another, whether orally, in writing, or by electronic mail.

J.  "Document" shall be given the broadest construction permissible under the Federal Rules of Civil Procedure, and shall include papers and writings of any kind.  If any responsive document is in

electronic form, it shall be printed onto paper and produced in that form unless otherwise agreed.

## Requests

1.    All documents relating to or reflecting the establishment of escrows at the closing on the sale of the Combined Operations.

2.    All documents relating to or reflecting disbursements made at the closing on the sale of the Combined Operations or from the date of the closing to the date of Chestnut Hill Life Care Realty, LLC response to this document request, including any disbursements of the buyer's deposit or any escrowed funds.

3.    All documents which relate or refer to the incorporation of Chestnut Hill Life Care Realty, LLC, including but not limited to Articles of Incorporation, By-Laws, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of Chestnut Hill Life Care Realty, LLC.

4.    All documents related to the formation, operation, membership, mission and purpose of Chestnut Hill Life Care Realty, LLC, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of Chestnut Hill Life Care Realty, LLC.

5.    All documents which relate or refer to the incorporation of or formation of each of the entities comprising the Combined Operations, including but not limited to Articles of Incorporation, By-Laws, Limited Liability Company Operating Agreement, Annual Reports, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of the Combined Operations.

6.    All documents related to the formation, operation, membership, mission and purpose of each of the entities comprising the Combined Operations, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of the Combined Operations.

7.    All documents referencing, pertaining to, or generated in connection with the closing on the sale of the Combined Operations to Epoch, whether in draft or final form, and including documents generated in advance of, at, or following the closing.

8.     All documents which refer to, relate to, reflect or constitute communications between Chestnut Hill Life Care Realty, LLC and CBW.

9.     All documents which refer to, relate to, reflect or constitute communications between TPG and CBW.

10.     All documents which refer to, relate to, reflect or constitute communications between Chestnut Hill Life Care Realty, LLC and Key Bank during the time period September 1, 2003 to January 31, 2005.

11.     All documents which refer to, relate to, reflect or constitute communications between TPG and Key Bank during the time period September 1, 2003 to January 31, 2005.

12.     All documents which refer to, relate to, reflect or constitute communications between Chestnut Hill Life Care Realty, LLC and Epoch during the time period September 1, 2003 to January 31, 2005.

13.     All documents which refer to, relate to, reflect or constitute communications between TPG and Epoch during the time period September 1, 2003 to January 31, 2005.

14.     All documents which refer to, relate to, reflect or constitute communications by and among you, TPG, CBW, Epoch, and/or Key Bank during the time period September 1, 2003 to January 31, 2005.

15.     All documents which refer to, relate to or evidence gross revenues and net profits or losses of (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and (3) Cranberry Pointe Nursing Home, Inc. for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by the three facilities for each of the years 1999 to 2004.

16.     All documents which refer to, relate to or evidence gross revenues and net profits or losses of Chestnut Hill Life Care Realty, LLC and TPG for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by Chestnut Hill Life Care Realty, LLC and TPG for each of the years 1999 to 2004.

17.     All documents which constitute, refer or relate to communications by and among you, Gerald Freid, Barry Freid and other members of the Freid family regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from Chestnut Hill Life Care Realty, LLC to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or

CBW's fees for services.

18.    All documents which constitute, refer or relate to communications by and between Chestnut Hill Life Care Realty, LLC, or its officers, directors, employees, agents, representatives, attorneys, stockholders or consultants, including you, Mark Tobin, TPG, Gerald Freid and Barry Freid, and Stephen F. Gordon, Esq., regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from Chestnut Hill Life Care Realty, LLC or TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

19.    All documents which refer to, relate to or evidence loan(s) made by Key Bank for (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and/or (3) Cranberry Pointe Nursing Home, Inc., including all documents that evidence, refer to or relate to descriptions or lists of the business assets, real property, personal property, accounts receivable and/or inventory of TPG, the Combined Operations, you, the Estate of William Freid, Gerald Freid, Barry Freid and/or any other collateral used to secure the loan(s) made by Key Bank for the Combined Operations.

20.    All documents including correspondence, notes, memoranda, and e-mails that constitute, embody, refer or relate to:

   (a) civil or criminal investigation(s) or complaint(s) brought by or on behalf of any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board concerning the Combined Operations from 1999 to the present;

   (b) agency or board hearings, decisions, and/or dispositions on said civil or criminal investigation(s) and/or complaint(s) concerning the Combined Operations;

   (c) appeals submissions and/or decisions; and

   (d) settlement agreements between Chestnut Hill Life Care Realty, LLC, TPG, the Combined Operations, Gerald Freid, Barry Freid, and any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board.

