UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 04CV12333 MEL

|  |  |
|---|---|
| CASAS, BENJAMIN & WHITE, LLC | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE POINT GROUP, INC., | ) |
| GERALD S. FREID; BARRY FREID; | ) |
| KEY CORPORATE CAPITAL, INC. | ) |
| Defendants. | ) |

MEMORANDUM IN OPPOSITION TO DEFENDANT, KEY CORPORATE CAPITAL,
INC.'S MOTION TO DISMISS CROSS-CLAIM OF DEFENDANTS, THE POINTE GROUP,
INC., GERALD S. FREID AND BARRY FREID

Defendants and Cross-Claimants, The Pointe Group, Inc. ("TPG"), Gerald S. Freid

("Gerald Freid") and Barry Freid (also referred to collectively as the "Cross-Claimants") hereby

oppose Key Corporate Capital, Inc.'s ("KeyBank") motion to dismiss (the "Motion to Dismiss").

In support of their Opposition, and as further detailed in this Memorandum, the Cross-Claimants

state that their cross-claims plead facts that are more than sufficient to maintain their claims

against KeyBank.

LEGAL STANDARD FOR MOTION TO DISMISS

It has long been held that a court may not dismiss a claim under Federal Rule of Civil

Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41-45-16

(1957). In ruling on a motion to dismiss, the court must accept as true the well-plead factual

allegations of the complaint and draw all inferences therefrom in the plaintiff's favor. See

LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). If it appears that the

facts set forth in the complaint are sufficient to state a cause of action, the motion to dismiss

must be denied.  See Nollett v. Justices of the Trial Court of Massachusetts, 83 F.Supp.2d 204,

208 (D.Mass.2000).

I.      CROSS-CLAIMANT, TPG, HAS SET FORTH SUFFICIENT FACTS TO MAINTAIN
        ITS CLAIM FOR INTENTIONAL AND/OR NEGLIGENT INTERFERENCE WITH
        ADVANTAGEOUS BUSINESS RELATIONS.

        KeyBank argues in the Motion to Dismiss that TPG's claim for intentional and/or

negligent interference with advantageous business relations must be dismissed as it fails to

satisfy the fourth element of the test set forth in a decision of the United States District Court for

the District of Massachusetts.  See Mass Cash Register, Inc. v. Comtrex System Corp., 901

F.Supp. 404, 421 (D. Mass. 1995).  More specifically, KeyBank states that TPG "fails to identify

any cognizable loss of advantage that it endured as a result of Defendant KeyBank's alleged

conduct."  KeyBank Motion to Dismiss at p. 3.  TPG, however, has alleged facts showing that it

suffered a cognizable loss as a result of KeyBank's interference with TPG's business relationship

with CBW.  As alleged in CBW's Complaint and again in TPG's cross-claim, Steven C. Dunham

("Dunham"), a Vice-President of KeyBank, urged CBW not to obtain a copy of a draft Purchase

and Sale Agreement and assured CBW that KeyBank "would safeguard CBW's economic

interests."  CBW Complaint at ¶ 48.  As also alleged in CBW's Complaint, KeyBank assured

CBW that its "fee would come straight off the top of the sale's proceeds at closing and that

KeyBank was committed to protecting [CBW's] interests …."  CBW Complaint at ¶ 69.

Furthermore, as alleged in CBW's Complaint, KeyBank's Dunham informed CBW that he had

seen CBW's fee included in a closing statement, but Dunham apparently failed to disclose to

CBW that if KeyBank took the full amount of $29,425,000 it had demanded from the sale

proceeds, there would be no funds to pay CBW any fee.  CBW Complaint at ¶ 91.  In its Motion

to Dismiss, KeyBank argues that it is entitled to a dismissal of TPG's claim for intentional and/or

negligent interference with advantageous relations on the grounds that TPG suffered no damages as a result of KeyBank's interference. See KeyBank Motion to Dismiss at p. 3. If the allegations set forth by CBW in its Complaint, and further alleged in TPG's cross claim are true and if TPG is found liable to CBW (this is, after all, a cross-claim and both Cross-Claimants and KeyBank deny liability to Plaintiff, CBW) then there is no question that KeyBank's interference with TPG and CBW's business relationship resulted in a cognizable loss suffered by TPG. Furthermore, TPG has suffered a "cognizable loss" in that, if it was not for KeyBank's interference with TPG's relationship with CBW, TPG would not be forced to defend this litigation. It was KeyBank that assured CBW that its fee would be paid at the closing and out of the sale proceeds. But for these assurances and interferences, TPG would not be facing the unnecessary costs associated with defending this litigation. Moreover, given the very nature of a cross claim, it remains to be seen whether TPG has suffered any further loss, beyond this litigation, as a result of KeyBank's intentional and/or negligent interference with TPG's relationship with CBW.

