UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 04CV12333 MEL

)
CASAS, BENJAMIN & WHITE, LLC          )
                Plaintiff,    )
)
v.                                    )
)
THE POINT GROUP, INC.,                )
GERALD S. FREID; BARRY FREID;         )
KEY CORPORATE CAPITAL, INC.           )
                Defendants.  )
)

OPPOSITION OF DEFENDANTS, THE POINTE GROUP, INC., GERALD S. FREID
AND BARRY FREID (AND ON BEHALF OF OTHERS) TO PLAINTIFF, CASAS,
BENJAMIN & WHITE, LLC'S MOTION TO COMPEL PRODUCTION OF
DOCUMENTS FROM CENTURY BANK AND TRUST COMPANY
(Request for Hearing)

Defendants, The Pointe Group, Inc. ("TPG"), Gerald S. Freid ("Gerald Freid") and Barry Freid (referred to collectively as the "Defendants") on their own behalf and on behalf of non-parties[1] whose private bank records have been sought, hereby respond to the Motion of Plaintiff, Casas, Benjamin &White, LLC ("CBW"), to Compel Production of Documents from Century Bank and Trust Company ("Century Bank") ("Motion to Compel"). In support of this Opposition, the Defendants hereby submit the accompanying Affidavit of Gracine Copithorne and state as follows:

CBW seeks to compel Century Bank to produce over a year of private banking records of Defendants, TPG, Gerald Freid, Barry Freid and numerous non-parties. The Subpoena is anything but narrowly drawn. Plaintiff wants "all documents" concerning "all accounts" of all of

---

[1] Freid & Tobin Venture Partners, The Pointe Group Healthcare & Senior Living, Hammond Pointe Nursing Home, LLC, Cranberry Pointe Partnership, Boylston Place at Chestnut Hill, LLC, Cranberry Pointe Nursing Home, Inc., Chestnut Hill Life Care Realty, LLC

the entities and individuals named, on the basis that one of the named entities (not a party to this action) received money (which is not true, according to Plaintiff's own documents attached as Exhibit A to the Motion to Compel and deposition testimony taken by Plaintiff two weeks prior to filing the Motion to Compel) from the sale proceeds of the transaction which is the subject of this case.

There was no request for a Local Rule 37.1 Discovery Conference[2] and, of course, none of the requirements of a Discovery Conference were met.  Although Plaintiff's own Exhibit A to the Motion to Compel shows no disbursements to Defendants and that, by November 4, 2004, there was only $698.22 in sale proceeds from a September 30, 2004 closing left, Plaintiff wants bank records from June, 2004 through today.  If disbursements from the closing to Cranberry Pointe Nursing Home, Inc. were an issue, Defendants would have consented (and still will) to Plaintiff receiving bank records for that entity alone from September 30, 2004 until November 30, 2004 without prejudice to Plaintiff requesting additional records if those records received show a need to Plaintiff.

As the only justification for this over-reaching invasion of privacy, CBW cites two instances of alleged misconduct on the part of counsel to the Defendants and "one or more of the Defendants." More specifically, in the Motion to Compel, CBW states:

> While Defendants have obstructed [Plaintiff's discovery efforts] at every opportunity,[3] documents produced by one of the two closing escrow agents, Fidelity National Title Insurance Company ("Fidelity"), have revealed that, **contrary to representations made by TPG's counsel**, one or more of the **Defendants** received $869,055 in closing disbursements at some point between November 4-9, 2004.  (emphasis added)

---

[2]  Counsel for Plaintiff made a perfunctory Local Rule 7.1 phone call, satisfying the letter, if not the spirit, of that Local Rule, but made no attempt at a Local Rule 37.1 Discovery Conference.

[3]  A statement which, most charitably, is unconscionable hyperbola.  Plaintiff has taken at least six depositions, including both individual defendants, their mother and two lawyers, all without resistance (except to onerous and repetitive document production) and voluminous documents have been produced by Defendants to Plaintiff.

This assertion, that TPG's counsel misrepresented whether any of the Defendants received $869,055 in closing disbursements, is disingenuous and completely and utterly false. Had Plaintiff's counsel actually complied with Local Rule 37.1 and not just said he had, he would have learned of the blatant error in his assertions. This is not to say that Plaintiff is not entitled to bring a motion to compel, just that Plaintiff would not be making false accusations against his adversary if Local Rule 37.1 had been complied with.

