UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CASAS, BENJAMIN & WHITE, LLC,      )<br>                                                              )<br>       Plaintiff,                                        )<br>                                                              )     No.  04-12333-MEL<br>       vs.                                                )<br>                                                              )<br>THE POINTE GROUP, INC., a                )<br>Massachusetts corporation d/b/a The Pointe )<br>Group Healthcare and Senior Living;     )<br>GERALD S. FREID; BARRY FREID; and )<br>KEY CORPORATE CAPITAL, INC.,     )<br>                                                              )<br>       Defendants.                                   ) | |

**MOTION OF PLAINTIFF, CASAS, BENJAMIN & WHITE, LLC, TO COMPEL DEPONENT JOHN MCCULLOUGH TO PRODUCE DOCUMENTS RESPONSIVE TO DEPOSITION SUBPOENA AND TO ANSWER CERTAIN DEPOSITION QUESTIONS**

The plaintiff, Casas, Benjamin & White, LLC ("CBW"), moves pursuant to Rules 37 (a)(2)(B) and 45 of the Federal Rules of Civil Procedure for an order compelling John McCullough to produce documents responsive to the schedule of documents attached to the deposition subpoena served on Mr. McCullough, and to appear for his continued deposition to provide responsive answers to questions he was instructed not to answer by counsel.  In support of this motion, CBW certifies that it has complied with Rules 7.1 and 37.1 of the Local Rules of the U.S. District Court for the District of Massachusetts, and further states as follows.

I.    <u>Factual Background</u>

This case is brought against The Pointe Group , Inc. ("TPG"), Barry and Gerald Freid, and Key Bank (hereinafter, collectively, "Defendants") to recover money damages in excess of one million dollars that CBW suffered because it was never paid for services CBW performed for the benefit of Defendants.  Specifically, TPG and the Freids retained CBW to provide certain investment banking services in connection with the sale or refinance of certain nursing homes

and assisted living facilities, and agreed to pay CBW a percentage of the value of any transactions consummated in connection with the sale or refinance of those facilities. After CBW performed all of its obligations under the parties' contract, and the facilities were in fact sold to an entity known as Epoch Senior Living ("Epoch"), Defendants wrongfully failed and refused to pay CBW's contracted-for fee.

CBW alleges that TPG breached a contract with CBW and breached the implied covenant of good faith and fair dealing, that the Freids aided and abetted TPG's misconduct, and that all Defendants were unjustly enriched by the benefits that they wrongfully derived from CBW's services, and engaged in fraudulent misrepresentation, civil conspiracy, and violations of M.G.L. c. 93A. CBW seeks recovery of actual damages, double or treble damages, costs and attorneys' fees by virtue of Defendants' willful or knowing, unfair and/or deceptive acts.

Since the parties first appeared before this Court for argument on CBW's motion for entry of a preliminary injunction and for real estate attachments, CBW has served written discovery requests on TPG, and subpoenas <u>duces</u> <u>tecum</u> on the corporate entities that held legal title to the facilities sold to Epoch. CBW also has served a subpoena <u>duces</u> <u>tecum</u> on TPG's bank. CBW also has noticed and taken the depositions of Barry Freid, Gerald Freid, and Georgia Freid. In each instance, TPG has objected to producing all relevant, responsive information. TPG's obstructionist tactics are detailed more fully in CBW's three other pending motions to compel.

At their depositions, neither Barry Freid nor Gerald Freid could articulate any coherent reason for the defendants' failure to pay CBW's duly-earned fee. In fact, both of the Messrs. Freid acknowledged that CBW's efforts brought Epoch to the table, that the purchase price paid by Epoch was far more than either had thought a buyer would pay for the facilities, and that per

the terms of the Engagement Letter, CBW was entitled to a fee of approximately $1,000,000. Gerald Freid acknowledged that only two days before the closing, he requested an invoice from Matt Caine at CBW, leading CBW to believe that it would be paid at the time of closing. On the day before the closing, CBW was asked to wire another copy of the invoice, along with wiring instructions, to TPG's counsel, further lulling CBW into believing that its fee would be paid. [1]

