# EXHIBIT "H"

# CONN KAVANAUGH ROSENTHAL PEISCH & FORD

### C O U N S E L O R S   A T   L A W

Ten Post Office Square, Boston, Massachusetts 02109

Tel: (617) 482-8200

Fax: (617) 482-6444

WRITER'S DIRECT DIAL: 617-348-8297
E-MAIL: MBERNARDO@CKRPF.COM

THOMAS E. PEISCH
BOB B. ROSENTHAL
JAMES F. KAVANAUGH, JR.
RUSSELL F. CONN
GEORGE M. FORD
JAMES B. PELOQUIN
BARRY E. GOLD
THOMAS J. GALLITANO
JAMES GRAY WAGNER
ERIN K. HIGGINS
STEVEN E. GURDIN
MICHAEL T. SULLIVAN
CONSTANCE M. MCGRANE

KURT B. FLIEGAUF
RONALD M. JACOBS
CAROL A. STARKEY
JENNIFER M. NORTON
SARA L. GOODMAN
MICHAEL R. BERNARDO
JACOB A. LABOVITZ
CARA A. FAUCI
JOHANNA L. MATLOFF
AMY C. STEWART
BETH NUZZO NEWMARK
SARAH E. WEBER

April 20, 2005

John C. McCullough, Esq.
McCullough, Steivater & Polvere, LLP
121 Main Street
Charlestown, MA  02129-3525

RE:    Casas, Benjamin & White, LLC v. The Pointe Group, et al.
        C.A. No. 04-CV-12333-MEL

Dear Mr. McCullough:

Enclosed please find your deposition subpoena, for which you have agreed to accept service.  As we discussed, your deposition has been rescheduled from April 28, 2005 to May 19, 2005 at 10 a.m. at my office.  As indicated in the subpoena, we would appreciate production of all documents responsive to the requests set forth in the attached Schedule A on or before May 12, 2005.

Please contact me if you have any questions about the deposition subpoena.

Very truly yours,

Michael Bernardo

Michael R. Bernardo

MRB:1915-000
Enclosure
cc:    W. Scott O'Connell, Esq.
        Stephen F. Gordon, Esq.
        Richard P. Steinken, Esq.
        Thomas E. Peisch, Esq.
        Erin K. Higgins, Esq.
225073.1

# SCHEDULE A

## Definitions

Casas, Benjamin & White, LLC requests John C. McCullough to produce, for inspection and copying, the following documents and things. As used herein, the following words shall have the following definitions.

A.    "You" or "your" shall refer to John C. McCullough and each and all of his agents, servants, employees, representatives, officers, directors, insurers, and attorneys.

B.    "CBW" or "Plaintiff" means Casas, Benjamin & White, LLC, and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

C.    "Key Bank" means defendant, Key Corporate Capital, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

D.    "TPG" means defendant The Pointe Group, Inc., and its past or present officers, directors, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on their behalf, including, but not limited to, any entity doing business as The Pointe Group Healthcare and Senior Living, and Stephen F. Gordon, Esq. of the law firm Gordon Haley, LLP.

E.    "Epoch" means Epoch Senior Living and its past or present officers, directors, partners, employees, representatives, agents, divisions, subsidiaries, affiliates, successors, predecessors and all other persons or entities acting or purporting to act on its behalf.

F.    "Gerald Freid" means the individually-named defendant, Gerald S. Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

G.    "Barry Freid" means the individually-named defendant, Barry Freid, and any of his employees, representatives, agents, attorneys and all other persons or entities acting or purporting to act on his behalf.

H.    "Combined Operations" means the following facilities: (1) Hammond Pointe Nursing Home, LLC, a business providing long-term care, Alzheimer's care, and sub-acute care; (2) Boylston Place At Chestnut Hill, LLC, a business providing assisted living services; and (3) Cranberry Pointe Nursing Home, Inc., a business providing long-term care, Alzheimer's care, and sub-acute care among other services.

I.    "Communication" shall refer to the transmission of information between one person and another, whether orally, in writing, or by electronic mail.

J.    "Document" shall be given the broadest construction permissible under the Federal Rules of Civil Procedure, and shall include papers and writings of any kind. If any responsive document is in electronic form, it shall be printed onto paper and produced in that form unless otherwise agreed.

## Requests

1.      All documents relating to or reflecting disbursements made at the closing on the sale of the Combined Operations or from the date of the closing to the date of your response to this request, including any disbursements of the buyer's deposit or any escrowed funds.

2.      All documents which relate or refer to the incorporation of TPG and the Combined Operations, including but not limited to Articles of Incorporation, By-Laws, Certificates of Condition, and other records filed at the Office of the Massachusetts Secretary of State by or on behalf of TPG and the Combined Operations.

