UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CASAS, BENJAMIN & WHITE, LLC, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>THE POINTE GROUP, INC., a )<br>Massachusetts corporation d/b/a The Pointe )<br>Group Healthcare and Senior Living; )<br>GERALD S. FREID; BARRY FREID; and )<br>KEY CORPORATE CAPITAL, INC., )<br>)<br>Defendants. ) | No. 04-12333-MEL |

**MOTION OF PLAINTIFF, CASAS, BENJAMIN & WHITE, LLC, TO
DISQUALIFY STEPHEN F. GORDON AND GORDON HALEY LLP**

The plaintiff, Casas, Benjamin & White, LLC ("CBW"), hereby moves, pursuant to Rules 1.7 and 3.7 of the Massachusetts Rules of Professional Conduct,[1] to disqualify Stephen F. Gordon, Esq. and his law firm, Gordon Haley LLP, from further representation of The Pointe Group, Inc. ("TPG"), Barry Freid, and Gerald S. Fried in this matter, as Mr. Gordon is a necessary witness in this action whose testimony likely will be in conflict with the interests of these clients. In support of its motion, CBW states as follows.

I. FACTUAL BACKGROUND

A. Complaint and Counterclaim

This case is brought against TPG, Barry and Gerald Freid, and Key Corporate Capital, Inc. (hereinafter, collectively, "Defendants") to recover money damages in excess of one million dollars that CBW suffered because it was never paid for services CBW performed for the benefit

---

[1] Local Rule 83.6(4)(B) provides that the standards for professional conduct in the U.S. District Court for the District of Massachusetts are the Massachusetts Rules of Professional Conduct, as embodied in Rules 3:05, 3:07, and 3:08 of the Supreme Judicial Court of Massachusetts. L.R. 83.6(4)(B); see, e.g., Inverness Med. Switz. GMBH v. Acon Lab., Inc., 2005 WL 1491233 *4 (D. Mass. 2005); Ebix.com, Inc. v. McCracken, 312 F.Supp.2d 82, 88-89 (D. Mass. 2004) (holding that the Mass. Rules of Professional Conduct govern attorney disqualification motions in federal court). CBW has attached copies of all unreported cases cited in this memorandum at Tab I.

of Defendants. Specifically, TPG and the Freids retained CBW to provide investment banking services in connection with the sale or refinance of certain nursing homes and assisted living facilities, and agreed to pay CBW a percentage of the value of any transactions consummated in connection with the sale or refinance of those facilities. After CBW performed all of its obligations under the parties' contract, and the facilities were in fact sold to an entity known as Epoch Senior Living ("Epoch"), Defendants wrongfully failed and refused to pay CBW's contracted-for fee, and instead retained sale proceeds that should have been paid to CBW.

CBW alleges that TPG breached a contract with CBW, breached the implied covenant of good faith and fair dealing, that the Freids aided and abetted TPG's misconduct, and that all Defendants were unjustly enriched by the benefits that they wrongfully derived from CBW's services, and engaged in fraudulent misrepresentation, civil conspiracy, and violations of M.G.L. c. 93A. CBW seeks recovery of actual damages, double or treble damages, costs and attorneys' fees by virtue of Defendants' willful or knowing, unfair and/or deceptive acts. In response, TPG has counterclaimed against CBW for breach of contract, breach of fiduciary duty, and violations of M.G.L. c. 93A, alleging that CBW did not live up to its part of the bargain.

B. Attorney Gordon's Representation of Various Entities in The Underlying Transaction.

Stephen F. Gordon, Esq., who has appeared on behalf of TPG, Gerald Freid, and Barry Freid in this action, also provided legal services in connection with the underlying sale to Epoch. While Mr. Gordon has taken different positions at different times as to exactly whom he represented in the underlying transaction,[2] it is undisputed that during the six months leading up

---

[2] In TPG's Answer to the Complaint in this Matter, which was prepared and filed by Mr. Gordon, TPG claimed that in the underlying transaction, Attorney Gordon "acted only as legal counsel for the Key Bank Financed Facilities and not on behalf of TPG or the Freids." (Defs.' Answer & Countercls., ¶ 43). In documents obtained in discovery in this action, however, Attorney Gordon regularly held himself out as the representative of "The Pointe Group" and "the Freid Family" in his communications with Key Bank, CBW, and Epoch. (See, e.g., Gordon Dep. Exhs. 78, 79, 80, 81, 82, 83, attached hereto at Tab A).

