# TAB C

                                                                Volume: I

CERTIFIED ORIGINAL
LEGALINK BOSTON

Pages: 1-128

Exhibits: 48-69

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - x

CASAS, BENJAMIN & WHITE, LLC,

Plaintiff,

v. Case No.: 04-CV-1233-MEL

THE POINTE GROUP, INC., a Massachusetts corporation d/b/a The Pointe Group Healthcare and Senior Living, GERALD S. FREID, BARRY, FREID, and KEY CORPORATE CAPITAL, INC.,

Defendants.

- - - - - - - - - - - - - - - - - - x

DEPOSITION OF JOHN C. McCULLOUGH

May 19, 2005

9:24 a.m.

Conn Kavanaugh Rosenthal Peisch & Ford, LLP

Ten Post Office Square

Boston, Massachusetts 02109

Reporter: Carol A. Pagliaro, CSR/RPR/RMR

A P P E A R A N C E S:

CONN KAVANAUGH ROSENTHAL PEISCH & FORD, LLP
By Erin K. Higgins, Esq.
Ten Post Office Square
Boston, Massachusetts 02109
617-482-8200
Counsel for the Plaintiff

NIXON PEABODY, LLP
By Courtney Worcester, Esq.
889 Elm Street
Manchester, New Hampshire 03101
603-628-4000
Counsel for the Defendant
Key Corporate Capital, Inc.

GORDON HALEY LLP
By Stephen F. Gordon, Esq.
101 Federal Street
Boston, Massachusetts 02110
617-261-0100
Counsel for the Witness and Defendants
The Pointe Groupe, Inc., Gerald S. Freid,
and Barry Freid

I N D E X

| EXAMINATION OF: | PAGE |
|---|---|
| John C. McCullough | |
| By Atty. Higgins | 5 |
| By Atty. Worcester | 112 |

E X H I B I T S

| NO. | | PAGE |
|---|---|---|
| 48 | Subpoena | 20 |
| 49 | 12/23/03 letter from Kauffman to McCullough | 20 |
| 50 | 6/3/2004 e-mail from Gordon to Kauffman | 27 |
| 51 | 9/25/04 e-mail from Gordon to Sucoff and Henken | 39 |
| 52 | 9/27/04 e-mail from McCullough to Cole | 41 |
| 53 | 9/27/04 package of wiring instructions | 43 |
| 54 | 9/29/04 e-mail from McCullough to Gordon | 49 |
| 55 | 9/29/04 e-mail from Caine to Cole | 51 |
| 56 | 9/27/04 draft of Closing Statement | 56 |
| 57 | 9/30/04 8:20 a.m. Draft of Closing Statement | 65 |
| 58 | 9/30/04 8:37 a.m. Draft of Closing Statement | 67 |
| 59 | 9/29/04 e-mail from Sucoff to McCullough | 61 |

E X H I B I T S

| NO. | | PAGE |
|---|---|---|
| 60 | 9/30/04 9:28 a.m. Draft of Closing Statement | 68 |
| 61 | 9/30/04 1:18 p.m. Draft of Closing Statement | 81 |
| 62 | 9/30/04 3:14 p.m. Draft of Closing Statement | 85 |
| 63 | 9/30/04 e-mail from Tyler to Sucoff | 88 |
| 64 | 9/30/04 Closing Memorandum | 88 |
| 65 | 9/30/04 3:31 p.m. Partial Draft of Closing Statement | 97 |
| 66 | Purchase Price Allocation | 101 |
| 67 | 11/2/04 e-mail from McCullough to Sucoff | 103 |
| 68 | 11/3/04 letter from Sucoff and McCullough to Nolan | 107 |
| 69 | 11/4/04 letter from Byrne to Tyler | 110 |

*Original exhibits retained by Atty. Higgins

P R O C E E D I N G S

Stipulation

It is stipulated by and between counsel for the respective parties that Motions to Strike and all objections, except as to form, are reserved until the time of trial. It is further stipulated that the witness may sign the deposition under the pains and penalties of perjury, rather than before a notary public.

