UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 04CV12333 MEL

)
CASAS, BENJAMIN & WHITE, LLC            )
       Plaintiff,        )
                                        )
v.                                      )
                                        )
THE POINT GROUP, INC.,                  )
GERALD S. FREID; BARRY FREID;           )
KEY CORPORATE CAPITAL, INC.             )
       Defendants.       )
                                        )

OPPOSITION OF DEFENDANTS, THE POINTE GROUP, INC., GERALD S. FREID AND BARRY FREID, TO MOTION OF PLAINTIFF, CASAS, BENJAMIN & WHITE, LLC, TO DISQUALIFY STEPHEN F. GORDON AND GORDON HALEY LLP

  Defendants, The Pointe Group, Inc. ("TPG"), Gerald S. Freid ("Gerald Freid") and Barry Freid (collectively referred to as, the "Defendants") hereby oppose the Motion of Plaintiff, Casas, Benjamin &White, LLC ("CBW"), to Disqualify Stephen F. Gordon ("Attorney Gordon") and Gordon Haley LLP (the "Motion to Disqualify"). In support of this Opposition, Defendants state as follows:

## ARGUMENT

  I.  <u>Disqualification of Attorney Gordon and Gordon Haley LLP under Rule 3.7(a) of the Massachusetts Rules of Professional Conduct is neither necessary nor appropriate here</u>

  CBW seeks to disqualify Attorney Gordon and his firm, Gordon Haley LLP ("Gordon Haley") pursuant to Rule 3.7(a) of the Massachusetts Rules of Professional Conduct.  More specifically, CBW seeks to disqualify Attorney Gordon and Gordon Haley on the grounds that CBW **believes**[1] that Attorney Gordon will be a necessary witness at trial. Motion to Disqualify

---

[1] CBW describes this belief in the Motion to Disqualify as "a strong inference" that CBW draws from the first stages of discovery in this case.

1

at p. 10. At the outset, it is important to note that "disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary." Inverness Medical Switzerland GMBH v. Acon Laboratories, Inc. 2005 WL 1491233 *4 (D. Mass. 2005). Furthermore, Massachusetts courts have consistently held that disqualification is appropriate only when continued participation by the attorney taints the legal system. Id; see also Borman v. Borman, 393 N.E.2d 847 (Mass. 1979).

Here, CBW seeks Attorney Gordon and Gordon Haley's disqualification on the grounds that CBW intends to call Attorney Gordon to testify at the trial of this matter. While CBW states that Attorney Gordon is a "necessary witness," it fails to address the fact that the testimony it intends to elicit from Attorney Gordon can be obtained from one or more of the many other witnesses expected to testify at trial. In fact, in its Rule 26(a)(1) initial automatic disclosures, CBW lists Attorney Gordon and several others as individuals all of whom possess the same discoverable information.

In its Motion to Disqualify, CBW also attempts to create a discrepancy where none exists between Attorney Gordon and his clients with respect to the overall satisfaction with the services performed by CBW. CBW states in its Motion to Disqualify that it "intends to elicit testimony from Mr. Gordon that will directly undercut his current clients' allegations that CBW did not perform its obligations under the engagement letter." Motion to Disqualify at p. 9. CBW, however, provides no evidence whatsoever, whether deposition testimony or otherwise, supporting its claim that one or more of the Defendants have alleged that CBW did not perform its obligations. In fact, at his deposition, Gerald Freid testified that when he went to the closing, he was very satisfied with all the work that CBW had performed. See Gerald Freid Deposition,

p. 163 attached hereto as Exhibit A.  Additionally, in an e-mail dated June 4, 2004, Matt Caine of CBW stated that he appreciated the positive comments regarding CBW's performance that he had received from Attorney Gordon, Barry Freid and Frank Barker of TPG.  A true and accurate copy of the June 4, 2004 e-mail is attached hereto as Exhibit B.  CBW is attempting to manufacture a factual disagreement between Attorney Gordon and one or more of his clients, where no such discord exists, in a feeble attempt to move for the disqualification of Attorney Gordon and Gordon Haley as a litigation tactic.

