# TAB F

Georgia T. Freid                                                                   05/03/2005

Page 1

```
 1                                    Volume: I
 2                                    Pages:  1 - 105
 3         UNITED STATES DISTRICT COURT
 4           DISTRICT OF MASSACHUSETTS
 5               No. 04-12333-MEL
 6
 7   CASAS, BENJAMIN & WHITE, LLC,
 8          Plaintiff,
 9   v.
10   THE POINTE GROUP, INC., a Massachusetts corporation
11   d/b/a The Pointe Group Healthcare and Senior Living;
12   GERALD S. FREID; BARRY FREID; and KEY CORPORATE
13   CAPITAL, INC.,
14          Defendants.
15
16                  **********
17       DEPOSITION OF GEORGIA T. FREID
18          Tuesday, May 3, 2005
19   Conn Kavanaugh Rosenthal Peisch & Ford, LLP
20            Ten Post Office Square
21            Boston, Massachusetts
22                10:25 a.m.
23       Reporter:  Linda M. Grieco
24   320 Congress Street, Boston, MA 02210
```

### Page 2

```
1  APPEARANCES:
2
3  CONN KAVANAUGH ROSENTHAL PEISCH & FORD
4  (By Erin K. Higgins, Esquire)
5  Ten Post Office Square
6  Boston, Massachusetts 02109
7  on behalf of the Plaintiff
8  (617) 482-8200
9
10 GORDON HALEY LLP
11 (By Stephen F. Gordon, Esquire)
12 101 Federal Street
13 Boston, Massachusetts 02110
14 on behalf of The Pointe Group,
15 Gerald S. Freid, Barry Freid and
16 the Witness
17
18 NIXON PEABODY, LLP
19 (By Doran Rymes, Esquire)
20 889 Elm Street
21 Manchester, New Hampshire 03101
22 on behalf of Key Corporate Capital, Inc.
23 (603) 628-4000
24 Also present: Gerald Freid
```

### Page 3

```
1                INDEX
2  Deposition of:        Direct  Cross
3  GEORGIA T. FREID
4     By Ms. Higgins        4
5     By Ms. Rymes         101
6
7
8
9
10            EXHIBITS
11 No.                            Page
12 39  Subpoena                    10
13 40  E-mails from Attorney Gordon to
14     Matt Caine                  54
15 41  Second Amendment to Pledge Agreement  57
16 42  Second Amendment to Securities Pledge
17     Agreement 12/96             57
18 43  Purchase and Sale Agreement 8/9/04  81
19 44  "Side Letter"               85
20 45  Quitclaim Deed              85
21 46  Closing Certificate         85
22 47  Amendment to Purchase and Sale
23     Agreement                   85
24
```

### Page 4

```
1              PROCEEDINGS
2              STIPULATION
3      It is stipulated by and between counsel
4  for the respective parties that the deposition is to
5  be read and signed by the deponent under the pains
6  and penalties of perjury within 30 days of receipt
7  of the transcript; and that the sealing and filing
8  thereof are waived; and that all objections, except
9  as to form, and motions to strike are reserved to
10 the time of trial.
11           * * * * *
12         GEORGIA T. FREID,
13 a witness called by counsel for the Plaintiff,
14 having been satisfactorily identified by the
15 production of her driver's license, and duly sworn
16 by the Notary Public, was examined and testified as
17 follows:
18         DIRECT EXAMINATION
19         BY MS. HIGGINS
20    Q. Good morning, Mrs. Freid. My name is Erin
21 Higgins, and I represent the plaintiff in this case,
22 Casas, Benjamin & White. Have you ever had your
23 deposition taken before?
24    A. Yes.
```