21.    All documents including notes, memoranda, correspondence, and e-mail that constitute, embody, refer or relate to any communications, oral or written, that Chestnut Hill Life Care Realty, LLC, TPG and/or the Combined Operations has had at any time with any federal, state, local, and/or municipal agency

or board and/or any other non-governmental agency or board or Epoch regarding or relating to

any civil or criminal investigation or complaint, agency or board hearings and decisions on said

investigation(s) or complaint(s), appeals submissions and/or decisions, or settlement agreements.

22.    All correspondence, electronic messages, statements, or handwritten notes in your possession,

custody or control that refer or relate to proposed or agreed purchase prices for the Combined Operations.

23.    All documents in your possession, custody or control regarding or relating to Key

Bank's threat to foreclose on one or more of the facilities constituting the Combined Operations.

24.    All documents which refer or relate to any entity or individual with an ownership interest in Chestnut

Hill Life Care Realty, LLC, TPG and/or one or more of the Combined Operations, including but not limited to, the

name and address of each owner, officer, director and shareholder, the date and amount of any such shares

purchased and the consideration, if any, paid for such shares.

25.    All audit opinions and audited financial statements of Chestnut Hill Life Care Realty, LLC, TPG and

each of the Combined Operations for the calendar years 2003 and 2004.

26.    All documents that evidence, refer to or relate to Gerald and/or Barry Freid's employment

relationship, if any, with Chestnut Hill Life Care Realty, LLC, TPG and/or the Combined Operations, including

their terms and conditions of employment, their employment agreements, duties and responsibilities, compensation

and benefits, and separation from employment.

222315.1

**D**

# GORDON HALEY LLP

COUNSELLORS AT LAW

101 FEDERAL STREET

BOSTON, MASSACHUSETTS 02110-1844

(617) 261-0100

FAX (617) 261-0789

April 18, 2005

<u>By Hand</u>

Michael R. Bernardo, Esquire
Conn Kavanaugh Rosenthal Peisch & Ford, LLP
Ten Post Office Square
Boston, Massachusetts 02109

Re:    Casas, Benjamin & White, LLC v. The Pointe Group, Inc. et al
       <u>USDC Case No. 04-CV-12333-MEL</u>

Dear Michael:

While not included in your letter of April 8, 2005 to counsel, I have now received copies of the
Subpoenas for the keeper of the records depositions of Cranberry Pointe Nursing Home, Inc.,
Cranberry Pointe Partnership, Chestnut Hill Life Care Realty, LLC, Hammond Pointe Nursing
Home, LLC and Boylston Place at Chestnut Hill, LLC. As you know, I was not able to accept
service of the subpoenas for any of those entities and I do not agree that they were properly
served. Nonetheless, subject to the objections to document production set forth below, the
keeper of the records of each will appear at the time and place designated for appearance in the
Notices of Deposition (except for the one conflict noted below).

Accordingly, the keeper of the records of Chestnut Hill Life Care Realty, LLC will appear at
your offices on April 25, 2005 at 10:00 a.m. The keepers of the records of Hammond Pointe
Nursing Home, LLC and Cranberry Pointe Partnership will appear at your offices at 10:00 a.m.
and 2:00 p.m., respectively, on April 26, 2005 (although my deposition will have to be delayed
or paused for what I expect to be brief keeper of records depositions). The keeper of the records
of Boylston Place at Chestnut Hill, LLC will appear at your offices at 10:00 a.m. on April 27,
2005. With respect to the deposition of the keeper of the records of Cranberry Pointe Nursing
Home, Inc., I, unfortunately, have a long-scheduled Summary Judgment hearing in Middlesex
Superior Court at 2:00 p.m. on April 27, 2005. Would it be possible to have the Cranberry
Pointe Nursing Home, Inc. keeper of the record's deposition immediately following the Boylston
Place at Chestnut Hill, LLC keeper of the record's deposition on the same day?

On behalf of Chestnut Hill Life Care Realty, LLC, Hammond Pointe Nursing Home, LLC,
Cranberry Pointe Partnership, Boylston Place at Chestnut Hill, LLC and Cranberry Pointe

# GORDON HALEY LLP

Michael R. Bernardo, Esquire
April 18, 2005
Page 2


Nursing Home, Inc., objection is hereby made to the production and copying of all of the documents sought. The requested production would be onerous and burdensome on these non-parties and much of the documentation would involve serious privacy issues (of residents, not the entities) and would not be relevant to this litigation nor likely to lead to relevant evidence. Additionally, documents which might be relevant would be redundant of that already produced by the parties to this litigation.

Please let me know whether you are able to change only the time of the Cranberry Pointe Nursing Home, Inc. keeper of the records deposition or wish to make some other change.