KeyBank further argues in its Motion to Dismiss that TPG "has no standing to assert a claim for interference with advantageous relations on the basis that KeyBank's actions harmed CBW…" KeyBank Motion to Dismiss at p. 4. KeyBank appears to miss the thrust of TPG's claim for interference with advantageous relations. TPG has not claimed that KeyBank's actions harmed CBW, although TPG believes that, if CBW's allegations are true, they have, but, rather, that KeyBank's substantial and continuous interference with TPG's relationship with CBW gives rise to its cross-claim for intentional and/or negligent interference with advantageous relations. As TPG (together with the allegations of KeyBank's conduct in CBW's complaint, as to which only CBW and Keybank were aware) has pled sufficient facts to maintain its claim for

intentional and/or negligent interference with advantageous relations, KeyBank's Motion to Dismiss should be denied.

## II.     KEYBANK IS NOT ENTITLED TO DISMISSAL ON CROSS-CLAIMANTS' CLAIM FOR INDEMNIFICATION.

KeyBank moves to dismiss the Cross-Claimants' claim for indemnification on the grounds that the Cross-Claimants' indemnification claim does not meet the requirement of "tort based" indemnification. See KeyBank Motion to Dismiss at p. 5. In particular, KeyBank argues that the Cross-Claimants' cannot maintain their claim for indemnification because the Cross-Claimants' role in this dispute is not passive as is required by Massachusetts case law for parties seeking tort based indemnification. See id. While KeyBank accurately sets forth the case law on tort based indemnification in its Motion to Dismiss, here, however, CBW's claims against the Cross-Claimants, if valid, are due solely to the acts and omissions of KeyBank and not the Cross-Claimants. KeyBank, by virtue of its conduct in repeatedly assuring CBW that its fee would be "taken care of" at the closing (all the while making it economically impossible for that to happen), was undeniably actively at fault, while Cross-Claimants' conduct was nothing more than merely passive (indeed, Cross-Claimants had no knowledge of KeyBank's allegedly tortious conduct). Taking all the allegations in CBW's complaint and the Cross-Claimants' cross-claim as true, there is a disparity between the wrongs committed by KeyBank and any wrongs allegedly committed by the Defendants. See Mass Ave. Laundries, 1996 WL 1353058, 3 (Mass. Super. Apr. 10, 1996) (holding claim for tort based indemnity maintained when both parties liable to third party and disparity exists between faults of indemnitee and indemnitor). If any of the Cross-Claimants are found liable to CBW, as a result of KeyBank's conduct, and the Cross-Claimants are found to have no active role in that wrongful conduct, the Cross-Claimants are entitled to recover their resulting damages from KeyBank. See The Humana Foundation, Inc. v.

<u>Cantella & Co., Inc.</u>, 2000 WL 33774752, 6 (D. Mass. 2000).  Therefore, to the extent that CBW

has any tort claims against the Cross-Claimants, these claims did not arise out of any acts or

omissions by the Cross-Claimants, but rather, the acts and omissions of KeyBank alone.

III.    KEYBANK IS NOT ENTITLED TO DISMISSAL ON CROSS-CLAIMANTS' CLAIM
        FOR UNJUST ENRICHMENT.

        To maintain a claim for unjust enrichment, a plaintiff must demonstrate "(1) an

enrichment; (2) an impoverishment; (3) a relation between the enrichment and the

impoverishment; (4) an absence of justification and (5) the absence of a remedy provided by

law." <u>Massachusetts v. Mylan Laboratories</u>, 357 F.Supp.2d 314, 324 (D. Mass. 2005).  KeyBank

argues in its Motion to Dismiss that the Cross-Claimants' claim for unjust enrichment must fail

because the Cross-Claimants "do not allege any facts under which they conferred a benefit upon

Defendant KeyBank."   KeyBank Motion to Dismiss at p. 7.  KeyBank further states that since

they were a senior secured lender, they were entitled to the $29,425,000 that they received from

the closing even though the Cross-Claimants (and the sellers, none of which are parties to this

lawsuit) received nothing.  The Cross-Claimants, however, certainly did confer a substantial

benefit on KeyBank in that the sale of the real properties allowed KeyBank to receive more than

it would have received if no closing took place and each of the Cross-Claimants to its and his

detriment, actively cooperated and contributed to the closing of the sale that KeyBank so

desperately wanted to take place.  Under <u>Mylan Laboratories</u>, the mere fact that KeyBank was

paid what it was owed (or even less than what it was owed) does not rule out the possibility that

it nevertheless received an unfair benefit.  <u>See</u> <u>Mylan Laboratories</u>, 357 F.Supp.2d at 324.

        Here, KeyBank's interference prevented CBW from participating in the final negotiations

and from attending the closing.  If KeyBank had not interfered and told CBW that it didn't need

to be present at the closing, CBW would have demanded to be paid from the proceeds of the sale.