First, Plaintiff's own Exhibit A (last page) shows that no disbursements were made to any of the Defendants, TPG or the Freids. The $869,055 was, **on the face of Plaintiff's Exhibit A**, disbursed to Cranberry Pointe Nursing Home, Inc., which, while a seller in the underlying transaction, is quite obviously not a defendant in this action. In addition, at the May 19, 2005 (two full weeks before the Motion to Compel was filed) deposition of John McCullough, the attorney who represented certain Healthcare Entities[4] in the sale of their assets, counsel to CBW (albeit a different attorney in the same firm as the attorney who signed the Motion to Compel but whose name is listed thereon) spent a significant amount of time questioning Attorney McCullough as to what happened with the $869,055 in closing disbursements that CBW now falsely alleges "one or more of the Defendants received." As CBW has to be aware, Attorney McCullough explained in great detail the circumstances surrounding the $869,055. The $869,055 was due and owing to the Commonwealth of Massachusetts for a prior Medicaid recoupment claim. Since the Commonwealth would deduct that amount from monies earned from the Commonwealth post-closing by the buyer, the buyer properly insisted that the Medicaid encumbrance be satisfied at closing. For one reason or another, the Commonwealth of Massachusetts refused to accept the $869,055 check from the escrow agent in satisfaction of the

---

[4] Hammond Pointe Nursing Home, LLC, Cranberry Pointe Partnership, Boylston Place at Chestnut Hill, LLC, Cranberry Pointe Nursing Home, Inc. Chestnut Hill Life Care Realty, LLC.

Commonwealth's claim. The Commonwealth also refused to accept a wire transfer. The only way the Commonwealth would accept the funds, Attorney McCullough testified on May 19, 2005, was if it received a check directly from non-party, Cranberry Pointe Nursing Home, Inc. In order to comply with the Commonwealth's very specific instructions, the escrow agent obtained permission from the buyer's attorney to direct the funds to Cranberry Pointe Nursing Home, Inc. who then, in turn, delivered the funds to the Commonwealth via one of its own checks. Attorney McCullough testified as follows:

> Q. Can you tell me what this e-mail refers to? What is the $869,055 Terry Nolan is being instructed to release?
>
> A. That's the recoupment to the Commonwealth.
>
> Q. And can you explain to me why Terry Nolan is being instructed to release these funds to Cranberry Pointe Nursing Home?
>
> A. Yes. As I tried to explain to you, I think it was a very difficult thing, you might think this odd, but to pay the Commonwealth the money they were owed, and I think we ultimately worked out an arrangement after talking to a whole bunch of people over there. As you can see, it took over a month from the closing. The original intention at the closing was simply to either wire the funds or to get funds over there from Fidelity, but they wouldn't accept a wire, because for some reason it would go into the general fund and not into the Medicaid funds if it was wired, so ultimately we had to find somebody over there that would agree to accept a check at some point, and I believe the arrangement – Frank Barker made an arrangement with – through, I guess Landa's office that somebody would accept a check if they walked it over there, and it was on Cranberry's heading, so I think Andy sent a release to Nolan telling him to give the money to Cranberry, and Cranberry went over and paid the bill. They had made arrangements to pay it.
>
> Q. And it's your understanding that the check that is made payable to Cranberry Pointe, the intent of that check was it was going to be deposited into that --- into a bank account,

4

          and then a check was going to be written out to the Commonwealth of Massachusetts and then delivered to them?

A.    I don't know if this check ultimately was endorsed over to the Commonwealth Frank Barker had made arrangements with the Medicaid Division to obtain this check, and satisfactory arrangements, that were satisfactory to Sucoff, and Goodwin Procter, and Epoch in that regard, and they obviously had communications with the Medicaid office also to determine the correct pathway to pay this bill, and it's my understanding it was paid, otherwise Epoch would be screaming about it now, because they would have had their checks reduced.

The pertinent pages of Attorney McCullough's deposition transcript are attached hereto as Exhibit A.

    CBW bases its Motion to Compel on its false accusations of misrepresentation and its wholly mistaken belief that "one or more of the Defendants" received closing disbursements which were unquestionably paid to the Commonwealth of Massachusetts through a non-party to this case. As CBW was informed by Attorney McCullough's at his deposition, which took place two weeks before this Motion to Compel was filed, the entire $869,055 was paid to the Commonwealth of Massachusetts and none of the Defendants (or the non-party Healthcare Entities for that matter) received a penny of those funds. CBW's Motion to Compel should be denied as it is based on false statements as to the need to examine the private bank records of the Defendants, and the non-parties listed in the subpoena, in light of Attorney McCullough's testimony.

    CBW further states in the Motion to Compel that, on May 16, 2005, Century Bank informed CBW's counsel that it received a written objection from the Defendants objecting to the production of any documents by Century Bank pursuant to CBW's subpoena. Defendants

5

doubt the explicit truth of that statement since Century Bank's letter is dated May 16, 2005[5] and was mailed to CBW's counsel so CBW could not have been "informed" of its contents until it arrived in the mail. CBW further states that it demanded (but not until May 19, 2005, likely the date it received the Century Bank letter) that Century Bank produce the written objection. CBW says in the Motion to Compel, that "[o]n May 19, 2005, CBW's counsel received the purported 'objection' from Century Bank, which inexplicably consisted of a letter from Attorney Gordon, dated May 17, 2005, objecting to the production of any records in response to the subpoena. The letter was clearly drafted after CBW's counsel demanded proof that the Bank's customer had objected to the production." Once again, CBW's false and inflammatory[6] accusations that the Defendants and/or their counsel purposely engaged in deceitful behavior by backdating the May 17, 2005 letter is completely erroneous[7] and should not be used as grounds for allowance of the Motion to Compel.