CBW also has obtained through discovery drafts of closing statements prepared in connection with the closing on the sale to Epoch. These drafts, attached at Tabs C, D, and E, reflected CBW's fee as a closing expense up through and including the morning of the September 30, 2004 closing on the transaction. For example, in a draft closing statement circulated among the parties on the night before the closing, CBW's fee was reflected on Schedule 7 of the closing statement as one of the sellers' closing expenses. (Tab C).[2] TPG's closing attorney, John McCullough, reviewed this draft closing statement and affirmed that his clients were prepared to move forward with the transaction. (Tab C). A further draft of the closing statement, this one generated on the morning of the closing, continued to show CBW's fee as a sellers' closing expense. (Tab D). Within an hour, however, CBW's fee was stricken from the closing statement. (Tab E, p. 10). The transaction thereafter went forward, and CBW's fee was not and never has been paid, forcing CBW to institute this lawsuit.

John McCullough, TPG's closing attorney, attended the September 30, 2004 closing and participated in negotiations among the parties leading up to the sale. On March 18, 2005, CBW's counsel noticed Mr. McCullough's deposition. CBW included with its deposition notice

---

[1]   A copy of the invoice sent to Mr. Freid is attached at Tab A. A copy of the invoice and wiring instructions sent to TPG's closing attorney is attached at Tab B.

[2]   The amount reflected on the closing statement as the fee due to CBW was slightly less than the fee actually due to CBW. The correct calculation of the performance incentive payments due to CBW appears on the invoice that Gerald Freid requested from CBW in the days leading up to the closing.

a copy of the schedule of documents it intended to request from Mr. McCullough. A true and correct copy of CBW's Notice of Deposition is attached at Tab F. On April 4, 2005, TPG's counsel in this action, Stephen F. Gordon, sent a letter to CBW's counsel objecting to the production of <u>any</u> documents by Mr. McCullough. A true and correct copy of this letter is attached at Tab G. Mr. Gordon did not specify any basis for the objection, other than to indicate that Mr. McCullough already had produced all of his documents in connection with TPG's response to CBW's request for production.

On April 19, 2005, Michael R. Bernardo, one of CBW's attorneys in this matter, spoke to Mr. McCullough regarding the scheduling of his deposition.[3] Mr. McCullough agreed to accept service of his deposition subpoena by mail. Mr. McCullough further indicated that upon receipt of the subpoena, he would review his documents and produce any non-privileged responsive documents for inspection and copying.

CBW's counsel then forwarded the deposition subpoena to Mr. McCullough. A true and correct copy of counsel's cover letter and the subpoena are attached at Tab H. On May 12, 2005, CBW's counsel again spoke to Mr. McCullough regarding the production of documents responsive to the deposition subpoena. At that time, a week prior to his scheduled deposition, Mr. McCullough indicated that all questions regarding documents had to be referred to Attorney Gordon. When CBW's counsel asked whether Mr. Gordon represented Mr. McCullough, however, Mr. McCullough stated that he "did not know." CBW's counsel then called Attorney Gordon, who indicated that he would be representing Mr. McCullough at the deposition and that Mr. McCullough would not be producing any documents responsive to the subpoena.

---

[3] CBW's counsel spoke directly with Mr. McCullough on April 19th because as of that date, Attorney Gordon had expressly stated that he did not represent Mr. McCullough and could not accept service of a deposition subpoena for him.

4

CBW's counsel proceeded with Mr. McCullough's deposition on May 19, 2005. At the deposition, Mr. McCullough indicated that he was represented by Attorney Gordon.[4] Mr. McCullough acknowledged that he had received the subpoena and reviewed the attached schedule of documents, and determined that documents responsive to the subpoena were in his offices, his client's offices, and Steve Gordon's offices. (McCullough Deposition, attached hereto at Tab I, pp. 8-9). Mr. McCullough, however, produced no documents at the deposition, despite his acknowledgment during the deposition that he was in possession of responsive documents that had not been produced. (Id. at pp. 11-12, 28-29, 106-08). When CBW's counsel queried Attorney Gordon, who then was acting as Mr. McCullough's counsel, about the basis for this failure to produce responsive documents, Mr. Gordon refused to answer any questions on this subject. (Id. at p. 108).