3.      All documents related to the formation, operation, membership, mission and purpose of TPG and the Combined Operations, including but not limited to, meeting minutes, stockholder lists, calendars, diaries, planners, notes, letters, memoranda, e-mails, journals, telephone logs, expense reports, or other written correspondence or documents that reflect or evidence the activities of TPG and the Combined Operations.

4.      All documents referencing, pertaining to, or generated in connection with the closing on the sale of the Combined Operations to Epoch, whether in draft or final form, and including documents generated in advance of, at, or following the closing.

5.      All documents which refer to, relate to, reflect or constitute communications among TPG, the Combined Operations and/or CBW.

6.      All documents which refer to, relate to, reflect or constitute communications among TPG, the Combined Operations, and/or Key Bank during the time period September 1, 2003 to January 31, 2005.

7.      All documents which refer to, relate to, reflect or constitute communications between TPG, the Combined Operations, and/or Epoch during the time period September 1, 2003 to January 31, 2005.

8.      All documents which refer to, relate to, reflect or constitute communications by and among you, the Combined Operations, TPG, CBW, Epoch, and/or Key Bank during the time period September 1, 2003 to January 31, 2005.

9.      All documents which refer to, relate to or evidence gross revenues and net profits or losses of (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and (3) Cranberry Pointe Nursing

Home, Inc. for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by the three facilities for each of the years 1999 to 2004.

10.    All documents which refer to, relate to or evidence gross revenues and net profits or losses of TPG for each of the years 1999 to 2004, including but not limited to, state and federal tax returns filed by TPG for each of the years 1999 to 2004.

11.    All documents which constitute, refer or relate to communications by and among you, Gerald Freid, Barry Freid and other members of the Freid family, and/or TPG (including its attorney, Stephen F. Gordon, Esq.) regarding the above-referenced Engagement Letter, Indemnification Agreement, written amendment to the Engagement Letter, Letters of Interest and Intent, checks sent from TPG to CBW, the Purchase & Sale Agreement, the sale of the Combined Operations, the closing on the sale of the Combined Operations, the purchase price for the Combined Operations, or CBW's fees for services.

12.    All documents which refer to, relate to or evidence loan(s) made by Key Bank for (1) Hammond Pointe Nursing Home, LLC; (2) Boylston Place At Chestnut Hill, LLC; and/or (3) Cranberry Pointe Nursing Home, Inc., including all documents that evidence, refer to or relate to descriptions or lists of the business assets, real property, personal property, accounts receivable and/or inventory of TPG, the Combined Operations, the Estate of William Freid, Gerald Freid, Barry Freid and/or any other collateral used to secure the loan(s) made by Key Bank for the Combined Operations.

13.    All documents including correspondence, notes, memoranda, and e-mails that constitute, embody, refer or relate to:

   (a) civil or criminal investigation(s) or complaint(s) brought by or on behalf of any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board concerning the Combined Operations from 1999 to the present;

   (b) agency or board hearings, decisions, and/or dispositions on said civil or criminal investigation(s) and/or complaint(s) concerning the Combined Operations;

   (c) appeals submissions and/or decisions; and

   (d) settlement agreements between TPG, the Combined Operations, Gerald Freid, Barry Freid, and any federal, state, local and/or municipal agency or board and/or any non-governmental agency or board.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

14.    All documents including notes, memoranda, correspondence, and e-mail that constitute, embody, refer or relate to any communications, oral or written, that TPG and/or the Combined Operations has had at any time with any federal, state, local, and/or municipal agency or board and/or any other non-governmental agency or board or Epoch regarding or relating to any civil or criminal investigation or complaint, agency or board hearings and decisions on said investigation(s) or complaint(s), appeals submissions and/or decisions, or settlement agreements.

15.    All correspondence, electronic messages, statements, or handwritten notes in your possession, custody or control that refer or relate to proposed or agreed purchase prices for the Combined Operations.

16.    All documents in your possession, custody or control regarding or relating to Key Bank's threat to foreclose on one or more of the facilities constituting the Combined Operations.

17.    All documents which refer or relate to any entity or individual with an ownership interest in TPG and/or one or more of the Combined Operations, including but not limited to, the name and address of each owner, officer, director and shareholder, the date and amount of any such shares purchased and the consideration, if any, paid for such shares.

18.    All audit opinions and audited financial statements of TPG and each of the Combined Operations for the calendar years 2003 and 2004.

19.    All documents that evidence, refer to or relate to Gerald and/or Barry Freid's employment relationship, if any, with TPG and/or the Combined Operations, including their terms and conditions of employment, their employment agreements, duties and responsibilities, compensation and benefits, and separation from employment.

20.    All documents relating to or reflecting the establishment of escrows at the closing on the sale of the Combined Operations.

218581.1