2

to the September 30, 2004 closing, Mr. Gordon communicated on a regular basis with representatives of CBW, Key Bank, and Epoch, and with representatives of TPG and the Freid family. (See, e.g., documents attached at Tab A). In the course of these communications, Mr. Gordon obtained a copy of CBW's engagement letter, calculated the approximate amount of CBW's fee, and negotiated with Key Bank over how CBW's fee would impact on the division of sales proceeds between Key Bank and the Freids. (See Tab A, Exhs. 74, 83). Mr. Gordon also was involved in negotiations with Epoch regarding changes in the purchase price, and in communications with CBW requesting corresponding changes to the amount of CBW's fee. (See Tab A, Exh. 90). Mr. Gordon also communicated with CBW regarding the quality of the services provided by CBW, culminating in an e-mail message sent by Mr. Gordon to CBW's principal on June 4, 2004, stating as follows:

> You guys have done a great job getting us to where we are and I know we can harness each other's energy and talents to bring the Epoch sale to fruition. If it happens, all kudos to CBW and Matt Caine. If it doesn't, it won't be for lack of trying on the CBW/Pointe Group side.

(Tab A, Exh. 88). At his June 9, 2005 deposition in this matter, Mr. Gordon testified that the statements made by him in this June 4, 2004 e-mail were accurate. (Gordon Dep. Tr., p. 121, attached at Tab B).

Mr. Gordon also attended the September 30, 2004 closing on the sale to Epoch at Goodwin Proctor along with TPG's closing attorney, John McCullough. (Gordon Dep. Tr., pp. 158-59). Mr. McCullough testified at his deposition that, at the outset of the closing, he told Epoch's counsel that TPG would deal with CBW's fee "outside of closing." (McCullough Dep. Tr., p. 71, attached hereto at Tab C). Mr. McCullough then instructed Epoch's counsel to delete CBW's fee from the closing statement, without CBW's knowledge or consent, and in violation

3

of the terms of the CBW's engagement letter. (Id.) Mr. McCullough further testified that before giving Epoch's counsel this instruction, he had discussed the issue with persons "affiliated with the sellers." (Id. at pp. 71-72). When pressed to identify the person or persons who authorized him to give Epoch's counsel this instruction, however, Mr. McCullough was instructed by his attorney (coincidentally, Mr. Gordon) not to answer the question on the grounds of attorney-client privilege. (Id. at pp. 72-75).[3]

Facts obtained in discovery establish a strong inference that Mr. Gordon was the person who authorized Mr. McCullough to instruct Epoch's counsel to delete CBW's fee from the closing statement. Indeed, the other key principals "affiliated with the sellers" – Gerald Freid, Barry Freid, and Georgia Freid – have denied having knowledge of any such statement being communicated to Epoch's counsel. (Gerald Freid Dep. Tr., p. 159, attached hereto at Tab D (testifying that he was "shocked" to learn that CBW's fee was not paid out of the sale proceeds); Barry Freid Dep. Tr., pp. 178-79, attached hereto at Tab E (testifying that he was "surprised" not to see CBW's fee in the closing statement); Georgia Freid Dep. Tr., p. 81, attached hereto at Tab F (testifying that she did not remember any discussion as to whether CBW would be paid outside of closing)). Unless one of these witnesses has lied under oath, this testimony creates a strong inference that Mr. Gordon was the person who authorized Mr. McCullough to instruct Epoch's counsel to strike CBW's fee from the closing statement.

This inference is further supported by documentary evidence establishing that on the morning of October 1, 2004, less than twenty-four hours after the closing had occurred, Mr. Gordon sent CBW a three-page facsimile detailing several (unmeritorious) grounds on which CBW purportedly was "entitled to no payment." (Tab G.) At his June 9, 2005 deposition, Mr.

---

[3] Mr. McCullough's refusal to answer questions regarding communications intended to be conveyed to third parties is the subject of a pending motion to compel.