JOHN C. McCULLOUGH,

a witness called on behalf of the Plaintiff, having first been duly sworn, was deposed and testified as follows:

DIRECT EXAMINATION

BY ATTY. HIGGINS:

09:24:57 Q. Sir, could you state your full name for the record?

09:24:59 A. Yes, John McCullough, M-c-C-u-l-l-o-u-g-h.

09:25:05 ATTY. HIGGINS: Mr. McCullough, I represent the plaintiff in this, Casas, Benjamin & White. Have you ever had your deposition taken before?

09:25:14 A. I can't recall if I have.

09:25:16 Q. I know you are a transactional lawyer,

correct?

A. Yes.

Q. Have you ever sat in on deposition?

A. Yes.

Q. So you are generally aware of the rules, but I'll just tell you a few that sometimes it's hard for people who are actually giving depositions to remember. Most important is you need to let me finish my question before you start answering, even though, like most attorneys, you are going to think you know what my question is, so the court reporter can take down my question and your answer without us talking over one another.

If you don't understand a question I'm asking you, please let me know, and I'll try too rephrase it.

If you need to take a break, let me know. We can do that as long as it's not in the middle of a pending question.

And that's about it.

Are you taking any medications today that would affect your ability to answer my questions?

A. No.

09:26:06 Q. I'm not going to go through a huge litany, but could you just briefly tell me your educational background and where you have worked in the last 20 year?

09:26:15 A. I went to law school.

09:26:16 Q. Where did you go to law school?

09:26:17 A. BC Law.

09:26:17 Q. When did you graduate?

09:26:19 A. 1966.

09:26:22 Q. And where have you worked during the past ten years.

09:26:26 A. McCullough, Stievater & Polvere, 121 Main Street, Charlestown.

09:26:31 Q. And that's a firm you founded?

09:26:33 A. Yes.

09:26:34 Q. What year did you found the firm?

09:26:36 A. 1972.

09:26:37 Q. And you have worked there ever since?

09:26:39 A. Yes.

09:26:40 Q. Can you just describe for me generally your areas of practice?

09:26:44 A. Currently the areas of practice are project developments, affordable housing, extensive nursing home representation, management, sales, HUD closing,

11:22:08 outside of closing. It's a typical standard
11:22:08 reference.
11:22:08 Q. What was Andy Sucoff's response to that?
11:22:09 A. He didn't have any response. I just said we
11:22:11 are going to deal with it outside of closing, and he
11:22:13 adjusted the -- he would make the adjustment he
11:22:17 said. We were going over many other issues at the
11:22:22 same time.
11:22:22 Q. And before you told Mr. Sucoff that -- well,
11:22:27 let me ask this question, when you told Mr. Sucoff
11:22:30 that we would deal with the broker commission out of
11:22:33 the closing, who were you referring to?
11:22:35 A. The sellers.
11:23:10 (Court Reporter changes paper.)
11:23:18 Q. Before you told Mr. Sucoff that the sellers
11:23:22 would deal with the broker commission outside of the
11:23:24 closing, did you have any conversations with anyone
11:23:27 at Casas, Benjamin & White as to whether that was
11:23:30 acceptable to Casas, Benjamin & White?
11:23:32 A. I did not.
11:23:33 Q. Did anyone tell you that they had had such a
11:23:36 conversation with anyone at Casas, Benjamin & White?
11:23:44 A. I don't recall if anybody told me that.
11:23:48 Q. Prior to telling Mr. Sucoff that the sellers