In yet another attempt to create a conflict where none exists, on page 2 of the Motion to Disqualify, CBW states that the Defendants "retained sale proceeds that should have been paid to CBW."  There is no evidence whatsoever that any of the Defendants received anything at closing that should have been paid to CBW.  Indeed, they received nothing at all.

In support of its Motion for Disqualification, CBW relies heavily on the Massachusetts Court of Appeals decision of Serody v. Serody.  See Serody v. Serody, 474 N.E.2d 1171, 1174 (Mass. App. Ct. 1985); see also Motion to Disqualify at pp. 7-8.  In Serody, the Massachusetts Court of Appeals upheld the disqualification of the defendant's attorney on the grounds that the testimony sought from the attorney would likely be "damaging to his client's cause."  Id. at 1173.  Crucially, in Serody there were allegations that the attorney had acted on behalf of **both the plaintiff and defendant** in the negotiation of a property settlement which accompanied the divorce of the parties.  Id. at 1172.  Here, there are, of course, no such allegations.  CBW merely states that Attorney Gordon should be disqualified because he was "intimately involved" in communications and negotiations with the parties in this case in the months leading up to the closing.  See Motion to Disqualify at p. 9.  There is no dispute that Attorney Gordon communicated with CBW during the sale process but those communications are peripheral to the

issues in this case. The issues in this case are (1) whether CBW can maintain an action for a real estate broker's fee where it had no license to act as such and (2) whether Key Corporate Capital, Inc. made (and broke) a promise to CBW to ensure payment of its fee.

If CBW is successful in its attempt to disqualify Attorney Gordon and Gordon Haley based on the allegation that Attorney Gordon previously advised the Defendants during the sale process, then one must further deduce that all attorneys who advise their clients in a transaction that subsequently becomes a litigated dispute must be disqualified due to their prior involvement in simply advising their client in the initial transaction. CBW should not be permitted to seek Attorney Gordon's disqualification on the grounds that Attorney Gordon was previously involved in advising any clients throughout the sale process. This is especially true where, as here, none of the sellers in that sale process are parties to this case.

Since CBW repeatedly states in its Motion to Disqualify that it intends to call Attorney Gordon as a witness, CBW has no right to require him to withdraw. "[T]he party who calls the witness has no right to require him to withdraw as counsel." Colonial Gas Co. v. The Aetna Casualty and Surety Co., 144 F.R.D. 610, 612 fn. 6 (D. Mass. 1991) (quoting Borman v. Borman, 393. N.E.2d at 858); see also Kendall v. Atkins, 372 N.E.2d 764, 767 (Mass. 1978) (holding that party who calls opposing counsel as witness has no right to force his disqualification). This rule of law is obviously directed at the situation which exists in this case: an adversary desires to rid itself of its opponent as a litigation tactic. Here, the Defendants have no intention of calling Attorney Gordon or any member of Gordon Haley to testify as witnesses at the trial of this matter. While CBW argues that Attorney Gordon is a "necessary witness" in this case, discovery in this matter is not yet complete and without further depositions (no depositions of anyone affiliated with Key Corporate Capital, Inc. or CBW have been taken) it is

premature at this time to state as definitively as CBW does that Attorney Gordon is a "necessary witness." After discovery is complete and all potential witnesses have been deposed, it is entirely possible that CBW will be able to elicit the very same testimony it seeks from Attorney Gordon from one of the many other witnesses including, but not limited to, Attorney John McCullough ("Attorney McCullough"), the closing attorney for the sellers in the underlying transaction. The selling entities were Hammond Pointe Nursing Home, LLC, Cranberry Pointe Partnership, Boylston Place at Chestnut Hill, LLC, Cranberry Pointe Nursing Home, Inc. Chestnut Hill Life Care Realty, LLC (the "Healthcare Entities). If the evidence CBW seeks to elicit from Attorney Gordon is easily available through others, disqualification is not appropriate. See Serody v. Serody, 474 N.E.2d at 1174. Until discovery is complete, CBW cannot possibly know with any certainty whether it could elicit the same testimony that it would obtain from Attorney Gordon from another witness. Furthermore, in its Motion to Disqualify, CBW states that it "will certainly call Mr. Gordon as a witness to testify that at all times prior to the September 30, 2004 closing, his communications with Epoch and Key Bank contemplated that CBW would receive a fee at closing equal to the performance of incentive payments specified in CBW's engagement letter." See Motion to Disqualify at p. 9. CBW fails to state why they could only elicit that testimony from Attorney Gordon. In fact, CBW could obtain that very same testimony from any one of a number of potential witnesses, including, Attorney McCullough or Key Corporate Capital's or their own witnesses. All of the "communications" referred to were with third parties available to testify and none are the subject of any dispute.