### Page 5

```
1     Q. How many times?
2     A. Once.
3     Q. Do you remember approximately how many years
4  ago that was?
5     A. Maybe two.
6     Q. Was that in connection with a lawsuit?
7     A. Yes.
8     Q. Do you remember what the lawsuit was about?
9     A. Well, I know who it was against.
10    Q. Who was it against?
11    A. HDC, I believe, was suing me.
12    Q. What kind of a company is HDC?
13    A. It's a company that -- what kind of company
14 is HDC? HDC is a company that I guess downstream
15 somewhere must have loaned them money, and then they
16 would pay me back interest each month, something
17 like that.
18    Q. Where was the suit pending? Was it here in
19 Massachusetts or in Florida?
20    A. Yes, here.
21    Q. Do you know what courthouse it was in,
22 Middlesex or Suffolk? Was it in Cambridge or
23 Boston?
24    A. Boston, I think. I don't know. I never
```

Georgia T. Freid                                                                                                05/03/2005

Page 78

1  before, that anyone on the seller's side would have
2  to bring money to the transaction?
3       MR. GORDON: She's already answered that
4  question.
5   Q. Okay, I just wanted to make sure I covered
6  the bases. Is that your testimony?
7   A. I don't remember.
8       MR. GORDON: She's already answered
9  that.
10      (Off the record.)
11  Q. On the day of the closing, do you remember
12 there being any discussion amongst any of the people
13 who were there on the seller's side of the
14 transaction as to whether or not there were
15 sufficient funds to pay all the closing costs on the
16 seller's side of the statement?
17  A. I have no idea.
18  Q. Do you remember there being any discussion
19 that you either participated in or overheard as to
20 the amount of any escrows that were going to be
21 established?
22  A. I don't know.
23  Q. Mrs. Freid, I'm handing you what was marked
24 as Exhibit 37 at the deposition of Gerald Freid.

Page 79

1       (Document exhibited to witness.)
2   Q. Can you tell me whether you have seen before
3  today either that e-mail or the attached invoice?
4   A. I didn't get this e-mail.
5   Q. My question is whether before today you've
6  ever seen that e-mail or the attached invoice?
7   A. No.
8   Q. Do you remember any discussion on the day of
9  the closing as to any invoice rendered by the broker
10 in connection with the sale of the facilities to
11 Epoch?
12  A. No.
13  Q. Handing you what was marked as Exhibit 38 at
14 the deposition of Gerald Freid.
15      (Document exhibited to witness.)
16  Q. I recognize that the e-mail that's the cover
17 sheet to that exhibit was not something that was
18 directed to you. My question has to do with the
19 attachment to that e-mail. This is purportedly a
20 copy of the closing statement from the closing. My
21 question is whether on the day of the closing, you
22 reviewed a copy of the settlement statement?
23  A. No.
24  Q. I'm just going to show you one particular

Page 80

1  page of this. Showing you schedule seven to the
2  closing statement, which is titled closing costs and
3  disbursement. You see that there are listed costs
4  and disbursement for both the buyer and the seller
5  there?
6   A. Yes.
7   Q. Do you see that?
8   A. Uh-hum.
9   Q. If you go down about midway down the page,
10 you see that there's an item --
11  A. Broker's commission.
12  Q. Yes, the broker's commission.
13  A. Yes.
14  Q. Did you see that entry on the day of the
15 closing?
16  A. No.
17  Q. Do you remember there being any discussion,
18 you see the particular language that says, it says
19 broker's commission and then you see there's some
20 language in parenthesis next to it?
21  A. Oh, the broker's -- okay, yes, I see that.
22  Q. Could you read that into the record, what's
23 in the parenthesis?
24  A. POC by seller.

Page 81

1   Q. Do you have any understanding what POC
2  means?
3   A. None whatsoever.
4   Q. Do you remember there being any discussion
5  on the day of the closing as to what that means,
6  POC?
7   A. No.
8   Q. Did you have -- do you remember any
9  discussion on the day of the closing as to whether
10 or not the broker was going to be paid outside of
11 the closing?
12  A. No.
13  Q. You don't have any information as to who put
14 that on the settlement statement?
15  A. No.
16  Q. Okay, take that back.
17      MR. GORDON: Mark that as the next
18 exhibit.
19      (Exhibit 43 marked for identification.)
20      (Document exhibited to witness.)
21  Q. Mrs. Freid, I'm handing you a document
22 that's been marked as an exhibit. It's entitled
23 purchase and sale agreement. There's a date on the
24 front, August 9, 2004. Do you see that?