Sincerely,

Stephen F. Gordon
SFG:vsh

cc:    W. Scott O'Connell, Esquire (By First Class Mail)
       Erin K. Higgins, Esquire (By First Class Mail)
       Todd B. Gordon, Esquire

P:\Clients\Pointe Group\CBW Corr\Bernardo ltr03 04-18-05.doc

**E**

**Bernardo, Michael R.**

| | |
|---|---|
| **From:** | Stephen Gordon [sgordon@gordonhaley.com] |
| **Sent:** | Monday, April 25, 2005 1:26 PM |
| **To:** | Bernardo, Michael R. |
| **Cc:** | Higgins, Erin; 'Todd Gordon' |
| **Subject:** | CBW v. TPG (KOR Depositions) |

Mike-I think that we both learned the "value" of the KOR depositions today. With respect to all of them, I am willing, notwithstanding my objection, to produce for copying at your expense the formation, ownership and "entity" documents, plus tax returns (do you really need 5 years?), the leases between Chestnut Hill Realty and Cranberry Pointe Partnership and the operating entities at each, and the 2003 audited statements for any entity which has them, in lieu of KOR depositions (without prejudice to your right to re-schedule KOR's if you, in your sole discretion, feel the need). Does this make your decision easier? I really am trying to make this less expensive for everyone. The KOR documents will not be relevant to this case. The sale/closing and Key Bank documents and communications in our possession have already been produced. Steve

Stephen F. Gordon
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
Phone: 617-261-0100 Ext 28
Fax: 617-261-0789
sgordon@gordonhaley.com

F

## CONN KAVANAUGH ROSENTHAL PEISCH & FORD, LLP

### COUNSELORS AT LAW

THOMAS E. PEISCH
BOB B. ROSENTHAL
JAMES F. KAVANAUGH, JR.
RUSSELL F. CONN
GEORGE M. FORD
JAMES B. PELOQUIN
BARRY E. GOLD
THOMAS J. GALLITANO
JAMES GRAY WAGNER
ERIN K. HIGGINS
STEVEN E. GURDIN
MICHAEL T. SULLIVAN
CONSTANCE M. MCGRANE

Ten Post Office Square, Boston, Massachusetts 02109

Tel: (617) 482-8200
Fax: (617) 482-6444

WRITER'S DIRECT DIAL: 617-348-8297
E-MAIL: MBERNARDO@CKRPF.COM

April 26, 2005

KURT B. FLIEGAUF
RONALD M. JACOBS
CAROL A. STARKEY
JENNIFER M. NORTON
SARA L. GOODMAN
MICHAEL R. BERNARDO
JACOB A. LABOVITZ
CARA A. FAUCI
JOHANNA L. MATLOFF
AMY C. STEWART
BETH NUZZO NEWMARK
SARAH E. WEBER

**BY FACSIMILE AND MAIL**

Stephen F. Gordon, Esq.
Gordon Haley, LLP
101 Federal Street
Boston, MA 02110

RE:   Casas, Benjamin & White, LLC v. The Pointe Group, et al.
      C.A. No. 04-CV-12333-MEL

Dear Steve:

As a follow up to yesterday's keeper of records deposition of Chestnut Hill Life Care Realty, LLC ("Chestnut Hill Realty"), I write to request that Chestnut Hill Realty supplement its response to the document requests set forth in "Schedule A" of Casas, Benjamin & White's ("CBW") deposition subpoena, served on April 11, 2005. The basis for this request is as follows. Chestnut Hill Realty's keeper of records, Frank Barker, testified that he had conducted no search for documents responsive to the subpoena. Mr. Barker further testified, however, that he knew (or, in some cases, believed) that Chestnut Hill Realty did have documents responsive to many of the requests set forth in the subpoena. Moreover, Mr. Barker indicated that these responsive documents are located in one file room at Chestnut Hill Realty's office at 3 Allied Drive, Dedham, Massachusetts.

Despite Mr. Barker's acknowledgement that Chestnut Hill Realty possesses responsive documents at its offices, Chestnut Hill Realty did not produce one document in response to CBW's deposition subpoena. According to your letter to me of April 18, 2005 and our discussion at yesterday's deposition, Chestnut Hill Realty's failure to produce any responsive documents is based on a claim that such a production would be onerous, burdensome, and redundant of the document production made by The Pointe Group, Inc. ("TPG"). Chestnut Hill Realty also has objected on the ground that any responsive documents are irrelevant to any claims or defenses in this case.

As I indicated at yesterday's deposition, Chestnut Hill Realty has provided no factual support for its claim that responding to the document requests in CBW's deposition subpoena would be onerous or burdensome. Indeed, Mr. Barker testified that he made no effort to search for or identify responsive documents – documents which he acknowledged are located in one room in Chestnut Hill Realty's office.