It is most likely that the buyer would have refused to pay more than the agreed upon final purchase price. Consequently, to satisfy CBW and the buyer, KeyBank would have had to reduce the amount it was to collect at the closing or else the sale would have fallen through. Because of KeyBank's interference in telling CBW that it would "protect payment of CBW's fee," CBW did not demand payment at the closing, and thus it now seeks payment after the fact from three parties who sold nothing. The Cross-Claimants have already paid over $200,000.00 to CBW and could be liable for more, though the money to pay CBW should have come out of the funds KeyBank received at the closing (as KeyBank promised CB they would). Therefore, KeyBank will be unjustly enriched if the Cross-Claimants must pay CBW.

KeyBank further argues that the Cross-Claimants' claim for unjust enrichment must fail as the Cross-Claimants have acted in bad faith or with unclean hands. See KeyBank Motion to Dismiss at p. 8. While a claim for unjust enrichment can be defeated if the claimant is not blameless, "[t]he doctrine of unclean hands only applies when the claimant's misconduct is directly related to the merits of the controversy between the parties, that is, when the tawdry acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.'" Texas Puerto Rico, Inc., v. Dept. of Consumer Affairs, 60 F.3d 867, 880 (1st Cir. 1995) (quoting Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 148, 78 L.Ed. 293 (1933)). Under Texas Puerto Rico, KeyBank cannot assert the doctrine of unclean hands at this stage because the Court first has to rule on the "merits of the controversy" before disposing of a claim on the basis of unclean hands. Texas Puerto Rico, Inc., 60 F.3d at 880.

IV.     THE CROSS-CLAIMANTS HAVE ALLEGED SUFFICIENT FACTS TO MAINTAIN
        THEIR CLAIM FOR CONTRIBUTION

KeyBank argues in its Motion to Dismiss that the Defendants' claim for contribution must be dismissed as no "overlapping liability" of two persons exists. See KeyBank Motion to Dismiss at p. 8. "Overlapping liability" can be found when two tortfeasors are responsible for the same loss, even though the theories of liability differ with regard to each tortfeasor. In re Atlantic Financial Management, Inc., 603 F.Supp. 135, 137 (D.Mass. 1985). Furthermore, in Massachusetts, the fact that one joint tortfeasor's liability arises in contract does not defeat a claim for contribution:

> [B]reach by each of two persons of a "joint" duty to a third is only one of the circumstances in which reimbursement is allowable. The fact that one duty, arising out of one relationship to the third party, may be defined by securities law, or by contract law or the law of fiduciary obligation, while the other, arising out of another relationship to the third party, may be defined by contract law or the law of obligation of an investment advisor, does not preclude the possibility that each violator will be subject to full liability for a defined harm suffered by the third person.

Shapiro v. Miami Oil Producers, Inc., 84 F.R.D. 234, 239 (D.Mass. 1979). In denying a motion to dismiss for failure to state a claim for upon which relief can be granted, the Shapiro court noted, "[r]ulings as to the scope of any reimbursement the law and facts may support whether partial or full, and whether characterized as contribution or indemnity are more appropriately deferred pending development of the facts." 84 F.R.D. at 240.

KeyBank asserts that the cross-claim is an attempt to "dress up what is in essence a breach of contract claim to appear more pleasing to a tort lover's eye." (quoting Mead Corp. v. Stevens Cabinets, Inc., 938 F.Supp. 87, 91 (D.Mass. 1996)). Because KeyBank was not a party to any contract between TPG and CBW, KeyBank incorrectly assumes that TPG cannot claim contribution based on facts that, in some way, may include a contract. As a result of that misperception, KeyBank is not entitled to dismissal of the Cross-Claimants' count for contribution.

WHEREFORE, Cross-Claimants, The Pointe Group, Inc., Gerald S. Freid and Barry

Freid, respectfully request that the Court deny Key Corporate Capital, Inc.'s Motion to Dismiss

and grant such other relief as is just.

THE POINTE GROUP, INC., GERALD S.
FREID AND BARRY FREID

By their attorneys,

/s/ Todd B. Gordon
Stephen F. Gordon (BBO No. 203600)
Todd B. Gordon (BBO No. 652482)
Gordon Haley LLP
101 Federal Street
Boston, Massachusetts 02110
Tel:    (617) 261-0100
Fax:    (617) 261-0789
email:  sgordon@gordonhaley.com
        tgordon@gordonhaley.com

Dated: May 16, 2005
P:\Clients\Pointe Group\CBW Plead\Opp to mot to dismiss.doc

CERTIFICATE OF SERVICE

I, Todd B. Gordon, hereby certify that I served the foregoing by causing a true and
correct copy of the same to be sent by pre-paid, first class mail this 16th day of May, 2005 to:


David W. Austin, Esquire
Jeff J. Marwil, Esquire
Richard P. Steinken, Esquire
Jenner & Block, LLP
One IBM Plaza
Chicago, IL 60611-7603

/s/ Todd B. Gordon