As further set forth in the accompanying Affidavit of Gracine Copithorne, an Assistant Vice–President of Century Bank and Keeper of the Records, there was no misconduct whatsoever on the part of the Defendants or their counsel. On May 17, 2005, Ms. Copithorne spoke with Attorney Stephen Gordon, counsel to the Defendants. Attorney Gordon objected on behalf of the Defendants and the non-parties to the production of the Defendants' and non-parties' private bank records. Ms. Copithorne told Attorney Gordon that Century Bank required a written objection. Shortly after speaking with Ms. Copithorne, on May 17, 2005, Attorney Gordon sent, by facsimile and first-class mail, a letter objecting to the production of the private bank records. A copy of Attorney Gordon's May 17, 2005 letter that was sent by facsimile (with

---

[5] Although that date is incorrect.
[6] This false accusation would, if true, constitute a fraud on this Court from which the Century Bank Subpoena issued.
[7] And, once again, a proper Local Rule 37.1 Discovery Conference would have yielded the correct information.

6

the date and time sent at the top of the page) is attached as Exhibit A to Ms. Copithorne's Affidavit. Also on May 17, 2005, Ms. Copithorne sent CBW's counsel a letter, mistakenly dated May 16, 2005, informing CBW's counsel that Century Bank had received the written objection. Neither the Defendants nor their counsel were copied on that letter. As Attorney Gordon and Ms. Copithorne didn't speak for the first time until May 17, 2005, it is inconceivable that Ms. Copithorne could have written her letter to CBW's counsel on May 16, 2005. On May 18, 2005, Ms. Copithorne received the mailed original of Attorney Gordon's May 17, 2005 letter. A copy of the envelope in which it arrived (with the official U.S. Postal Service stamp cancellation bearing the date May 17, 2005) is attached as Exhibit B to Ms. Copithorne's Affidavit. On May 19, 2005, Ms. Copithorne received a call from CBW's counsel asking for a copy of the written objection that Ms. Copithorne had received from Attorney Gordon. Only minutes thereafter[8], Ms. Copithorne faxed CBW's counsel a copy of Attorney Gordon's mailed version of the May 17, 2005 letter. Ms. Copithorne did not send the faxed version of Attorney Gordon's May 17, 2005 letter as she was concerned that the faxed copy would be difficult to read if it was faxed again. As CBW's Motion to Compel the overreaching production of irrelevant private bank records is justified solely on the false contentions that one or more of the Defendants received $869,055 in closing disbursements, a fact CBW's counsel knew (from prior testimony and from the very documents it attached as Exhibit A to its own Motion to Compel) was incorrect, and the false and inflammatory accusations that counsel to the Defendants "obstructed the production of documents" and all but committed a fraud on the Court, another fact we now know to be completely incorrect, the Motion to Compel should be denied.

---

[8] Both the short period of time that elapsed after the phone call between CBW's counsel and Ms. Copithorne and their receipt of the May 17, 2005 letter and the fact that Attorney Gordon attended a deposition at the offices of CBW's counsel on May 19, 2005 should have given CBW's counsel pause before accusing a member of the Bar of this Court of backdating a document to fraudulently circumvent this Court's processes.

7

Request for Hearing

While the Defendants recognize that discovery motions are often decided without hearing, in this particular case the Defendants (and, especially, their counsel) believe that a hearing is warranted (and Defendants' counsel is fairly well begging for a hearing) because the only grounds assigned for allowance of the Motion to Compel is the falsely alleged misrepresentation of counsel and a similarly falsely alleged fraud on the Court by Defendants' counsel.  Defendants and their counsel are concerned that any decision on the Motion to Compel would, in some manner, give credence to the Plaintiff's false allegations of counsel misconduct.  Accordingly, a brief hearing is most earnestly requested.

WHEREFORE, The Pointe Group, Inc., Gerald S. Freid and Barry Freid and the non-parties named in CBW's Subpoena to Century Bank respectfully request that the court deny Casas, Benjamin & White, LLC's Motion to Compel Production of Documents from Century Bank and Trust Company and that the court grant such other further relief as is just.

Respectfully Submitted,

THE POINTE GROUP, INC., GERALD S. FREID AND BARRY FREID

By their attorneys,

/s/Todd B. Gordon
Stephen F. Gordon (BBO No. 203600)
Todd B. Gordon (BBO No. 652482)
Gordon Haley LLP
101 Federal Street
Boston, Massachusetts 02110
Tel:   (617) 261-0100
Fax:   (617) 261-0789

Dated: June 17, 2005
P:\Clients\Pointe Group \CBW Plead\Opp to mot to compel re Century.doc