Because Mr. McCullough asserted no valid objection to the production of documents responsive to his deposition subpoena, this Court should order Mr. McCullough to conduct a search for documents responsive to the subpoena and to appear for a further deposition to answer questions regarding his search for responsive documents, and any documents located during that search.[5]

Mr. McCullough also refused to answer a number of questions during the deposition, on instruction from Attorney Gordon. As set forth in more detail below, these questions bore

---

[4] Mr. Gordon also appeared as counsel for Georgia Freid at her deposition, and as counsel for Frank Barker, who appeared for deposition as the Keeper of Records of Chestnut Hill Life Care Realty, Inc. Further, although Mr. Gordon testified at his June 9, 2005 deposition that he did not represent the interests of Barry Freid, Gerald Freid, or TPG in the underlying transaction (TPG's Answer, ¶ 43), he has appeared for each of those individuals and entities in this action. Moreover, Mr. Gordon has asserted an attorney-client privilege with respect to any communication he had with any of these witnesses, regardless of whether he actually was representing that individual at the time of the communication.

[5] Subsequent to Mr. McCullough's deposition, Attorney Gordon indicated that Mr. McCullough had conducted a search for documents responsive to one category of documents identified on the subpoena. Copies of the communications exchanged between counsel on this issue are attached at Tab J.

5

directly on facts relevant to CBW's claims against the defendants, and did not call for the disclosure of attorney-client privileged information. CBW therefore requests that the Court order Mr. McCullough to appear at a further deposition to answer these questions and any questions that flow directly from his answers to these questions.

II.  Argument

    A.  The Court Should Order Mr. McCullough To Conduct A Search For Documents Responsive to CBW's Subpoena, And To Produce All Non-Privileged Responsive Documents In Advance of His Continued Deposition.

Rule 45(a) permits a party to issue a subpoena to a non-party requiring that individual or entity to produce and permit inspection and copying of designated books, documents, or tangible things in the possession, custody, or control of that person. Fed. R. Civ. P. 45(a)(1). Rule 45(d) provides that a person responding to a subpoena to produce documents must produce the documents as they are kept in the usual course of business, or organize and label the documents to correspond with the categories in the subpoena. Fed. R. Civ. P. 45(d). Rule 45(e) provides that a person who fails to obey a subpoena, without adequate excuse, may be deemed in contempt of the court from which the subpoena issued. Fed. R. Civ. P. 45(e).

Here, Mr. McCullough did not proffer an adequate excuse for his failure to comply with the subpoena issued from this Court. Rule 45(c)(2)(B) states that a person commanded to produce documents may, within 14 days after service of the subpoena, "serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials." Fed. R. Civ. P. 45(c)(2)(B). Mr. McCullough never complied with this rule. As set forth above, Mr. McCullough was served with his deposition subpoena by mail on April 20, 2005. Mr. McCullough never objected in writing to producing any of the documents requested in the subpoena before he appeared for his deposition on May 19, 2005. Mr.

6

McCullough therefore was in contempt when he appeared for deposition without the requested documents.[6]

Further, Mr. McCullough's own deposition testimony made clear that he had no valid basis on which to object to the requested production. Although Mr. McCullough apparently never conducted a thorough search of his files to determine whether he had documents responsive to the subpoena, Mr. McCullough testified that he likely did have such documents in his possession, custody or control. (McCullough Depo., pp. 8-9). Mr. McCullough went on to identify certain categories of documents that probably were in his files, but were never produced as part of TPG's response to CBW's First Request for Production of Documents. (McCullough Depo., pp. 11-12, 28-29, 106-08). Thus, this Court should order Mr. McCullough: (1) to conduct a thorough search of his files to determine whether he is in possession, custody or control of documents responsive to the subpoena; (2) to produce those documents or make them available to CBW's counsel for inspection and copying, and (3) to appear for a further deposition, at TPG's expense, to testify regarding his efforts to comply with the subpoena and any documents produced in response to the subpoena.