Gordon refused to answer questions as to when he first began researching these "grounds" for nonpayment, when he first began drafting the letter, and when he completed the drafting of the letter. (Gordon Dep. Tr., p. 168). He also refused to answer the question as to when he first formed the opinions expressed in his October 1, 2004 letter. (Id. at pp. 42-43). Mr. Gordon's involvement in these communications, coupled with the Freids' professed ignorance of the same, leads to the inescapable conclusion that Mr. Gordon himself was involved in the decision to deprive CBW of its justly-earned fee.

C.   Attorney Gordon's Representation of Various Entities in This Lawsuit

As set forth above, Mr. Gordon has appeared in this case for TPG, Barry Freid, and Gerald Freid. Furthermore, even though he has denied that he represented any of these entities or persons in the underlying transaction, he has asserted that all of his communications with these defendants in connection with the underlying transaction are protected from disclosure by the attorney-client privilege, even though he did not represent these defendants at the time the communications were made.

Throughout discovery in the case, Mr. Gordon also has made conflicting claims with respect to his representation of other entities and persons affiliated with TPG. For example, in early April, 2005, Mr. Gordon advised CBW's counsel that he could not accept service of deposition subpoenas on behalf of the five Key Bank Financed Facilities because he no longer represented any of them. Only six days later, on April 18, 2005, Mr. Gordon contacted CBW's counsel by letter, formally objecting on behalf of all five entities to the production of any documents in response to the subpoenas served on the entities. (A true and accurate copy of Mr. Gordon's April 18, 2005 letter is attached hereto at Tab H). Mr. Gordon also represented one of the entities at its Keeper of Records deposition on April 25, 2005.

5

Mr. Gordon followed a similar course of conduct with respect to John McCullough. Mr. Gordon initially advised that he could not accept service of a deposition subpoena for Mr. McCullough, as he did not represent him. After CBW served a deposition subpoena on Mr. McCullough, however, and communicated directly with Mr. McCullough regarding the production of documents responsive to the subpoena, Mr. Gordon indicated that he would in fact be representing Mr. McCullough, and that Mr. McCullough would not be producing any documents responsive to the deposition subpoena. Mr. Gordon then represented Mr. McCullough at his deposition, and instructed Mr. McCullough not to answer the question as to who authorized him to instruct Epoch's counsel to delete CBW's fee from the closing statement. As set forth above, where each of the Freids has denied giving such authorization, a strong inference exists that it was Mr. Gordon himself who gave Mr. McCullough this instruction.

## II. DISCUSSION

### A. This Court Should Find That Mr. Gordon Is Disqualified From Acting As Counsel In This Matter Because He Is a Necessary Witness.

Rule 3.7(a) of the Massachusetts Rules of Professional Conduct provides as follows:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

Mass. R. Prof. C. 3.7(a), as adopted by Mass. S.J.C. Rule 3:07. The comments to the Rule provide the following guidance:

> [1] Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client.

> [2]    The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.
>
> ...
>
> [5]    Whether the combination of roles involves an improper conflict of interest with respect to the client is determined by Rule 1.7 [Conflict of Interest: General Rule] or 1.9 [Conflict of Interest: Former Client]. For example, if there is likely to be substantial conflict between the testimony of the client and that of the lawyer or a member of the lawyer's firm, the representation is improper. The problem can arise whether the lawyer is called as a witness on behalf of the client or is called by the opposing party. Determining whether or not such a conflict exists is primarily the responsibility of the lawyer involved. See Comment to Rule 1.7. If a lawyer who is a member of a firm may not act as both advocate and witness by reason of conflict of interest, Rule 1.10 disqualifies the firm also.

Id. at 3.7, comments (1), (2), (5).