11:23:51 would deal with the broker commission outside of the
11:23:54 closing, had you, without revealing the substance of
11:23:58 any communications, had you spoken with anyone
11:24:03 affiliated with the sellers about that issue?
11:24:03 ATTY. GORDON: Just yes or no.
11:24:14 A. Yes.
11:24:15 Q. And, again, without revealing the substance
11:24:17 of any such communications, before telling Mr.
11:24:22 Sucoff that the sellers would deal with the broker
11:24:25 commission outside of the closing, had you discussed
11:24:28 that issue with Barry Freid?
11:24:30 ATTY. GORDON: I'm going to instruct the
11:24:32 witness not to answer that question.
11:24:34 ATTY. HIGGINS: It's a yes-or-no
11:24:34 question.
11:24:34 ATTY. GORDON: I understand that. I'm
11:24:35 going to instruct him not to answer the question.
11:24:39 ATTY. HIGGINS: And on what, just to
11:24:39 make sure for the record?
11:24:40 ATTY. GORDON: On the grounds of
11:24:41 privilege.
11:24:42 Q. All right, I'm going to ask a similar
11:24:44 question. Prior to telling Mr. Sucoff that the
11:24:50 sellers would deal with the broker's commission

outside of the closing, again without revealing the substance of any communications, had you discussed that issue with Gerald Freid?

ATTY. GORDON: I'm going to instruct the witness not to answer the question on the grounds of privilege.

ATTY. HIGGINS: I'll object to that instruction.

Q. Mr. McCullough, prior to telling Mr. Sucoff that you would deal with the broker commission outside of the closing, had you discussed that issue with Mark Tobin?

ATTY. GORDON: I'm going to instruct the witness not to answer that question on the grounds of privilege.

Q. Had you discussed the issue -- let me start again. Prior to telling Mr. Sucoff that the sellers would deal with the broker commission outside of the closing, had you discussed that issue with Mr. Gordon?

ATTY. GORDON: I'm going to instruct the witness not to answer that question on the grounds of privilege.

Q. Mr. McCullough, had you discussed that

issue, the issue that I have just been talking about? Had you discussed that issue, again without telling me the substance of such communications, with Georgia Freid?

ATTY. GORDON: I'm going to instruct the witness not to answer the question on the grounds of privilege.

Q. Let me just try it a slightly different way. Mr. McCullough, prior to telling Mr. Sucoff that the sellers would deal with the broker commission outside of the closing, had anyone affiliated with The Pointe Group authorized you to make that communication to Mr. Sucoff?

ATTY. GORDON: I'm going to instruct the witness not to answer that question on the grounds of privilege.

ATTY. HIGGINS: Even though my question regards a communication that was to be made to a third party?

ATTY. GORDON: My instruction stands.

ATTY. WORCESTER: Could you read back Erin's last question.

(Question read.)

ATTY. HIGGINS: Let's go off the record

11:28:51 for a second.

11:28:51 (Discussion off the record.)

11:28:53 ATTY. HIGGINS: I just want the record
11:28:55 to reflect that while we were off the record counsel
11:28:58 discussed whether to suspend Mr. McCullough's
11:29:01 deposition now for the purpose of obtaining the
11:29:04 judge's ruling on whether Mr. McCullough should be
11:29:07 required to answer questions, the questions that I
11:29:10 just posed to Mr. McCullough, whether we would
11:29:14 suspend his deposition at the end of today, then
11:29:19 seek the judge's ruling on whether he should be
11:29:21 required to answer those questions, which might
11:29:24 entail Mr. McCullough coming back for a subsequent
11:29:27 deposition to answer questions as the judge directs,
11:29:31 and I just want to make it clear for the record that
11:29:33 I'm reserving my right to do that.

11:29:35 ATTY. GORDON: And we have agreed to do
11:29:36 that.

11:29:46 Q. Getting back to the closing itself, do you
11:29:49 recall who was present at Goodwin's offices that day
11:29:54 from The Pointe Group side of things?

11:30:03 A. Yes, there were a number of people, Mark
11:30:07 Tobin, Jerry Freid, Barry Freid, Steve Gordon, Frank
11:30:13 Barker, Mary Anne Tyler, Mary Cole, myself, and