Assuming *arguendo* that Attorney Gordon is a necessary witness, there is an exception to Rule 3.7(a) which states that a lawyer may act as counsel at a trial in which he is likely to be a necessary witness if the disqualification of the lawyer would work a substantial hardship on the

5

client.  See Mass. R. Prof. C. 3.7(a)(3).  Beyond the obvious expense and inconveniences that the Defendants would be required to endure if Attorney Gordon and Gordon Haley were disqualified here, disqualification would certainly result in a substantial hardship and a severe litigation handicap[2] to the Defendants in that the Defendants would lose the services of their attorney who has extensive knowledge of both the transaction and this litigation.  While CBW is correct that there is no decision from a Massachusetts court setting forth the requirements for a finding of "substantial hardship," the United States District Court for the Northern District of New York's decision in SMI Industries Canada LTD. v. Caelter Industries, Inc. is particularly helpful in this regard.  See SMI Industries Canada LTD. v. Caelter Industries, Inc., 586 F.Supp. 808 (N.D.N.Y. 1984).  The Court in SMI Industries denied the motion for disqualification finding that disqualification would in fact cause a substantial hardship on the client.  Id. at 817.  In SMI Industries, the attorney whose client opposed the disqualification had represented his client for several years, as is the case here.  Attorney Gordon also knew the late William Freid, father of Defendants, Gerald and Barry Freid, and husband of Georgia Freid, part owner of TPG and the Healthcare Entities, for decades and represented him for several years before his sudden and untimely death.  Attorney Gordon has now irreplaceable knowledge from the man who built all of the Healthcare Entities and entrusted Attorney Gordon with his most personal business thoughts.  The SMI Industries Court explained, "[t]he attorney-client relationship has become intimate, and the firm has acquired specialized knowledge of defendant, defendant's related companies, and their operations.  The … representation of the defendant in the present action involves a complex set of legal and factual issues which the firm has been familiar with for many years."  Id.; see also, Brown v. Daniel, 180 F.R.D. 298 (D. S.C. 1998) (finding substantial hardship exists where client would be deprived of long-term counsel with extensive knowledge

---

[2] Fact discovery closes on September 30, 2005.

6

of case and additionally substantial discovery had been conducted); see also Lumbard v. Maglia, Inc., 621 F.Supp. 1529 (S.D.N.Y. 1985) (holding substantial hardship present where counsel had worked on case since filing and substantial discovery had been completed). Attorney Gordon and Gordon Haley's previous and lengthy history of representing the Defendants, both in regards to the underlying transaction and other matters, is nearly identical to (and perhaps even more intimate than) the relationship between the attorney and client in SMI Industries. Like the relationship between the attorney and his client in SMI Industries, Attorney Gordon's knowledge and understanding of the complex set of facts leading up to the sale of the Healthcare Entities' assets is indisputable and, as CBW is painfully aware, gives the Defendants here an invaluable benefit that should not be taken away from them due to CBW's obviously tactical desire to convert its own inference into a certainty, before discovery has been completed, that Attorney Gordon is a necessary witness. Accordingly, the disqualification of Attorney Gordon, who may very well not be a necessary witness (or a witness at all), would undeniably cause a substantial hardship on the Defendants.