21 (Pages 78 to 81)

LegaLink Boston
(800) 822-3376

Georgia T. Freid                                                                                                05/03/2005

**Page 82**

1   A. Yes.
2   Q. Do you remember reviewing the purchase and
3   sale agreement for this transaction that's described
4   here?
5   A. I've never seen this.
6   Q. Could you turn to page 39 of the document,
7   please?
8   A. Okay.
9   Q. You see section 30, which has a sub-heading
10  of broker?
11  A. Yes.
12  Q. And you see that section refers to my
13  client, Casas, Benjamin & White, LLC?
14  A. Yes.
15  Q. And you see the last sentence where it says,
16  "Sellers shall be responsible for paying broker and
17  shall hold buyer harmless from any claim by broker."
18  Do you see that?
19  A. Yes.
20  Q. Is it your testimony that you have never
21  previously reviewed that paragraph of the agreement?
22  A. Never seen it.
23  Q. If you could just look at page -- I guess we
24  sort of lose the page numbers, but it would have

**Page 83**

1   been page 43.
2   A. Yes.
3   Q. Is that your signature that appears at
4   several places?
5   A. There are no signatures on 43.
6       MR. GORDON: There may be several 43's.
7   A. Oh, there might be a lot of 43's, okay.
8       MR. GORDON: No, there's just one.
9   A. No, no signature on 43, 41.
10      MR. GORDON: This is unsigned, and I
11  notice it has your initials on the first page. So
12  maybe we've marked your personal copy.
13      MS. HIGGINS: They should be copies of
14  one another, though. It doesn't really matter.
15  Q. I'll take that back.
16      MS. HIGGINS: Do you have any objection
17  to us putting the exhibit sticker on the signed
18  version?
19      MR. GORDON: In fact, you could switch
20  page one. Oh, if you can get it off, that's fine.
21  Q. If you could look again at the signature
22  pages on that document.
23      (Document exhibited to witness.)
24  A. That's better. 39? That's where you want

**Page 84**

1   to start, I think. Yeah, I guess so.
2       MS. HIGGINS: Now I'm confused.
3   A. Do you want me to list the number of the
4   page?
5       MR. GORDON: There's no page number on
6   the signature page.
7       MS. HIGGINS: Yes, I don't know why.
8   These should be duplicates of one another, and I'm
9   not sure why they're not.
10  A. This is number two.
11      MR. GORDON: Now, there's a two here.
12  A. But I saw 39 a minute ago somewhere.
13      MR. GORDON: It does have the date of
14  August 4, 2004 at the top.
15      MS. HIGGINS: These are not -- these are
16  not the same document. Mine, actually now that I'm
17  looking at it, the copy that I have in any hand says
18  "draft" on it. So this is not a final version, and
19  I think what you have is, simply because it has
20  signatures.
21      MR. GORDON: So on the one that we've
22  now marked as Exhibit 43 --
23      MS. HIGGINS: Correct.
24      MR. GORDON: You're asking about the

**Page 85**

1   witness's signatures.
2   Q. Yes, forget my copy. If you could look at
3   the document that we've now marked as Exhibit 43,
4   which is what it says on the front, and just confirm
5   for me that your signature appears on the signature
6   pages to that document.
7   A. Yes, yes.
8   Q. Just because I don't want the record to be
9   confused, it remains your testimony that you did not
10  read that document, the one that's marked as
11  Exhibit 43, before you signed it, correct
12  A. I did not read it.
13      MS. HIGGINS: I'm going to have you mark
14  these as exhibits.
15      (Exhibits 44 through 47 marked for
16  identification.)
17  Q. Mrs. Freid, I'm handing you what's been
18  marked as Exhibits 44, 45, 46 and 47.
19      (Documents exhibited to witness.)
20  Q. Again, I don't have a lot of questions about
21  these. I think you previously testified that you
22  did remember the date of the closing being September
23  30th of 2004?
24  A. Yes, it's my daughter's birthday.

22 (Pages 82 to 85)