Stephen F. Gordon, Esq.
April 26, 2005
Page 2

Further, I fail to see the basis of Chestnut Hill Realty's claim that there are no relevant documents in its possession, custody or control given Mr. Barker's admission that, as keeper of the records, he has undertaken no efforts to even identify (much less determine the relevance of) responsive documents.

Finally, Chestnut Hill Realty has provided no factual support for its claim that any responsive documents in its possession, custody or control would be duplicates of documents already produced by TPG. Mr. Barker testified that he had not reviewed TPG's document production, and apparently no one has reviewed Chestnut Hill Realty's documents. Therefore, Chestnut Hill Realty has no basis to conclude that all (or any) of its responsive documents would be duplicative of documents already produced by TPG.

As you are aware, the depositions of Hammond Pointe Nursing Home, LLC and Cranberry Pointe Partnership are scheduled for April 28, 2005 at 10 a.m. and 2 p.m., respectively. The depositions of Boylston Place at Chestnut Hill, LLC and Cranberry Pointe Nursing Home, Inc. are scheduled for May 4, 2005 at 1 p.m. and 3 p.m., respectively. You have indicated that Mr. Barker will testify as the keeper of records for all of these entities and that none of them will be producing any documents (based on the same objections raised by Chestnut Hill Realty). In order to expedite the process of obtaining responsive documents from Chestnut Hill Realty and the other above referenced entities, I am willing to continue the remaining depositions and personally conduct an inspection of the files of all of the entities, which I presume are located at 3 Allied Drive, Dedham, Massachusetts. This inspection should quell any concern on the part of the entities as to the alleged undue expense or burden of production. Further, my inspection of the entities' files would allow for an efficient determination as to which files are redundant of those already produced as part of this case. Of course, our proposal is conditioned on reservation of our right to depose the keeper of records of any or all of the entities after the files are produced for inspection and copying. Our proposal further is conditioned on the files being made available for my inspection no later than May 2, 2005.

I look forward to your prompt response to this proposal.

Very truly yours,

Michael Bernardo

Michael R. Bernardo

MRB:1915-000
cc:     W. Scott O'Connell, Esq. (by facsimile)
        Richard P. Steinken, Esq. (by facsimile)
        Thomas E. Peisch, Esq.
        Erin K. Higgins, Esq.
225365.1

**G**

## GORDON HALEY LLP

COUNSELLORS AT LAW
101 FEDERAL STREET
BOSTON, MASSACHUSETTS 02110-1844

(617) 261-0100
FAX (617) 261-0789

April 27, 2005

<u>By Facsimile</u>

Michael R. Bernardo, Esquire
Conn Kavanaugh Rosenthal Peisch & Ford, LLP
Ten Post Office Square
Boston, Massachusetts 02109

Re:   Casas, Benjamin & White, LLC v. The Pointe Group, Inc. et al
      <u>USDC Case No. 04-CV-12333-MEL</u>

Dear Michael:

Your letter faxed at the end of the day yesterday completely ignores the relative rights and responsibilities of, on the one hand, a party or an attorney responsible for the issuance and service of a subpoena upon a non-party and, on the other hand, a non-party person commanded by subpoena to produce documents. In what would be a substantial and entirely voluntary departure from the non-party's duties, I made an offer to you by e-mail on Monday to provide certain documents without prejudice to your right to re-Notice and again subpoena any of the Keepers of the Records if you, in your sole discretion, decided to do so. I am sorry that you chose not to avail yourself of that opportunity. Accordingly, I will see you tomorrow for the second and third time and money wasting depositions of Keepers of the Records.

Very truly yours,

Stephen F. Gordon
SFG:vsh

cc:   W. Scott O'Connell, Esquire (By Facsimile)
      Thomas E. Peisch, Esquire (By Facsimile)
      Erin K. Higgins, Esquire (By Facsimile)
      Todd B. Gordon, Esquire (with incoming correspondence)

P:\Clients\Pointe Group\CBW Corr\Bernardo ltr04 04-27-05.doc

**H**

## Bernardo, Michael R.

**From:** Bernardo, Michael R.
**Sent:** Wednesday, April 27, 2005 5:15 PM
**To:** 'cworcester@nixonpeabody.com'; 'sgordon@gordonhaley.com'
**Cc:** Higgins, Erin
**Subject:** CBW v. The Pointe Group

Courtney and Steve,

   This will confirm receipt of Steve's letter of today in which he rejected our proposal to inspect the records of the entities requested to produce documents in lieu of further KOR depositions.

   In addition, as I indicated in my messages to both of you today, CBW is continuing tomorrow's depositions of the keeper of records of Hammond Pointe Nursing Home, LLC and Cranberry Pointe Partnership (as well as the two KOR depositions scheduled for May 4, 2005) pending CBW's forthcoming motion to compel production of documents.

   Please contact me if you have any questions about this.

Michael