B.  The Court Should Order Mr. McCullough To Appear For A Further Deposition, At TPG's Expense, To Answer The Questions Posed By CBW And Any Further <u>Questions Flowing From His Answers To Those Questions.</u>

The Court should grant CBW's motion to compel Mr. McCullough to answer Attorney Higgins' deposition questions, because the questions sought information relevant to CBW's claims in this case, and not protected by the attorney-client privilege.

Mr. McCullough testified that on September 29, 2004, the evening prior to the closing, he received from Epoch's counsel a draft settlement statement showing the approximate amount of

---

[6] Mr. Gordon's letter of April 4, 2005 did not satisfy the requirements of Rule 45(c)(2)(B), because at that time Mr. Gordon did not represent Mr. McCullough and therefore presumably had no standing to assert objections on Mr. McCullough's behalf.

7

CBW's fee as a closing expense payable by sellers. (McCullough Depo., pp. 61-62, Depo. Exh. 59, attached hereto at Tab C). He further testified that this same draft settlement statement showed that the sellers would have to bring to the closing in excess of $1,000,000 in order to close the transaction. (Id. at pp. 62-63). He acknowledged sending an e-mail message back to Epoch's counsel acknowledging his receipt of the draft closing statement, and further indicating that his clients had made arrangements to pay the indicated amount due from the sellers. (Id. at pp. 61-63, Exh. 59, attached at Tab C).

Mr. McCullough testified that he arrived at Goodwin, Proctor & Hoar the following morning around 9:00 a.m. for the closing. (Id. at p. 66). At that time, the closing statement still reflected CBW's fee as a seller's closing expense. (Id. at pp. 65-67, Exh. 58, attached hereto at Tab D). Mr. McCullough acknowledged that shortly after he arrived, he told Epoch's counsel that the sellers would "deal with the broker commission outside of closing," and that CBW's fee thereafter was deleted as a closing expense of the sellers. (Id. at pp. 70-71). He acknowledged that he never discussed the deletion of CBW's fee from the closing statement with anyone at CBW before he gave this instruction. He did claim, however, to have discussed the issue with someone "affiliated with the sellers." (Id. at pp. 71-72). He refused to testify, however, as to who authorized him to make that communication to Epoch's counsel.

In particular, Mr. McCullough refused to answer the following series of questions:

> Q. Prior to telling Mr. Sucoff that the sellers would deal with the broker commission outside of the closing, had you, without revealing the substance of any communications, had you spoken with anyone affiliated with the sellers about that issue?
>
> ATTY. GORDON: Just yes or no.
>
> A. Yes.

8

Q. And, again, without revealing the substance of any such communications, before telling Mr. Sucoff that the sellers would deal with the broker commission outside of the closing, had you discussed that issue with Barry Freid?

ATTY. GORDON: I'm going to instruct the witness not to answer that question.

ATTY. HIGGINS: It's a yes-or-no question.

ATTY. GORDON: I understand that. I'm going to instruct him not to answer the question.

ATTY. HIGGINS: And on what [grounds], just to make sure for the record?

ATTY. GORDON: On the grounds of privilege.

Q. All right, I'm going to ask a similar question. Prior to telling Mr. Sucoff that the sellers would deal with the broker's commission outside of the closing, again without revealing the substance of any communications, had you discussed that issue with Gerald Freid?

ATTY. GORDON: I'm going to instruct the witness not to answer the question on the grounds of privilege.

Q. I'll object to that instruction. Mr. McCullough, prior to telling Mr. Sucoff that you would deal with the broker commission outside of the closing, had you discussed that issue with Mark Tobin?