While this Court and the Massachusetts appellate courts have sounded a "cautionary note" with respect to attorney disqualification motions, see Inverness Med. Switz. GMBH v. Acon Labs., Inc., 2005 WL 1491233, *8 (D. Mass. 2005) (citing Serody v. Serody, 474 N.E.2d 1171, 1173 (Mass. App. Ct. 1985)), disqualification is required under Rule 3.7(a) if the lawyer was "intimately involved" in the events at issue. Serody, 474 N.E.2d at 1174 (citing Black v. Black, 381 N.E.2d 1304, 1305 (Mass. 1979)); Hogan v. Metro. Prop. & Cas. Ins. Co., 1997 WL 1417476 (Mass. Super. 1997).[4] In Serody, a husband brought a complaint against his ex-wife for modification of their divorce settlement. One of the central issues in the case was whether the settlement was unconscionable because the ex-wife's lawyer had failed to advise the husband during negotiation of the settlement of certain assets held by his wife. 474 N.E.2d at 1173. The

---

[4]    CBW notes that certain of the cases cited in this memorandum were decided prior to the adoption of the Massachusetts Rules of Professional Conduct in 1998. These cases involved application of similar (but not identical) provisions of the Massachusetts Canons of Ethics and Disciplinary Rules.

7

Appeals Court upheld the trial judge's decision to disqualify the ex-wife's lawyer, reasoning that the lawyer's testimony would be "more than peripheral to the plaintiff's complaint for modification" and was necessary to establish the plaintiff's case. Id. at 1174; cf. Byrnes v. Jamitkowski, 557 N.E.2d 79, 81 (Mass. App. Ct. 1990) (in *dicta*, court suggested that if existence or terms of settlement agreement became a matter of dispute, lawyer that had negotiated agreement might be disqualified from acting as counsel in action to enforce agreement); see also Winter Gardens Condo. Trust v. Winter Gardens Dev. Corp., 2005 WL 1132635 (Mass. Super. Ct. 2005) (where attorney representing condominium unit owners had percipient knowledge of facts supporting condominium trust's defenses, unit owners' attorney had to withdraw).

In Hogan, supra, the plaintiffs' attorney had represented the plaintiffs in attempting to settle an underinsured motorists' claim with the plaintiffs' auto insurance carrier. 1997 WL 1417476 at *2-3. When the plaintiffs was unable to resolve the claim to their satisfaction, they filed suit against the carrier, alleging unfair insurance practices in violation of Chapter 176D. Id. The carrier counterclaimed, alleging that the plaintiffs' attorney had been responsible for the failure to settle because of his delay in forwarding medical records. The carrier then moved to disqualify the plaintiffs' attorney, on the grounds that his testimony was necessary to proof of the carrier's counterclaims. The trial court agreed, finding that the plaintiffs' attorney had "first-hand knowledge about the events and circumstances surrounding the delay in the investigation by [the carrier], and thus is a pertinent witness as to whether [the carrier and the claims representative] acted in the manner alleged in the Complaint." Id. at *4.

The court further found that disqualification would not work a substantial hardship upon the plaintiffs, stating:

> While it is true that the [plaintiffs] will lose their first choice of counsel, the legal profession is not so barren of qualified attorneys that [plaintiffs' counsel] cannot recommend with confidence another attorney who can perform competently and equally sufficient to [plaintiffs' counsel's] own abilities. In addition, if the [plaintiffs] have trust and confidence in [their attorney], they will accept with trust and confidence an attorney recommended to take his place. Furthermore, … the issues presented are not so complicated and difficult for a competent successor counsel practicing in this field of law to understand and comprehend.

Id. at *6-7.

In this case, it is undisputed that Mr. Gordon was "intimately involved" in communications and negotiations with all of the relevant parties in the months leading up to the September 30, 2004 closing. As set forth above, Mr. Gordon knew of the terms of CBW's engagement letter, calculated the amount due to CBW based on the purchase prices proposed by Epoch, and at all times factored into his negotiations with Key Bank and Epoch the performance incentive payments due to CBW under the engagement letter. Thus, CBW certainly will call Mr. Gordon as a witness to testify that at all times prior to the September 30, 2004 closing, his communications with Epoch and Key Bank contemplated that CBW would receive a fee at closing equal to the performance incentive payments specified in CBW's engagement letter.

CBW also intends to elicit testimony from Mr. Gordon that will directly undercut his current clients' allegations that CBW did not perform its obligations under the engagement letter. At his deposition, Mr. Gordon acknowledged that he had sent an e-mail message to CBW which stated, in pertinent part, as follows:

> You guys have done a great job getting us to where we are and I know we can harness each other's energy and talents to bring the Epoch sale to fruition. If it happens, all kudos to CBW and Matt Caine. If it doesn't, it won't be for lack of trying on the CBW/Pointe Group side.