Finally, Rule 3.7(a) states that "[a] lawyer shall not act as advocate **at a trial** in which the lawyer is likely to be a necessary witness…" Mass. R. Prof. C. 3.7(a) (emphasis added). In its Motion to Disqualify, CBW seeks the immediate disqualification of Attorney Gordon and Gordon Haley from "further representation" of the Defendants. Motion to Disqualify at p. 14. Courts, however, have found that an attorney may continue his representation until it is apparent that his testimony is or may be prejudicial to his client. See Borman, 393 N.E.2d at 857, fn. 22. While Rule 3.7(a) specifically states that a lawyer shall not act as advocate **at a trial** in which the lawyer is likely to be a necessary witness, here, even if Attorney Gordon were to be a necessary witness, Rule 3.7(a) would not prevent Attorney Gordon from representing the

Defendants throughout discovery and the filing and arguing of dispositive motions, and in every other capacity as counsel up to the trial of this case.

> II. Attorney Gordon and Gordon Haley should not be disqualified under Rule 1.7(b) of the Massachusetts Rules of Professional Conduct as Attorney Gordon is reasonable in his belief that his continued representation of the Defendants does not pose a conflict of interest.

Rule 1.7(b) of the Massachusetts Rules of Professional Conduct provides in pertinent part:

> (b) A lawyer shall not represent a client if the representation of the client may be materially limited by the lawyer's responsibilities to another client, or by the lawyer's own interests, unless:
>
> (1) **the lawyer** reasonably believes the representation will not be adversely affected; and
> (2) the client consents after consultation….

Mass. R. Prof. C. 1.7(b) (emphasis added).

CBW argues that Attorney Gordon should be disqualified because "his representation of TPG and the Freids is in conflict with his responsibilities to his other clients, the [Healthcare] Entities." See Motion to Disqualify at p. 12. While Attorney Gordon may have represented TPG, Barry Freid and Gerry Freid, none of them are parties to the underlying transaction but all are entitled to have had counsel and to rely upon the confidentiality of their communications with counsel. Furthermore, Attorney Gordon and Gordon Haley are here representing the Healthcare Entities not, obviously, as parties to this case, but only in opposition to burdensome and totally duplicative and repetitive document discovery.

CBW further argues that Attorney Gordon has asserted that if any fee is due to CBW, it is not due from TPG and the Freids because they were not the sellers in the transaction. CBW then somehow reaches the conclusion that CBW's fee must be due from the Healthcare Entities

8

(which they declined to make parties to this case) thus, CBW claims, putting Attorney Gordon in conflict with his clients. In reaching this foolish conclusion, CBW cites to "Tab G" of its Motion to Disqualify. "Tab G" to the Motion to Disqualify is a clearly marked settlement proposal dated October 1, 2004 sent by Attorney Gordon to Matthew Caine of CBW. Nowhere in the October 1, 2004 settlement proposal does Attorney Gordon state that no fee is due to CBW from TPG and the Freids because they were not the sellers in the transaction. CBW's incorrect assumption (another "inference") that there exists a conflict among Attorney Gordon's clients as to who is responsible for the payment to CBW is insufficient to sustain the Motion for Disqualify. And, of course, CBW has no knowledge, as it should not, of any legal and financial relationships among and between the Healthcare Entities and the Defendants.

CBW makes yet another outrageous assumption in an attempt to create a conflict that does not exist. CBW argues that because Gerald Freid, Barry Freid, and their mother, Georgia Freid all testified at deposition that they were not involved in the communications that resulted in CBW's fee being changed in the closing statement to "Paid Outside of Closing" (which, rather importantly, showed closing proceeds insufficient to pay CBW's fee), and Attorney John McCullough testified that someone "affiliated with the sellers" authorized him to engage in those communications, that it must have been Attorney Gordon who authorized Mr. McCullough's communication. At his deposition, Attorney John McCullough, the closing attorney for the Healthcare Entities, answered "yes" to the following question:

> Q. Prior to telling Mr. Sucoff that the sellers would deal with the broker commission outside of the closing, had you, without revealing the substance of any communications, had you spoken with anyone affiliated with the sellers about that issue?