ATTY. GORDON: I'm going to instruct the witness not to answer that question on the grounds of privilege.

Q. Had you discussed the issue -- let me start again. Prior to telling Mr. Sucoff that the sellers would deal with the broker commission outside of the closing, had you discussed that issue with Mr. Gordon?

ATTY. GORDON: I'm going to instruct the witness not to answer that question on the grounds of privilege.

Q. Mr. McCullough, had you discussed that issue, the issue that I have just been talking about, had you discussed that issue, again without telling me the substance of such communications, with Georgia Freid?

ATTY. GORDON: I'm going to instruct the witness not to answer the question on the grounds of privilege.

9

> Q. Let me just try it a slightly different way. Mr. McCullough, prior to telling Mr. Sucoff that the sellers would deal with the broker commission outside of the closing, had anyone affiliated with The Pointe Group authorized you to make that communication to Mr. Sucoff?
>
> ATTY. GORDON: I'm going to instruct the witness not to answer that question on the grounds of privilege.
>
> ATTY. HIGGINS: Even though my question regards a communication that was to be made to a third party?
>
> ATTY. GORDON: My instruction stands.

(McCullough Depo., pp. 67-70).

At a later point in the deposition, Mr. McCullough refused to answer additional questions on the same subject:

> Q: At the time you told Mr. Sucoff that the broker's fee would be taken care of outside of the closing, did you have any concern that the terms of the engagement letter were being breached?
>
> ATTY. GORDON: I'm going to instruct the witness not to answer that question.
>
> ATTY. HIGGINS: On what grounds?
>
> ATTY. GORDON: Privilege.
>
> ATTY. HIGGINS: I'm asking about *his* concerns.
>
> ATTY. GORDON: He can only have a concern as a lawyer. Are you asking him if he has a concern other than as a lawyer?
>
> ATTY. HIGGINS: No.
>
> ATTY. GORDON: Then my objection stands.
>
> ATTY. HIGGINS: Okay. We may have more than a few questions to take up with the judge.

(Id. at pp. 78-79).

10

At another point in the deposition, TPG's counsel again instructed Mr. McCullough not to answer questions on the grounds of privilege:

> Q: [A]t the time that you spoke to Mr. Sucoff, and you made a point earlier of clarifying your testimony, it's your memory that you said to Mr. Sucoff that the sellers would deal with CBW's fee outside of the closing, is that right?
>
> A: Yes.
>
> Q: Did you have an understanding at the time you had that conversation with Mr. Sucoff as to whether CBW was going to be paid?
>
> ATTY. GORDON: I'm going to instruct the witness not to answer the question on the grounds of privilege.
>
> ATTY. HIGGINS: It's a yes or no question; you are not going to let him answer that questions?
>
> ATTY. GORDON: No, I'm not.
>
> …..
>
> Q: At the time you had the conversation with Mr. Sucoff that you testified to before, instructing him that [CBW's fee] could be deleted from the sellers' side of the closing statement, did you believe that you were authorized by your clients to make that communication to Mr. Sucoff?
>
> ATTY. GORDON: I'm going to object and instruct the witness not to answer on the grounds of privilege.
>
> Q: Mr. McCullough, I'm just going to ask you this question with respect to all the questions that Mr. Gordon has instructed you not to answer. Are you accepting Mr. Gordon's instruction not to answer those questions?
>
> A: Yes.

(Id. at pp. 81-84).

This Court should order Mr. McCullough to answer the deposition questions set forth above, and any further questions following from his answers to those questions, because the

11

questions did not call for the disclosure of information protected by the attorney-client privilege. "The privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice." In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003).[7]  The privilege "must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." Id. (citing United States v. Nixon, 418 U.S. 683, 709-10 (1974)).  The party who invokes the privilege bears the burden of proving that it applies and has not been waived. Id. at 22.