(Tab A, Exh. 88; Gordon Depo. Tr., p. 121). While Mr. Gordon attempted to blunt the impact of this e-mail message by claiming that he had sent the message at the request of Ed Casas, a

9

principal at CBW, he later testified that the statements he made in the e-mail were accurate. (Gordon Depo. Tr., pp. 121) He further testified that, despite his day-to-day involvement in the transaction, he had no personal knowledge of any acts or omissions of CBW supporting his clients' counterclaims for breach of contract, breach of fiduciary duty, and unfair trade practices. (Id. at pp. 56-57).

In light of this deposition testimony, there is no question but that CBW will call Mr. Gordon as a trial witness, and will seek to elicit testimony that undercuts TPG's defenses and counterclaims. In these circumstances, disqualification is not only appropriate, but required. See Inverness, supra, at *8 (disqualification motions are viewed in a different light "if the testimony sought by an opponent is likely to be prejudicial to the client of the lawyer-witness"); cf. Imperial Cas. & Indem. Co. v. Town of Ayer, 139 F.R.D. 569, 572 (D. Mass. 1991) (denying disqualification motion as premature where discovery had not yet been conducted and therefore scope and content of attorney's knowledge had not been established).

Because Mr. Gordon is a necessary witness, Mr. Gordon should be disqualified unless his disqualification would work substantial hardship on TPG and the Freids. Although there is no Massachusetts case on point, other jurisdictions have held that the party opposing disqualification bears the burden of proving that the "substantial hardship" exception is applicable. See, e.g., 155 North High, Ltd. v. Cincinnati Ins. Co, 650 N.E.2d 869, 874 (Ohio 1995); Senu-Oke v. Modern Moving Sys., Inc., 978 S.W.2d 426, 433 (Mo. App. Ct. 1998); Warrilow v. Norrell, 791 S.W.2d 515, 520 (Tex. App. 1989). Those Massachusetts courts that have considered the "substantial hardship" exception to Rule 3.7(a) have construed it narrowly. See, e.g., Verizon Yellow Pages Co. v. Sims & Sims, P.C., 2003 WL 836087 *3 (Mass. Super. Ct. 2003) (holding that when the client has "other reasonable choices in securing representation,"

10

disqualification works no substantial hardship); Hogan, 1997 WL 1417476 at *6 (holding that clients' loss of "chosen counsel in whom they have trust and confidence" is insufficient to allege substantial hardship worked by disqualification); cf. Com. v. Tew, 2002 WL 530558 *2 (Mass. App. Ct. 2002) (substantial hardship existed where disqualification would require a criminal defense attorney to withdraw on the eve of trial).

In this case, if Attorney Gordon and his law firm were disqualified now, there are no facts indicating that TPG and the Freids would suffer "substantial hardship" short of the normal inconveniences of changing counsel. See Hogan, 1997 WL 1417476 at *6-7. There are other able attorneys available to handle this commercial litigation, which presents no arcane or novel legal issues requiring the services of any one particular specialist. See id. Furthermore, because this lawsuit has not yet advanced beyond discovery, there is ample time for TPG and the Freids to secure new counsel.

> B. This Court Should Find That Mr. Gordon Is Disqualified From Acting As Counsel In This Matter Because His Role As Counsel Poses Conflicts Of Interest.

Rule 1.7(b) of the Massachusetts Rules of Professional Conduct provides as follows:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
> (2) the client consents after consultation. ….

Mass. R. Prof. C. 1.7(b). The comments to the Rule provide the following guidance:

> [4] Loyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. ….

11

> [6] The lawyer's own interests should not be permitted to have an adverse effect on representation of a client…. If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice.

Id. at comments (4), (6).