When questioned further to identify which of his clients' representatives he had consulted with, Mr. McCullough declined on the grounds of attorney-client privilege. Thus, because none

of Georgia, Barry or Gerald Freid testified to having any knowledge of this specific matter, CBW somehow reached the conclusion that it was Attorney Gordon who authorized Mr. McCullough to instruct the buyer's counsel to change the treatment of CBW's fee in the closing statement. First, not all of the sellers' representatives that Mr. McCullough testified were present at the closing have been deposed in this case. Second, who gave the instruction to indicate that a broker's fee would be "paid outside of closing" is peripheral here since CBW maintains, and the e-mail correspondence affirms, that Key Corporate Capital promised to secure payment for CBW from the sale proceeds (and persuaded CBW that it was unnecessary for it to attend the closing). Despite the fact that CBW was relying on Key Corporate Capital for payment of its fee and despite the fact that there were no closing proceeds that the Defendants or the Healthcare Entities could direct toward (or away from) CBW, CBW seeks to use this peripheral issue to disqualify its adversaries' counsel.

While it is premature, in any event, to determine whether Attorney Gordon will be a necessary witness, it is also uncertain whether the attorney-client privilege will prevent him from being a witness at all (which would render disqualification moot). Attorney McCullough, as stated above, declined, on the grounds of attorney-client privilege, to disclose who, on behalf of the sellers, authorized him to advise the buyer's attorney to state, in the closing statement, that CBW's brokerage fee would be "paid outside of closing." CBW has sought to compel Attorney McCullough's testimony on the basis that the attorney-client privilege does not protect the testimony sought.[3] If the testimony cannot be compelled from Attorney McCullough, it cannot be compelled from Attorney Gordon and, therefore, there will be nothing for Attorney Gordon to testify to at trial. If his testimony is compelled, Attorney McCullough will disclose the person or

---

[3] CBW asked the same questions of Attorney Gordon in his deposition and he similarly declined to answer on the grounds of attorney-client privilege.

10

persons who advised him to perform this necessary ministerial act, rendering Attorney Gordon's testimony totally unnecessary. Alternatively, Attorney McCullough may not remember who on behalf of the sellers advised him to do a necessary ministerial act to complete the closing and the inquiry will end there. Finally, if Attorney Gordon is compelled to provide testimony, he may testify to an uncontested issue or he, also, may not have a memory of this important to CBW, but otherwise ministerial, closing matter and, in either case, not be disqualified as trial counsel.

Of crucial importance to this analysis is that "a conflict is not in itself sufficient to preclude representation, however, the focus of the court must be on whether the lawyer's loyalty to the client is threatened." Inverness Medical Switzerland GMBH, 2005 WL 1491233 * 4. Rule 1.7(b) provides an exception to the disqualification requirement where the client has consented to the conflict. See Mass. R. Prof. C. 1.7(b)(2); see also Inverness Medical Switzerland GMBH, 2005 WL 1491233 * 8. The Defendants are aware of the conflicts alleged by CBW and they do not have any objection to their continued representation by Attorney Gordon and Gordon Haley. Indeed, they are aware of CBW's dislike of Attorney Gordon and see the Motion to Disqualify for what it is: a litigation tactic intended to disadvantage them for CBW's benefit. It is Attorney Gordon's unwavering loyalty to his clients that enrages CBW. Attorney Gordon has carefully exercised his best judgment here and, after doing so, has determined that his continued representation of the Defendants will not bring him into conflict with the Massachusetts Rules of Professional Conduct. See Borman v. Borman, 393 N.E.2d at 856 (holding if attorney uses best judgment to determine that no conflict exists, disqualification may only occur if trial court determines that continued participation of counsel would taint the legal system or the trial of the case).

CBW states in its Motion to Disqualify that Attorney Gordon testified that he "had no personal knowledge of any acts or omissions of CBW supporting his clients' counterclaims..." and that will somehow be "prejudicial" to his clients. Motion to Disqualify at p. 10. CBW is, therefore, seeking disqualification not because of Attorney Gordon's knowledge but because of Attorney Gordon's lack of knowledge. This makes nonsense. If the lawyer has no knowledge and the client testifies of his or her personal knowledge, there cannot conceivably be the required substantial conflict between the testimony of the client and that of the lawyer.