The attorney-client privilege does not apply where the communication (from client to attorney) is intended to be conveyed to a third party. Peters v. Wallach, 366 Mass. 622, 627 (1975).  In Peters, the plaintiffs had brought suit to enforce a prior settlement agreement.  The defendants appealed from the trial court's decision to permit the defendants' attorney from the underlying action to testify that the defendants had accepted the plaintiffs' settlement offer.  The Supreme Judicial Court affirmed the decree enforcing the settlement agreement, holding that the testimony was not protected by the privilege. "Communications between an attorney and his client are not privileged, though made privately, if it is understood that the information communicated is to be conveyed to others." Id. at 627.

Here, Mr. McCullough testified that he was authorized by someone affiliated with the sellers' side of the transaction to convey to Epoch's counsel that CBW's fee would be dealt with outside of the closing, and that the fee should be deleted from the closing statement as a sellers' expense.  Because these communications were intended to be conveyed to a third party –

---

[7]  When, as in this case, the causes of action and defenses being litigated are based on state law, state privilege law is applicable. Fed. R. Evid. 501. State and federal law are substantially similar regarding the basic aspects of the attorney-client privilege as it applies to the facts underlying this motion. See Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 18-19 (American Bar Association 3d ed. 1997). Therefore, the instant motion cites both Massachusetts state law and federal common law.

12

Epoch's counsel – the communications were not intended to be kept confidential and therefore were not protected by the privilege. Mr. McCullough therefore should be ordered to testify regarding these communications.

As a further basis for this motion to compel, CBW notes that the attorney-client privilege does not extend to the factual circumstances surrounding a communication between a client and an attorney. Refuse & Environmental Systems, Inc. v. Indus. Servs. of Am., 120 F.R.D. 8, 11, 12 (D. Mass. 1988). In that case, the plaintiffs alleged that the defendants, three months prior to the filing of the federal action, improperly had filed a state court action against the plaintiffs for an anti-competitive purpose. In discovery in the federal case, the plaintiffs sought to discover the identity of the individual who had authorized the initial state court action. In words equally applicable here, the court summarized the course of discovery as follows:

> [T]he defendants have played something of a penny-penny-who's-got-the-penny game with the plaintiffs. Each individual defendant claims that one of the others was responsible for the decision to file the state lawsuit and denies any knowledge of its basis. How the defendants' lawsuit ever got filed in state court is shrouded in mystery.

Id. at 8.

To clear up the mystery, the plaintiffs noticed the deposition of the defendants' attorney. The court held that the identity of the individual who had authorized the filing of the state court lawsuit was not protected by the privilege.

> [A] communication, to be protected, must be of "*facts* by a client to his attorney for the purpose of securing legal services." … It is the contents of the communications themselves which are protected, not the surrounding circumstances or the facts of consultation itself."

Id. at p. 11. Thus, the court held, the plaintiffs would be permitted to inquire "as to which, if any, of [the attorney's] clients purported to authorize the filing of the lawsuit." Id. at 12.

In this case, defendants and their counsel are engaged in a similar effort to obscure the facts surrounding the defendants' decision to close on the sale to Epoch, even if it meant depriving CBW of its duly-earned fee. This Court should find that CBW is entitled to know who participated in making that decision. The questions set forth above did not require the disclosure of facts communicated to Mr. McCullough in confidence for the purpose of seeking legal advice. Instead, CBW's counsel was asking about communications made to Mr. McCullough that were intended to be conveyed to a third party, and about the identity of the person(s) engaging in those communications. Under the authorities discussed above, the answers to those questions are not protected by the attorney-client privilege. This Court, therefore, should order Mr. McCullough to appear for a further deposition and provide answers to those questions.

CBW further submits that the Court should order TPG to pay any reporter's fee and the original transcript fee associated with reconvening Mr. McCullough's deposition, as TPG's counsel apparently instructed Mr. McCullough not to produce documents responsive to the deposition subpoena served on him, and further instructed Mr. McCullough not to answer the deposition questions which are the subject of this motion. CBW further requests that the Court award CBW the reasonable attorneys' fees and costs it incurred in preparing and filing this motion, upon submission of an affidavit from CBW's counsel detailing those costs.