In this case, Mr. Gordon should be disqualified because his representation of TPG and the Freids is in conflict with his responsibilities to his other clients, the Key Bank Financed Entities. As set forth above, Mr. Gordon has asserted, on behalf of TPG and the Freids, that if any fee is due to CBW, it is not due from TPG and the Freids because they were not the "sellers" in the transaction with Epoch. (Tab G). Of course, the only inference to be drawn from this position is that if any fee is due to CBW, it is due from those entities that did have something to sell to Epoch – i.e., the Key Bank Financed Entities, those entities that Mr. Gordon purportedly represented in the underlying transaction (and also has represented in this action). This sets up an obvious conflict of interest between one set of Mr. Gordon's clients (TPG and the Frieds) and another set of Mr. Gordon's clients (the Key Bank Financed Facilities), a conflict that requires Mr. Gordon and his firm to withdraw from their representation of TPG and the Freids. See Mass. R. Prof. Conduct 1.7(a).

Mr. Gordon also is disqualified from acting as counsel in this matter because the testimony CBW intends to elicit from him, as set forth above, will be in conflict with claims and defenses asserted by his clients in this matter. See Rule 3.7, comment (5) ("[I]f there is likely to be substantial conflict between the testimony of the client and that of the lawyer or a member of the lawyer's firm, the representation is improper.").

CBW further submits that Mr. Gordon's role as counsel to TPG and the Freids is in conflict with his interest in minimizing his role in the underlying transaction and in the decision to deprive CBW of its fee. CBW's complaint alleges that CBW was defrauded of its fee, that the

defendants engaged in a conspiracy to defraud CBW of its fee, and that unfair and deceptive trade practices were utilized in depriving CBW of its fee. The key principals at TPG – Gerald Freid, Barry Freid, and Georgia Freid – have denied under oath having any involvement in the communications that resulted in CBW being deprived of its fee. Mr. McCullough, however, has testified that someone "affiliated with the sellers" authorized him to engage in those communications. This leads inexorably to the conclusion that Mr. Gordon, who acted as the principal spokesperson for the Freids in all dealings with Epoch, Key Bank, and CBW, was personally involved in the decision to deprive CBW of its fee. Because Mr. Gordon cannot adequately represent his clients' interests while at the same time giving consideration to his own interests, Rule 1.7(b) requires Mr. Gordon to withdraw from his representation of TPG and the Freids in this matter. See Winter Gardens, 2005 WL 1132635 at *2 (where attorney's conduct in underlying action "may give rise to later claims for indemnity or contribution against him," disqualification was appropriate).

    C.    This Court Should Find That Mr. Gordon's Law Firm Also Is Disqualified From Acting As Counsel In This Matter.

Rule 1.10 of the Massachusetts Rules of Professional Conduct provides that if a lawyer would be prohibited from representing a party by Rule 1.7 or Rule 1.9, the prohibition also bars other lawyers in the same firm from representing that same party. Mass. R. Prof. C. 1.10(a). As set forth above, Mr. Gordon is disqualified from representing TPG and the Freids in this action because his testimony likely will be contrary to their interests, and because his representation of these parties will be limited by his responsibilities to his clients in the underlying transaction and by his own interests. Thus, pursuant to Rule 1.10, this court should find that Attorney Gordon's firm also is disqualified from representing TPG and the Freids in this action. See Hogan, supra, at *7; Winter Gardens, supra, at *4.

WHEREFORE, Casas, Benjamin & White, LLC, respectfully requests that this Court grant its Motion to Disqualify Stephen F. Gordon, Esq. and the law firm of Gordon Haley, LLP from further representation of Defendants The Pointe Group, Inc., Gerald Freid, and Barry Freid in this case.

Respectfully submitted,

CASAS, BENJAMIN & WHITE, LLC

By its attorneys,

/s/ Erin K. Higgins
Thomas E. Peisch (BBO# 393260)
Erin K. Higgins (BBO# 559510)
Michael R. Bernardo (BBO# 648310)
CONN KAVANAUGH ROSENTHAL
 PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA  02109
(617) 482-8200

Dated: July 13, 2005
       Boston, Massachusetts

## LOCAL RULE 7.1 & 37.1 CERTIFICATION

The undersigned counsel hereby certifies that plaintiff's counsel has conferred with counsel for defendants The Pointe Group, Inc., Barry Freid and Gerald Freid by telephone on July 12, 2005, and attempted in good faith to resolve or narrow the issues raised in this motion.

/s/ Erin K. Higgins
Erin K. Higgins

Dated: July 13, 2005

229040.2