    III.    <u>CBW's efforts to disqualify Attorney Gordon are nothing more than a litigation tactic designed to give CBW an advantage in this litigation and CBW has a long-standing personal bias against Attorney Gordon that precedes this litigation.</u>

Massachusetts courts are unanimous in their disproval of seeking disqualification as a litigation tactic. See Colonial Gas Co., 144 F.R.D. at 612; see also Inverness Medical Switzerland GMBH, 2005 WL 1491233 * 4 (stating that courts should be alert that the Canons of Ethics are not brandished for tactical advantage); Serody v. Serody, 474 N.E.2d at 1174 (holding that judge needs to be alert to parties seeking to use motions to disqualify to gain a tactical advantage in litigation). Long before this litigation was initiated, and several months before CBW did not receive its fee at the closing, CBW did not think highly of Attorney Gordon. In a July 15, 2004 e-mail from Gerry Benjamin of CBW (with whom Attorney Gordon has never communicated in any way or met at any time) to Ed Casas, both principals of CBW, Mr. Benjamin said of Attorney Gordon, "[t]his guy is. A real pr--k." [sic.]. In a response also dated July 15, 2004, Mr. Casas replied, "I have the same sentiment but have been forcing myself to take the high road, I intend to ignore the sh--head." A copy of the July 15, 2004 e-mail exchange (redacted out of respect for the Court) is attached hereto as Exhibit C. CBW's long standing dislike of Attorney Gordon is obvious and the Motion to Disqualify was undoubtedly filed both

as a direct result of CBW's pre-litigation irritation with Attorney Gordon and also to give CBW a tactical advantage in this litigation by making the Defendants not only start over by retaining new counsel, but lose the advantage of a lawyer with special knowledge of inestimtable value to them. CBW's interoffice e-mails show that it would like nothing more than to see Attorney Gordon and his firm disqualified from this case. Furthermore, in its June 3, 2005 Motion to Compel Production of Documents from Century Bank and Trust Company (the "Motion to Compel), CBW inexplicably, and without holding the required Local Rule 37.1 conference to discuss the allegations and issues raised in the Motion to Compel (which would instantly have revealed the falsity of CBW's incendiary allegations), accused Attorney Gordon of purposely engaging in deceitful behavior and committing a fraud upon this Court by backdating a letter. As more fully set forth in the Defendants' Opposition to the Motion to Compel and the accompanying Affidavit of Gracine Copithorne, CBW is entirely wrong and CBW's haphazard accusation of Attorney Gordon of such conduct should inform the Court as to its true motivation here. CBW's history of contempt towards Attorney Gordon and its false and reckless accusations against him of wrongdoing in this case are well documented and it is evident that CBW's disdain for Attorney Gordon and its transparent attempt to disadvantage its adversaries are the driving forces behind seeking disqualification. The Defendants trust that the Court sees CBW's Motion to Disqualify for what it is: an attempt by CBW to rid itself of having to deal with Attorney Gordon once and for all and at the same time gain a tactical advantage in this litigation by forcing the Defendants to retain new counsel who will unquestionably not possess the invaluable expertise and knowledge of the facts, circumstances and parties related to this matter that Attorney Gordon possesses.

14

WHEREFORE, Defendants, The Point Group, Inc., Gerald S. Freid and Barry Freid respectfully request that the Court deny Plaintiff, Casas, Benjamin & White, LLC's Motion to Disqualify Stephen F. Gordon and Gordon Haley LLP and grant such other and further relief as is just.

    Respectfully Submitted,

    THE POINTE GROUP, INC., GERALD S. FREID AND BARRY FREID

    By their attorneys,

    /s/Todd B. Gordon\_\_\_
    Stephen F. Gordon (BBO No. 203600)
    Todd B. Gordon (BBO No. 652482)
    Gordon Haley LLP
    101 Federal Street
    Boston, Massachusetts 02110
    Tel:   (617) 261-0100

Dated: August 8, 2005    Fax:   (617) 261-0789
P:\Clients\Pointe Group \CBW Plead\Opp to mot to disqualify.doc