Alternatively, the Court should order that Mr. McCullough pay these fees and costs.

WHEREFORE, plaintiff Casas, Benjamin & White, LLC, respectfully requests that the Court grant its motion to compel John McCullough to produce documents responsive to the deposition subpoena served on him on April 20, 2005, and to appear for a further deposition, at The Pointe Group, Inc.'s expense, to answer questions regarding those documents and the questions he was instructed not to answer at his May 19, 2005 deposition. CBW further requests that the Court award CBW the reasonable attorneys' fees and costs incurred by it in the preparation and filing of this motion. A proposed Order follows.

        Respectfully submitted,
        CASAS, BENJAMIN & WHITE, LLC
        By its attorneys,

        /s/ Erin K. Higgins
        Thomas E. Peisch (BBO# 393260)
        Erin K. Higgins (BBO# 559510)
        Michael R. Bernardo (BBO# 648310)
        CONN KAVANAUGH ROSENTHAL
         PEISCH & FORD, LLP
        Ten Post Office Square
        Boston, MA  02109
        (617) 482-8200

Dated: June 22, 2005
     Boston, Massachusetts

## LOCAL RULE 7.1 & 37.1 CERTIFICATION

The undersigned counsel hereby certifies that she conferred with Attorney Stephen F. Gordon, Esq., in a good faith effort to resolve or narrow the issues raised in this motion, on the following occasions:

(1) by telephone on May 12, 2005;
(2) in person during the May 19, 2005 deposition of John McCullough; and
(3) by letter dated June 16, 2005, a copy of which is attached hereto at Tab J.

        /s/Erin K. Higgins
        Erin K. Higgins

Dated: June 22, 2005

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CASAS, BENJAMIN & WHITE, LLC, ) | |
| ) | No.   04-12333-MEL |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| THE POINTE GROUP, INC., a ) | |
| Massachusetts corporation d/b/a The Pointe ) | |
| Group Healthcare and Senior Living; ) | |
| GERALD S. FREID; BARRY FREID; and ) | |
| KEY CORPORATE CAPITAL, INC., ) | |
| ) | |
| Defendants. ) | |

### ORDER

This matter having come on for hearing on a motion by the plaintiff, Casas, Benjamin & White, LLC ("CBW"), to compel John McCullough to produce documents responsive to his April 20, 2005 deposition subpoena and to appear for his continued deposition to answer questions regarding those documents and questions he was instructed not to answer by counsel, it is hereby Ordered:

A.   John McCullough shall review the schedule of documents attached to his April 20, 2005 deposition subpoena and shall produce records responsive to the subpoena, or make those records available for inspection and copying, within twenty days of this Order;

B.   John McCullough shall appear for a further deposition with Attorney Erin K. Higgins within thirty (30) days of this Order, at a time and place to be agreed upon by counsel.

C.   At such deposition, Mr. McCullough shall answer questions regarding his efforts to comply with the April 20, 2005 deposition subpoena, and any documents produced in response to that subpoena;

D. Mr. McCullough also shall provide responsive answers to questions concerning any communications that he had with his clients in the underlying transaction that were intended to be communicated to any third parties, and the factual circumstances surrounding those communications, including but not limited to the identity of the individual(s) who authorized him to convey to Epoch's counsel that the sellers would deal with CBW's fee outside of the September 30, 2004 closing and that CBW's fee could be deleted from the closing statement;

E. Defendant The Pointe Group, Inc. shall pay the costs of reconvening Mr. McCullough's deposition, but any copies CBW wishes to order of the further deposition shall be CBW's responsibility; and

F. Defendant The Pointe Group, Inc., shall pay CBW's reasonable attorneys' fees and expenses associated with this motion, as detailed in an affidavit to be submitted by CBW's counsel and as approved by the Court upon review of the affidavit.

So Ordered.

Dated: June ___, 2005                           _____
                                                Lasker, D.J.

228329.1